# EXHIBIT C

Trademark Electronic Search System (TESS)



United States Patent and Trademark Office

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

TESS was last updated on Sat Jul 28 04:06:53 EDT 2007

**TESS HOME** | **NEW USER** | **STRUCTURED** | **FREE FORM** | **BROWSE DICT** | **SEARCH OG** | **BOTTOM** | **HELP**

**Logout** Please logout when you are done to release system resources allocated for you.

## Record 1 out of 1

**TARR Status** | **ASSIGN Status** | **TDR** | **TTAB Status**  ( Use the "Back" button of the Internet Browser to return to TESS)

### Typed Drawing

| | |
|---|---|
| Word Mark | VIOLENT FEMMES |
| Goods and Services | IC 041. US 100 101 107. G & S: entertainment in the nature of live performances by a musical group; audio recording and production. FIRST USE: 19800000. FIRST USE IN COMMERCE: 19810000 |
| Mark Drawing Code | (1) TYPED DRAWING |
| Serial Number | 76191996 |
| Filing Date | December 26, 2000 |
| Current Filing Basis | 1A |
| Original Filing Basis | 1A |
| Published for Opposition | January 22, 2002 |
| Registration Number | 2699392 |
| Registration Date | March 25, 2003 |
| Owner | (REGISTRANT) Ritchie, Brian INDIVIDUAL UNITED STATES 60 Plaza Street East, Apt. 4A Brooklyn NEW YORK 11238 |
| Attorney of Record | Jeffrey E Jacobson |
| Type of Mark | SERVICE MARK |
| Register | PRINCIPAL |
| Live/Dead indicator | LIVE |

**TESS HOME** | **NEW USER** | **STRUCTURED** | **FREE FORM** | **BROWSE DICT** | **SEARCH OG** | **TOP** | **HELP**

| HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

EXHIBIT "C"

# EXHIBIT D

**From:** "Alan N. Skiena" <ASkiena@entlawfirm.com>
**Date:** November 30, 2006 5:15:31 PM GMT+01:00
**To:** HowieCPA@aol.com
**Cc:** "Gordon Gano (E-mail)" <diakakaba@diaka.com>, brianritchie@mac.com
**Subject:** Brian Ritchie - Gorno Music

Hi Howard -

I'm attaching in PDF format a copy of the 2001 agreement between Gordon and Brian. Paragraph 7 of that agreement relates to publishing issues.

As I mentioned to you during our phone conversation, Brian doesn't receive formal accounting statements from Gorno Music at year-end. He simply receives a fairly general letter along with a check representing payment due. Payments made to him for the last three years are as follows:

2003 - $14,072.13
2004 - $18,160.90
2005 - $17,137.05

In addition, a check was sent to Brian within the last week representing a one-time upward adjustment in the amount of $2,039.39. This payment was issued to correct a computation error relating only to those three years.

Let me know if you need anything in addition on this.

Kind regards,


Alan N. Skiena
Epstein Levinsohn Bodine Hurwitz & Weinstein LLP
1790 Broadway - Tenth Floor
New York, New York 10019
Phone - 212 262-1000
Fax - 212 262-5022
E-mail - askiena@entlawfirm.com

<<Gano-Ritchie-VF2 Settlement Agt (4.20.2001)1.pdf>>

EXHIBIT "D"

04/23/01 17:01 FAX 2126455038    JACOBSON AND COLFIN PC    Apr 23 2001 17:09  P.01
                                                                             ☒003
APR 23 '01 17:03 FR RUBIN BAILIN ET AL   212 826 9307 TO 6455038    P.02/06

04/23/2001  11:48   2173945081              JUMER                          PAGE  01
APR 23 '01 11:58 FR RUBIN BAILIN ET AL   212 826 9307 TO 12173945081-005  P.02/06

## AGREEMENT

The following sets forth the terms of the agreement between VF2, Inc. ("VF2"), and Brian Ritchie ("Ritchie") and Gordon Gano ("Gano"), its sole shareholders, in connection with the winding up of VF2, Inc. and its dissolution, and other matters set forth herein:

