

**JACKSON WALKER L.L.P.**

ATTORNEYS & COUNSELORS

Stacy Allen
(512) 236-2090 (Direct Dial)
(512) 391-2102 (Direct Fax)
stacyallen@jw.com

December 28, 2007

<u>By Facsimile</u>

The Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street, Room 600
New York, New York 10007

      Re:   *Brian Ritchie v. Gordon Gano*; No. 07-CV-7269; In the United States District Court for the Southern District of New York

Dear Judge Marrero:

      Pursuant to Rules II(A) and IV(A) of the Court's Individual Practices, the undersigned hereby respectfully submit this joint status letter on behalf of the parties in anticipation of the January 4, 2008 initial conference (the "Initial Conference") in the above-referenced action.

**I.**     **Brief Description of the Lawsuit**

      **A.**    **Plaintiff's Statement.**  Plaintiff Brian Ritchie is the founder of the popular music group Violent Femmes (the "Band"), and is the author or co-author of a substantial portion of the Band's extensive music catalog (the "Songs"), including its signature song "Blister In The Sun." This lawsuit concerns disputed rights to ownership and control of the Songs,[1] as well as certain trademarks associated with the Band (the "Trademarks").[2]  Specifically, Plaintiff contends that Defendant Gordon Gano (another Band member) has improperly appropriated, administered and accounted for Plaintiff's interests in and royalties derived from the Songs and the Trademarks.

      Defendant's alleged control over the Songs arises from purported agreements between Plaintiff and Defendant in 2001 and 2002, copies of which are attached to the Complaint and Amended Answer respectively.  Plaintiff will prove that these agreements were negotiated under a cloud of impropriety and financial duress exacerbated by Defendant's own misconduct, and are the product of coercion, undue influence and fraudulent inducement, lack adequate consideration, and are thus void and/or unenforceable.  Plaintiff will also show that the parties' long-standing business relationship constitutes a partnership and/or other fiduciary relationship, and that Defendant's acts or omissions were in breach of his obligations to Plaintiff.

---

[1]    The specific musical compositions and sound recordings at issue are listed in Exhibit A of the Complaint ("Compl.").

[2]    At issue are the federally registered trademark VIOLENT FEMMES (of which Plaintiff is the registered owner of record), and the common law trademark BLISTER IN THE SUN.  (Compl. at ¶ 41-48)

EXHIBIT
G

Honorable Victor Marrero
December 28, 2007
Page 2

_____

Significantly, it was Robert Meloni -- Defendant's counsel of record -- who drafted and negotiated both agreements on behalf of Defendant, and Alan Skiena, Defendant's agent and attorney, who was named as the administrator of Plaintiff's royalty interests in and to the Songs. Because of his authorship and negotiation of the very agreements on which Defendant now relies, Mr. Meloni will necessarily be deposed and almost certainly testify at trial concerning substantive facts in dispute.[3]  As such, he and his firm will likely be disqualified from representing Defendant in this case under New York's advocate-witness rule DR 5-102(b), which provides that withdrawal in such circumstances is mandatory and can be ordered *sua sponte* by the Court.

Plaintiff became increasingly concerned about how his interests in the Songs – and, later, the Trademarks – were being administered by Defendant.  Plaintiff's suspicions became a reality in or around 2006 when Defendant began unilaterally exploiting the Songs and Trademarks in a manner that threatened to destroy the marketability and value of those assets, all without consulting or properly accounting to Plaintiff.  Since then, Plaintiff and his representatives have diligently tried to obtain a detailed accounting of Defendant's exploitations, but none has been provided.  Consistent with his systematic practice of restricting access to the books and records of account for the Songs and the Trademarks, Defendant now seeks a stay of discovery to further shield his misappropriation and mismanagement of these assets from the light of day.

