# AGREEMENT

The following sets forth the terms of the agreement between VF2, Inc. ("VF2"), and Brian Ritchie ("Ritchie") and Gordon Gano ("Gano"), its sole shareholders, in connection with the winding up of VF2, Inc. and its dissolution, and other matters set forth herein:

1. <u>Tour dates</u>:

    (a) Gano will perform at the following 9 confirmed dates only (4/22 - 5/26). They are:

    | Date | City | Venue | Fee |
    |---|---|---|---|
    | 4/22 | Champaign, IL | U. Of IL | $ 14,000 |
    | 4/23 | DeKalb, IL | Otto's | $ 14,000 |
    | 4/24 | Sioux Falls, IA | Washington Pavilion | $ 15,000 |
    | 4/27 | Grand Fork, ND | U. of No. Dak. | $ 25,000 |
    | 4/28 | Duluth, MN | Duluth Ent. Conv. | $ 20,000 |
    | 4/30 | NYC | Irving Plaza | $ 15,000 |
    | 5/11 | Cincinnati, OH | Jammin' On Main | $ 25,000 |
    | 5/19 | Chicago, IL | U. of Chicago | $ 35,000 |
    | 5/26 | Montgomery, AL | Montgomery Jubilee | $ 25,000 |
    | | | Gross: | $188,000 |

    (b) Ritchie and Gano will each be paid $1,000 for each show in which they perform and for which payment is received by VF2 from the promoter of the show. These fees are guaranteed to be paid out of receipts of the tour.

    (c) Notwithstanding the foregoing, as to Providence, RI date on 4/19 at Brown University for $ 20,000, at which Gano did not perform, Ritchie will be paid an additional $1,000 over the per show fee described in paragraph 1(b) above. Gano will not be paid for that date.

    (d) INTENTIONALLY DELETED

    (e) Ritchie may be paid his $1,000 fee after each show (or $2,000 in the case of the Providence date), solely out of the receipts paid by the promoter of the show (immediately if paid in cash or as soon as possible if paid by check or wire transfer).



EXHIBIT H

GANO_02359

(f) Other than the fees paid to either Ritchie or Gordon under subparagraph 1(e), all receipts for the tour dates referred to in subparagraphs (a), (b), (c) and (d) will be collected and handled by road manager, and deposited into VF2's bank account through Howard Comart's offices.

**NO OTHER DATES MAY BE BOOKED OR CONFIRMED**

2. <u>Use of Tour net receipts</u>: 100% of the net receipts of the tour (i.e., after deduction of direct tour expenses and fees to Ritchie and Gano) will be used to pay down the corporate debts, which will be handled exclusively by Gano.

3. <u>Winding Down and Dissolution</u>: Ritchie hereby irrevocably authorizes Gano to dissolve VF2 as soon as possible. In order to do so, the corporation's outstanding debts, set forth below, must be paid. To the extent there is any deficiency after application of the net receipts of the tour and any amounts currently in VF2's bank account, and provided that all of the tour dates set forth in paragraph 1 above are completed and payment in full is received by VF2, Gano will loan the corporation the balance outstanding needed to retire the debts set forth in paragraph 4 below. Gano will be repaid such loan out of 100% of any and all revenues received by VF2 until he is fully reimbursed. Thereafter, and after dissolution of VF2, all such revenues will be distributed equally to Gano and Ritchie.

Both parties agree that, from this point forward, Gano will be solely responsible for the winding up of VF2's affairs. Also, both agree that neither party may cause VF2 to incur any additional debt without the prior written consent of the other. To the extent either does, they will be personally responsible for such debt.

4. <u>Corporate Debts</u>: The current corporate debts as per Howard Comart are:

| | |
|---|---|
| Comart & Koppel: | $38,495 |
| Hornblow Group[1]: | $26,095[2] |
| Myman, Abell: | $ 9,577 |
| Guy Hoffman: | $20,000 |
| DV Productions: | $ 610 |
| Dominick Engel | $ 2,000 |

Page 2 of 5

---

[1] Jamie Kitman has agreed to waive his management commission of 15% for all of the tour dates referred to above, other than the Providence, RI (4/18), Montgomery, AL (5/26) and Chicago, IL (5/19) dates, for which Hornblow Group will be paid a 15% commission of the gross amounts actually paid VF2, provided he is paid in full the balance of his commissions and out of pocket expenses (estimated to be $1,000) by May 15, 2001.

[2] Jamie Kitman instructed a UK licensee to pay Hornblow, not VF2, the net royalty receipts of $20,000 less $8,000 UK taxes withheld. Hornblow retained the net receipts of $12,000 against its debt, $3,000 of which was his commission on the UK gross funds. Thus, the $35,095 previously owed has been reduced by $9,000.

5. <u>Past Claims</u>: To the extent either Ritchie or Gano (either individually or on behalf of VF2) are claiming payment and/or reimbursement for any funds paid or services rendered in the past, or either is claiming that the other incurred expenses for VF2 which were either unnecessary, not approved, etc., whether now known or hereafter discovered, such claims will be forever waived and relinquished by both Ritchie and Gano and VF2. They include, without limitation: (1) Ritchie's Internet services fee in the amount of $20,000; (3) Gano's reimbursement of $9,000 for video; (3) Gano's reimbursement of $2,000 paid to Guy Hoffman; (4) costs of flutes purchased by Ritchie; (5) costs of Gano's tour bus for prior tours.

