UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN RITCHIE, individually and d/b/a VIOLENT FEMMES,<br><br>                    Plaintiff,<br><br>          -v-<br><br>GORDON GANO, individually and d/b/a GORNO MUSIC a/k/a GORNO MUSIC (ASCAP) a/k/a GORNO MUSIC PUBLISHING,<br><br>                    Defendants. | No. 07-CIV-7269 (VM)<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION TO DISQUALIFY OPPOSING COUNSEL** |

TO THE HONORABLE JAMES C. FRANCIS:

Pursuant to Local Civil Rule 1.4 of the Southern and Eastern Districts of New York, Plaintiff Brian Ritchie, individually and d/b/a Violent Femmes ("Plaintiff"), by and through his undersigned attorneys, moves the Court for an order to disqualify Robert S. Meloni ("Meloni") and his law firms, Meloni & McCaffrey, P.C. and Robert S. Meloni, P.C., from further representation of Defendant Gordon Gano, individually and d/b/a Gorno Music a/k/a Gorno Music (ASCAP) a/k/a Gorno Music Publishing ("Defendant"), in this suit (the "Motion to Disqualify"). After repeated attempts by the undersigned to have opposing counsel withdraw their appearance in this suit on behalf of Defendant and his attorney/agent and publishing administrator, Alan N. Skiena ("Skiena"), Plaintiff has no choice but to request disqualification. In support thereof, Plaintiff respectfully shows the Court as follows:

# TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................................................2

I.      STATEMENT OF MATERIAL FACTS ............................................................3

        A.      The Partnership That Is the Band...........................................................3

        B.      The 2001 and 2002 Agreements; Alan N. Skiena and Gorno Music......................4

        C.      Opposing Counsel....................................................................................5

        D.      Procedural History Regarding the Disqualification of Opposing Counsel.............6

II.     ARGUMENTS AND AUTHORITIES..............................................................7

        A.      Disqualification of Robert S. Meloni......................................................9

                1.      Successive Conflict of Interest:  The interests of Defendant,
                        Meloni's current client, are adverse to those of the Band, Meloni's
                        former client........................................................................................9

                2.      Concurrent Conflict of Interest:  Meloni represents two or more
                        clients in this suit with adverse interests..................................................18

                3.      Witness-Advocate Rule:  Meloni is a material witness whose
                        testimony will likely prejudice Defendant and/or Skiena, his
                        clients....................................................................................................20

        B.      Vicarious Disqualification of Meloni & McCaffrey, P.C. and Robert S.
                Meloni, P.C.   ........................................................................................24

                1.      Conflicts of Interest:  Meloni's successive and concurrent conflicts
                        of interest are imputed to Meloni's Law Firms. .......................................24

                2.      Witness-Advocate Rule:  The vicarious disqualification of
                        Meloni's Law Firms is necessitated by the witness-advocate rule...........26

        C.      Robert S. Meloni is Not in Good Standing with the Bars of the State of
                New York or the Southern District of New York ....................................27

III.    CONCLUSION...............................................................................................28

## I.    STATEMENT OF MATERIAL FACTS

Plaintiff submits the following statement of material facts to the Court.  The exhibits referenced herein are attached hereto and are true and correct copies thereof.

### A.    The Partnership That Is the Band

1.    It is undisputed that Plaintiff Brian Ritchie, individually ("Ritchie"), and Defendant, are long-time members of the popular music group Violent Femmes (the "Band"). (Pl.'s Comp. ¶ 1 & 14-15; *see* Def.'s Am. Answer & Countercl. ¶ 120.)  Ritchie brought this suit on behalf of himself and the Band.  (*see* Pl.'s Compl. at Preamble.)

2.    It is also undisputable that the Band is a partnership-in-fact pursuant to N.Y. P'ship Law § 10 (a partnership is "an association of two or more persons to carry on as co-owners of a business for profit …"), with Ritchie and Defendant being the sole partners thereof. (Def.'s Am. Answer & Countercl. ¶ 50 & 120 ("Defendant … avers that business activities of Plaintiff and Defendant were carried out for the purpose of making money"); Exs. A, B, C & D.)

3.    During the Band's nearly thirty-year career, Ritchie, Defendant Gordon Gano, individually ("Gano"), and, at times, other members of the Band – including the Band's on-and-off-again drummer, Victor DeLorenzo ("DeLorenzo") – have formed, owned, controlled and (when appropriate) dissolved various limited liability entities to help organize and manage the Band's various sources of income.  (Pl.'s Compl. ¶ 18; Def.'s Am. Answer & Countercl. ¶ 18 ("Defendant … avers that, at various times since 1981, Plaintiff and Defendant were shareholders of the corporations Violent Femmes, Inc., Violent Femmes Touring, Inc., Add It Up Productions, Inc. and VF2, Inc.").)  Such limited liability entities were effectively subsidiaries of the Band.  (*See* Ex. A.)

4.    Several of the aforementioned limited liability entities include (a) Violent Femmes, Inc., an existing Wisconsin corporation formed on February 21, 1995, and owned by

Ritchie, Gano and DeLorenzo, (b) Violent Femmes Touring, Inc., an existing New York corporation formed on April 10, 2002, and owned by Ritchie and Gano, and (c) VF2, Inc., a Wisconsin corporation formed on August 24, 1993, owned by Ritchie and Gano, and dissolved on October 4, 2004 pursuant to a null and void agreement between Ritchie and Gano dated April 20, 2001 (hereinafter referred to as the "2001 Agreement").  (Exs. A & E; Pl.'s Compl. ¶ 18; *see* Def.'s Am. Answer & Countercl. ¶ 18 ("Defendant further avers that on or about April 20, 2001, Plaintiff entered into an agreement …").)

### B.    The 2001 and 2002 Agreements; Alan N. Skiena and Gorno Music

5.    The 2001 Agreement (including Paragraph 7 thereof) was drafted by Meloni, Defendant's trial counsel of record.  (Ex. F.)  During the negotiation and execution thereof, Ritchie was represented by Jeffrey Jacobson, an attorney with Jacobson & Colfin, P.C., and Gano was represented by Meloni.  (Ex. G at 6 ("Plaintiff, and presumably his counsel of record, [sic] were fully aware of Mr. Meloni's participation as Defendant's counsel in the negotiations of the 2001 and 2002 Agreements."); *but see* Ex. A.)

6.    The 2001 Agreement is in essence the memorialization and modification of certain terms governing the partnership that is the Band.  Paragraph 7 of the 2001 Agreement ("Paragraph 7") sought to divide the parties' interests in the Band's music catalog.  (Ex. H at ¶ 7; Pl.'s Compl. at ¶ 23.)

7.    Paragraph 7 goes to the heart of several claims asserted by Plaintiff, including a declaration that the 2001 Agreement is null, void and/or unenforceable as a matter of coercion, mistake of fact, fraud in the inducement, unconscionability, and breach of fiduciary duty.  (*See, e.g.,* Pl.'s Compl. at ¶ 53-66.)  For instance, the parties dispute whether Paragraph 7 names Alan N. Skiena, an attorney (New York Registration No. 1832492), as the person responsible "handling the administration and payment of Ritchie's income participation" in and to the

copyright and publishing royalties of the Band's music catalog.  (Exs. I & H at ¶ 7; Pl.'s Compl. at ¶ 59; *see* Def.'s Am. Answer & Countercl. ¶ 59.)

