```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
BRIAN RITCHIE, individually and d/b/a            :
VIOLENT FEMMES,                                  :
                                                 :
                Plaintiff,                       :      No. 07-CIV-7269 (VM)
                                                 :
        - against -                              :
                                                 :
GORDON GANO, individually and d/b/a GORNO        :
MUSIC a/k/a GORNO MUSIC (ASCAP) a/k/a            :
GORNO MUSIC PUBLISHING,                          :
                                                 :
                Defendants.                      :
-------------------------------------------------------------x
```

## DECLARATION OF ROBERT S. MELONI

ROBERT S. MELONI declares under penalty of perjury as follows:

1.   I am a member of Meloni & McCaffrey, P.C., counsel for defendant and counterclaim-plaintiff Gordon Gano ("Gano") in the above-referenced action.  I respectfully submit this declaration in opposition to the motion of Plaintiff Brian Ritchie ("Ritchie" or "Plaintiff") to disqualify me and vicariously, the law firm of Meloni & McCaffrey, P.C., as Gano's litigation counsel in this action.

2.   Attached hereto as Exhibit A is the Complaint filed by Brian Ritchie on August 15, 2007.

3.   I was first introduced to Gordon Gano in 2001 by Gano's publishing administrator and attorney, Alan Skiena. I was asked to represent Gano in connection with an ongoing dispute between Gano and Ritchie. I was advised that Ritchie had separate counsel, a New York attorney named Jeffrey Jacobson. Mr. Ritchie admits that he was represented by Jacobson, his "independent legal counsel," during the "negotiation and execution" of that agreement, in his responses to Gano's Requests to Admit, which responses were served and

dated May 30, 2008 (hereafter referred to as "Ritchie's Responses to RFAs"). *See* Ritchie's Responses to RFAs No 180. A copy of those responses is attached hereto as Exhibit B.

4. Mr. Jacobson and I negotiated and drafted an agreement between Ritchie and Gano which addressed a number of outstanding internecine issues, including the current Violent Femmes concert tour, the income participation Ritchie had been receiving on songs written by Gano, corporate debts of VF2, Inc., the Band's (i.e., Gano and Ritchie) furnishing corporation, the Band's jointly owned trademark VIOLENT FEMMES, and various other issues such as disputes over Band equipment storage fees, the Band website and claims for reimbursement by VF2, Inc. of cash outlays by Gano.

5. That agreement was signed by Gano and Ritchie on April 20, 2001 (the "2001 Agreement").

6. One year later, Mr. Jacobson and I drafted and negotiated a second agreement to resolve additional issues between Ritchie and Gano, including resolution of Gano's' Opposition before the Trademark Trial and Appeals Board, of Ritchie's fraudulent trademark application for the name VIOLENT FEMMES, a proposed concert tour of the Band, the winding down and dissolution of VF2, Inc., and the formation of a new furnishing corporation called Violent Femmes Touring, Inc.

7. That agreement was signed by Gano and Ritchie on April 1, 2002 (the "2002 Agreement"). Mr. Ritchie admits that he was represented by Jacobson, his "independent legal counsel," during the "negotiation and execution" of that agreement, in his responses to Gano's Requests to Admit. *See* Ritchie's Responses to RFAs No. 201.

8. Mr. Jacobson and I also negotiated the Shareholders Agreement for Violent Femmes Touring, Inc, simultaneously signed by Gano and Ritchie (individually and on behalf of the corporation) at the same time as the 2002 Agreement.

9. The Band's then business manager, Howard Comart, handled the formation of Violent Femmes Touring, Inc.

10. In all of the foregoing transactions, I acted only as Gano's attorney.

11. I have never represented Brian Ritchie in any legal or other capacity.

12. I have never acted as counsel for any so-called "partnership" consisting of Gano and Ritchie, whether the "Violent Femmes" partnership or otherwise.

13. I have never sought or obtained any confidential information from Ritchie at any time, including, without limitation, with respect to the 2001 and 2002 Agreements, VF2, Inc. or the Violent Femmes Touring, Inc. Shareholders Agreement, or otherwise.

14. For the entire time I have known Gano, or acted as his counsel, continuing to the present, the Band's interests have been handled by Jeffrey Light, of the firm Myman Abell Fineman Greenspan & Light LLP in Los Angeles. I understand that an attorney named Daniel Weiss recently represented the Band on an isolated transaction not relevant here. Otherwise, Mr. Light handles all business and contract matters for the Band. In my limited contact with Mr. Light, I have never sought or obtained any confidential information regarding the Band's business matters, or Ritchie's, or any of the corporate entities through which the Band's business is conducted, including with respect to the 2001 and 2002 Agreements.