1. **Tour dates:**

   (a) Gano will perform at the following 9 confirmed dates only (4/22 - 5/26). They are:

   | Date | City | Venue | Amount |
   |---|---|---|---|
   | 4/22 | Champaign, IL | U. of IL | $14,000 |
   | 4/23 | DeKalb, IL | Otto's | $14,000 |
   | 4/24 | Sioux Falls, IA | Washington Pavilion | $15,000 |
   | 4/27 | Grand Fork, ND | U. of No. Dak. | $25,000 |
   | 4/28 | Duluth, MN | Duluth Ent. Conv. | $20,000 |
   | 4/30 | NYC | Irving Plaza | $15,000 |
   | 5/11 | Cincinnati, OH | Jammin' On Main | $25,000 |
   | 5/19 | Chicago, IL | U. of Chicago | $35,000 |
   | 5/26 | Montgomery, AL | Montgomery Jubilee | $25,000 |
   |      |               | Gross: | $188,000 |

   (b) Ritchie and Gano will each be paid $1,000 for each show in which they perform and for which payment is received by VF2 from the promoter of the show. These fees are guaranteed to be paid out of receipts of the tour.

   (c) Notwithstanding the foregoing, as to Providence, RI date on 4/19 at Brown University for $20,000, at which Gano did not perform, Ritchie will be paid an additional $1,000 over the per show fee described in paragraph 1(b) above. Gano will not be paid for that date.

   (d) INTENTIONALLY DELETED

   (e) Ritchie may be paid his $1,000 fee after each show (or $2,000 in the case of the Providence date), solely out of the receipts paid by the promoter of the show (immediately if paid in cash or as soon as possible if paid by check or wire transfer).

Page 1 of 5

04/23/01  17:02 FAX 2126455038      JACOBSON AND COLFIN PC        Apr 23 2001 17:09  P.02
                                                                                    ☒ 004
APR 23 '01 17:03 FR RUBIN BAILIN ET AL   212 826 9307 TO 6455038        P.03/06

04/23/2001  11:48   2173849001         JUMER                            PAGE  02
       APR 23 '01 11:58 FR RUBIN BAILIN ET AL  212 826 9307 TO 12173849001-005  P.03/06

(f) Other than the fees paid to either Ritchie or Gordon under subparagraph 1(e), all receipts for the tour dates referred to in subparagraphs (a), (b), (c) and (d) will be collected and handled by road manager, and deposited into VF2's bank account through Howard Comart's offices.

**NO OTHER DATES MAY BE BOOKED OR CONFIRMED**

2. <u>Use of Tour net receipts</u>: 100% of the net receipts of the tour (i.e., after deduction of direct tour expenses and fees to Ritchie and Gano) will be used to pay down the corporate debts, which will be handled exclusively by Gano.

3. <u>Winding Down and Dissolution</u>: Ritchie hereby irrevocably authorizes Gano to dissolve VF2 as soon as possible. In order to do so, the corporation's outstanding debts, set forth below, must be paid. To the extent there is any deficiency after application of the net receipts of the tour and any amounts currently in VF2's bank account, and provided that all of the tour dates set forth in paragraph 1 above are completed and payment in full is received by VF2, Gano will loan the corporation the balance outstanding needed to retire the debts set forth in paragraph 4 below. Gano will be repaid such loan out of 100% of any and all revenues received by VF2 until he is fully reimbursed. Thereafter, and after dissolution of VF2, all such revenues will be distributed equally to Gano and Ritchie.

Both parties agree that, from this point forward, Gano will be solely responsible for the winding up of VF2's affairs. Also, both agree that neither party may cause VF2 to incur any additional debt without the prior written consent of the other. To the extent either does, they will be personally responsible for such debt.

4. <u>Corporate Debts</u>: The current corporate debts as per Howard Comart are:

| | |
|---|---|
| Comart & Koppel: | $38,495 |
| Hornblow Group[1]: | $26,095[2] |
| Myman, Abell: | $ 9,577 |
| Guy Hoffman: | $20,000 |
| DV Productions: | $    610 |
| Dominick Engel | $ 2,000 |

Page 2 of 5

---

[1] Jamie Kitman has agreed to waive his management commission of 15% for all of the tour dates referred to above, other than the Providence, RI (4/18), Montgomery, AL (5/26) and Chicago, IL (5/19) dates, for which Hornblow Group will be paid a 15% commission of the gross amounts actually paid VF2, provided he is paid in full the balance of his commissions and out of pocket expenses (estimated to be $1,000) by May 15, 2001.

[2] Jamie Kitman instructed a UK licensee to pay Hornblow, not VF2, the net royalty receipts of $20,000 less $8,000 UK taxes withheld. Hornblow retained the net receipts of $12,000 against its debt, $3,000 of which was his commission on the UK gross funds. Thus, the $35,095 previously owed has been reduced by $9,000.