Plaintiff filed this action on August 15, 2007.  On October 30, 2007, Defendant filed his Answer and Counterclaims.  Concurrently (and impermissibly), Defendant also served his initial discovery requests (Notice of Deposition of Plaintiff, Defendant's First Set of Interrogatories, and Defendant's First Request for Documents).  Defendant then filed an Amended Answer and Counterclaims on November 12, 2007, which Plaintiff answered said on November 27, 2007.

On November 30, 2007, counsel for Defendant submitted a letter to the Court requesting the Initial Conference.  On December 6, 2007, counsel for the Parties scheduled their Rule 26(f) conference for December 20, 2007, and agreed to postpone (with the Court's permission) the requested Initial Conference to January 4, 2007.  As agreed, the Parties held their Rule 26(f) conference on December 20, 2007.  The next day, and in accordance with Rule 26(d), Plaintiff served his initial written discovery requests on Defendant.  Defendant's counsel has advised Plaintiff's counsel that he will not provide initial disclosures pursuant to Rule 26 or respond to Plaintiff's discovery pending his anticipated motions for dismissal under Rule 12(c), stay of discovery and bifurcation.

**B.    Defendant's Statement.**  This action primarily involves a dispute about three forms of intellectual property created by the efforts of one or both of the parties while they were members of the musical group "Violent Femmes": (1) copyrights in musical compositions

_____

[3]    Defendant's counsel's testimony will be even more critical, since he admits that he represented Defendant in opposing Plaintiff's successful trademark application (Am. Answer at ¶ 165 & 178) and that Defendant himself knows little of the substance of the negotiation of the 2001 and 2002 Agreements.  Because of the impact this issue may have on the orderly conduct of this case, Plaintiff's counsel raised the matter with Defendant's counsel at their December 20, 2007 Rule 26(f) conference and does so again here.

Honorable Victor Marrero
December 28, 2007
Page 3

performed and recorded by the Group; (2) sound recording made by the Group of those songs; and (3) the name and trademark "Violent Femmes" used by the Group since 1981. As for the song copyrights, Defendant Gordon Gano has written all of the musical compositions performed or recorded by the Group during the past 26 years, including those described in Exhibit A to the Complaint, with the exception of ten songs either co-written by Defendant and songwriter(s) other than Plaintiff, co-written by Defendant with Plaintiff and other songwriter(s), or co-written by Defendant and Plaintiff. The sound recordings, which are included on at least eleven full length studio albums recorded by the Group in the 1980s and 1990s, and as to which Plaintiff has claimed a copyright co-ownership interest, are actually mostly owned by third parties, including Slash Records/Warner Records, Left Bank Records, Inc. d.b.a. Beyond Music/Universal Music & Video Distribution Corporation and Elektra Entertainment, pursuant to agreements signed by Plaintiff between 15-20 years ago acknowledging the assignment of such ownership interests to those record companies, or that they were works for hire. As for the trademark, Defendant Gano alleges that he and Plaintiff are equal co-owners of the mark "Violent Femmes," and that since as early as 1981, and continuing to the present, Defendant and Plaintiff have jointly and exclusively used, or jointly authorized others to use, the mark "Violent Femmes" on or in connection with goods and services in International Classes 9, 16, 25 and 41. However, these substantive issues are trumped by procedural defenses which doom each and every claim asserted by Plaintiff.

First, Plaintiff's Complaint must be dismissed pursuant to Fed. R. Civ. P. 19(b), due to his failure to join the three indispensable parties that actually own the copyrights in the sound recordings as to which Plaintiff has claimed a 50% co-ownership interest, i.e., the various non-party record companies who entered into recording artists agreements with Plaintiff and Defendant which either assigned the copyrights in those recordings to those companies, or contained written acknowledgements that they were works for hire.