   To the extent permitted by the Tax Code, both Ritchie and Gano may take a loss for whatever they were claiming, as described above, and which they are now waiving. Gano and Ritchie shall instruct Howard Comart to structure the waivers described above in such a way as to maximize the tax advantages for Gano and Ritchie.

6. <u>Equipment</u>: The equipment in storage in Milwaukee will be sold by VF2, although either Ritchie or Gano may purchase any items at fair market value. If either Gano and Ritchie claim that any individual item(s) of equipment are owned by them personally, then such equipment may be removed by the party claiming such equipment, provided that such party evidences such ownership in a manner which shall be satisfactory to VF2's business manager, Howard Comart, including through production of evidence of payment, such as canceled checks, receipts, etc., and provided further that the costs of such purchase(s) were not reimbursed by VF2 to the claiming party.

7. <u>Publishing Issues</u>: Songwriting credits and publishing as stated on existing recordings (Violent Femmes) are hereby deemed accurate and true. Ritchie and Gano have a exclusive publishing administration arrangement with Alan Skiena, which will continue in full force and effect.

   Ritchie will continue to receive an income participation in the amount of 7.5% of Gano's net receipts (after deduction of any management and publishing administration fees) on all Violent Femmes songs he did not write in consideration for his services as an "arranger," except: (1) "I Can Change", in which Ritchie's participation will be 25% rather than 7.5%, and (2) "Gone Daddy Gone" for which Ritchie will continue to receive a percentage of net receipts as per the following splits:

   a. Willie Dixon/Hoochie Coochie Music: 25% (included a sample from a Willie Dixon song).

   b. Gordon Gano: 58-3/4%.

   c. Brian Ritchie: 16-1/4% (inclusive of his 7.5% "arranging" participation).

   Ritchie also has co-writer interests on other songs, for which he will be paid (inclusive of the "arranger" percentage) as in the past.

GANO_02361

    Alan Skiena will continue handling the administration and payment of Ritchie's income participation to Ritchie as in the past.

8.   <u>Website:</u>   The website for VF will be terminated. If it is ever reactivated, it will require the prior written approval of both Ritchie and Gano. The domain name should be preserved in the name of Ritchie and Gano jointly.

9.   <u>Group Name</u>: Gano and Ritchie hereby each reserve any and all rights they or each of them may have to the use and ownership of the name and trademark/service mark "Violent Femmes" (the "Mark"). Without waiving any such rights, both Gano and Ritchie agree to discuss in good faith the following: (i) the registration of the Mark in the U.S. Patent & Trademark office; and (ii) the use of the Mark by either Gano and Ritchie individually or with other performers (i.e., any use which does not include <u>both</u> Gano and Ritchie).

10.   <u>Pension Plan</u>: As per Howard Comart's recommendation, the group's pension plan be terminated, with each member rolling over their 50% share into their own 401K's or other plans.

**<u>Miscellaneous provisions:</u>**

11.   The delay or failure by either party to exercise or enforce any of its rights under this Agreement shall not constitute or be deemed a waiver of that party's right thereafter to enforce those rights, nor shall any single or partial exercise of any such right preclude any other or further exercise thereof or the exercise of any other right.

12.   This writing sets forth the entire understanding between the parties with respect to the subject matter hereof, and no modification, amendment, waiver, termination or discharge of this agreement shall be binding upon any party unless confirmed by a written instrument signed by an authorized officer or representative of any such party.

13.   The headings of this Agreement, and any commentary contained in any footnotes herein, are solely for convenience of reference and shall be given no effect in the construction or interpretation of this Agreement.

14.   If any provision, or portion thereof, of this Agreement is invalid under any applicable statute or rule of law, it is to that extent to be deemed omitted.

15.   If any provision, or portion thereof, of this Agreement conflicts with any other provision, or portion thereof, the provision that appears to comply with the spirit of this agreement shall govern.

GANO_02362

16. The parties agree to and do hereby indemnify, save and hold each other harmless of and from any and all loss and damage (excluding reasonable attorneys' fees) arising out of any breach by either of them of the terms and conditions of this Agreement or connected with any claim by any one or more third parties which is inconsistent with any of the warranties or representations made by either of them herein, and agree to reimburse the other on demand for any payment made by it at any time after the date hereof with respect to any liability or claim to which the foregoing indemnity applies which has been reduced to a final, non-appealable judgement or settlement with the consent of the indemnifying party or parties.

17. Subject to the above, this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns of substantially all the assets, rights and/or obligations of the party.

18. Nothing in this agreement shall make Ritchie an agent of Gano or VF2. Nothing in this agreement shall make Gano an agent of Ritchie or VF2.

19. This agreement is intended by the parties hereto as a final expression of their agreement and understanding with respect to the subject matter hereof and as a complete and exclusive statement of the terms thereof and supersedes any and all prior and contemporaneous agreements and understandings relating thereto whether written or oral. This agreement may not be changed or modified, or any covenant or provision hereof waived, except by an agreement in writing signed by the parties hereto.

**IN WITNESS WHEREOF**, the parties hereto have executed this 20th day of April, 2001.

ACCEPTED & AGREED TO:

_____
Brian Ritchie

_____
Gordon Gano

GANO_02363