8.    As background, Defendant avers that Skiena is the publishing administrator and attorney/agent for Defendant.  (*E.g.,* Ex. J; Def.'s Initial Discl. ¶ I(3).)  Defendant Gordon Gano d/b/a Gorno Music, a/k/a Gorno Music (ASCAP) a/k/a Gorno Music Publishing ("Gorno Music"), is a sole proprietorship wholly owned by Gano and operated by Skiena, and is the business entity through which the Band's music catalog is administered pursuant to Paragraph 7. (*E.g.,* Exs. J & K.)

9.    Defendant contends that Paragraph 7 was "ratified and affirmed" by another alleged partnership agreement dated April 1, 2002, the parties to which purportedly included VF2, Inc., Violent Femmes, Inc., Ritchie and Gano (the "2002 Agreement").  (*See* Def.'s Am. Answer & Countercl. ¶ 24, 166, 172 & Ex. A.)  Defendant also contends that the 2002 Agreement, in part, settled a dispute between the parties concerning ownership of the registered trademark VIOLENT FEMMES, of which Defendant alleges the parties "are equal co-owners." (Def.'s Am. Answer & Countercl. ¶ 183 & 200.)  As with the 2001 Agreement, Meloni drafted the 2002 Agreement and purportedly represented Defendant during the negotiation thereof.  (Ex. G at 6; *see* Def.'s Am. Answer & Countercl. ¶ 165; *but see* Ex. A.)

### C.    Opposing Counsel

10.    Meloni is an attorney (New York Registration No. 1708080) whose registration status with the State of New York is known to be "[d]elinquent."  (Ex. L.)  Meloni has appeared in this suit under the guise of two law firms:  Meloni & McCaffrey, P.C. and Robert S. Meloni, P.C. (collectively, "Meloni's Law Firms").  (Exs.  M, N, O, P, Q (Meloni's Law Firms share the same website, robertmeloni.com) & R (robertmeloni.com is registered to Robert S. Meloni, P.C.) Upon information and belief, Meloni's partner in Meloni & McCaffrey, P.C. is attorney Thomas

P. McCaffrey (New York Registration No. 1975598) ("McCaffrey").  (Exs.  M & S.)

11.     As the suit progressed, Meloni's Law Firms appeared as counsel for Meloni and Skiena in response to third-party subpoenas propounded upon Meloni and Skiena.  (*E.g.*, Exs. T & U.)  Upon information and belief, neither Meloni nor Meloni's Law Firms has a written informed consent waiver signed by Defendant, Meloni or Skiena.  Plaintiff has requested copies of such waivers from Defendant, Meloni or Skiena, and has yet to receive such documents.  (*See, e.g.,* Ex. T at ¶ 22-24.)  Upon information and belief, neither Meloni nor Meloni's Law Firms have a written engagement agreement with Defendant or Skiena.  (*See id.*)

12.     Prior to this suit, and in addition to his critical involvement in the drafting, negotiation and execution of the 2001 and 2002 Agreements, Meloni has been heavily involved in the Band's affairs.  For example, Meloni claims that Gano has little or no knowledge or documents regarding the transactions underlying this suit, and that all such knowledge and documents are in the possession, custody or control of Meloni and Skiena.  (Ex. V.)

13.     In addition, in 2003, Meloni represented the Band as the creditor of the Band's record company.  (Ex. W ("I represent Gorno Music, VF2, Inc. and <u>the Violent Femmes</u> …") (emphasis added).)  The online "Attorney Profile" of Meloni's Law Firm even states that Meloni is an attorney for the Band.  (Ex. Q ("… Mr. Meloni has handled matters for such clients as … Violent Femmes …").)

14.     Finally, Ritchie has consistently communicated with Meloni about the Band's business endeavors.  (Exs. A & X.)  Meloni, indirectly through Skiena, has even charged Ritchie and/or the Band for legal services in connection with the Band's business activities.  (*See* Ex. Y.)

### D.     Procedural History Regarding the Disqualification of Opposing Counsel

15.     The undersigned has been suspicious about the ability of opposing counsel to serve as trial counsel for Defendant since their initial appearance in this suit.  The issue of

disqualification was first raised during the parties' FED. R. CIV. P. 26(f) teleconference on December 20, 2007. (Ex. Z.) Since then, opposing counsel has consistently refused to seriously assess the issue of withdrawing from their representation of Defendant in this suit. (Ex. AA.)

16.     The undersigned believes it now has an obligation as an officer of the Court to raise the issue of disqualification, such issue having been heightened by the identification of certain documents identified in (or omitted from) Defendant's voluminous production of documents in April, 2008, and attached hereto as Exhibits B-D, F, K, T-V, and W-Y.

## II.     ARGUMENTS AND AUTHORITIES

17.     "A district court has the authority and responsibility to supervise attorneys admitted to practice before it, and to uphold the applicable ethical precepts of the district in which it sits." *Shabbir v. Pakistan Int'l Airlines*, 443 F. Supp. 2d 299, 303 (E.D.N.Y. 2005) (citing *In re Snyder*, 472 U.S. 634, 645 n.6 (1985)); *see* LOCAL RULES OF THE SOUTHERN & EASTERN DISTRICTS OF NEW YORK, Rule 1.4 ("[a]n attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the court …"). Therefore, the disqualification of an attorney and the vicarious disqualification of the attorney's law firm are in the Court's discretion. *Shabbir*, 443 F. Supp. 2d at 303-04 ("[i]t is well established that the Court's authority to disqualify an attorney stems from its general supervisory power over the attorneys appearing before it, … and the determination of disqualification is discretionary in nature"); *Gandler v. Nazarov*, No. 94 Civ. 2272 (CSH), 1994 WL 702004, at *2 (S.D.N.Y. Dec. 14, 1994).

18.     "The standard of professional conduct in federal courts is a matter of federal law." *Shabbir*, 443 F. Supp. 2d at 305 (citing *In re Snyder*, 472 U.S. at 645 n.6). Courts in the Southern District of New York often look to the standards set forth in the American Bar Association's Model Code of Professional Responsibility (the "Model Code") and the New York

Code of Professional Responsibility (the "NY Code") when addressing a motion to disqualify opposing counsel. LOCAL RULES OF THE SOUTHERN & EASTERN DISTRICTS OF NEW YORK, Rule 1.5(b)(5) ("[d]iscipline or other relief … may be imposed … if … any attorney is found to have engaged in conduct violative of the New York State Lawyer's Code of Professional Responsibility …"); *Gandler*, 1994 WL 702004, at *2 ("the ethical guidelines contained in the New York Code of Professional Responsibility … are highly instructive to the Court …"); *see Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 227 n.2 (2d Cir. 1977) (form Model Code is recognized within circuit as providing appropriate guidelines for proper professional behavior); *see also Shabbir*, 443 F. Supp. 2d at 305-06. But in the absence of formally adopted standards of professional conduct, the district court is free to regulate the conduct of attorneys appearing before it. *Paul E. Iacono Structural Eng'r, Inc. v. Humphrey*, 722 F.2d 435, 439 (9th Cir. 1983); *see In re BellSouth Corp.*, 334 F.3d 941, 959 (11th Cir. 2003) (different standards applied for disqualification based on alleged violation of ethical rule and conduct disruptive of proceedings or threatening administration of laws); *see also In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984) (simply because the court has never adopted standards does not mean that attorneys appearing before it do not have ethical obligations or duties). "The guiding principle in considering motions to disqualify counsel is safeguarding the integrity of the court proceedings." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983); *Shabbir*, 443 F. Supp. 2d at 305 (quoting *United States Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1464 (S.D.N.Y. 1985)).