15. When Ritchie's Counsel recently resurrected their misguided intention to move to disqualify me and my law firm, they raised it in a series of emails to me or my partner,

Thomas McCaffrey, one of which conceded the necessity of first establishing the existence of the purported "Partnership" as a matter of law in order to succeed on the ground of successive conflicts of interest:

> "Please be advised that we may also file two motions ancillary to the motion to disqualify: (a) a motion for partial summary judgment on Plaintiff's fifth cause of action concerning the existence of a partnership relationship between Plaintiff and Defendant, *which we believe is necessary to the Court's determination of disqualification for successive conflicts of interest . . . .*" (italics added)

16.     A copy of Emilio Nicolas' June 12, 2008 email to Thomas McCaffrey is attached hereto as Exhibit C.

17.     In November 2007, Gano sought permission to file an omnibus motion to dismiss the Complaint on the grounds, *inter alia*, that Plaintiff had failed to sue indispensable parties – *i.e.* the record companies that actually own the sound recording copyrights -- and that the applicable statute of limitations, laches and a general release executed by Plaintiff in 2002 bar his claims.  *See* Pre-Motion Demand Letter dated November 30, 2007, attached hereto as Exhibit D.

18.     Ritchie has rested his entire argument that I represented the Violent Femmes "partnership" on something I handled for Gorno Music in 2003. At that time, Left Bank Records, Inc. d/b/a Beyond Music ("Beyond Music") had failed to pay Gorno Music mechanical (publishing) royalties it owed pursuant to two Mechanical License Agreements between Gorno Music and Beyond Music.  Beyond Music was then a debtor-in-possession involved in a liquidation proceeding.

19.     I was asked by Alan Skiena, then acting as administrator for Gorno Music, to send a demand for payment, and then a creditor's proof of claim, on behalf of Gorno Music with respect to those publishing monies.

20. Beyond Music also owed VF2, Inc. record royalties from the exploitation of Violent Femmes recordings licensed by VF2, Inc. Since the filing deadline was looming, and no one else was prepared to do it, I also included an addendum to the creditor's proof of claim on behalf of "VF2, Inc. d/b/a Violent Femmes" for those record royalties, so VF2, Inc. did not forfeit any rights it would have. A copy of that Addendum is attached hereto as Exhibit E.

21. I never discussed this with Ritchie, or billed Ritchie, "the Violent Femmes" or VF2, Inc. for these services. That extremely limited representation did not entail the transfer of any confidential information by Ritchie, VF2, Inc. or the Violent Femmes.

22. Also, the subject matter of that representation, or financial claims against the insolvent record company, is not remotely related to the claims at issue in this action.

23. In addition, there has never been any fee arrangement between me (or any law firm with which I have been associated) and Ritchie, either individually, or as representative of the Band Violent Femmes. Ritchie disingenuously attempts to construct a purported fee arrangement with the Band where none exists, by misrepresenting the nature of certain documents and charges appearing in one line of an annual publishing worksheet prepared by Alan Skiena behalf of Gorno Music in 2006, attached as Exhibit Y to Ritchie's motion. However, that report states nothing concerning "the Band's revenue," but expressly concerns Ritchie's continued receipt of "an income participation in the amount of 7.5% of Gano's net receipts" from Gano's publishing income.

24. The reference to "Estimate of Meloni Charges" referred to on the worksheet was a surcharge imposed by Gorno Music for estimated legal fees of Gorno Music as a result of legal services I provided to Gorno Music in 2006 in connection with a dispute between Gano and Ritchie. At that time, I was asked to render advice to Alan Skiena, as administrator

5

for Gorno Music, in connection with legal issues raised by demands made by Ritchie's representative at the time, Andrew Halbreich. Those charges do not represent payment for legal services performed by me or my firm for Ritchie, the Band, or any business entity such as VF2, Inc. or the purported Band partnership.

25. Moreover, there is nothing in Ritchie's Declaration that supports the assertion that he believed that I billed him or the Band for any legal services at any time. The reason is clear: I never did any such thing.

26. There has never been any written contract or retainer agreement between me, or my law firm, indicating that I was to provide legal representation to Ritchie, or for that matter, the Band, or any of the corporations through which Gano and Ritchie conducted business. Ritchie has not stated otherwise.

27. Finally, there is nothing in the documentary record that could support Ritchie's objectively reasonable belief that I ever represented him. In fact, despite the clear opportunity to do so in his declaration, he refused to state that he believed that I was <u>his</u> attorney or that I represented <u>his</u> interests.

28. As for Ritchie's successive conflicts argument, it is rife with speculation and misinformation. To begin with, I do not represent two parties to this litigation, as only Gano is a party. Moreover, Ritchie's only basis for arguing "adverse interests" is his counsel's pure speculation that "as this suit unfolds" Gano "may have claims against Skiena." To put it simply, that statement is utter nonsense.

29. Finally, both Gano and Mr. Skiena have confirmed to this Court in writing that, at the time I took on the representation of Mr. Skiena (solely as a non-party witness to assist him in responding to Ritchie's subpoena and possible deposition), I provided both Gano

6

and Skiena with a full explanation of the implications of common representation and an opportunity to evaluate the need for representation free of any potential conflict with independent counsel and both agreed to waive any potential conflicts of interests. Thus, Ritchie's concurrent conflict argument must fail.