04/23/01  17:02 FAX 2126455038       JACOBSON AND COLFIN PC       Apr 23 2001 17:10   P.03
APR 23 '01 17:03 FR RUBIN BAILIN ET AL   212 826 9307 TO 6455038       P.04/06

04/23/2001  11:40   2173849001

5. **Past Claims**: To the extent either Ritchie or Gano (either individually or on behalf of VF2) are claiming payment and/or reimbursement for any funds paid or services rendered in the past, or either is claiming that the other incurred expenses for VF2 which were either unnecessary, not approved, etc., whether now known or hereafter discovered, such claims will be forever waived and relinquished by both Ritchie and Gano and VF2. They include, without limitation: (1) Ritchie's Internet services fee in the amount of $20,000; (2) Gano's reimbursement of $9,000 for video; (3) Gano's reimbursement of $2,000 paid to Guy Hoffman; (4) costs of flutes purchased by Ritchie; (5) costs of Gano's tour bus for prior tours.

To the extent permitted by the Tax Code, both Ritchie and Gano may take a loss for whatever they were claiming, as described above, and which they are now waiving. Gano and Ritchie shall instruct Howard Comart to structure the waivers described above in such a way as to maximize the tax advantages for Gano and Ritchie.

6. **Equipment**: The equipment in storage in Milwaukee will be sold by VF2, although either Ritchie or Gano may purchase any items at fair market value. If either Gano and Ritchie claim that any individual item(s) of equipment are owned by them personally, then such equipment may be removed by the party claiming such equipment, provided that such party evidences such ownership in a manner which shall be satisfactory to VF2's business manager, Howard Comart, including through production of evidence of payment, such as canceled checks, receipts, etc., and provided further that the costs of such purchase(s) were not reimbursed by VF2 to the claiming party.

7. **Publishing Issues**: Songwriting credits and publishing as stated on existing recordings (Violent Femmes) are hereby deemed accurate and true. Ritchie and Gano have a exclusive publishing administration arrangement with Alan Skiena, which will continue in full force and effect.

Ritchie will continue to receive an income participation in the amount of 7.5% of Gano's net receipts (after deduction of any management and publishing administration fees) on all Violent Femmes songs he did not write in consideration for his services as an "arranger," except: (1) "I Can Change", in which Ritchie's participation will be 25% rather than 7.5%, and (2) "Gone Daddy Gone" for which Ritchie will continue to receive a percentage of net receipts as per the following splits:

    a.    Willie Dixon/Hoochie Coochie Music: 25% (included a sample from a Willie Dixon song).

    b.    Gordon Gano: 58-3/4%.

    c.    Brian Ritchie: 16-1/4% (inclusive of his 7.5% "arranging" participation).

Ritchie also has co-writer interests on other songs for which he will be paid (inclusive of the "arranger" percentage) as in the past.

Page 3 of 5

04/23/01 17:03 FAX 2126455038         JACOBSON AND COLPIN PC       Apr 23 2001 17:10   P.04
APR 23 '01 17:04 FR RUBIN BAILIN ET AL   212 826 9307 TO 6455038         P.05/06

04/23/2001 11:48   2173949881           JUMER                          PAGE 04
APR 23 '01 11:59 FR RUBIN BAILIN ET AL   212 826 9307 TO 12173945881-88  P.05/06

Alan Skiena will continue handling the administration and payment of Ritchie's income participation to Ritchie as in the past.

8. **Website:** The website for VF will be terminated. If it is ever reactivated, it will require the prior written approval of both Ritchie and Gano. The domain name should be preserved in the name of Ritchie and Gano jointly.

9. **Group Name:** Gano and Ritchie hereby each reserve any and all rights they or each of them may have to the use and ownership of the name and trademark/service mark "Violent Femmes" (the "Mark"). Without waiving any such rights, both Gano and Ritchie agree to discuss in good faith the following: (i) the registration of the Mark in the U.S. Patent & Trademark offices and (ii) the use of the Mark by either Gano and Ritchie individually or with other performers (i.e., any use which does not include both Gano and Ritchie).

10. **Pension Plan:** As per Howard Comart's recommendation, the group's pension plan be terminated, with each member rolling over their 50% share into their own 401K's or other plans.

**Miscellaneous provisions:**

11. The delay or failure by either party to exercise or enforce any of its rights under this Agreement shall not constitute or be deemed a waiver of that party's right thereafter to enforce those rights, nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other right.