Second, Plaintiff cannot overcome the insuperable bar posed by a comprehensive mutual release of all claims either Plaintiff or Defendant had against each other that was a material part of a written agreement between Plaintiff and Defendant signed on April 1, 2002 (the "2002 Agreement").[4] By barring all claims that arose or are based on conduct occurring, or rights established, before April 1, 2002, the release acts as a domino defense which bars all derivative claims that are based on those purported rights or conduct. The 2002 Agreement also ratified the relevant sections of an earlier agreement entered into by Plaintiff or Defendant in 2001, which Plaintiff now seeks to rescind, and bars Plaintiff from asserting exclusive ownership and control over the federal (or state) trademark "Violent Femmes." Plaintiff was represented by Jeffrey

---

[4]    The Plaintiff has only challenged the enforceability of the 2001 Agreement (based on "economic coercion"). He has made no such claim with respect to the 2002 Agreement. Also, even assuming arguendo Plaintiff's coercion argument holds water, which Defendant denies, the 2002 Agreement ratified and affirmed the provisions of the 2001 Agreement at issue in this case (i.e., those involving the parties' respective interests in the copyrights in the Violent Femmes songs).

4977609v.4 129806/00001

Honorable Victor Marrero
December 28, 2007
Page 4

_____

Jacobson, a seasoned music business attorney, in the negotiations of both the 2001 and 2002 Agreements.[5]

Third, stripped to its essence, the Complaint's success hinges on (i) whether Plaintiff is a purported owner or co-owner of the musical compositions and sound recordings identified in Exhibit A of the Complaint, (ii) whether Plaintiff has a trademark in the sound recording "Blister In The Sun," (iii) whether Plaintiff has exclusive control over the trademark in the band's name "Violent Femmes," and (iv) whether the 2001 Agreement should be rescinded. All of the remaining claims stand or fall on the outcome of these four issues.

In addition to the bar posed by the 2002 release, a substantial majority of Plaintiff's specious claims are irrevocably barred by the statute of limitations and/or laches. For example, Plaintiff's causes of action relating to items (i) and (iv) are barred by the statute of limitations. All claims relating to item (ii) and (iii) are barred by, *inter alia*, the doctrine of laches, preemption by the failed copyright ownership claim, or otherwise fail to state an actionable claim as a matter of law.

Finally, upon dismissal of the federal claims, this Court should exercise its discretion, deny supplemental jurisdiction and dismiss any state law claims that survive the aforementioned hurdles.

Gano asserts four counterclaims:

First Counterclaim: A claim for declaratory judgments declaring that the 2002 Agreement is a valid, binding and subsisting contract between Defendant and Plaintiff. This contract fixes, among other things, the parties rights in and to the name and trademark the Violent Femmes, and resolves all disputes which existed between the parties prior to its execution on April 1, 2002;

Second Counterclaim: A claim for declaratory judgments declaring that the 2001 Agreement, which Plaintiff seeks to have declared void on the grounds that he was coerced into signing it, is a valid, binding and subsisting contract between Defendant and Plaintiff. This contract fixes, among other things, the parties rights in and to the song copyright recorded by the Violent Femmes, and resolves all disputes which existed between the parties concerning their respective interest in those songs. It alleges contains allegations of Plaintiff's conduct constituting an anticipatory breach of, and refusal to perform obligations under, the 2001 Agreement

_____

[5]     Paragraph 7 of the 2001 Agreement, inter alia, memorialized the parties' prior agreement concerning the "income participation" Ritchie would receive on monies generated from the exploitation of musical compositions written solely by Gano, i.e., "on all Violent Femmes songs [Ritchie] did not write in consideration for his services as an 'arranger.'" With only a few exceptions, for over 20 years, Gano was credited as the *sole songwriter* of the Violent Femmes' songs, including all of the most popular and valuable songs, on every album released by the Violent Femmes, in the records of the U.S. Copyright Office (including registration certificates), in the records of music publishing agents such as ASCAP, and in virtually every other place where songwriter credits are published.