19.    Common grounds for disqualifying attorneys in civil litigation include (1) successive conflicts of interest, (2) concurrent conflicts of interest, and (3) the witness-advocate rule. *See, e.g., Shabbir*, 443 F. Supp. 2d at 306 & 309-10. The burden is on the movant to

demonstrate the need for disqualification.  *Id.* at 305 & 307.

### A.    Disqualification of Robert S. Meloni

20.    The Second Circuit requires "a high standard of proof" on the part of the movant before disqualification may be granted because the Court must balance "an individual's right to his own freely chosen counsel and the need to maintain the highest ethical standards of professional responsibility."  *Evans*, 715 F.2d at 791; *Shabbir*, 443 F. Supp. 2d at 304 & 305 (motions to disqualify must be "view[ed] … with 'fairly strict scrutiny' "); *Forrest v. Par Pharm., Inc.*, 46 F. Supp. 2d 244, 247 (S.D.N.Y. 1999); *Kubin v. Miller*, 801 F. Supp. 1101, 1113 (S.D.N.Y. 1992).  However, "any doubt is to be resolved in favor of disqualification."  *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975); *Shabbir*, 443 F. Supp. 2d at 304. Accordingly, disqualification is appropriate "where there has been a clear violation of the Code of Professional Responsibility leading to a 'significant risk of trial taint.' "[1]  *Shabbir*, 443 F. Supp. 2d at 305 (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)).

### 1.    Successive Conflict of Interest:  The interests of Defendant, Meloni's current client, are adverse to those of the Band, Meloni's former client.

21.    A "successive" conflict of interest refers to the situation whereby "an attorney seeks to represent a client whose interests are adverse to those of a former client …".  *See Shabbir*, 443 F. Supp. 2d at 310.  In such a situation, the Second Circuit "looks to Canon 4 of the [sic] [ABA] Code of Professional Responsibility … and to New York Disciplinary Rules 4-101 and 5-108[,]" which seek to avoid an attorney from revealing or using a confidence of his client to the disadvantage of the client.  *Evans*, 715 F.2d at 791; *Shabbir*, 443 F. Supp. 2d at 310; *see Kubin*, 801 F. Supp. at 1114; *see* MODEL CODE OF PROF.'L RESPONSIBILITY Canon 4 (1983) ("a

---

[1] For example, "[s]uch a risk exists when the attorney is in a position to use privileged information acquired in the representation of a client against that client in another matter, … or when there is a significant risk that the conflict will affect the attorney's ability to represent his or her client with vigor."  *Shabbir*, 443 F. Supp. 2d at 305 (internal quotations omitted).

lawyer should preserve the confidences and secrets of a client"); *see* N.Y. CODE OF PROF.'L RESPONSIBILITY D.R. 4-101 ("preservation of confidences and secrets of a client") & 5-108 ("conflict of interest – former client").   "To ensure faithful adherence to this principle …" the Court should disqualify opposing counsel when:

> (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Evans*, 715 F.2d at 791; *MedicalDiagnosticImaging, PLLC v. CareCore Nat'l, LLC*, 542 F. Supp. 2d 296, 311 (S.D.N.Y. 2008); *Shabbir*, 443 F. Supp. 2d at 310; *Human Elec., Inc. v. Emerson Radio Corp.*, 375 F. Supp. 2d 102, 106 (N.D.N.Y. 2004); *Papyrus Tech. Corp. v. New York Stock Exchange, Inc.*, 325 F. Supp. 2d 270, 276-77 (S.D.N.Y. 2004).

### a.  Element No. 1:  The moving party is a former client of the adverse party's counsel.

22.    Under New York law, "the relationship of an attorney and client is contractual … ."  *Kubin*, 801 F. Supp. at 1115; *Heine v. Colton, Hartnick, Yamin & Sheresky*, 786 F. Supp. 360, 365-66 (S.D.N.Y. 1992); *Hashemi v. Shack*, 609 F. Supp. 391, 393 (S.D.N.Y. 1984).  However, "formality is not an essential element in the employment of an attorney, and since 'the initial arrangements for representation are often informal …, it is necessary to look at the words and actions of the parties.' "  *Kubin*, 801 F. Supp. at 1115; *Heine*, 786 F. Supp. at 366; *Hashemi*, 609 F. Supp. at 393 (quoting *People v. Ellis*, 397 N.Y.S.2d 541, 545 (N.Y. Sup. Ct. 1977)).

23.    For the following reasons, the Court must infer the existence of an attorney-client relationship between Meloni and the Band, a partnership-in-fact.

### i.  An express attorney-client relationship exists between the Band and Meloni.

24.    The existence of an <u>express</u> attorney-client relationship is inferred upon the

balancing of six factors to be considered by the Court:  (a) the existence of a fee arrangement; (b) the existence of a written contract or retainer agreement; (c) the so-called attorney's rendering of legal advice or services; (d) the so-called attorney's appearance in a judicial or quasi-judicial proceeding (e.g., a deposition); (e) the so-called attorney's exclusion of the so-called client from some aspect of a matter to protect the interests of another client; and (f) the so-called client's subjective belief that the so-called attorney was his lawyer or would keep certain information confidential.  *CareCore*, 542 F. Supp. 2d at 307; *see Kubin*, 801 F. Supp. at 1115; *see also Heine*, 786 F. Supp. at 366-67.  No court has held that any certain number of these factors must be met to infer the existence of an attorney-client relationship.  *See Id.*

25.    **Existence of a Fee Arrangement:**  The Band does not have a formal fee arrangement with Meloni; however, by and through its individual partners, the Band does pay for Meloni's legal services out of partnership proceeds.   Specifically, a portion of the Band's revenue is derived from Gorno Music's administration of the Band's music catalog, from which the parties share in the profits and losses by way of "income participation[s]."[2]  (*See* Ex. H at ¶ 7).  According to the accounting statements for Gorno Music, as prepared by Skiena, Meloni's attorney fees for legal services rendered in connection with the Band's affairs is an expense that is deducted from the Band's revenue (or "Estimate of Meloni Charges").   (*See* Ex. Y.) Therefore, since the Band pays for Meloni's attorney's fees out of partnership proceeds, there exists a fee arrangement between the Band and Meloni.  Accordingly, the Court should hold that this factor weighs in favor of an inference that Meloni is an attorney for the Band.