30. As for the disqualification argument premised on the advocate-witness rule, I have no intentions of calling myself as a witness at trial. Any information I can provide is cumulative to testimony a number of other witnesses can provide at trial. Moreover, if I were called by Ritchie as a witness at trial, nothing I could say would be adverse to Gano's' interests.

31. The fact issues which are critical to the main claims by Ritchie, concerning the authorship and ownership of the sound recording and musical composition copyrights, pre-date my involvement with Gano by well over 10 years (i.e., the 1980s). As for the 2001 and 2002 Agreements, which was the first time I handled anything for Gano, there are multiple witnesses concerning their negotiation and execution, as well as the underlying circumstances of those agreements (about which I know absolutely nothing). They include Ritchie, his lawyer, Jeffrey Jacobson; the band's current lawyer (and their lawyer for the past 10 years), Jeffrey Light; the band's former personal manager, Jamie Kittman; the band's former road manager, Darren Brown; the band's former accountant, Howard Comart; Gano; and Skiena.

32. All of these witnesses were involved, in one way or another, in the underlying circumstances leading up to the execution of both the 2001 and 2002 Agreements, which pre-dated my introduction to Gano.

33. The only thing I did was negotiate and draft the agreements as Gano's lawyer with Ritchie's lawyer (Jacobson), and concurrently represent Gano in a trademark opposition

7

concerning Ritchie's improper trademark application for the name "Violent Femmes" (defended by Jacobson on behalf of Ritchie).

34.  Thus, my testimony (if called by Ritchie), would not only be cumulative, but largely unnecessary.

35.  One final point is worth mentioning, concerning Ritchie's claim to be an equal co-owner of all sound recording copyrights of the Violent Femmes recordings dating back from 1983 through the present. Ritchie's hubris impelled him to seek a equal share of the ownership in those sound recordings, which are not even owned by Gano, but by the record companies that commissioned, funded, released and distributed Violent Femmes albums over the years, or in one case, a corporation established by Gano and Ritchie (VF2, Inc.) that acquired the copyrights in a handful of recordings assigned by Interscope Records in 1998. Incredibly, Ritchie seeks this latter declaration of an equal ownership interest in all Violent Femmes sound recording copyrights without suing the parties that Ritchie knows – and has now admitted - are the actual owners of those sound recording copyrights.

36.  Over nine months after he filed his Complaint, Ritchie finally admitted that these non-parties are the actual owners of the sound recording copyrights. Those admissions are contained in his in his responses to Gano's Requests to Admit dated May 30, 2008. When asked to admit the identity if the actual owners of those sound recording copyrights, on an album by album basis, Plaintiff's uniform response was "*Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings*." Thus, it took Plaintiff over nine months from the date he filed the Complaint to finally admit what he knew or should have known before he filed the Complaint: that the various non-party record companies that have claimed a 100% ownership interest in all of the Violent Femmes sound recordings from inception to date, including Slash Records (Warner Bros. Records), Elektra Asylum Records, and Add It Up Productions, Inc., are the sole and

8

exclusive owners thereof. *See* Exhibit A, Response Nos. 4,6, 12, 17, 23, 33, 34, 36, 37, 38, 39, 41, 42, 43, 45, 46, 47, 49, 50, 52, 153, 54, 55, 57, 58, 59, 61, 62, 63, 65, 66, 67, 69, 71, 72, 73, 75, 76, 77, 85, 86, 93, 94, 100, 114, 115, 120, 131, 144, 148, 152, 161, 171, 174 and 178.

37. Ritchie also admitted that he knew that Slash (Warner Bros.) was the copyright owner of the Band's biggest hit called "Blister In The Sun", written by Gano, in blog posted on February 26, 2007 at 4:21 pm on www.salemslots.wordpress.com by Ritchie:

> "For the fans who rightfully are complaining about the Wendy's burger advertisement featuring Blister in the Sun, Gordon Gano is the publisher of the song and Warners (sic) is the record company. When they agree to use it there's nothing the rest of the band can do about it, because we don't own the song or the recording." *See* Exhibit A, Response Nos. 220 through 223.

38. Finally, Plaintiff's counsel makes a clumsy and heavy-handed attempt to capitalize on the administrative oversight of my inadvertent failure to pay my last biannual attorney registration fee (2006-2007), which has since been corrected. *See* Exhibit F hereto. In the 27 years I have been practicing law, I have been current in my attorney registration requirements. The one exception occurred during 2006-2007, when I was embroiled in painful and protracted divorce and child custody proceedings. A few things understandably fell between the cracks, and until now no one has seen fit to exploit it. Plaintiff's counsel was aware of my divorce since last year, when my partner Thomas McCaffrey, advised them during a court conference in December 2007. Their attempt to exploit that difficult time of my life to such extent as to challenge my "honesty, trustworthiness or fitness" and my law firm is expectedly pathetic. However, the fact that they also have the insolence to then instruct the Court as to its own ethical obligations is astonishing. It further illustrates the unfathomable depths to which they will stoop to resuscitate Plaintiff's fatally anemic disqualification argument.

39.	I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 3, 2008

									_____
									Robert S. Meloni