12. This writing sets forth the entire understanding between the parties with respect to the subject matter hereof, and no modification, amendment, waiver, termination or discharge of this agreement shall be binding upon any party unless confirmed by a written instrument signed by an authorized officer or representative of any such party.

13. The headings of this Agreement, and any commentary contained in any footnotes herein, are solely for convenience of reference and shall be given no effect in the construction or interpretation of this Agreement.

14. If any provision, or portion thereof, of this Agreement is invalid under any applicable statute or rule of law, it is to that extent to be deemed omitted.

15. If any provision, or portion thereof, of this Agreement conflicts with any other provision, or portion thereof, the provision that appears to comply with the spirit of this agreement shall govern.

Page 4 of 5

Apr 23 2001  17:10    P.05
04/23/01  17:03 FAX 2126455038    JACOBSON AND COLFIN PC    007
APR 23 '01 17:04 FR RUBIN BAILIN ET AL   212 626 9307 TO 6455038    P.06/06

04/23/2001  11:40   2173645001    JUMER    PAGE 05
APR 23 '01 12:00 FR RUBIN BAILIN ET AL   212 626 9307 TO 12173049001-025  P.06/06

16. The parties agree to and do hereby indemnify, save and hold each other harmless of and from any and all loss and damage (excluding reasonable attorneys' fees) arising out of any breach by either of them of the terms and conditions of this Agreement or connected with any claim by any one or more third parties which is inconsistent with any of the warranties or representations made by either of them herein, and agree to reimburse the other on demand for any payment made by it at any time after the date hereof with respect to any liability or claim to which the foregoing indemnity applies which has been reduced to a final, non-appealable judgement or settlement with the consent of the indemnifying party or parties.

17. Subject to the above, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns of substantially all the assets, rights and/or obligations of the party.

18. Nothing in this agreement shall make Ritchie an agent of Gano or VF2. Nothing in this agreement shall make Gano an agent of Ritchie or VF2.

19. This agreement is intended by the parties hereto as a final expression of their agreement and understanding with respect to the subject matter hereof and as a complete and exclusive statement of the terms thereof and supersedes any and all prior and contemporaneous agreements and understandings relating thereto whether written or oral. This agreement may not be changed or modified, or any covenant or provision hereof waived, except by an agreement in writing signed by the parties hereto.

IN WITNESS WHEREOF, the parties hereto have executed this 20th day of April, 2001.

ACCEPTED & AGREED TO:

_____
Brian Ritchie

_____
Gordon Gano

Page 5 of 5

** TOTAL PAGE.06 **

# EXHIBIT E

# EPSTEIN, LEVINSOHN, BODINE, HURWITZ & WEINSTEIN, LLP

ATTORNEYS AT LAW
1790 BROADWAY
NEW YORK, NEW YORK 10019-1412
TELEPHONE: 212 262 1000
FACSIMILE: 212 262 5022

ROBERT J. EPSTEIN
MARK A. LEVINSOHN
SUSAN H. BODINE
ANDREW P. HURWITZ
JOEL H. WEINSTEIN
JAMES D. ARNAY
ALISON S. COHEN
ANDREA F. CANNISTRACI

BENJAMIN C. FELDMAN
ALAN N. SKIENA
MICHAEL P. OVERN
NATALIE D. STANFORD
MATTHEW L. FINKELSTEIN
JOSHUA M. SANDLER
ALAN D. SACKS
HAMISH R. BERRY

DIRECT E MAIL:
ASKIENA@ENTLAWFIRM.COM

March 6, 2007

**Via E-mail and Regular Mail**

Daniel Scardino, Esq.
Jackson Walker L.L.P.
100 Congress Avenue
Suite 1100
Austin, Texas 78701

Re: Brian Ritchie

Dear Mr. Scardino:

I am in receipt of your letter dated February 16, 2007. Based on your comment that your letter represents a "prelitigation demand," I must assume that you believe Mr. Ritchie has legal claims against me. I must also assume that you are anticipating commencing litigation based on those claims. I am responding to your letter only in those contexts.

Simply stated, your letter contains clear misstatements of fact and erroneous conclusions of law. Before this matter goes any further, I should attempt to disabuse you of the notions which might form the basis of your mistaken belief that Mr. Ritchie has cognizable claims against me.

I have never been Mr. Ritchie's attorney and do not represent him now.

I do not represent the band known as Violent Femmes. I believe Violent Femmes has had the same counsel for many years and believe that firm is based in Los Angeles. It is also my belief that, at most times, each of the individual members of Violent Femmes has had his own legal counsel.