Honorable Victor Marrero
December 28, 2007
Page 5

_____

Third Counterclaim: Gano seeks an order canceling the trademark registration for the group name "Violent Femmes" issued in Plaintiff's name individually and bearing registration no. 2699392, and directing the U.S. Patent and Trademark Office to make appropriate entry in the records of that Office consistent with such declaratory judgment. Gano alleges that he and Plaintiff are equal co-owners of the mark "Violent Femmes," that since as early as 1981, and continuing to the present, Defendant and Plaintiff have jointly and exclusively used, or jointly authorized others to use, the mark "Violent Femmes" on or in connection with goods and services in International Classes 9, 16 , 25 and 41, and that the Registration was procured by Plaintiff through false and fraudulent statements, and in violation of the 2002 Agreement and a Joint Stipulation signed by the parties' counsel and filed with the U.S Trademark Office in 2002.

Fourth Counterclaim: Gano seeks compensatory damages based on Plaintiff's breach of the 2002 Agreement through, *inter alia*, his fraudulent filing and procurement of the federal trademark application and Registration No. 2699392 for the mark "Violent Femmes."

Fifth Counterclaim: Gano seeks compensatory damages based on Plaintiff's breach of the 2002 Agreement based on Plaintiff's bringing this action seeking recovery for any claims arising and/or injuries sustained prior to April 1, 2002, including, without limitation, all claims seeking to void the 2001 Agreement, and all claims seeking a declaration of co-ownership of the copyrights to the sound recordings and musical compositions.

## II.    **Contemplated Motions.**

   **A.    Plaintiff's Statement.** Having waived his right to file a motion to dismiss under Rule 12(b), Defendant seeks permission to move to dismiss pursuant to Rule 12(c).   Defendant "will [also] request a stay of the automatic disclosure required by Rule 26(a)(1)…as well as other discovery" while his proposed Rule 12(c) motion is pending, and has recently disclosed that he will also move for bifurcation of the lawsuit.[6]

   Judgment on the pleadings under Rule 12(c) should only be granted if the movant "is entitled to judgment as a matter of law" (i.e., the moving party must establish that no material issue of fact remains to be resolved). *Burns Int'l Sec. Serv. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1994). The Court must not dismiss the complaint "unless it appears ***beyond doubt*** that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. Like motions for summary judgment,[7] Rule 12(c) motions are strongly disfavored and rarely granted in the absence of adequate opportunity for discovery.[8] This is especially true here,

_____

[6]     Ironically, it was ***Defendant*** who previously propounded early discovery on Plaintiff in violation of Rule 26(d).

[7]     *Register ex rel. Romanus v. City of New York*, 2001 WL 34075097, *1 (S.D.N.Y. Jan. 11, 2001) (quoting Fed. R. Civ. Proc. 12(c)); *Ventre v. Hilton Hotels Corp.*, 2000 WL 1011050, *1 (S.D.N.Y. July 20, 2000) (applying rules and standards of Rule 56 to a Rule 12(c) motion where the court permitted extrinsic evidence and converted the 12(c) motion to a motion for summary judgment).

[8]     "[P]re-discovery summary judgment remains the exception rather than the rule, and will be "granted only in the clearest of cases." *Kleinman v. Vincent*, No. 90 CIV. 5665, 1991 WL 2804 *1 (S.D.N.Y. Jan.8, 1991). *See*

Honorable Victor Marrero
December 28, 2007
Page 6

_____

where the case has just commenced and no initial disclosures or discovery responses have been provided.

Defendant's requested stay of discovery would turn these principles on their head, by depriving Plaintiff of the very discovery necessary to oppose Defendant's premature and unfounded Rule 12(c) motion, thus disarming Plaintiff and placing him in an untenable Catch-22. Defendant's request for leave to file that motion should be denied on that basis alone. Moreover, Plaintiff's Complaint is well-pled and there are numerous material issues of fact that prohibit judgment in favor of Defendant as a matter of law. Any motions for stay of discovery or bifurcation would also run counter to the strong policy favoring full and expeditious disclosure of all facts and evidence potentially relevant to a case, and leave to file such highly unorthodox motions should be denied with full discovery on all issues permitted to proceed apace.