26.    **Existence of a Written Contract or Retainer Arrangement:**  There is no written retainer agreement between Meloni and the Band – in fact, no retainer agreement has

---

[2] *See, e.g.,* N.Y. P'SHIP LAW § 11(4) ("[t]he receipt by a person of a share of the profits of a business is *prima facie* evidence that he is a partner in the business …").

been produced between Meloni and Gano or Meloni and Skiena.  Accordingly, since Meloni does not have written contracts or retainer agreements with his clients, the Court should either disregard this factor or hold that it weighs in favor of an inference that Meloni is an attorney for the Band.

27.    **The Rendering of Legal Advice or Services:**  Meloni has rendered legal advice or services to the Band.  For instance, in 2003, Meloni appeared as the Band's attorney in a dispute between the Band – as well as VF2, Inc., which is essentially a subsidiary of the Band, and Gorno Music – and the Band's record company.  (Ex. W.)  Meloni has also directly communicated with Ritchie about the Band's affairs without alerting Ritchie to the fact that he does not represent the separate interests of the Band.  (Ex. X; *see* N.Y. CODE OF PROF.'L RESPONSIBILITY D.R. 7-104(A)(2).)

28.    Moreover, Meloni continuously holds himself out to the general public as an attorney for the Band through, e.g., his profile on his law firms' "Attorney Profile" webpage. (Ex. Q.)  Accordingly, the Court should hold that this factor weighs in favor of an inference that Meloni is an attorney for the Band because Meloni has rendered legal advice or services to the Band.

29.    **Appearance in a Judicial or Quasi-Judicial Proceeding:**  As mentioned above, in 2003, Meloni appeared as the Band's attorney in a dispute between the Band and its record company.  (Ex. W.)  Accordingly, the Court should hold that this factor weighs in favor of an inference that Meloni is an attorney for the Band because Meloni has appeared on behalf of the Band in a judicial or quasi-judicial proceeding.

30.    **Exclusion of the client from a matter to protect the interests of another client.**  Meloni apparently now maintains that he has never represented the interests of the Band despite

the facts to the contrary.  This position is made to protect the interests of Gano to the exclusion of the interests of the Band.  Accordingly, the Court should hold that this factor weighs in favor of an inference that Meloni is an attorney for the Band.

31.    **Subjective Belief of the Client:**  Ritchie, a partner of the Band, believes that Meloni is an attorney for and/or represents the interests of the Band, as well as the interests of Defendant.  (Ex. A.)  Accordingly, the Court should hold that this factor weighs in favor of an inference that Meloni is an attorney for the Band.

32.    Since at least five out of six factors weigh in favor of inferring that an attorney-client relationship exists between Meloni and the Band (and the remaining one is irrelevant because its is not Meloni's practice to have written agreements with his clients), the Court should find that an express attorney-client relationship existed between Meloni and the partnership between Ritchie and Gano that is the Band.

ii. **Even absent the finding of an express attorney-client relationship between the Band and Meloni, because Meloni had access to the confidences or secrets of the Band, an attorney-client relationship is assumed.**

33.    "[F]or the purposes of D.R. 5-108(A) [of the NY Code], a lawyer need not have an <u>express</u> attorney-client relationship with the former client" for a successive conflict of interest to exist.[3]  *Human Elec.*, 375 F. Supp. 2d at 106 (emphasis in original) (citing *Papyrus*, 325 F. Supp. 2d at 277).  "Rather, a lawyer has 'represented a client' if the lawyer has obtained or had <u>access</u> to confidences or secrets of the former client."  *Id.* (emphasis added) (citing *Papyrus*, 325 F. Supp. 2d at 277).  "[E]ven if … a formal attorney-client relationship [does] not exist … an

---

[3] "[E]ven if … a formal attorney-client relationship [does] not exist … an attorney many nonetheless owe a fiduciary duty to persons … with whom he deals."  *Heine*, 786 F. Supp. at 368 (internal quotations omitted); *Croce v. Kurnit*, 565 F. Supp. 884, 890 (S.D.N.Y. 1982), *aff'd*, 737 F.2d 229 (2d Cir. 1984) (fiduciary obligation "arises when a lawyer deals with persons who, although not strictly his clients, he has or should have reason to believe rely on him"); *see Jacobson v. Sassower*, 474 N.Y.S.2d 167, 168 (N.Y. App. Div. 1983) ("[w]hile the employment of an attorney by a client is largely governed by the contractual provisions of the retainer, elements of trust and confidence endemic in the attorney/client relationship add a dimension to the retainer beyond the terms of the retainer agreement").

attorney many nonetheless owe a fiduciary duty to persons … with whom he deals." *Heine*, 786 F. Supp. at 368 (internal quotations omitted); *Croce v. Kurnit*, 565 F. Supp. 884, 890 (S.D.N.Y. 1982), *aff'd*, 737 F.2d 229 (2d Cir. 1984) (fiduciary obligation "arises when a lawyer deals with persons who, although not strictly his clients, he has or should have reason to believe rely on him"); *see Jacobson v. Sassower*, 474 N.Y.S.2d 167, 168 (N.Y. App. Div. 1983) ("[w]hile the employment of an attorney by a client is largely governed by the contractual provisions of the retainer, elements of trust and confidence endemic in the attorney/client relationship add a dimension to the retainer beyond the terms of the retainer agreement").

34.      Meloni has rendered legal advice or services to the Band by directly representing and/or communicating with Gano or Ritchie, in their individual and/or partnership capacities, about the Band's affairs.  (Exs. B, C & X.)  In this regard, there is an irrebuttable presumption that Meloni has obtained or had access to the confidences or secrets of the Band because, under the principles of partnership law, the knowledge and actions one partner is imputed to the all partners and, hence, the partnership.  *Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 413 (S.D.N.Y. 2004) ("[w]ell established concepts of partnership doctrine impute the knowledge and actions of one partner to all others" (internal quotations omitted)).  Accordingly, since Meloni has obtained or had access to the confidences or secrets of the Band, he has represented the Band in such a manner as to be considered the Band's attorney for successive conflict of interest purposes.  *Human Elec.*, 375 F. Supp. 2d at 106.

   **b.  Element No. 2:  There is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit.**

35.      The subject matter of an attorney's prior representation and the case-at-bar are "substantially related" when it is "patently clear … [that] the issues involved are 'identical' or 'essentially the same.' "  *CareCore*, 542 F. Supp. 2d at 307 (citing *Gov't of India v. Cook Indus.,*

*Inc.*, 569 F.2d 737, 739-40 (2d Cir. 1978)).    "If witnesses, testimony, and other evidence germane to one action are likely to be similar to the other, the issues may be substantially similar." *Id.*

36.    As illustrated above, it is "patently clear" that the subject matter of Meloni's prior representation of the Band and the subject matter of this suit are "substantially related" because both involve the organization (or reorganization), development and management of the Band and its affairs (e.g., Meloni's representation of the Band in 2003 as the creditor of the Band's record company).  (Ex. W.)  Accordingly, there is a substantial relationship between the subject matter of Meloni's prior representation of the Band and the issues in this suit.