I do not exert possession or control over funds generated by the activities of Violent Femmes (e. g. record royalties, personal appearance fees, merchandising income, sponsorship income or the like), and am not involved in any way with the distribution of such funds. Insofar as I am aware, all Violent Femmes income streams are administered and handled by one or more accounting firm(s) operating from New York and/or New Jersey.

EXHIBIT "E"

Daniel Scardino, Esq.
March 6, 2007
Page 2

I do not represent any members of Violent Femmes other than Gordon Gano. The only person I represent having anything to do with Violent Femmes is Mr. Gano. I assume the issues at the core of your correspondence with me are Mr. Ritchie's interests in certain musical compositions owned by Mr. Gano's music publishing company, Gorno Music. Insofar as I am aware, Mr. Ritchie's interests in such musical compositions are limited to the following: (i) his co-ownership interest (self-administered by Mr. Ritchie or third parties engaged by him) in a small number of compositions to which Mr. Ritchie contributed as a co-writer and which were recorded by Violent Femmes; (ii) Mr. Ritchie's passive writing interest in a lesser-known composition owned by Gorno Music titled "Vancouver"; and (iii) Mr. Ritchie's passive income interest in certain income generated by compositions owned by Mr. Gano, which interest was confirmed in a 2001 agreement between Mr. Gano and Mr. Ritchie. [I should point out two matters of note in relation to that agreement. Firstly, I represented neither Mr. Gano nor Mr. Ritchie in the negotiation of that agreement. Mr. Gano was represented by an attorney named Robert Meloni. Mr. Ritchie was, insofar as I am aware, represented by an attorney named Jeffrey Jacobson. Secondly, though I have come to learn that Paragraph 7 of that 2001 agreement apparently avers that I perform publishing administration services for Mr. Gano and Mr. Ritchie, that statement was and is an error. I do not now have, nor have I ever had, a contractual relationship of any kind with Mr. Ritchie to perform publishing administration services on his behalf and have never performed such services on his behalf.]

If a fiduciary relationship exists at all between myself and any third parties related to this matter, that relationship exists only between Mr. Gano and me. And even then, that relationship arises only as a function of my legal representation of Mr. Gano and does not arise by virtue of the publishing administration services I provide on his company's behalf. It is well settled that in the absence of special circumstances, no fiduciary relationship exists between a music publisher/administrator and a composer as matter of law. See, e.g., Rodgers v. Roulette Records, Inc., 677 F.Supp. 731, 738 39 (S.D.N.Y. 1988) (finding that a royalty agreement was solely contractual in nature and created no fiduciary relationship between the parties); Mellencamp v. Riva Music Ltd., 698 F.Supp. 1154, 1159 60 (S.D.N.Y. 1988) (finding as a matter of law that the relationship between composer and publisher is governed by contract principles and that no fiduciary relationship exists).

Since I have neither a contractual nor fiduciary relationship with Mr. Ritchie, the information provided above should be sufficient to bring our correspondence and this matter to a close. Since no such relationships exist, the assertion of claims against me by Mr. Ritchie is wholly without merit.

I acknowledge that Mr. Ritchie and Mr. Halbreich have requested information and materials from me in relation to Mr. Ritchie's contractual relationship with Mr. Gano. I have previously communicated directly with Mr. Ritchie concerning Mr. Gano's position regarding those requests. Insofar as I am aware, that position has not changed. Should you wish to see my correspondence with Mr. Ritchie, you may obtain it directly from him.

Daniel Scardino, Esq.
March 6, 2007
Page 3

      I cannot prevent Mr. Ritchie from commencing litigation against me. Be advised, however, that *any* litigation initiated by Mr. Ritchie against me would be predicated on false assumptions and inaccurate information. You have now been provided with accurate information. I assure you that I will vigorously defend any actions initiated by or on behalf of Mr. Ritchie. Any activities on your part to aid Mr. Ritchie in the pursuit of groundless claims against me would be patently and objectively unreasonable and frivolous. Accordingly, you may rest assured that among other remedies available to me, I will pursue sanctions against you and/or any other attorney who files litigation against me in relation to these matters.

      Please be guided accordingly.

      Nothing herein contained shall be deemed a waiver of any of my rights, claims and/or remedies, each of which is hereby expressly reserved without limitation or exception. Furthermore, nothing contained herein shall be deemed to be an exhaustive recitation of all facts pertaining to this matter.

                                          Very truly yours,

                                          Alan N. Skiena