In light of Defendant's counsel's unavoidable participation before and during trial as a material fact witness, Plaintiff's counsel anticipates moving to disqualify both him and his firm pursuant to Local Civil Rule 1.4 (withdrawal or displacement of attorney of record) and Rule II(A) of the Court's Individual Practices, should they continue to refuse to withdraw voluntarily.

**B.    Defendant's Statement.**  Defendant moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(c) and 19(b) for the reasons stated in his pre-motion letter dated pursuant to November 30, 2007. The Rule 12(c) motion will be based solely on the admissions by Plaintiff in his Complaint, the documents attached and/or referred to therein, documents within Plaintiff's possession and other evidence of which this Court may take judicial notice, all of which establish as a matter of law that Plaintiff's claims are barred by the release in the 2002 Agreement, by the statute of limitations, or doctrines of laches and estoppel, or that he has not and cannot state a claim for which relief can be granted.

Defendant will further seek a stay of the automatic disclosure required by Rule 26(a)(1) on the grounds that the Complaint is so clearly deficient as to justify dismissal pursuant to Fed.R.Civ.P. 12(c), and concomitantly, that proceeding with automatic disclosure, as well as other discovery, before resolution of the motion to dismiss, would impose unnecessary expense on our Defendant. Defendant will also make an application to bifurcate all liability and damages issues, for purposes of both discovery and trial.

Defendant will oppose Plaintiff's proposed motion to disqualify Robert S. Meloni or Meloni & McCaffrey P.C as counsel of record for Defendant Plaintiff, and presumably his counsel of record, being were fully aware of Mr. Meloni's participation as Defendant's counsel in the negotiations of the 2001 and 2002 Agreements. However, they did not raise the issue at the

_____

*Radich v. Goode,* 886 F.2d 1391, 1393 (3d Cir.1989) ("The court must give a party opposing summary judgment an adequate opportunity to obtain discovery" ); *Park Ave. Bank, N.A. v. Bankasi,* No. 93 CIV. 1483, 1995 WL 739514 *1 (S.D.N.Y. Dec. 13, 1995) ( "Summary judgment is strongly disfavored prior to the parties having had an adequate opportunity for discovery" ), *aff'd,* 101 F.3d 1393 (2d Cir.1996). The Second Circuit has also "frequently emphasized the critical importance of discovery in the summary judgment context." *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 10 (2d Cir.1983). Therefore, "summary judgment should not be granted while the party opposing judgment timely seeks discovery of potentially favorable information...." *Id.*

Honorable Victor Marrero
December 28, 2007
Page 7

time they requested that Mr. Meloni accept service of the Complaint on behalf of Defendant, or indeed, at any time afterward until the December 20th Rule 26(f) conference. Further, any issues regarding the negotiations of the 2001 and 2002 Agreements are hardly material to any of the issues or claims in this lawsuit. Any testimony Mr. Meloni might provide, if required to do so, would be cumulative, as there are at least five fact witnesses that could speak to the circumstances leading up to the execution of those agreements, including Messrs. Ritchie and Gano, the band's former personal manager Jamie Kitman, their former business manager Howard Comart, and the band's former road manager. Also, there has been no allegation made concerning the meaning or import of either the 2001 or 2002 Agreement, nor any allegation that they are so ambiguous as to the relevant provisions requiring the introduction of parole evidence. Plaintiff's claim that he was economically coerced into signing the 2001 Agreement is frivolous on its face. He was also adequately represented by Jeffrey Jacobson, an experienced music business attorney. Finally, even if Mr. Meloni were to be called as a witness to testify, his firm, through one of its partners, Thomas McCaffrey, should be allowed to continue as counsel of record on behalf of Defendant. See e.g., *Gandler v. Nazarov,* 1994 WL 702004 (S.D.N.Y. Dec. 14, 1994).