   **c.  Element No. 3:  The attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.**

37.    The third element of the successive conflict of interest test is met because where the Court finds an express attorney-client relationship the transmission of confidential information is presumed and because Ritchie, on behalf of the Band, in fact transmitted confidential information to Meloni.

   **i.  Where an express attorney-client relationship is found, there is an irrebuttable presumption that Meloni had access to the secrets and confidences of the Band.**

38.    The Court is not required to determine whether confidential information has in fact been transmitted by a client to an attorney because "there is an irrebuttable presumption that an attorney who has represented a client will have obtained secrets and confidences of that client."  *Human Elec.*, 375 F. Supp. 2d at 106; *Papyrus*, 325 F. Supp. 2d at 277 ("[s]uch an inquiry would be improper … [because it puts] the movant to the choice of either revealing its confidences in order to prevail on the motion or else refraining from moving to disqualify") (quoting *United States Football League*, 605 F. Supp. at 1461)).

39.     Meloni has rendered legal advice or services to the Band by directly representing and/or communicating with Ritchie, in his partnership capacity, about the Band's affairs.  (Exs. B, C & X.)  Because there exists or has existed an attorney-client relationship between Meloni and the Band, there is an irrebuttable presumption that Meloni has obtained or had access to the secrets and confidences of the Band.

### ii.   Meloni had access, or was likely to have access, to the confidences or secrets of the Band.

40.     The documents produced by Meloni prove that he communicated regularly with Ritchie regarding sensitive business matters related to the Band's affairs.  (Exs. B, C & X.)  That he had access, or was likely to have access, to confidences or secrets of the Band cannot be disputed.

### d.   Special consideration is given with regard to the existence of an attorney-client relationship when a partnership is at issue.

41.     In light of the attorney's inherent duty of loyalty to his clients, courts give special consideration to the existence of an attorney-client relationship when the so-called client is a partnership.  Under the principles of partnership law, every partner is an agent of the partnership and the knowledge and actions one partner are imputed to the all partners and, hence, the partnership.  *Denney v. Jenkens & Gilchrist*, 362 F. Supp. 2d 407, 413 (S.D.N.Y. 2004) ("[w]ell established concepts of partnership doctrine impute the knowledge and actions of one partner to all others" (internal quotations omitted)).  From this, the courts have developed the following presumption for successive conflict of interest purposes:   An attorney who represents a partnership is prohibited from representing one of the partners against the other in matters that affect the partnership (such as the reorganization or dissolution of the partnership) because such a representation risks the attorney is using his prior relationship with the partnership (and, since knowledge is imputed among partners and the partnership, the individual partners) to an

individual partners' disadvantage. *Prisco v. Westgate Entm't, Inc.*, 799 F. Supp. 266, 270 (D. Conn. 1992); *see Denney*, 362 F. Supp. 2d at 413.

42.    In other words, the duty of loyalty prevents the attorney for a partnership from "represent[ing] one partner against another partner in a suit arising out of partnership business" because "public confidence in the legal system … is damaged when lawyers appear to use prior relationships with clients to the clients' disadvantage." *Prisco*, 799 F. Supp. at 270 ("[t]his is precisely the image created when a general counsel to a partnership takes sides in a dispute between former partners").[4]

43.    By way of his direct representation of and/or communications with the Band and its individual partners, Ritchie and Defendant, about the Band's affairs, there exists a presumption that Meloni has obtained or had access to the secrets and confidences of the Band, a partnership, as well as its individual partners, Ritchie and Gano, because "the knowledge of a partner regarding partnership affairs is imputed to all other partners." *See Denney*, 362 F. Supp. 2d at 413. Meloni has appeared in this suit – an action between the Band's individual partners and concerning the affairs of the Band – as trial counsel for one of the Band's partners (i.e., Gano). Accordingly, Meloni is the Band's attorney for successive conflict of interest purposes and, must, therefore, be prevented by his duty of loyalty to the Band and its individual partners from representing Defendant in this suit.

### e.  Conclusion

44.    For these reasons, the Court should disqualify Meloni from further participation in this suit because there exists a successive conflict of interest between Meloni's current

---

[4] *But cf. Quintel Corp. v. Citibank, NA*, 589 F. Supp. 1235, 1241-42 (S.D.N.Y. 1984) (standing for the proposition that, absent an affirmative assumption of duty by the attorney, a limited partner "has no standing to bring an action against the partnership's legal counsel …"). *See Adell v. Sommers, Schwartz, Silver & Schwartz, P.C.*, 428 N.W.2d 26, 204-05 (Mich. App. 1988) (distinguishing *Quintel*, 589 F. Supp. at 1241-42).

representation of Defendant and Meloni's former representation of the Band, which will likely have a negative impact upon the interests of the Band and its individual partners because this suit concerns, in part, the reorganization of the partnership's affairs.

**2.    Concurrent Conflict of Interest:  Meloni represents two or more clients in this suit with adverse interests.**

45.    A "concurrent" conflict of interest refers to the situation whereby "the lawyer's potential disqualification arises out of the simultaneous representation of two clients …".  *See Shabbir*, 443 F. Supp. 2d at 310.  In this situation, the Court should look to Canon 5 of the Code of Professional Responsibility and New York Disciplinary Rule 5-105, which "guard against conflicts which threaten the ability of an attorney to exercise his judgment free from compromising influences." *CareCore*, 542 F. Supp. 2d at 311 (citing *Fund of Funds*, 567 F.2d at 233); *Shabbir*, 443 F. Supp. 2d at 310; *see* MODEL CODE OF PROF.'L RESPONSIBILITY Canon 5 (1983) ("a lawyer should exercise independent professional judgment on behalf of a client"); *see also* N.Y. CODE OF PROF.'L RESPONSIBILITY D.R. 5-105 ("conflict of interest; simultaneous representation").

46.    The Court should disqualify an attorney when the attorney's independent professional judgment on behalf of a client is likely to be adversely affected by the concurrent representation of another client.  *See Unified Sewerage Agency v. Jelco, Inc.*, 646 F.2d 13399 1345 (9th Cir. 1981).  Disqualification for a concurrent conflict of interest is warranted when the movant shows (a) opposing counsel has undertaken the simultaneous representation of two or more clients, (b) the clients' interests are or are likely to be adverse, (c) there is an "actual or apparent conflict in loyalties or diminution in the vigor of [the attorney's] representation," and (d) a client did not give "effective consent" to the concurrent representation.  *Cinema 5, Ltd. v. Cinerama, Inc.*, 582 F.2d 1384, 1387 (2d Cir. 1976) ("[w]here the relationship is a continuing

one, adverse representation is *prima facie* improper …"); *Shabbir*, 443 F. Supp. 2d at 311;

*Rocchigiani v. World Boxing Counsel*, 82 F. Supp. 2d 182, 189-90 (S.D.N.Y. 2000); *see* N.Y.

CODE OF PROF.'L RESPONSIBILITY D.R. 5-105(A)-(C).