## III.    Prospects For Settlement.

**A.    Plaintiff's Statement**. Given Defendant's success thus far in avoiding disclosure of his activities and a full accounting of revenues from exploitation of the Songs and Trademarks, Plaintiff believes that meaningful settlement discussions can only take place after Defendant provides his Rule 26 initial disclosures and responds to Plaintiff's written discovery requests (including the production of  books and records of account, licensing agreements and other documents), and accounting records are obtained through third-party subpoenas to be served forthwith. The Case Management Plan as proposed by Plaintiff contemplates prompt exchange of such basic information, after which settlement discussions and/or mediation can be pursued before the parties are required to undertake costly depositions of fact and expert witnesses. Granting Defendant leave to move for a discovery stay or bifurcation and permitting him to avoid discovery compliance while such motions are pending would derail any hope of an early settlement by depriving Plaintiff of the very information he needs to reach a settlement .

**B.    Defendant's Statement**. Defendant does not believe that a settlement is likely. The issues raised by Plaintiff's Complaint have been the subject of disagreements between the parties that existed for well over a decade prior to April 2002. They were first resolved in the 2001 Agreement, and again dealt with in the 2002 Agreement. Defendant submits that this action is a frivolous attempt by Plaintiff to either have the Court essentially revise agreements that Plaintiff voluntarily negotiated and executed with the able assistance of counsel of his own choosing, or is nothing more than a strategy to coerce a settlement out of Defendant. Finally, Plaintiff has been accounted to on a regular basis for his income participation on the Violent Femmes songs for the past 20 years. He has no contractual audit right to examine Gano's books and records, nor any other legal right as he is not a co-author of any of the songs written by Gano. Plaintiff separately administers his interests the few songs he co-wrote with Gano.

Honorable Victor Marrero
December 28, 2007
Page 8
_____

**IV.     Referral to a Magistrate Judge.**

Neither Plaintiff nor Defendant consent to referral of this matter for all purposes to the designated Magistrate Judge at this time.

**V.     Case Management Plan.**

Alternate Case Management Plans proposed by Plaintiff and Defendant are attached hereto as Exhibits A and B respectively.

Respectfully submitted,


**JACKSON WALKER L.L.P.**                    **MELONI & MCCAFFREY, P.C.**

By: _____                By: _____
Stacy Allen (S.A.-4862)                      Robert S. Meloni (R.M.-8087)
100 Congress Avenue, Suite 1100              13350 Avenue of the Americas – Suite 3100
Austin, Texas 78701                          New York, New York 10019
(512) 236-2000                               (212) 957-5577

*Attorneys for Plaintiff, Brian Ritchie*     *Attorneys for Defendant Gordon Gano*


Enclosures


4977609v.4 129806/00001

Honorable Victor Marrero
December 28, 2007
Page 8
_____

## IV.  Referral to a Magistrate Judge.

Neither Plaintiff nor Defendant consent to referral of this matter for all purposes to the designated Magistrate Judge at this time.

## V.  Case Management Plan.

Alternate Case Management Plans proposed by Plaintiff and Defendant are attached hereto as Exhibits A and B respectively.

Respectfully submitted,

**JACKSON WALKER L.L.P.**

**MELONI & MCCAFFREY, P.C.**

By:_____
Stacy Allen (S.A.-4862)
100 Congress Avenue, Suite 1100
Austin, Texas 78701
(512) 236-2000

*Attorneys for Plaintiff, Brian Ritchie*

By: _____
Robert S. Meloni (R.M.-8087)
13350 Avenue of the Americas – Suite 3100
New York, New York 10019
(212) 957-5577

*Attorneys for Defendant Gordon Gano*

Enclosures

4977609v.4 129806/00001