### a. Element No. 1:  Meloni has undertaken the simultaneous representation of two or more clients.

47.    Meloni is trial counsel for Defendant in this suit.  He is also counsel in this suit

for Skiena, a material fact witness.  Additionally, Meloni himself is a material fact witness in this

case (see discussion below regarding disqualification pursuant to witness-advocate rule); Meloni

& McCaffery, P.C. has appeared as counsel for Meloni.  Therefore, Meloni has undertaken the

simultaneous representation of two or more clients in connection with this suit.

### b. Element No. 2:  The interests of Meloni's clients are likely to be adverse.

48.    Meloni's independent professional judgment will likely be adversely affected by

his concurrent representation of Defendant and Skiena and his own position as a material fact

witness.  For instance, Plaintiff has sued Defendant, in part, because of the tortious conduct of

Defendant's publishing administrator and attorney/agent, Skiena, in connection with the  Band's

affairs.   As this suit unfolds, Defendant may have claims against Skiena (e.g., claims for

malpractice, conversion, fraud, indemnity, etc.).  Accordingly, the interests of Meloni's clients

are likely to be adverse.

### c. Element No. 3:  There is an "actual or apparent conflict in loyalties or diminution in the vigor of [Meloni's] representation,".

49.    Gano and Skiena have already taken adverse positions with regard to at least one

critical fact at issue in this suit.  Gano has denied Plaintiff's assertion in the Complaint that the

2001 Agreement is a product of mistake.  (Pl.'s Compl. ¶ 59-61; Def.'s Am. Answer &

Countercl. ¶ 59-61.)  Skiena has taken the opposite position that the 2001 Agreement is

mistaken. (Ex. BB at 2 ("though I have come to learn that Paragraph 7 … apparently avers that I

perform publishing administration services for Mr. Gano <u>and</u> Mr. Ritchie, that statement was and is an error" (emphasis in original).).  Because of the contrary positions taken by Gano and Skiena with regard to the 2001 Agreement, Meloni will not be able to vigorously advocate for the interests of one client without compromising the interests of the other.  Accordingly, there are "actual or apparent conflict[s] in loyalties or diminution in the vigor of [Meloni's] representation" Defendant and Skiena, such that Meloni's concurrent representations are *prima facie* improper.  *Cinema 5*, 582 F.2d at 1387.

### d. Element No. 4:  Meloni's clients have not given effective consent to the concurrent representation.

50.    "Effective consent" means an attorney has given his clients "a full explanation of the implications of common representation so that 'each client [has] the opportunity to evaluate the need for representation free of any potential conflict.' "  *Shabbir*, 443 F. Supp. 2d at 311 (quoting N.Y. CODE OF PROF.'L RESPONSIBILITY E.C. 5-16); *Rocchigiani*, 82 F. Supp. 2d at 190.

51.    Although Plaintiff requested confirmation of the existence of any effective consent or conflict waivers in this case none has been provided.  The Court must disqualify Meloni from further participation in this suit because there exists a concurrent conflict of interest between Meloni's clients, Defendant and Skiena, that prevents the equitable and judicially economic resolution of this lawsuit.

### 3. Witness-Advocate Rule:  Meloni is a material witness whose testimony will likely prejudice Defendant and/or Skiena.

52.    Regardless of whether he will actually be called as a witness, the Court should disqualify an attorney who is likely to testify about fact issues (other than uncontested issues or attorney fees) if the testimony is (a) "necessary," and (b) "substantially likely to be prejudicial to

the party represented" by the attorney.[5]  *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989); *Shabbir*, 443 F. Supp. 2d at 308; *Forrest v. Par Pharm., Inc.*, 46 F. Supp. 2d 244, 247 (S.D.N.Y. 1999); *Fulfree v. Manchester*, 945 F. Supp. 768, 771-72 (S.D.N.Y. 1996); *see* MODEL CODE OF PROF.'L RESPONSIBILITY DR 5-102 (1983) ("withdrawal as counsel when the lawyer becomes a witness"); *see also* N.Y. CODE OF PROF.'L RESPONSIBILITY D.R. 5-102 ("lawyers as witnesses"). "When there is a question as to whether an attorney will be called as a witness on behalf of his or her client, 'any doubt is to be resolved in favor of disqualification' and in favor of the attorney's testifying." *Dri Mark Prod., Inc. v. Wilpak Indus., Inc.*, No. 04-CV-696 (JBW), 2006 WL 2882565, at *21 (E.D.N.Y. Oct. 6, 2006) (quoting *Hull*, 513 F.2d at 571); *Shabbir*, 443 F. Supp. 2d at 308; *see MacArthur v. Bank of New York*, 524 F. Supp. 1205, 1209 (S.D.N.Y. 1981) (the "stricture is mandatory:  the party cannot choose between the attorney's testimony and his representation").

53.    The rationale behind the so-called "witness-advocate rule" is to eliminate (1) the possibility that "a jury may view an attorney as possessing special knowledge of a case and therefore accord a testifying attorney's arguments undue weight," (2) the unfair situation that arises when an opposing attorney has to cross-examine an attorney-adversary and seek to impeach his credibility, and (3) the appearance of impropriety (i.e., the likely implication that the testifying attorney may well be distorting the truth for the sake of his client).  *Shabbir*, 443 F. Supp. 2d at 307-08; *Cartier*, 404 F. Supp. 2d at 574 ("[t]he purpose of the rule is to avoid the confusion that would otherwise result when a lawyer is called upon to be both a witness and an advocate in the same case, as well as to prevent placing the lawyer in the position of having conflicting loyalties (as might be the case where his testimony might ultimately prove damaging

---

[5] In addition to these two elements, the movant "must also demonstrate 'specifically how and as to what issues in the case the prejudice may occur … .' " *Forrest v. Par Pharm., Inc.*, 46 F. Supp. 2d 244, 247 (S.D.N.Y. 1999) (quoting *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989)).

to the client)"); *MacArthur*, 524 F. Supp. at 1208.

   **a. Element No. 1:  Meloni's testimony is necessary.**

   54.    "A finding of necessity takes into account such factors as the significance of the matters, weight of the testimony, and availability of other evidence." *Forrest*, 46 F. Supp. 2d at 248; *Paretti v. Cavalier Label Co., Inc.*, 722 F. Supp. 985, 986 (S.D.N.Y. 1989).  "[A] lawyer who could provide only cumulative testimony … [or] who merely observed the negotiations and reviewed draft agreements need not be disqualified." *Id.*  But when a lawyer is the individual who drafted an ambiguous document or provision at issue, or who said or did anything relevant during the negotiation of the ambiguous document or provision at issue, then he must be disqualified. *Id.* at 986 & 987.

   55.    Plaintiff has already subpoenaed Meloni for production of the documents and for deposition as a third-party witness, meaning Meloni will give testimony in this suit.  Meloni will likely testify on behalf of Defendant – and, possibly, himself and Skiena, who may be a proper party to this suit – about fact issues other than attorney fees.  Specifically, Meloni has personal and necessary knowledge of fact issues about (1) the 2001 and 2002 Agreements because he was the principal drafter of such ambiguous agreements, and negotiated the same on behalf of the Defendant, (2) the VIOLENT FEMMES trademark because he represented the Defendant in his opposition to its federal registration, and (3) his long-standing professional relationship with the Defendant, Ritchie and the Band (the partnership between Ritchie and Gano) whose relationships are the subject of several claims asserted by the Plaintiff (e.g., request for declaration that the parties have a partnership and/or fiduciary relationship, breach of fiduciary duties).

   56.    Moreover, Meloni averts that he and Skiena – not Defendant – are the only persons in the possession, custody or control of any documents and a significant portion of the knowledge regarding the facts underlying this suit.  (Ex. V.)  Accordingly, Meloni's testimony is

"necessary."

### b. Element No. 2: Meloni's testimony is substantially likely to be prejudicial to one or both of his clients, Defendant and Skiena.

57.     An attorney's projected testimony is "prejudicial if it is sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the client might have an interest in the lawyer's independence in discrediting the testimony." *Shabbir*, 443 F. Supp. 2d at 308 (internal quotations omitted); *Forrest*, 46 F. Supp. 2d at 248 (witness-advocate testimony was not sufficiently adverse enough to require disqualification because there was no indication that the testimony would contradict the client's contentions); *see Cartier v. Bertone Group, Inc.*, 404 F. Supp. 2d 573, 574 (S.D.N.Y. 2005) ("should the defendants decide to challenge any of [Mr. Benschar's] statements at trial, Mr. Benschar, as an advocate, may have to 'vouch for his own credibility' or, at a minimum, put opposing counsel in the difficult position when he has to impeach a fellow advocate's credibility").

58.     Meloni's testimony at trial will likely prejudice the Defendant and/or Skiena, his other client. Gano has denied Plaintiff's assertion in the Complaint that the 2001 Agreement is a product of mistake. (Pl.'s Compl. ¶ 59-61; Def.'s Am. Answer & Countercl. ¶ 59-61.) Skiena has already taken the position that the 2001 Agreement is mistaken with regard to an essential term. (Ex. BB at 2 ("though I have come to learn that Paragraph 7 … apparently avers that I perform publishing administration services for Mr. Gano <u>and</u> Mr. Ritchie, that statement was and is an error" (emphasis in original).). Therefore, Meloni's testimony will be adverse to Skiena if he testifies that the contract is in fact mistaken, and it will be adverse to Gano if he agrees with Skiena and states that it is not mistaken.

59.     Furthermore, Meloni will be subject to impeachment with regard to the quality of his draftsmanship. When on the witness stand, part of Meloni's testimony will concern the

ambiguity inherent in the 2001 Agreement. If Meloni is impeached while serving as trial counsel, then the impeachment will poison his representation of and the position taken by Defendant.

60.    Finally, Meloni may be put in a position of preserving his own professional and/or personal integrity to the detriment of his clients. For example, Meloni knew or should have known that Skiena served as the attorney and publishing administrator for Defendant <u>and</u> Ritchie (*see* Exs. F & H.), as stated in Paragraph 7 of the 2001 Agreement, and, thus, Skiena subsequently misrepresented his relationship with Ritchie in a March 6, 2007 letter to the undersigned counsel for Plaintiff. (*see* Ex. BB.). Meloni's testimony is substantially likely to be prejudicial to his clients, Defendant and Skiena.

61.    For these reasons, the Court should disqualify Meloni from further participation in this suit pursuant to the witness-advocate rule.

**B.    Vicarious Disqualification of Meloni & McCaffrey, P.C. and Robert S. Meloni, P.C.**

62.    When an attorney is disqualified as trial counsel, the attorney's law firm is subject to vicarious (or imputed) disqualification. *Gandler*, 1994 WL 702004, at \*2; *Kubin*, 801 F. Supp. at 1113; *Paretti*, 722 F. Supp. at 986.

**1.    Conflicts of Interest:  Meloni's successive and concurrent conflicts of interest are imputed to Meloni's Law Firms.**

63.    When an attorney is disqualified for conflict of interest considerations, the attorney's conflicts are imputed to the attorney's law firm because there is a rebuttable presumption that "if confidences or secrets were disclosed to one member of a firm, [then] each individual attorney in the firm has or may (intentionally or inadvertently) become privy to those confidences." *Hempstead Video, Inc. v. Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005); *Human Elec.*, 375 F. Supp. 2d at 106; *Papyrus*, 325 F. Supp. 2d at 277-78; *Kubin*, 801 F. Supp.

at 1114; *see* N.Y. CODE OF PROF.'L RESPONSIBILITY D.R. 5-105(D) (lawyers associated with a law firm shall not "knowingly accept or continue employment when anyone of them practicing alone would be prohibited from doing so under … DR 5-105(A) or (B) …").  Thus, if the law firm cannot rebut the aforementioned presumption, then the Court should disqualify the law firm. *Id.*

64.    As explained above, the Court should disqualify Meloni because successive and concurrent conflicts of interest exist between his representation the Defendant, Skiena, and the Band.

65.    In addition to Meloni, the Court should also vicariously disqualify Meloni's Law Firms because there is a rebuttable presumption that Meloni – an attorney associated with Meloni's Law Firms as an employee and principle (if not the controlling principle) – has shared and continues to share the confidences and secrets of Defendant, Skiena, Ritchie and the Band with each and every member of Meloni's Law Firms (i.e., McCaffrey).  *E.g., Hempstead Video*, 409 F.3d at 133.  It will be difficult, if not impossible, for Meloni's Law Firms to rebut this presumption because (a) Meloni is the controlling principle of Meloni's Law Firms, (b) Defendant and the Band are long-time clients of Meloni, (c) Meloni's Law Firms is a small business that consists of two attorneys – Meloni and McCaffrey, who have both appeared in this lawsuit, and (d) Meloni's Law Firms cannot effectively screen itself or its members from the conflicts of Meloni, especially when McCaffrey – the only attorney besides Meloni associated with Meloni's Law Firms – has already appeared in this suit and when Meloni's Law Firms have only a single office to house its two attorneys.  Accordingly, the Court should vicariously disqualify Meloni's Law Firms from further participation in this suit because of its imputed successive and concurrent conflicts of interest.

2.    **Witness-Advocate Rule:  The vicarious disqualification of Meloni's Law Firms is necessitated by the witness-advocate rule.**

66.    Under the witness-advocate rule, a law firm should be vicariously disqualified from the serving as trial counsel when it is "know[n] or it is obvious that … [a] lawyer in the lawyer's firm may be called as a witness on a significant issue … ."  MODEL CODE OF PROF.'L RESPONSIBILITY DR 5-102(A) (1983); N.Y. CODE OF PROF.'L RESPONSIBILITY D.R. 5-102(b). The Courts decision to vicariously disqualify a law firm under the witness-advocate rule is discretionary.  *Gandler*, 1994 WL 702004, at *3; *Kubin*, 801 F. Supp. at 1114.

67.    As explained above, the Court should disqualify Meloni under the witness-advocate rule.  In addition to Meloni, the Court should also exercise its discretion and vicariously disqualify Meloni's Law Firms under the witness-advocate rule for two reasons:  First, the continued representation of Defendant by Meloni's Law Firms places McCaffrey – the only attorney besides Meloni associated with Meloni's Law Firms – in the compromising position of conflicting loyalties if he has to cross-examine Meloni, especially if his cross-examination is used to impeach one or another of the clients of Meloni's Law Firms (i.e., Defendant, Skiena and Meloni).  *Cartier*, 404 F. Supp. 2d at 574.

68.    Second, having Meloni, a material fact witness, in close proximity with McCaffrey and the remainder of Meloni's Law Firms for the duration of this suit will make it difficult, if not impossible, for Meloni or Meloni's Law Firms to avoid the temptation of tainting Meloni's testimony.  Given that Meloni's Law Firms consists of two attorneys – Meloni and McCaffrey – and a few paralegals or support staff members who share a single office, it is unlikely that Meloni and Meloni's Law Firms can even effectively screen themselves from such temptation.  N.Y. City Bar Assoc'n Comm. on Prof'l & Judicial Ethics, Formal Op. 1990-4 (May 22, 1990) ("[v]icarious disqualification of partners and associates cannot be avoided by

screening them from a directly disqualified lawyer through erection of a 'Chinese Wall'); *see Shabbir*, 443 F. Supp. 2d at 305 (disqualification is appropriate "where there has been a clear violation of the Code of Professional Responsibility leading to a 'significant risk of trial taint' ").

69.    For these reasons, the Court has good cause to exercise its discretion and, thus, vicariously disqualify Meloni's Law Firms pursuant to the witness-advocate rule.

## C.    Robert S. Meloni is Not in Good Standing with the Bars of the State of New York or the Southern District of New York

70.    Meloni has appeared, and continues to appear, before the Court under the guise that he is admitted to and in good with the bars of the Southern District of New York and the State of New York.  It has recently come to the attention of the undersigned that Meloni is not in "good standing" with the bar of the State of New York because the State of New York characterizes his registration status as "[d]elinquent."[6]  (Ex. L.)  Thus, Meloni is not in "good standing" with the bar of the State of New York and, incidentally, the bar of this Court.  LOCAL RULES OF THE SOUTHERN & EASTERN DISTRICTS OF NEW YORK, Rule 1.3(a); *see* N.Y. JUD. LAW §§ 468-a(5).

71.    Further, by practicing law before the Court without having paid attorney registration fees to the State Bar of New York, Meloni has engaged in conduct that is "prejudical to the administration of justice," which, according to the New York Code of Professional Responsibility, supports a finding of attorney misconduct.[7]  *Compare* N.Y. JUD. LAW § 468-a(5)

---

[6] Apparently, Meloni is "delinquent" because he did not pay his registration fees for the years 2006 and 2007.  The registration status of an attorney who fails to pay the biennial registration fee is characterized as "delinquent."  *See* N.Y. App. Div. First Dept., *Delinquent Registration*, *at* http://www.courts.state.ny.us/courts/ad1/delinquent-registration.shtml (last visited June 19, 2008).

[7] An attorney is "a member of the bar of this court" when he is, *inter alia*, "[a] member in good standing of the bar of the state of New York … ."  *See* LOCAL RULES OF THE SOUTHERN & EASTERN DISTRICTS OF NEW YORK, Rule 1.3(a); *see also* N.Y. State Unified Court Sys., *Registration FAQ's*, *at* http://www.nycourts.gov/attorneys/registration/faqs.shtml (last visited June 19, 2008) ("[a] certificate of good standing is the only document available to New York attorneys as proof of admission to the Bar," which will not be issued to "delinquent" attorneys).  To be in "good standing" requires the attorney to be, *inter alia*, " ... current with

("[n]oncompliance by an attorney with the provisions of [this section requiring the payment of registration fees] and the rules promulgated hereunder shall constitute conduct <u>prejudicial to the administration of justice</u> …") (emphasis added), *with* N.Y. CODE OF PROF.'L RESPONSIBILITY D.R. 1-102(A)(5) (it is misconduct for "[a] lawyer or law firm [to] … engage in conduct that is <u>prejudicial to the administration of justice</u>") (emphasis added).

72.    In light of the foregoing, the undersigned believes there exists a substantial question as to the honesty, trustworthiness or fitness of Meloni and Meloni's Law Firms, such that it is obligated to report the same to the Court for further investigation or action.[8] N.Y. CODE OF PROF.'L RESPONSIBILITY D.R. 1-103(A) (obligation to report any knowledge "that raises a substantial question as to another lawyer's honesty, trustworthiness or fitness as a lawyer … to a tribunal or other authority empowered to investigate or act upon such violation").

### III.    CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court grant this motion in its entirety and, thus, disqualify Robert S. Meloni and his law firms, Meloni & McCaffrey, P.C. and Robert S. Meloni, P.C., from further participation in this suit.

---

payment of the biennial $350 attorney registration fee." N.Y. App. Div. First Dept., *Certificates of Good Standing*, *at* http://www.courts.state.ny.us/courts/ad1/certificates.shtml (last visited June 19, 2008) (defining "good standing"); *see* N.Y. JUD. LAW §§ 468-a(5).

[8] The Court must direct allegations of certain "ground[s] for discipline or other relief … to the chief judge, who shall refer such complaints to the Committee on Grievances." LOCAL RULES OF THE SOUTHERN & EASTERN DISTRICTS OF NEW YORK, Rule 1.5(d)(3). Grounds for discipline or other relief arise when an attorney (a) "engage[s] in conduct violative of the New York State Lawyer's Code of Professional Responsibility …", and (b) is "not a member of the bar of this court [but] has appeared at the bar of this court without permission to do so." *Id.* at Rule 1.5(b)(5)-(6).

Respectfully submitted,

**JACKSON WALKER L.L.P.**


By: *:/s/ Emilio B. Nicolas* _____
Lawrence A. Waks
Daniel Scardino*
Emilio B. Nicolas
100 Congress Avenue, Suite 1100
Austin, Texas 78701
Tel.: (512) 236-2000
Fax.: (512) 236-2002
Email: lwaks@jw.com, dscardino@jw.com,
enicolas@jw.com
(*admitted *pro hac vice*)

ATTORNEYS FOR BRIAN RITCHIE,
individually and d/b/a VIOLENT FEMMES


## CERTIFICATE OF SERVICE

This is to certify that on this 20th day of June, 2008, a true and correct copy of the foregoing document was served by e-mail upon the following counsel of record:

Robert S. Meloni
Thomas P. McCaffrey
MELONI & McCAFFREY, P.C.
1350 Avenue of the Americas, Suite 3100
New York, New York 10019

ATTORNEYS FOR DEFENDANT GORDON
GANO, individually and d/b/a GORNO MUSIC
a/k/a GORNO MUSIC (ASCAP) a/k/a GORNO
MUSIC PUBLISHING

*:/s/ Emilio B. Nicolas*
Emilio B. Nicolas

5155918v.5 129806/00001