MELONI Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE MARRERO

'07 CIV 7269

---

BRIAN RITCHIE, individually and d/b/a
VIOLENT FEMMES,

               Plaintiff,

       -v-

GORDON GANO, individually and d/b/a GORNO
MUSIC a/k/a GORNO MUSIC (ASCAP) a/k/a
GORNO MUSIC PUBLISHING,

               Defendants.

Civil Action No._____

**COMPLAINT FOR
DECLARATORY RELIEF,
EQUITABLE RELIEF,
INJUNCTIVE RELIEF AND
DAMAGES AND DEMAND FOR
JURY TRIAL**

AUG 1 5 2007
U.S.D.C. S.D.N.Y.
CASHIERS

---

Plaintiff Brian Ritchie, individually and d/b/a Violent Femmes, by his attorneys Jackson

Walker L.L.P., for his Complaint against Defendant Gordon Gano, individually and d/b/a Gorno

Music a/k/a Gorno Music (ASCAP) a/k/a Gorno Music Publishing, alleges the following:

## I.    INTRODUCTION

1.    In 1980, Brian Ritchie (bassist, multi-instrumentalist and vocalist) ("**Ritchie**")

founded the seminal alternative rock / folk-punk band Violent Femmes (the "**Band**"), which later

included the membership of Victor DeLorenzo (percussionist) – who joined the Band in 1980 –

and Gordon Gano (guitarist and lead vocalist) – who joined the Band in 1981.

2.    After finalizing its original lineup, the Band signed a recording contract with

Slash Records and then, on or about March 1983, released its self-titled, debut album, *Violent

Femmes* ("**Debut Album**").  The Band quickly garnered a cult following that soon exploded into

widespread popularity, and the Debut Album was certified "platinum" status by the Recording

Industry Association of America on or about February 1, 1991.

3.    With Ritchie and Gano at the helm, the Band has recorded at least ten full-length

1

albums and toured the World at least a dozen times. As is common with many touring acts, however, the Band has experienced its share of turmoil, such as changes in the Band's lineup – for example, Guy Hoffman replaced DeLorenzo in or about 1993 when DeLorenzo left the Band to pursue opportunities as a solo artist, but was re-replaced by DeLorenzo in or about 2003 – and intra-band disputes. This action is the unfortunate culmination of an on-going, intra-band dispute between Ritchie and Gano over Gano's misappropriation and misadministration of Ritchie's interests in the jointly-owned songs and assets of the Band, misappropriation of assets solely owned by Ritchie, improper accounting and non-payment of royalties.

4.     By this action, Ritchie seeks, *inter alia*, a declaration of rights between Ritchie and Gano concerning ownership and administration of the songs and assets of the Band, a declaration that Ritchie jointly-authored said songs and owns said assets, exclusive control over administration of said songs and assets, an accounting and payment of past and future royalties from the exploitation of said songs and assets, injunctive relief preventing further injury to said songs and assets, and legal and equitable damages relating to past wrongdoing.

## II.     PARTIES

5.     Plaintiff Brian Ritchie, individually and d/b/a Violent Femmes, is an individual citizen of the United States of America residing in Hobart, Tasmania, Australia (**"Ritchie"**).

6.     Upon information and belief, Defendant Gordon Gano is an individual residing in New York, New York, and, upon information and belief, Defendant Gordon Gano d/b/a Gorno Music a/k/a Gorno Music (ASCAP) a/k/a Gorno Music Publishing, is a private business entity wholly owned and controlled by Gano with its principal place of business in New York, New York (together, Defendants Gano, individually, and Gordon Gano d/b/a Gorno Music a/k/a Gorno Music (ASCAP) a/k/a Gorno Music Publishing, are referred to herein as **"Gano/Gorno Music"**).

2

## III.    JURISDICTION AND VENUE

7.    This is a civil action between citizens of different domiciles for damages in excess of $75,000.00, excluding interest and costs, to which this Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. § 1332(a)(1) (diversity of citizenship).

8.    Additionally, this is a civil action seeking declaratory relief under the Declaratory Judgments Act, 18 U.S.C. §§ 2201 and 2202, injunctive relief, an accounting, the appointment of an equitable receiver and damages for violations of the Copyright Act, 17 U.S.C. § 101 *et seq.* and the Lanham Act, 15 U.S.C. § 1051 *et seq.*    Accordingly, this Court has subject matter jurisdiction over the foregoing claims pursuant to 28 U.S.C. §§ 1331 (federal question), as well as exclusive subject matter jurisdiction over interpretations of the Copyright Act in connection with Plaintiff's request for declaratory judgment pursuant to 17 U.S.C. § 101 *et seq.* and 28 U.S.C. § 1338(a) (copyright jurisdiction).

9.    This Court also has subject matter jurisdiction under 28 U.S.C. § 1367(a) (supplemental jurisdiction) over Plaintiff's claims seeking injunctive relief, the creation of a constructive trust and damages for violations of New York state law because said claims arise out of the same case or controversy for which, as set forth herein, this Court already has proper subject matter jurisdiction.

10.    This Court has personal jurisdiction over Defendants because Gano/Gorno Music resides in, and is thus physically present in, the State of New York and this Judicial District and does business in New York and this Judicial District. See N.Y. C.P.L.R. § 301.

11.    Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(a)(1) and 1391(a)(2) (venue for when "jurisdiction is founded only on diversity of citizenship") and/or 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) (venue for when "jurisdiction is not founded solely on diversity of citizenship") because Gano/Gorno Music resides in New York and/or a substantial

3

part of the events or omissions giving rise to this action occurred in this Judicial District. Venue is also proper in this Judicial District pursuant to 28 U.S.C. § 1400(a) (copyright venue) because Gano/Gorno Music "resides, is found, has an agent, or transacts his affairs" in this Judicial District, and this action seeks declaratory and other equitable relief regarding the disputed ownership of certain copyrights.

## IV.    NATURE OF THE CASE

12.    This is a civil action for (a) declaratory judgment pursuant to the Declaratory Judgments Act, 18 U.S.C. §§ 2201 and 2202; (b) breach of contract, unjust enrichment and breach of the implied covenant of good faith and fair dealing pursuant to New York state law; (c) breach of duty pursuant to New York state law; (d) an action for an accounting pursuant to federal and New York state law; (e) conversion pursuant to New York state law; (f) violations of the Lanham Act, 15 U.S.C. § 1051 *et seq.*; (g) trademark dilution and injury to business reputation pursuant to New York state law; (h) voice misappropriation pursuant to New York state law; (i) waste pursuant to New York state law; (j) fraud pursuant to New York state law; (k) rescission of contract pursuant to New York state law; (l) the appointment of an equitable receiver pursuant to Rule 66 of the Federal Rules of Civil Procedure; (m) the creation of a constructive trust pursuant to New York state law; (n) injunctive relief pursuant to federal and New York state law; and (o) exemplary damages pursuant to New York state law. These claims arise from Gano/Gorno Music's unauthorized misappropriation and misadministration of Ritchie's copyright and publishing rights in and to certain musical compositions and sound recordings, and failure to account to Ritchie for the exploitation of the foregoing and related properties.

4

## V.     BACKGROUND

**A.     A Brief History of Violent Femmes.**

13.     Since on or about 1980, and through the filing of this Complaint, the Band has achieved fame, success and goodwill as a business for profit that provides consumers with unique entertainment goods and services, such as the creation, performance and sound recording of musical compositions, the licensing of said musical works and related merchandising activities (**"Entertainment Goods and Services"**).

14.     Ritchie is the founder and a highly visible member of the Band, for which he has written and/or co-written certain musical compositions that are, in part, the subject of this action (**"Compositions"**).     Ritchie has also added distinctive structure and expression to the Compositions as the Band's bassist by means of performing the Compositions live in concert and on the Band's various albums (or sound recordings) (**"Recordings"**), which are also, in part, the subject of this action.     The Compositions and Recordings are listed on "Exhibit A" attached hereto.

15.     Gano is also a highly visible member of the Band, for which he publicly performs the Compositions as the Band's guitarist and lead vocalist.

16.     One of the Band's most successful and readily identifiable Compositions is "Blister In The Sun" (**"BITS"**).     BITS is the Band's signature song and a mainstay of the Band's ever-expanding music catalog.     Both die-hard fans and general audiences alike recognize BITS and, thus, the Band when they hear Ritchie's distinctive voice: the prominent bass line written and performed by Ritchie that grounds BITS's first measures and verses.

17.     Another successful and readily identifiable Composition is "Gone Daddy Gone" (**"GDG"**).     Gano contributed material and structure for GDG, portions of which were derived from a 1954 song by Chicago blues musician Willie Dixon titled "I Just Want To Make Love To

You"; Ritchie, however, completed GDG by contributing independently copyrightable material, such as musical notes, riffs, phrasings and structure.

**B.     Violent Femmes Businesses.**

18.    To further the Band's business activities, the longtime partners, Ritchie and Gano/Gorno Music, along with third parties, either individually or collectively, have formed the following entities:

(a)     Violent Femmes, Inc. (**"VF, Inc."**) is a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin. Upon information and belief, the Band's members own equal shares in VF, Inc.: Ritchie owns a one-third (1/3) interest, Gano/Gorno Music owns a one-third (1/3) interest and DeLorenzo owns a one-third (1/3) interest. Upon further information and belief, VF, Inc. publishes a majority of the Band's catalog items[1].

(b)     Violent Femmes Touring, Inc. (**"VF Touring"**) is a New York corporation with its principal place of business in New York, New York. Upon information and belief, Ritchie and Gano/Gorno Music own equal shares in VF Touring: Ritchie owns a one-half (1/2) interest and Gano/Gorno Music owns a one-half (1/2) interest. Upon further information and belief, VF Touring handles merchandising and publishing for the Band's live concerts.

(c)     Add It Up Productions, Inc. (**"Add It Up"**) is a Delaware corporation with its principal place of business in Roseland, New Jersey. Upon information and belief, Ritchie and Gano/Gorno Music own equal shares of Add It Up: Ritchie owns a one-half interest (1/2) and Gano/Gorno Music owns a one-half (1/2) interest. Upon further information and belief, Add It Up produces the Band's new musical compositions and sound recordings and publishes a minority of the Band's catalog items.

(d)     VF2, Inc. (**"VF2"**) is a Wisconsin corporation with its principal place of business

---

[1] "Catalog items" are sound recordings that have had their initial run, but are currently not promoted.

6

in Roseland, New Jersey. Upon information and belief, VF2 was dissolved on or about October 14, 2004 pursuant to a null and void agreement between Ritchie and Gano/Gorno music ("**2001 Agreement**"). A copy of the 2001 Agreement is attached hereto as "Exhibit B".

19.    Upon information and belief, Gano is the sole and exclusive owner of Gano/Gorno Music. Upon further information and belief, an attorney named Alan Skiena handles the day-to-day business activities of Gano/Gorno Music.

**C.    Basis for the Intra-Band Dispute.**

**i.    The Trademark VIOLENT FEMMES.**

20.    Ritchie alone named the Band "Violent Femmes" when it was formed during 1980. He is now the sole and exclusive owner of United States Trademark Registration No. 2699392, for the mark VIOLENT FEMMES, registered on March 25, 2003 for "entertainment in the nature of live performances by a musical group" and "audio recording and production". A copy of said registration is attached hereto as "Exhibit C". This registration is now valid, subsisting, uncancelled and unrevoked.

21.    Continuously since about 1980, and prior to Gano's admission to the Band, Ritchie has used the mark VIOLENT FEMMES in connection with and to identify the Entertainment Goods and Services provided by Ritchie (and at times, by Ritchie through the Band) in interstate and intrastate commerce throughout the United States including the State of New York. Ritchie has also used the trademark VIOLENT FEMMES to distinguish said Entertainment Goods and Services from similar goods and services offered by other individuals and entities by, *inter alia*, prominently displaying the trademark VIOLENT FEMMES on the Band's music albums, merchandise and related promotional materials.

22.    In addition, as of the filing of this Complaint, Ritchie is actively engaged in properly expanding his use of the trademark VIOLENT FEMMES in connection with the

Entertainment Goods and Services in good faith and in interstate commerce throughout the United States including the State of New York.

**ii.    The 2001 Agreement.**

23.    The 2001 Agreement served to amicably dissolve VF2. (See Ex. B at Preamble.) Unfortunately, the 2001 Agreement also served to create the intra-band dispute that forms, in part, the basis of this action. Specifically, Paragraph 7 of the 2001 Agreement disproportionately distributes the copyright and publishing royalties in and to the Compositions and Recordings between Ritchie and Gano/Gorno Music. (See Ex. B at ¶ 7.)

24.    Upon information and belief, the 2001 Agreement is null, void and/or unenforceable because it was coerced and/or induced by fraud and/or contains a material mutual mistake of fact and/or is unconscionable.

**D.    Defendant's Unlawful Activities.**

25.    Since the execution of the 2001 Agreement, Gano/Gorno Music and Skiena have neither fully paid Ritchie the royalties to which he is entitled to, nor provided Ritchie with any accounting of the royalty payments made to Ritchie. Since the 1980's (and more actively since 2002), Ritchie and Ritchie's authorized representatives have repeatedly made demand upon Gano/Gorno Music and Skiena to tender said payments and accountings; however, Gano/Gorno Music, himself and through Skiena, has completely disregarded Ritchie's continued demands.

26.    In addition, Gano/Gorno Music and Skiena have consistently barred Ritchie from participating in, becoming informed about or receiving royalty payments from the licensing of the Compositions, the Recordings and certain marks associated with Ritchie and/or the Band.

27.    For example, upon information and belief, Gnarls Barkley, the popular music duo, recently licensed and re-recorded GDG for inclusion in their 2006 debut album titled *St. Elsewhere.* Gano/Gorno Music apparently negotiated and granted said license despite the

8

repeated requests and demands of Ritchie to provide Ritchie with information about the terms of such license and the appropriate royalty payments from said license. As of the filing of this Complaint, Ritchie's requests and demands upon Gano/Gorno Music have been totally ignored.

28.     In another example, Gano/Gorno Music caused ruin to a lucrative business opportunity between Ritchie and Howard Comart, a certified public accountant who, at the time, was attempting to enter into the music publishing business by purchasing Ritchie's interests in and to the Compositions and Recordings. Upon the request of both Ritchie and Comart, Gano/Gorno Music and Skiena were supposed to provide Comart with a detailed accounting of Ritchie's interests in and royalties from the Compositions and Recordings, so Comart could make an informed decision about whether to purchase Ritchie's interests in and to the Compositions and Recordings. In an e-mail between Skiena and Comart dated November 30, 2006 ("**2006 E-mail**"), a copy of which is attached hereto as "Exhibit D", Skiena, on behalf of Gano/Gorno Music, provided Comart with three arbitrary figures – $14, 072.13, $18, 160.90 and $17, 137.05 – representing "[p]ayments made to [Ritchie] for" the years 2003, 2004 and 2005, respectively, and "a one-time upward adjustment in the amount of $2,039.39." (Ex. D.) As a result of Gano/Gorno Music and Skiena's refusal to provide Comart with requisite accountings concerning Ritchie's royalties from the Compositions and Recordings, Comart passed on the business opportunity of purchasing Ritchie's interests in and to the Compositions and Recordings.

29.     Moreover, upon information and belief, the figures provided in the 2006 E-mail are false and misleading statements of the royalties Ritchie was actually entitled to in the years 2003, 2004 and 2005.

30.     While barring Ritchie from participation, information and payment regarding the

9

Compositions and Recordings, Gano/Gorno Music and Skiena have also licensed the Compositions, the Recordings and said marks associated with the Band to third parties for use in or in connection with certain works, goods and/or services that cause probable and imminent economic harm to Ritchie and the Band.

31.    In about late 2006, for example, Gano/Gorno Music or Skiena licensed BITS to Wendy's International, Inc., the fast food restaurant ("**Wendy's**"), for use in a series of television, radio and Internet advertisements that promote Wendy's and its fast food products ("**Wendy's Advertisement**").  As with the license of GDG to Gnarls Barkley, Gano/Gorno Music granted said license to Wendy's despite the repeated requests and demands of Ritchie to provide Ritchie with information about and appropriate royalty payments from said license.  As of the filing of this Complaint, Ritchie's requests and demands upon Gano/Gorno Music have been totally ignored.

32.    Unlike the license of GDG to Gnarls Barkley, however, the Wendy's Advertisement has had more deleterious effects upon Ritchie and the Band.  The Wendy's Advertisement has damaged the goodwill inherent in said marks associated with Ritchie and the Band by disrupting the Band's existing fan base.  In an online blog, one fan commented on the Wendy's Advertisement by stating, "when I heard the Violent Femmes' seminal hit, 'Blister In The Sun' on the TV, my ears perked up.  Then my jaw dropped.  Then my heart sank."[2]

## VI.    CAUSES OF ACTION

A.    **COUNT 1 – Declaratory Judgment Concerning Musical Compositions Performed by Violent Femmes.**

33.    Plaintiff incorporates by reference Paragraphs 1 - 32 as if set forth herein.

34.    As set forth herein, ownership of the Compositions is disputed.  (See Ex. A.)

---

[2]    Andy Tarnoff, The Femmes and Wendy's: I can't add it up, OnMilwaukee.com, http://onmilwaukee.com/music/soundcheck/articles/femmeswendys.html (last visited May 2, 2007).

35.     Upon information and belief, Ritchie made independently copyrightable contributions to the Compositions and was intended to be the joint-author of the Compositions.

36.     Accordingly, Plaintiff seeks a Declaratory Judgment as follows:

(a)     Declaration that the Compositions are "joint-works", as that term is understood under the Copyright Act of 1976, 17 U.S.C. §101 *et seq.* and the common law of the United States;

(b)     Declaration that Ritchie is the joint-author of the Compositions and, therefore, owns fifty percent (50%) of all copyright rights in and to the Compositions; and

(c)     Declaration that Ritchie is entitled to his respective fifty percent (50%) share of all past and future royalties due from the administration of copyrights (including publishing rights) in and to the Compositions.

**B.     COUNT 2 – Declaratory Judgment Concerning Sound Recordings That Embody Performances by Violent Femmes.**

37.     Plaintiff incorporates by reference Paragraphs 1 - 36 as if set forth herein.

38.     As set forth herein, ownership of the Recordings is disputed. (See Ex. A.)

39.     Upon information and belief, Ritchie made independently copyrightable contributions to the Recordings and was intended to be the joint-author of the Recordings.

40.     Accordingly, Plaintiff seeks a Declaratory Judgment as follows:

(a)     Declaration that the Recordings are "joint-works", as that term is understood under the Copyright Act of 1976, 17 U.S.C. §101 *et seq.* and the common law of the United States;

(b)     Declaration that Ritchie is the joint-author of the Recordings and, therefore, owns fifty percent (50%) of all copyright rights in and to the Recordings; and

(c)     Declaration that Ritchie is entitled to his respective fifty percent (50%) share of

11

all past and future royalties due from the administration of copyrights (including publishing rights) in and to the Recordings.

**C.    COUNT 3 – Declaratory Judgment Concerning the Federal Trademark VIOLENT FEMMES.**

41.    Plaintiff incorporates by reference Paragraphs 1 - 40 as if set forth herein.

42.    As set forth herein, Ritchie is the sole and exclusive owner of the federally registered trademark VIOLENT FEMMES.

43.    Accordingly, Plaintiff seeks a Declaratory Judgment that Ritchie is the sole and exclusive owner of the trademark VIOLENT FEMMES, and any variation thereof, in connection with the Entertainment Goods and Services throughout the United States including the State of New York.

44.    In the alternative, Plaintiff seeks a Declaratory Judgment that, in relation to Gano/Gorno Music, Ritchie has superior rights in and to the trademark VIOLENT FEMMES, and any variation thereof, in connection with the Entertainment Goods and Services throughout the United States including the State of New York.

**D.    COUNT 4 – Declaratory Judgment Concerning the Common Law Trademark BLISTER IN THE SUN.**

45.    Plaintiff incorporates by reference Paragraphs 1 - 44 as if set forth herein.

46.    Upon hearing the song BITS, especially the opening bass line, consumers immediately associate it with the Entertainment Goods and Services.

47.    Since 1982, and through the filing of this Complaint, Ritchie and the Band have continuously used, and are actively engaged in expanding the use of BITS in connection with the Entertainment Goods and Services in good faith and in interstate and intrastate commerce throughout the United States including the State of New York.

48.    Accordingly, Plaintiff seeks a Declaratory Judgment as follows:

(a)    Declaration that, in whole or in part, BITS is a distinctive mark that consumers readily identify as being associated with Ritchie and/or the Band and the Entertainment Goods and Services they provide (hereinafter referred to as "**the trademark BLISTER IN THE SUN**"); and

(b)    Declaration that Ritchie, as a member of the Band, and/or the Band have trademark rights throughout the United States including the State of New York in and to the trademark BLISTER IN THE SUN.

**E.    COUNT 5 – Declaratory Judgment of a Partnership or Fiduciary Relationship.**

49.    Plaintiff incorporates by reference Paragraphs 1 - 48 as if set forth herein.

50.    Since the addition of Gano/Gorno Music to the Band in 1981, Ritchie and Gano/Gorno Music, as active and integral members of the Band and the Band's business activities, have associated to carry on as co-owners of the Band as a business for profit.  This venture's business activities include without limitation the aforementioned Entertainment Goods and Services.

51.    Accordingly, Plaintiff seeks a Declaratory Judgment as follows:

(a)    Declaration that Ritchie and Gano/Gorno Music have formed a partnership relationship pursuant to N.Y. P'SHIP LAW § 10;

(b)    Declaration that said partnership was formed in 1981 and is still in existence;

(c)    Declaration that said partnership is engaged in the business of providing the Entertainment Goods and Services;

(d)    Declaration that Ritchie and Gano/Gorno Music, as partners of said partnership, enjoy a fiduciary relationship with said partnership and with each other; and

(e)    Declaration that Ritchie and Gano/Gorno Music share equally in the profits, losses, obligations, management and rights afforded by said partnership.

13

52.    In the alternative, Ritchie and Gano/Gorno Music have enjoyed a special relationship of trust and confidence based on their long-enduring relationship as members of the Band and as business partners concerning the same. This special relationship began in 1981 with Gano's admission to the Band, was in existence on or about April 20, 2001 when Gano/Gorno Music coerced Ritchie into entering the 2001 Agreement, under which Richie entrusted Skiena with the duty to properly administer Ritchie's copyright and publishing rights in and to the Compositions and Recordings, and was in existence as of the filing of this Complaint. This special relationship exists independently from any contractual duties that Richie and Gano/Gorno Music may owe one another.

(a)    Accordingly, Plaintiff seeks a Declaratory Judgment that Ritchie and Gano/Gorno Music have enjoyed, and continue to enjoy, a fiduciary relationship.

**F.    COUNT 6 – Declaratory Judgment That the 2001 Agreement Is Null, Void and/or Unenforceable.**

53.    Plaintiff incorporates by reference Paragraphs 1 - 52 as if set forth herein.

**i.    Coercion.**

54.    Shortly before the 2001 Agreement, the Band accumulated debt (the "**Debt**"). Upon information and belief, the Debt consisted primarily of touring expenses the Band incurred over the years, such as commissions owed to road crews, tour managers and booking agents. Upon further information and belief, Ritchie and Gano/Gorno Music, as the Band's primary interest holders, were jointly liable for the Debt.

55.    In an effort to pay the Debt, Ritchie and Gano/Gorno Music agreed to take the Band on tour during 2001 ("**2001 Tour**"). The 2001 Tour was organized by Ritchie, Gano/Gorno Music and Jamie Kitman – the Band's then tour manager. Like any tour, the financial success of the 2001 Tour greatly depended upon the Band's ability to book a quality

14

concert venue; said ability depended greatly upon whether booking agents and promoters were willing to place their money and reputations on the line for the Band's promise to perform.

56.    Gano threatened to leave the 2001 Tour unless Ritchie entered into the 2001 Agreement and renounced all rights in and to the trademark VIOLENT FEMMES.  A departure by Gano from the 2001 Tour would result in the cancellation of about ten tour dates that the Band was contractually obligated to with the booking agents and promoters, as well as a loss of substantial income for Ritchie.  On one occasion, Gano acted upon his threats by purposefully failing to appear at the Band's 2001 concert at Brown University in Providence, Rhode Island. On other occasions, Gano, without Ritchie's knowledge or approval, unilaterally cancelled tour dates the Band had already agreed to, thereby straining the Band's working relationship with its booking agents and promoters.

57.    Gano's intentional interference directly reduced the Band's potential (and necessary) revenues from the 2001 Tour, thereby jeopardizing the Band's ability to satisfy the Debt and Ritchie's ability to make a living.  To guaranty the Band would continue the 2001 Tour, Ritchie had no choice but to enter into the 2001 Agreement; in other words, Gano/Gorno Music's threats and actions placed such economic pressure upon Ritchie that Ritchie's assent to the 2001 Agreement was coerced and hence involuntary.  Given the foregoing circumstances, the fiduciary and/or special relationship between Ritchie and Gano/Gorno Music as set forth herein, and the language of Paragraphs 1, 4, 7 and 9 of the 2001 Agreement, it is apparent that Gano/Gorno Music (Ritchie's partner and fiduciary) forced Ritchie to enter the 2001 Agreement against Richie's best interests and in violation of Gano/Gorno Music's obligations at law.  (See Ex. B at ¶ 1.)

58.    Accordingly, Plaintiff seeks a Declaratory Judgment that the 2001 Agreement is null and void and, therefore, unenforceable because Ritchie's contractual assent to the 2001 Agreement was coerced in violation of Gano/Gorno Music's fiduciary obligations.

**ii.    Mistake of Fact.**

59.    In the alternative, the 2001 Agreement was executed in error.  When Ritchie and Gano/Gorno Music executed the 2001 Agreement, they were both under the impression that it named Skiena as the "exclusive publishing administrat[or]" of the Compositions and Recordings for both Gano <u>and</u> Ritchie. (Ex. B at ¶ 7.)  Ritchie and Gano labored under this mutual mistake of fact because, *inter alia*, the plain language of two separate and conspicuous sentences within Paragraph 7 expressly stated that Skiena is responsible for "handling the administration and payment of Ritchie's income participation" in and to the Compositions and Recordings. (<u>Id.</u>)

60.    Skiena, however, refuses to be the exclusive publishing administrator for Ritchie as provided under the 2001 Agreement.  In a letter dated about March 6, 2007 ("**2007 Letter**"), a copy of which is attached hereto as "Exhibit E", Skiena admits the 2001 Agreement was mistakenly executed under the false premise that Skiena was to perform publishing administration services for Gano <u>and</u> Ritchie – "that statement was and is an error." (Ex. E at 2.)

61.    Accordingly, Plaintiff seeks a Declaratory Judgment that the Agreement is null and void and, therefore, unenforceable because, at the time of contracting, both Ritchie and Gano/Gorno Music labored under a material mistake of fact as to the administration of copyright and publishing rights in and to the Compositions and Recordings.

**iii.    Fraud In the Inducement.**

62.    In the alternative, Gano/Gorno Music and Skiena both knew Ritchie would perform his contractual obligation to assign his copyright and publishing rights in and to the Compositions and Recordings to Gano/Gorno Music in reliance upon the representation that

16

Skiena would act as Ritchie's attorney and administer said copyright and publishing rights and have a fiduciary obligation to pay Ritchie his ratable share of profits. Gano/Gorno Music and Skiena took advantage of Ritchie's trust by secretly intending never to perform their contractual obligations and reap the benefits of the Compositions and Recordings for themselves.

63.    For instance, upon information and belief, Gano/Gorno Music and Skiena both knew or should have known that the 2001 Agreement expressly names Skiena as the "exclusive publishing administrat[or]" for Gano/Gorno Music and Ritchie. (See Ex. B at ¶ 7.) In the 2007 Letter, however, Skiena expressly denies any obligation to Ritchie. (Ex. E at 2.) Skiena's denial shows that, at the time of contracting, Skiena had no intention of representing both Ritchie and Gano/Gorno Music, despite Ritchie and Gano/Gorno Music's express recitation to the contrary. (See Ex. B at ¶ 7.)

64.    Accordingly, Plaintiff seeks a Declaratory Judgment that the 2001 Agreement is null and void and, therefore, unenforceable because, at the time of contracting, Gano/Gorno Music and Skiena made false representations that Ritchie detrimentally relied upon by entering into the 2001 Agreement and assigning his copyright and publishing rights in and to the Compositions and Recordings to Gano/Gorno Music.

**iv.    Unconscionability.**

65.    In the alternative, the execution of the 2001 Agreement was – unbeknownst to Ritchie at the time of execution – clouded by a conflict of interest. Skiena recently claimed to be Gano/Gorno Music's personal attorney despite the fact that, as set forth in the 2001 Agreement, Skiena is the "exclusive publishing administrat[or]" for Gano/Gorno Music and Ritchie. (Ex. B at ¶ 7.) Due to this prevailing conflict of interest concerning Gano/Gorno Music and Skiena, the 2001 Agreement is unconscionable because Ritchie lacked any meaningful choice, was oppressed and/or was unfairly surprised by the conflict of interest when he executed the 2001

17

Agreement.

66.     Accordingly, Plaintiff seeks a Declaratory Judgment that the 2001 Agreement is unconscionable and, therefore, voidable at the option of Ritchie.

**G.     COUNT 7– Declaratory Judgment Concerning Administration of the Compositions and Recordings.**

67.     Plaintiff incorporates by reference Paragraphs 1 - 66 as if set forth herein.

68.     Gano/Gorno Music is unable and unwilling to properly administer the copyright and publishing rights in and to the Compositions and Recordings.   Gano/Gorno Music's continuing misadministration of said properties will destroy their marketability and value.

69.     Accordingly, Plaintiff seeks a Declaratory Judgment as follows:

(a)     Declaration that Ritchie has the sole and exclusive right to administer the copyright and publishing rights in and to the Compositions and Recordings;

(b)     Declaration that Richie, as the sole and exclusive administrator of said properties, has the sole and exclusive right to collect all monies derived from the exploitation of the Compositions and Recordings, and to pay the ratable share of said monies to the appropriate royalty interest holders; and

(c)     Declaration that Ritchie, as the sole and exclusive administrator of said properties, has the right to exclude Gano/Gorno Music from administering the copyright and publishing rights in and to the Compositions and Recordings.

**H.     COUNT 8– Breach of Contract, Unjust Enrichment and Breach of the Implied Covenant of Good Faith and Fair Dealing.**

70.     Plaintiff incorporates by reference Paragraphs 1 - 69 as if set forth herein.

71.     As set forth herein, the 2001 Agreement is null and void and unenforceable. Assuming, *arguendo*, that the 2001 Agreement is enforceable, then , in the alternative, Gano/Gorno Music is liable for breach of contract, unjust enrichment and/or breach of the

18

implied covenant of good faith and fair dealing.

72.    Ritchie has performed his obligations under the 2001 Agreement. Gano/Gorno Music and Skiena, however, have failed to perform their obligations under the 2001 Agreement by, *inter alia*, not accounting to Ritchie for his ratable share of profits from the exploitation of his property, and by refusing to tender any meaningful accounting statements.

73.    As a direct and proximate result of Gano's breach of contract, Ritchie has been damaged by, *inter alia*, the amount of monies that remain due to him under the 2001 Agreement.

74.    In the alternative, Gano/Gorno Music have enriched themselves since at least April 20, 2001 by impermissibly exploiting Ritchie's proprietary rights in and to the trademark VIOLENT FEMMES, the trademark BLISTER IN THE SUN, the Compositions and the Recordings without permission and without properly accounting to Ritchie for his share of royalties from said exploitations. Accordingly, Gano/Gorno Music's retention of the benefits from the unauthorized exploitation of Ritchie's property is equitably unjust.

75.    In the alternative, Gano/Gorno Music's exploitation of Ritchie's proprietary rights in and to the Compositions and Recordings pursuant to the 2001 Agreement was made in bad faith because Gano/Gorno Music derived personal economic benefits from the exploitation of Ritchie's property while intentionally failing to account to Ritchie for his share of royalties from said exploitations and, as set forth herein, intentionally causing waste to the future value of Ritchie's property for the purpose of present value gain.

76.    As a direct and proximate result of Gano/Gorno Music's breach of the 2001 Agreement's implied covenant of good faith and fair dealing, Ritchie has been damaged by, *inter alia*, the amount of monies that remain due to him under the 2001 Agreement and the loss of future net profits.

I.    **COUNT 9 – Breach of Fiduciary Duty.**

77.    Plaintiff incorporates by reference Paragraphs 1 -76 as if set forth herein.

78.    As set forth herein, Gano/Gorno Music has failed to pay and account to Ritchie for his ratable share of profits from the exploitation of the Compositions and Recordings. Accordingly, Gano/Gorno Music has breached his duty as a partner to share the profits of the partnership in violation of N.Y. P'SHIP LAW § 40(1).

79.    In addition, Gano/Gorno Music has ignored Ritchie's demands to render true and full information of all things affecting the partnership, including the rendering of proper accountings and the licensing of the song and trademark BLISTER IN THE SUN to Wendy's for use in the Wendy's Advertisement, an act that has caused waste to said properties. Accordingly, Gano/Gorno Music has breached his duty as a partner (a) to render information concerning the partnership to Ritchie in violation of N.Y. P'SHIP LAW § 42; and (b) to permit Ritchie to share in equal management of the partnership in violation of N.Y. P'SHIP LAW § 40(5).

80.    In the alternative, Gano/Gorno Music has committed the foregoing acts in breach of his fiduciary duty to Ritchie because, as set forth herein, Ritchie and Gano/Gorno Music have enjoyed, and continue to enjoy, a long-enduring fiduciary relationship that exists independently from any contractual duties that Ritchie and Gano/Gorno Music may owe one another. Ritchie has been damaged by Gano/Gorno Music's breach of fiduciary duty, including Gano/Gorno Music's continuing failure to pay royalties and render true and full information to his principal, Ritchie.

J.    **COUNT 10 – Action for an Accounting.**

81.    Plaintiff incorporates by reference Paragraphs 1 - 80 as if set forth herein.

82.    As set forth herein, despite repeated requests, Gano/Gorno Music and Skiena have refused to provide any information or proper accounting to Ritchie for his share of royalties or

from the exploitation of the Compositions and Recordings. Accordingly, Ritchie is entitled to an accounting of all consideration Gano/Gorno Music or Skiena (or anyone on their behalf) have received from the exploitation of Ritchie's property.

83.    In the alternative, Gano/Gorno Music has failed to account to Ritchie, Gano/Gorno Music's partner, for his ratable share of the partnership's profits from the exploitation of the partnership's property, namely the Compositions and Recordings. Accordingly, Ritchie is entitled to an accounting of his ratable share of monies the partnership has received from the exploitation of the partnership's property pursuant to N.Y. P'SHIP LAW § 44(1).

84.    In the alternative, Gano/Gorno Music, as the fiduciary of Ritchie, has failed to account to Ritchie for his share of royalties from the exploitation of the Compositions and Recordings. Accordingly, Ritchie is entitled to an accounting of monies Gano/Gorno Music has received from the exploitation of Ritchie's property.

**K.    COUNT 11 – Conversion.**

85.    Plaintiff incorporates by reference Paragraphs 1 - 84 as if set forth herein.

86.    As set forth herein, the Agreement is unenforceable.

87.    As joint-owner of the Compositions and Recordings, Ritchie has legal ownership of or an immediate superior right of possession in and to a share of royalties from the exploitation of said joint-works. Gano/Gorno Music have failed to account to Ritchie for said royalties, thereby maintaining wrongful control over Ritchie's property. Accordingly, Ritchie has been damaged by Gano/Gorno Music's conversion of the royalties that remain due to Ritchie.

L.   **COUNT 12 – False Endorsement, False Designation of Origin and Unfair Competition.**

88.   Plaintiff incorporates by reference Paragraphs 1 - 87 as if set forth herein.

89.   Ritchie is a celebrity because he is a founding and highly visible member of a famous musical group. The public associates Ritchie with the trademark BLISTER IN THE SUN and the trademark VIOLENT FEMMES because of his involvement with the Band.

90.   Gano/Gorno Music's improper licensing of these marks, including the Wendy's Advertisement, implies that Ritchie has endorsed the companies to which the licenses have been made (including, for example, Wendy's and its fast food products) in such a way that consumers have and are likely to be mislead about Ritchie's celebrity sponsorship or approval of these companies and their fast food products. Accordingly, Gano/Gorno Music has engaged in false endorsement, false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by capitalizing on Ritchie's valuable reputation and goodwill in a way likely to cause confusion or to deceive as to the affiliation, connection or association of Wendy's and its fast food products with Ritchie, or as to the sponsorship or approval of Wendy's and its fast food products by Ritchie.

M.   **COUNT 13 – Trademark Dilution and Injury to Business Reputation.**

91.   Plaintiff incorporates by reference Paragraphs 1 - 90 as if set forth herein.

92.   As set forth herein, the trademarks BLISTER IN THE SUN and VIOLENT FEMMES are famous trademarks in the United States and the State of New York, and they were famous prior to the commission of the unlawful activities alleged herein.

93.   Upon information and belief, Gano/Gorno Music's unlawful activities concerning the Wendy's Advertisement have diluted the distinctive quality of the trademark BLISTER IN THE SUN and the trademark VIOLENT FEMMES. As a result of the Wendy's Advertisement,

consumers now associate the trademark BLISTER IN THE SUN with Wendy's and its fast food products. This new association has had deleterious effects upon the trademarks, goodwill and business reputation of Ritchie and the Band. Accordingly, Gano/Gorno Music's use has blurred and tarnished the famous trademark BLISTER IN THE SUN, the famous trademark VIOLENT FEMMES and the business reputation of Ritchie and the Band/partnership, all of which constitutes trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and trademark dilution and injury to business reputation in violation of N.Y. GEN. BUS. LAW § 360-l.

**N.     COUNT 14 – Voice Misappropriation.**

94.     Plaintiff incorporates by reference Paragraphs 1 - 93 as if set forth herein.

95.     As set forth herein, Ritchie has a distinctive voice that the public associates with Ritchie and the signature song and trademark BLISTER IN THE SUN: his distinctive bass line that grounds the first measures and verses of BITS.

96.     Gano/Gorno Music has not obtained the written consent of Ritchie to use Ritchie's famous voice in the Wendy's Advertisement. Accordingly, Gano/Gorno Music violated Ritchie's right of publicity by misappropriating his voice for use in commercial advertisements without obtaining his written consent in violation of N.Y. CIV. RIGHTS LAW § 51.

**O.     COUNT 15 – Waste.**

97.     Plaintiff incorporates by reference Paragraphs 1 - 96 as if set forth herein.

98.     As set forth herein, Gano/Gorno Music's unauthorized license of BITS and the trademark BLISTER IN THE SUN to Wendy's for use in the Wendy's Advertisement has damaged the goodwill of said properties such that Gano/Gorno Music has committed waste upon Ritchie's proprietary rights in BLISTER IN THE SUN and, vis-à-vis the public's association of BLISTER IN THE SUN with the Band, the trademark VIOLENT FEMMES. Accordingly,

Gano/Gorno Music has caused probable and imminent economic harm to the future earning potential of the copyright and publishing rights in and to BITS, the trademark BLISTER IN THE SUN and the trademark VIOLENT FEMMES, thereby destroying the marketability and value of said properties owned and/or jointly-owned by Ritchie.

**P.    COUNT 16 – Fraud.**

99.    Plaintiff incorporates by reference Paragraphs 1 - 98 as if set forth herein.

100.    As set forth herein, Gano/Gorno Music and Skiena, at the time of contracting, made materially false representations about their intention to properly administer Ritchie's property and account to Ritchie for his share of royalties from the exploitation of his property. In entering into the 2001 Agreement and assigning his proprietary rights to Gano/Gorno Music, Ritchie detrimentally relied upon the representations of Gano/Gorno Music and Skiena. Gano/Gorno Music and Skiena have mis-administered Ritchie's property, thereby causing waste to the future value of Ritchie's property for the purpose of present value gain.

101.    As a direct and proximate result of Gano/Gorno Music's fraud, Ritchie has been damaged by, *inter alia*, the amount of monies that remain due to him under the Agreement and the loss of future revenue.

**Q.    COUNT 17 – Alternative Request for Rescission of the 2001 Agreement.**

102.    Plaintiff incorporates by reference Paragraphs 1 - 101 as if set forth herein.

103.    As set forth herein, Gano/Gorno Music induced Ritchie's assent to the 2001 Agreement by economic coercion. Gano/Gorno Music's wrongful conduct is the kind of coercion for which the law allows a rescission of the 2001 Agreement.

104.    In the alternative, and as set forth herein, the 2001 Agreement was entered into upon the Parties' mutual mistake of a material fact and is, therefore, void. Accordingly, the law allows a rescission of the 2001 Agreement.

24

105.    In the alternative, and as set forth herein, Gano/Gorno Music and Skiena fraudulently induced Ritchie into entering the 2001 Agreement.  Gano/Gorno Music and Skiena's wrongful conduct is the kind of fraud for which the law allows a rescission of the 2001 Agreement.

106.    In the alternative, as set forth herein, the 2001 Agreement is unconscionable and, therefore, voidable.  Accordingly, the law allows Ritchie to elect for a rescission of the 2001 Agreement without penalty.

107.    In the alternative, Gano/Gorno Music have failed to account to Ritchie for his ratable share of profits form the exploitation of his property in breach of the Agreement.  Gano/Gorno Music's failure to perform is the kind of breach for which the law allows a rescission of the Agreement.

**R.    COUNT 18 – Request for the Appointment of a Receiver.**

108.    Plaintiff incorporates by reference Paragraphs 1 - 107 as if set forth herein.

109.    As set forth herein, Gano/Gorno Music are unable and unwilling to properly administer the copyright and publishing rights in and to the Compositions and Recordings, as exemplified by, *inter alia*, Gano/Gorno Music's non-payment of royalties and the Wendy's Advertisement.  Gano/Gorno Music's continuing misadministration of said properties poses a clear and imminent danger to the future earning potential and goodwill of said properties, for which Ritchie has and will continue to suffer irreparable harm unless the Court appoints a receiver to administer and account for the properties currently controlled by Gano/Gorno Music.

110.    There is a substantial likelihood that Ritchie will prevail on the merits.  Moreover, the harm faced by Ritchie outweighs the harm that Gano/Gorno Music would sustain if the Court appoints a receiver.  Accordingly, the appointment of a receiver to administer and account for Ritchie's property under the control of Gano/Gorno Music is warranted.

S.    **COUNT 19 – Request for a Constructive Trust.**

111.    Plaintiff incorporates by reference Paragraphs 1 - 110 as if set forth herein.

112.    As set forth herein, Gano/Gorno Music have used, *inter alia*, Gano/Gorno Music's fiduciary relationship with Ritchie to unjustly enriched themselves by exploiting Ritchie's property without accounting to Ritchie for his share of royalties. Accordingly, Ritchie is entitled to the creation of a constructive trust for the benefit of Ritchie and with the corpus being the past and future monies that remain due to Ritchie.

T.    **COUNT 20 – Request for an Injunction.**

113.    Plaintiff incorporates by reference Paragraphs 1 - 112 as if set forth herein.

114.    Ritchie will suffer irreparable harm if the Court does not enjoin Gano/Gorno Music from the further administration of the copyright and publication rights in and to the Compositions and Recordings. As set forth herein, Gano/Gorno Music has already caused probable and imminent economic harm to the future earning potential of the Compositions and Recordings, thereby destroying the marketability and value of said properties owned and/or jointly-owned by Ritchie. The continued exercise of control over said properties by Gano/Gorno Music will only magnify said harm to the detriment of Ritchie and his property.

115.    There is a substantial likelihood that Ritchie will prevail on the merits. Moreover, the harm faced by Ritchie outweighs the harm that Gano/Gorno Music would sustain if the Court enjoins further administration of the Compositions and Recordings by Gano/Gorno Music. Accordingly, an order to permanently enjoin further administration of said properties by Gano/Gorno Music is warranted pursuant to N.Y. GEN. BUS. LAW § 360-l.

U.    **COUNT 21 – Request for Exemplary Damages.**

116.    Plaintiff incorporates by reference Paragraphs 1 - 115 as if set forth herein.

117.    As set forth herein, Gano/Gorno Music tortiously breached the fiduciary duties he

owes to Ritchie, which, upon information and belief, involved egregious conduct and wanton dishonesty on the part of Gano/Gorno Music. Accordingly, Gano/Gorno Music's tortious conduct is the kind for which the law allows an award of exemplary damages.

## V.    COUNT 22 – Request for Attorneys Fees and Costs of Suit.

118.    Plaintiff incorporates by reference Paragraphs 1 - 117 as if set forth herein.

119.    As a result of Gano/Gorno Music's activities as alleged herein, Ritchie has retained counsel and seeks reimbursement for his reasonable attorneys' fees and costs of suit pursuant to applicable law.

## VII.    REMEDIES REQUESTED

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.    for a Judgment in favor of Ritchie on all counts asserted herein;

2.    for a Declaratory Judgment in favor of Ritchie on the claims set forth in Count 1;

3.    for a Declaratory Judgment in favor of Ritchie on the claims set forth in Count 2;

4.    For a Declaratory Judgment in favor of Ritchie on the claims set forth in Count 3;

5.    For a Declaratory Judgment in favor of Ritchie on the claims set forth in Count 4;

6.    For a Declaratory Judgment in favor of Ritchie on the claims set forth in Count 5;

7.    For a Declaratory Judgment in favor of Ritchie on the claims set forth in Count 6;

8.    For a Declaratory Judgment in favor of Ritchie on the claims set forth in Count 7;

9.    Alternatively, for an order to rescind the 2001 Agreement;

10.    For an order appointing a receiver to administer and account for the copyrights and publishing rights of the Compositions and Recordings;

11.    For an order to create a constructive trust naming Ritchie as the beneficiary and designating the corpus as the past and future monies that remain due to Ritchie from the exploitation of his copyright and publishing rights in and to the Compositions and Recordings;

12.    For an order that Gano/Gorno Music account to Ritchie for Ritchie's ratable share of the past and future profits realized from the exploitation of his copyrights and publishing rights in and to the Compositions and Recordings;

13.    For a permanent injunction restraining further administration of the copyright and publishing rights in and to the Compositions and Recordings by Gano/Gorno Music;

14.    For actual damages according to law;

15.    For exemplary damages according to law;

16.    For Ritchie's costs in this action according to law;

17.    For Ritchie's reasonable attorneys' fees incurred herein according to law;

18.    For pre-judgment and post-judgment interest according to law; and

19.    For such other and further relief as the Court may deem just and proper.

## VIII.    DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: August 14, 2007

Respectfully submitted,

JACKSON WALKER L.L.P.

By:
Stacy Allen
Lawrence A. Waks*
Daniel Scardino*
Emilio B. Nicolas*
100 Congress Avenue, Suite 1100
Austin, Texas 78701
Tel.: (512) 236-2000
Fax.: (512) 236-2002
Email: lwaks@jw.com, stacyallen@jw.com,
dscardino@jw.com, enicolas@jw.com
(*pro hac vice admission to be requested)

ATTORNEYS FOR BRIAN RITCHIE,
individually and d/b/a VIOLENT FEMMES

28

MELONI Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN RITCHIE, individually and d/b/a
VIOLENT FEMMES,

                 Plaintiff,

       -v-

GORDON GANO, individually and d/b/a GORNO
MUSIC a/k/a GORNO MUSIC (ASCAP) a/k/a
GORNO MUSIC PUBLISHING,

             Defendants.

No. 07-CIV-7269 (VM)

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S FIRST REQUEST
FOR ADMISSIONS**

TO:    Defendant Gordon Gano, individually and d/b/a Gorno Music a/k/a Gorno Music
(ASCAP) a/k/a Gorno Music Publishing, through his attorneys of record, Robert S.
Meloni, Esq. and Thomas P. McCaffrey, Esq., Meloni & McCaffrey, P.C., 1350 Avenue
of the Americas, Suite 3100, New York, New York 10019, tel.: (212) 957-5577.

      Pursuant to the Federal Rules of Civil Procedure and the Local Civil Rules of the

Southern District of New York, Plaintiff Brian Ritchie, individually and d/b/a Violent Femmes

("Plaintiff"), submits the following response to the First Request for Admissions (the

"Requests") of Defendant Gordon Gano, individually and d/b/a Gorno Music a/k/a Gorno Music

(ASCAP) a/k/a Gorno Music Publishing ("Defendant").

1

## GENERAL OBJECTIONS

The following general objections are made with respect to all Requests, and all responses are made subject to and without waiving these general objections:

1.  Plaintiff responds on the basis of the best information currently available and subject to additional and different knowledge or information concerning the relevant facts as may result from discovery, further investigation and pre-trial preparation by Plaintiff.

2.  Plaintiff reserves his right to revise, correct, clarify, supplement, amend or add to these responses in a supplemental response pursuant to federal law, if and when necessary.

3.  Plaintiff objects to the Definitions and Instructions to the Requests to the extent they seek to impose a burden beyond that allowed by federal law.

4.  Plaintiff objects to the Requests as being repetitious and/or seeking information that is unreasonably cumulative or duplicative.

5.  Plaintiff objects to the Requests as "not being separately set forth." FED. R. CIV. P. 36(a).

6.  Plaintiff objects to the Requests as being unreasonably burdensome or duplicative, especially with regard to the outrageous number of requests for admission (and discrete subparts thereto). FED. R. CIV. P. 26(b)(2)(C)(i).

7.  Plaintiff objects to the Requests as being vague and/or ambiguous, not simple and direct and limited to singular relevant facts, thereby preventing Plaintiff from responding with a simple admit or deny, without explanation. FED. R. CIV. P. 26(b)(2)(C)(i).

8.  Plaintiff objects to the Requests as premature. Fact discovery in this case is still ongoing, Plaintiff is currently investigating the relevant facts, and neither Plaintiff nor Defendant has taken any oral or written depositions of fact witnesses. Accordingly, Plaintiff's responses to the Requests are preliminary and based on only the facts as are currently known and understood by Plaintiff. To the extent Plaintiff becomes aware of additional facts or information that are relevant to or bear on the Requests, Plaintiff has the right and obligation to timely supplement his responses to the Requests, and will do so.

## RESPONSE TO FIRST REQUEST FOR ADMISSIONS

Subject to the foregoing general objections, and subject to the following specific objections, Plaintiff responds to the Requests as follows:

**REQUEST NO. 1.**    Admit that Exhibit A attached hereto is a true and correct copy of the exclusive recording agreement dated February 25, 1983 between Slash Records on the one hand, and Gordon Gano, Brian Ritchie and Victor De Lorenzo, professionally known as the Violent Femmes, on the other, consisting of 38 pages (the "1983 Slash Agreement").

**RESPONSE:**    Plaintiff admits that the document attached as Exhibit A is an agreement dated February 25, 1983 between Slash Records on the one hand, and Gordon Gano, Brian Ritchie and Victor De Lorenzo, professionally known as the Violent Femmes, on the other, consisting of 38 pages; otherwise deny.

**REQUEST NO. 2.**    Admit that a true and accurate copy of the authentic signature of Brian Ritchie appears on the signature line above the words "BRIAN RITCHIE" on page 37 of the 1983 Slash Agreement attached hereto as Exhibit A.

**RESPONSE:**    Admit.

**REQUEST NO. 3.**    Admit that Brian Ritchie's signature, on page 37 of the 1983 Slash Agreement attached hereto as Exhibit A, was not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**    Admit.

**REQUEST NO. 4.**    Admit that as of February 25, 1983, the 1983 Slash Agreement attached hereto as Exhibit A was a valid and enforceable agreement.

**RESPONSE:**    Plaintiff objects because this request calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or an interrogatory. Furthermore, this request is irrelevant to the issues in this case. Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 5.**    Admit that Brian Ritchie, Gordon Gano and Victor De Lorenzo were represented by attorney Jim Charne, Esq. of Hutzler & Knupp in connection with the negotiation and execution of the 1983 Slash Agreement attached hereto as Exhibit A.

**RESPONSE:**    Admit.

**REQUEST NO. 6.**    Admit that pursuant to paragraph 4 of the 1983 Slash Agreement attached hereto as Exhibit A, that Slash Records was the original sole and exclusive owner of all copyrights in and to all of the Sound Recordings recorded by and embodying the performances of Brian Ritchie, Gordon Gano and Victor De Lorenzo pursuant to the 1983 Slash Agreement attached hereto as Exhibit A, including the Sound Recordings contained on each of the following Violent Femmes albums entitled:

(a)     "Violent Femmes";

(b)     "*Hallowed Ground*";

(c)     "*The Blind Leading The Naked*";

(d)     "*3*";

(e)     "*Why Do Birds Sing*";

(f)     "*Why Do Birds Sing-Limited Edition Tour Package 2-Disc Set*"; and

(g)     "*Add It Up [1981-1993].*"

**RESPONSE:**          Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 7.**     Admit that the Sound Recordings listed on Schedule A of the 1983 Slash Agreement attached hereto as Exhibit A are "Blister in the Sun," "Kiss Off," "Please do Not Go,", "Add It Up," "Confessions," Prove My Love," "Promise," "To The Kill," "Gone Daddy Gone," and "Good Feeling" (the "Initial Slash Masters")

**RESPONSE:**          Admit.

**REQUEST NO. 8.**     Admit that the Initial Slash Masters listed on Schedule A of the 1983 Slash Agreement attached hereto as Exhibit A are included as Sound Recordings that are owned by Slash Records pursuant to paragraph 4 of Exhibit A.

**RESPONSE:**          Plaintiff objects because  this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 9.**     Admit that the document attached hereto as Exhibit B is a true and correct copy of the Bill of Sale dated April 30, 1983 from Mark Van Hecke, Victor De Lorenzo, Brian Ritchie and Gordon Gano, as partners and soles owners in a business known as Violent Femmes, a partnership, on the one hand, to Violent Femmes, Inc., a Wisconsin Corporation, on the other hand, of all of the rights, title and interest in the partnership known as "Violent Femmes."

**RESPONSE:**          Admit.

**REQUEST NO. 10.**     Admit that a true and accurate copy of the authentic signature of Brian Ritchie appears on one of the signature lines above his printed name on the Bill of Sale dated April 30, 1983 attached as Exhibit B.

**RESPONSE:**          Admit.


**REQUEST NO. 11.**    Admit that Brian Ritchie's signature on the Bill of Sale dated April 30, 1983 attached as Exhibit B was not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**          Admit.

**REQUEST NO. 12.**    Admit that as of April 30, 1983, the Bill of Sale dated April 30, 1983 attached as Exhibit B was a valid and enforceable agreement.

**RESPONSE:**          Deny.  Plaintiff objects because  this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 13.**    Admit that the 5-page document attached hereto as Exhibit C is a true and correct copy of the agreement dated as of June 29, 1983 between Victor De Lorenzo, Brian Ritchie and Gordon Gano, professionally known as "The Violent Femmes," on the one hand, and Violent Femmes, Inc., on the other, constituting an assignment and assumption of certain rights and obligations by Violent Femmes, Inc. of all of the rights and obligations of Victor De Lorenzo, Brian Ritchie and Gordon Gano under the 1983 Slash Agreement attached hereto as Exhibit A.

**RESPONSE:**          Admit.

**REQUEST NO. 14.**    Admit that true and accurate copies of the authentic signatures of Brian Ritchie appear on two of the signature lines on page 5 of Exhibit C.

**RESPONSE:**          Admit.

**REQUEST NO. 15.**    Admit that Brian Ritchie signed Exhibit C in both his individual capacity and on behalf of Violent Femmes, Inc.

**RESPONSE:**          Admit.

**REQUEST NO. 16.**    Admit that Brian Ritchie's signatures on Exhibit C were not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**          Admit.

**REQUEST NO. 17.**    Admit that as of June 29, 1983, the agreement dated June 29, 1983 attached as Exhibit C was a valid and enforceable agreement.

**RESPONSE:**          Plaintiff objects because  this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is

irrelevant to the issues in this case. Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 18.**    Admit that Brian Ritchie, Gordon Gano and Victor De Lorenzo were represented by independent legal counsel in connection with the preparation and execution of the agreement dated as of June 29, 1983 attached hereto as Exhibit C.

**RESPONSE:**        Plaintiff objects to this request as being vague and ambiguous as to the word "independent."

**REQUEST NO. 19.**    Admit that the document attached hereto as Exhibit D is a true and correct copy of the Agreement dated as of July 25, 1988 between Slash Records, on the one hand, and Brian Ritchie, Gordon Gano and Victor De Lorenzo, professionally known as the Violent Femmes, on other hand (the "1988 Slash Agreement").

**RESPONSE:**        Admit.

**REQUEST NO. 20.**    Admit that a true and accurate copy of the authentic signature of Brian Ritchie appears on the signature line above his printed name on pages 8 and A-5 of the 1988 Slash Agreement attached as Exhibit D.

**RESPONSE:**        Admit.

**REQUEST NO. 21.**    Admit that Brian Ritchie's signatures on pages 8 and A-5 of the 1988 Slash Agreement attached as Exhibit D were not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**        Admit.

**REQUEST NO. 22.**    Admit that page 7 at paragraph 9 of the 1988 Slash Agreement attached as Exhibit D, provides that neither Brian Ritchie nor Victor De Lorenzo may "use, exploit or reproduce, or authorize others to use, exploit or reproduce, the name The Violent Femmes' or any name similar thereto or other name utilized by the group currently and professionally known as 'The Violent Femmes' in connection with the exploitation and reproduction of [Brian] Ritchie's or [Victor] De Lorenzo's solo artist performances in any media," or otherwise other than as agreed under the terms of the 1988 Slash Agreement attached as Exhibit D.

**RESPONSE:**        Plaintiff admits part of this Request, specifically that the language cited accurately recites the language in the Exhibit ; Plaintiff, however, denies the remainder of this Request.

**REQUEST NO. 23.**    Admit that as of July 25, 1988, the 1988 Slash Agreement attached hereto as Exhibit D was a valid and enforceable agreement.

**RESPONSE:**        Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory. Furthermore, this request is

irrelevant to the issues in this case. Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 24.**    Admit that Brian Ritchie, Gordon Gano and Victor De Lorenzo were represented by independent legal counsel named Alan Mintz, Esq., of Ziffren Brittenham & Branca, in connection with the negotiation and execution of the 1988 Slash Agreement attached as Exhibit D.

**RESPONSE:**        Plaintiff objects to this request as being vague and ambiguous as to the word "independent."

**REQUEST NO. 25.**    Admit that the document attached hereto as Exhibit E are true and correct counterpart copies of the Agreement dated as of December 10, 1984 between Slash Records, on the one hand, and Violent Femmes, Inc., on other hand. (the "1984 Slash Amendment").

**RESPONSE:**        Admit.

**REQUEST NO. 26.**    Admit that a true and accurate copy of the authentic signature of Brian Ritchie appears on the signature line above his printed name on page 3 of the second counterpart copy of the 1984 Slash Amendment attached as Exhibit E.

**RESPONSE:**        Admit.

**REQUEST NO. 27.**    Admit that Brian Ritchie's signature page 3 of the second counterpart copy of the 1984 Slash Amendment attached as Exhibit E was not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**        Admit.

**REQUEST NO. 28.**    Admit that as of December 10, 1984, the 1984 Slash Amendment attached as Exhibit E was a valid and enforceable amendment to the 1983 Slash Agreement.

**RESPONSE:**        Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory. Furthermore, this request is irrelevant to the issues in this case. Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 29.**    Admit that Brian Ritchie, Gordon Gano and Victor De Lorenzo were represented by independent legal counsel in connection with the negotiation and execution of the 1984 Slash Amendment attached as Exhibit E.

**RESPONSE:**        Plaintiff objects to this request as being vague and ambiguous as to the word "independent."

**REQUEST NO. 30.**    Admit that the document attached hereto as Exhibit F is a true and correct copy of the "Settlement Agreement and Mutual Releases" dated as of February 1, 1993

7

between (1) J. Ruby Productions, Inc, doing business as Slash Records, a California Corporation, and (2) Elektra Entertainment, Inc., a division of Warner Communications, Inc. ("Elektra Records"), and (3) Victor De Lorenzo, Brian Ritchie and Gordon Gano, individually and doing business as The Violent Femmes (the "1993 Slash Settlement Agreement").

**RESPONSE:**          Admit.

**REQUEST NO. 31.**     Admit that a true and accurate copy of the authentic signature of Brian Ritchie appears on the signature line above his printed name on page 25 of the 1993 Slash Settlement Agreement attached as Exhibit F.

**RESPONSE:**          Admit.

**REQUEST NO. 32.**     Admit that Brian Ritchie's signature on page 25 of the 1993 Slash Settlement Agreement attached as Exhibit F was not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**          Admit.

**REQUEST NO. 33.**     Admit that on page 13 of the 1993 Slash Settlement Agreement attached as Exhibit F, paragraph 5 provides that Slash Records is owner of all rights in and to the Sound Recordings and audio-visual recordings that were created by the Violent Femmes pursuant to the 1983 Slash Agreement attached hereto as Exhibit A, as amended by the Agreement dated as of July 25, 1988 attached hereto as Exhibit D, including without limitation, the Sound Recordings identified as the "Greatest Hits Masters and described in Schedule "1" of Exhibit F .

**RESPONSE:**          Plaintiff objects because  this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.  Plaintiff admits part of this Request, specifically that the document attached as Exhibit F states on page 13 that:

> a) All of the recordings subject to Recording Agreement, including, without limitation, all Masters and all audio-visual recordings created thereunder, and all rights therein and thereto, shall remain the property of Slash in accordance with and subject to the provisions of the Recording Agreement.  Further, without limiting the generality of the foregoing, Slash shall continue to have the right to exploit such recordings, all in accordance with the provisions of the Recording Agreement, including, without limitation, the use of the names and the likenesses of the Violent Femmes in connection therewith and reproduction of musical compositions or other selections embodies in Masters or audiovisual recordings.  Slash shall continue to have the right to exercise all of its other rights pursuant to the Recording Agreement other than the right to require the Violent Femmes to record for

and deliver to Slash additional master recordings and/or
audiovisual recordings.

b) Slash and Violent Femmes hereby agree that Violent
Femmes shall remain obligated to Slash with respect to those re-
recording restrictions set forth in the Recording Agreement, which
restrictions shall survive the termination of the term of the
Recording Agreement. Additionally, Violent Femmes shall remain
obligated to Slash with respect to those other warranties,
representations or agreements made by Violent

Plaintiff, however, denies the remainder of this Request.

**REQUEST NO. 34.**     Admit that the "rights" referred to on page 13 of the 1993 Slash
Settlement Agreement attached as Exhibit F, paragraph 5, includes all copyrights, including all
renewals and extensions thereof, in and to all of the Sound Recordings recorded by and
embodying the performances of Brian Ritchie, Gordon Gano and Victor De Lorenzo pursuant to
the 1983 Slash Agreement attached hereto as Exhibit A, as amended by the Agreement dated as
of July 25, 1988 attached hereto as Exhibit D.

**RESPONSE:**          Plaintiff objects because this calls for speculation, assumes facts not in
evidence, and is more appropriate for a deposition or interrogatory. Furthermore, this request is
irrelevant to the issues in this case. Plaintiff is not by this lawsuit challenging the assertion by
any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 35.**     Admit that Brian Ritchie, Gordon Gano and Victor De Lorenzo were
represented by independent legal counsel named Gary Baker, Esq., of Mayer, Katz, Baker,
Leibowitz & Roberts, P.C., in connection with the negotiation and execution of the 1993 Slash
Settlement Agreement attached as Exhibit F.

**RESPONSE:**          Plaintiff objects to this request as being vague and ambiguous as to the
word "independent."

**REQUEST NO. 36.**     Admit that as of February 1, 1993, the 1993 Slash Settlement
Agreement attached as Exhibit F was a valid and enforceable agreement.

**RESPONSE:**          Plaintiff objects because this calls for speculation, assumes facts not in
evidence, and is more appropriate for a deposition or interrogatory. Furthermore, this request is
irrelevant to the issues in this case. Plaintiff is not by this lawsuit challenging the assertion by
any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 37.**     Admit that the album entitled "*Violent Femmes*" was commercially
released, sold and distributed by or under the authority of Slash Records in or about 1983
pursuant to the terms of the Agreements attached hereto as Exhibits A and/or D.

**RESPONSE:**          Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 38.**    Admit that the album entitled "*Violent Femmes*" includes the following Sound Recordings embodying the performances of Gordon Gano, Brian Ritchie and Victor De Lorenzo, professionally known as the Violent Femmes:

(a)     "Blister in the Sun";

(b)     "Kiss Off';

(c)     "Please Do Not Go";

(d)     "Add It Up";

(e)     "Confessions";

(f)     "Prove My Love";

(g)     "Promise";

(h)     "To The Kill";

(i)     "Gone Daddy Gone";

(j)     "Good Feeling";

(k)     "Ugly"; and

(l)     "Gimmie the C

**RESPONSE:**          Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.  Plaintiff admits part of this Request, specifically that the Schedule attached to Exhibit A lists the songs on "Violent Femmes."

**REQUEST NO. 39.**    Admit that J. Ruby Productions, Inc, doing business as Slash Records, a California Corporation, owned, from the inception of recording thereof, and Warner Bros. now owns, all copyright ownership interests in and to all of the following Sound Recordings contained on the album entitled "*Violent Femmes*": "Blister in the Sun"; "Kiss Off'; "Please Do Not Go"; "Add It Up"; "Confessions"; "Prove My Love"; "Promise"; "To The Kill"; "Gone Daddy Gone"; "Good Feeling"; "Ugly"; and "Gimmie the Car".

**RESPONSE:**          Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is

irrelevant to the issues in this case. Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 40.**     Admit that Brian Ritchie has no ownership interest in any copyrights in and to any of the following Sound Recordings contained on the album entitled "*Violent Femmes*": "Blister in the Sun"; "Kiss Off"; "Please Do Not Go"; "Add It Up"; "Confessions"; "Prove My Love"; "Promise"; "To The IC ; "Gone Daddy Gone"; "Good Feeling"; "Ugly"; and "Gimmie the Car".

**RESPONSE:**          Deny.

**REQUEST NO. 41.**     Admit that the album "*Hallowed Ground*" was commercially released, sold and distributed by or under the authority of Slash Records in or about 1985 pursuant to the terms of the Agreements attached hereto as Exhibits A and/or D.

**RESPONSE:**          Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory. Furthermore, this request is irrelevant to the issues in this case. Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 42.**     Admit that the album entitled "*Hallowed Ground*" includes the following Sound Recordings embodying the performances of Gordon Gano, Brian Ritchie and Victor De Lorenzo, professionally known as the Violent Femmes:

(a)      "Country Death Song";

(b)      "I Hear the Rain";

(c)      "Never Tell";

(d)      "Jesus Walking on the Water";

(e)      "I know It's True But I'm Sorry to Say";

(f)      "Hallowed Ground";

(g)      "Sweet Misery Blues";

(h)      "Black Girls"; and

(i)      "It's Gonna Rain."

**RESPONSE:**          Admit. Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory. Furthermore, this request is irrelevant to the issues in this case. Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 43.**    Admit that Slash Records owned, from the inception of recording thereof, and Warner Bros. Records now owns, all copyright ownership interests in and to all of the following Sound Recordings contained on the album entitled "*Hallowed Ground*": "Country Death Song"; "I Hear the Rain"; "Never Tell"; "Jesus Walking on the Water"; "I know It's True But I'm Sorry to Say"; "Hallowed Ground"; "Sweet Misery Blues"; "Black Girls"; and "It's Gonna Rain".

**RESPONSE:**    Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 44.**    Admit that Brian Ritchie has no ownership interest in any copyrights in and to any of the following Sound Recordings contained on the album entitled "*Hallowed Ground*": "Country Death Song"; "I Hear the Rain"; "Never Tell"; "Jesus Walking on the Water"; "I know It's True But I'm Sorry to Say"; "Hallowed Ground"; "Sweet Misery Blues"; "Black Girls"; and "It's Gonna Rain".

**RESPONSE:**    Deny.

**REQUEST NO. 45.**    Admit that the album "*The Blind Leading The Naked*" was commercially released, sold and distributed by or under the authority of Slash Records in or about 1986 pursuant to the terms of the Agreements attached hereto as Exhibits A and/or D.

**RESPONSE:**    Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 46.**    Admit that the album entitled "*The Blind Leading The Naked*" includes the following Sound Recordings embodying the performances of Gordon Gano, Brian Ritchie and Victor De Lorenzo, professionally known as the Violent Femmes:

(a)    "Old Mother Reagan";

(b)    "No Killing";

(c)    "Faith";

(d)    "Breakin' Hearts";

(e)    "Special";

(f)    "Love & Me Makes Three";

(g)    "Candlelight Song";

(h)    "I Held her In My Arms";

(i)    "Children of the Revolution";

(j)    "Good Friend";

(k)    "Heartache";

(l)    "Cold Canyon"; and

(m)    "Two People."

**RESPONSE:**    Admit.  Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 47.**    Admit that Slash Records owned, from the inception of recording thereof, and Warner Bros. Records now owns, all copyright ownership interests in and to all of the following Sound Recordings contained on the album entitled "*The Blind Leading The Naked*": "Old Mother Reagan"; "No Killing"; "Faith"; "Breakin' Hearts"; "Special"; "Love & Me Makes Three"; "Candlelight Song"; "I Held her In My Arms"; "Children of the Revolution"; "Good Friend"; "Heartache"; "Cold Canyon"; and "Two People".

**RESPONSE:**    Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 48.**    Admit that Brian Ritchie has no ownership interest in any copyrights in and to any of the following Sound Recordings contained on the album entitled "*The Blind Leading The Naked*": "Old Mother Reagan"; "No Killing"; "Faith"; "Breakin' Hearts"; "Special"; "Love & Me Makes Three"; "Candlelight Song"; "I Held her In My Arms"; "Children of the Revolution"; "Good Friend"; "Heartache"; "Cold Canyon"; and "Two People".

**RESPONSE:**    Deny.

**REQUEST NO. 49.**    Admit that the album "*3*" was commercially released, sold and distributed by or under the authority of Slash Records in or about 1989 pursuant to the terms of the Agreements attached hereto as Exhibits A and/or D.

**RESPONSE:**    Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 50.**    Admit that the album entitled "*3*" includes the following Sound Recordings embodying the performances of Gordon Gano, Brian Ritchie and Victor De Lorenzo, professionally known as the Violent Femmes:

(a)     "Nightmares";

(b)     "Just Like My Father";

(c)     "Dating Days";

(d)     "Fat";

(e)     "Fool in the Full Moon";

(f)     "World We're Living In";

(g)     "Outside the Palace";

(h)     "Telephone Book";

(i)     "Mother of a Girl";

(j)     "Lies"; and

(k)     "See My Stripes."

**RESPONSE:**         Admit.  Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 51.**     Admit that Slash Records owned, from the inception of recording thereof, and Warner Bros. Records now owns, all copyright ownership interests in and to all of the following Sound Recordings contained on the album entitled "*3*": "Nightmares"; "Just Like My Father"; "Dating Days"; "Fat"; "Fool in the Full Moon"; "World We're Living In"; "Outside the Palace"; "Telephone Book"; Mother of a Girl"; Lies"; and "See My Stripes."

**RESPONSE:**         Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 52.**     Admit that Brian Ritchie has no ownership interest in the copyrights for the following Sound Recordings contained on the album entitled "*3*": "Nightmares"; "Just Like My Father"; "Dating Days"; "Fat"; "Fool in the Full Moon"; "World We're Living In"; "Outside the Palace"; "Telephone Book"; Mother of a Girl"; Lies"; and "See My Stripes".

**RESPONSE:**         Deny.

**REQUEST NO. 53.**     Admit that the album "Why Do Birds Sing?" was commercially released, sold and distributed by or under the authority of Slash Records in or about 1991 pursuant to the terms of the Agreements attached hereto as Exhibits A and/or D.

**RESPONSE:**        Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory. Furthermore, this request is irrelevant to the issues in this case. Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 54.**    Admit that the album "*Why Do Birds Sing?*" includes the following Sound Recordings embodying the performances of Gordon Gano, Brian Ritchie and Victor De Lorenzo, professionally known as the Violent Femmes:

      (a)      "American Music";

      (b)      "Out The Window";

      (c)      "Look Like That";

      (d)      "Do You Really Want To Hurt Me";

      (e)      "Hey Nonny Nonny";

      (f)      "Used To Be";

      (g)      "Girl Trouble";

      (h)      "He Likes Me";

      (i)      "Life Is A Scream";

      (j)      "Flamingo Baby";

      (k)      "Lack Of Knowledge";

      (l)      "More Money Tonight"; and

      (m)      "I'm Free".

**RESPONSE:**        Admit. Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory. Furthermore, this request is irrelevant to the issues in this case. Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 55.**    Admit that Slash Records owned, from the inception of recording thereof, and Warner Bros. Records now owns, all copyright ownership interests in and to all of the following Sound Recordings contained on the album entitled "*Why Do Birds Sing?*": "American Music"; "Out The Window"; "Look Like That"; "Do You Really Want To Hurt Me"; "Hey Nonny Nonny"; "Used To Be"; "Girl Trouble"; "He Likes Me"; "Life Is A Scream"; "Flamingo Baby"; "Lack Of Knowledge"; "More Money Tonight"; and "I'm Free".

**RESPONSE:**          Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 56.**    Admit that Brian Ritchie has no ownership interest in the copyrights for the following Sound Recordings contained on the album entitled "*Why Do Birds Sing*?": "American Music"; "Out The Window"; "Look Like That"; "Do You Really Want To Hurt Me"; "Hey Nonny Nonny"; "Used To Be"; "Girl Trouble"; "He Likes Me"; "Life Is A Scream"; "Flamingo Baby"; "Lack Of Knowledge"; "More Money Tonight"; and "I'm Free".

**RESPONSE:**          Deny.

**REQUEST NO. 57.**    Admit that the album "*Add It Up*" was commercially released, sold and distributed by or under the authority of Slash Records in or about 1993 pursuant to the terms of the Agreements attached hereto as Exhibits A and/or D.

**RESPONSE:**          Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 58.**    Admit that the album "*Add It Up*" includes the following Sound Recordings embodying the performances of Gordon Gano, Brian Ritchie and Victor De Lorenzo, professionally known as the Violent Femmes:

(a)    "Intro";

(b)    "Waiting for the Bus";

(c)    "Blister in the Sun";

(d)    "Gone Daddy Gone";

(e)    "Gordon's Message";

(f)    "Gimmie the Car";

(g)    "Country Death Song";

(h)    "Black Girls";

(i)    "Jesus Walking on the Water";

(j)    "36-24-36";

(k)    "I Held Her In My Arms";

16

     (l)     "I Hate The TV";

     (m)    "America Is";

     (n)     "Old Mother Reagan";

     (o)     "Degradation";

     (p)     "Dance M.F. Dance!";

     (q)     "Lies";

     (r)     "American Music";

     (s)     "Out The Window";

     (t)     "Kiss Off";

     (u)     "Add It Up";

     (v)     "Vancouver" and

     (w)     "Johnny".

**RESPONSE:**       Admit.  Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 59.**    Admit that Slash Records owned, from the inception of recording thereof, and Warner Bros. Records now owns, all copyright ownership interests in and to all of the following Sound Recordings contained on the album entitled "*Add It Up*": "Intro"; "Waiting for the Bus"; "Blister in the Sun"; "Gone Daddy Gone"; "Gordon's Message"; "Gimmie the Car"; "Country Death Song"; "Black Girls"; "Jesus Walking on the Water"; "36-24-36"; "I Held Her In My Arms"; "I Hate The TV"; "America Is"; "Old Mother Reagan"; "Degradation"; "Dance M.F. Dance!"; "Lies"; "American Music"; "out The Window"; "Kiss Off"; "Add It Up"; "Vancouver" and "Johnny".

**RESPONSE:**       Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 60.**    Admit that Brian Ritchie has no ownership interest in the copyrights for the following Sound Recordings contained on the album entitled "*Add It Up*": "Intro"; "Waiting for the Bus"; "Blister in the Sun"; "Gone Daddy Gone"; "Gordon's Message"; "Gimmie the Car"; "Country Death Song"; "Black Girls"; "Jesus Walking on the Water"; "36-24-36"; "I Held Her In My Arms"; "I Hate The TV"; "America Is"; "Old Mother Reagan"; "Degradation"; "Dance M.F.

Dance!"; "Lies"; "American Music"; "out The Window"; "Kiss Off'; "Add It Up"; "Vancouver" and "Johnny".

**RESPONSE:**            Deny.

**REQUEST NO. 61.**    Admit that the album "*Machine*" was commercially released, sold and distributed by or under the authority of Slash Records in or about 1993 pursuant to the terms of the Agreements attached hereto as Exhibits A and/or D.

**RESPONSE:**            Deny. Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory. Furthermore, this request is irrelevant to the issues in this case. Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 62.**    Admit that the album "*Machine*" includes the following Sound Recordings embodying the performances of Gordon Gano, Brian Ritchie and Victor De Lorenzo, professionally known as the Violent Femmes:

        (a)      "Machine (LP version)";

        (b)      "Machine (Dogpile Remix)";

        (c)      "Balkan Falcon";

        (d)      "Chinese Rocks"; and

        (e)      "Color Me Once (Live version)".

**RESPONSE:**            Admit. Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory. Furthermore, this request is irrelevant to the issues in this case. Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 63.**    Admit that Slash Records owned, from the inception of recording thereof, and Warner Bros. Records now owns, all copyright ownership interests in and to all of the following Sound Recordings contained on the album entitled "*Machine*": "Machine (Dogpile Remix)"; "Balkan Falcon"; "Chinese Rocks"; and "Color Me Once (Live version)".

**RESPONSE:**            Deny. Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory. Furthermore, this request is irrelevant to the issues in this case. Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 64.**    Admit that Brian Ritchie has no ownership interest in the copyrights for the Sound Recordings contained on the album entitled "*Machine*": "Machine (LP version)"; "Machine (Dogpile Remix)"; "Balkan Falcon"; "Chinese Rocks"; and "Color Me Once (Live version)".

**RESPONSE:**        Deny.

**REQUEST NO. 65.**    Admit that the album "*Why Do Birds Sing*? (*Limited Edition Tour Package*)" was commercially released, sold and distributed by or under the authority of Slash Records pursuant to the terms of the Agreements attached hereto as Exhibits A and/or D.

**RESPONSE:**        Deny.  Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 66.**    Admit that the Disc 1 on the album "*Why Do Birds Sing*? (*Limited Edition Tour Package*)" includes the following Sound Recordings embodying the performances of Gordon Gano, Brian Ritchie and Victor De Lorenzo, professionally known as the Violent Femmes:

    (a)    "American Music";

    (b)    "Out The Window";

    (c)    "Look Like That";

    (d)    "Do You Really Want To Hurt Me";

    (e)    "Hey Nonny Nonny";

    (f)    "Used To Be";

    (g)    "Girl Trouble";

    (h)    "He Likes Me";

    (i)    "Life Is A Scream";

    (j)    "Flamingo Baby";

    (k)    "Lack Of Knowledge";

    (l)    "More Money Tonight"; and

    (m)    "I'm Free".

**RESPONSE:**        Admit.  Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 67.**     Admit that the Disc 2 on the album "*Why Do Birds Sing*? (*Limited Edition Tour Package*)" includes the following Sound Recordings embodying the performances of Gordon Gano, Brian Ritchie and Victor De Lorenzo, professionally known as the Violent Femmes:

     (a)     "Used To Be";

     (b)     "Dance M.F. Dance!";

     (c)     "Promise"; and

     (d)     "To The Kill".

**RESPONSE:**     Admit.  Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 68.**     *NO #68 IN ORIGINAL REQUESTS*

THERE IS NO 68 IN DEFENDANTS' REQUESTS FOR ADMISSION

**REQUEST NO. 69.**     Admit that Slash Records owned, from the inception of recording thereof, and Warner Bros. Records now owns, all copyright ownership interests in and to all of the following Sound Recordings contained on the album entitled "*Why Do Birds Sing*? (*Limited Edition Tour Package*)": "American Music"; "Out The Window"; "Look Like That"; "Do You Really Want To Hurt Me"; "Hey Nonny Nonny"; "Used To Be"; "Girl Trouble"; "He Likes Me"; "Life Is A Scream"; "Flamingo Baby"; "Lack Of Knowledge"; "More Money Tonight"; "I'm Free"; "Used To Be"; "Dance M.F. Dance!"; "Promise"; and "To The Kill" .

**RESPONSE:**     Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 70.**     Admit that Brian Ritchie has no ownership interest in the copyrights for the Sound Recordings contained on the album entitled "*Why Do Birds Sing*? (*Limited Edition Tour Package*)": "American Music"; "Out The Window"; "Look Like That"; "Do You Really Want To Hurt Me"; "Hey Nonny Nonny"; "Used To Be"; "Girl Trouble"; "He Likes Me"; "Life Is A Scream"; "Flamingo Baby"; "Lack Of Knowledge"; "More Money Tonight"; "I'm Free"; "Used To Be"; "Dance M.F. Dance!"; "Promise"; and "To The Kill".

**RESPONSE:**     Deny.

**REQUEST NO. 71.**     Admit that the album "*Violent Femmes* (*Deluxe Edition*)" was commercially released, sold and distributed by or under the authority of Slash Records pursuant to the terms of the Agreements attached hereto as Exhibits A and/or D.

**RESPONSE:**          Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 72.**     Admit that "*Disc 1: Original Album*" from the album " *Violent Femmes* (*Deluxe Edition*)" includes the following Sound Recordings embodying the performances of Gordon Gano, Brian Ritchie and Victor De Lorenzo, professionally known as the Violent Femmes:

      (a)    "Blister in the Sun";

      (b)    "Kiss Off";

      (c)    "Please Do Not Go";

      (d)    "Add It Up";

      (e)    "Confessions";

      (f)    "Prove My Love";

      (g)    "Promise";

      (h)    "To The Kill";

      (i)    "Gone Daddy Gone"; and

      (j)    "Good Feeling".

**RESPONSE:**          Admit.  Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 73.**     Admit that "*Disc 1: Demos & More*" from the album " *Violent Femmes* (*Deluxe Edition*)" also includes alternate versions and demos of the Sound Recordings embodying the performances of Gordon Gano, Brian Ritchie and Victor De Lorenzo, professionally known as the Violent Femmes:

      (a)    "Girl Trouble";

      (b)    "Breakin' Up";

      (c)    "Waiting for the Bus";

      (d)    "Blister in the Sun";

(e)      "Kiss Off;

(f)      "Please Do Not Go";

(g)      "Add It Up";

(h)      "Confessions";

(i)      "Prove My Love";

(j)      "Ugly (UK Single)"; and

(k)      "Gimmie the Car (U.K. Single)".

**RESPONSE:**          Admit.  Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 74.**      Admit that "*Disc 2: Live Recordings*" from the album " *Violent Femmes (Deluxe Edition)*" includes the following "Live Recordings" of the Sound Recordings embodying the performances of Gordon Gano, Brian Ritchie and Victor De Lorenzo, professionally known as the Violent Femmes:

(a)      "Special";

(b)      "Country Death Song";

(c)      "To The Kill";

(d)      "Never Tell";

(e)      "Break Song";

(f)      "Her Television";

(g)      "How Do You Say Goodbye";

(h)      "Theme and Variations";

(i)      "Prove My Love";

(j)      "Gone Daddy Gone";

(k)      "Promise";

(l)      "In Style";

(m)      "Add It Up";

22

(n)    "Michael Feldman interview"; and

(o)    "Kiss Off".

**RESPONSE:**        Admit.

**REQUEST NO. 75.**    Admit that Slash Records owned, from the inception of recording thereof, and Warner Bros. Records now owns, all copyright ownership interests in and to all of the following Sound Recordings contained on " *Violent Femmes (Deluxe Edition) - Disc 1: Original Album*": "Blister in the Sun"; "Kiss Off"; "Please I)o Not Go"; "Add It Up"; "Confessions"; "Prove My Love"; "Promise"; To The Kill"; "Gone Daddy Gone"; and "Good Feeling".

**RESPONSE:**        Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 76.**    Admit that Slash Records owned, from the inception of recording thereof, and Warner Bros. Records now owns, all copyright ownership interests in and to all of the alternate versions and demos of the Sound Recordings contained on " *Violent Femmes (Deluxe Edition) - Disc 1: Demos & More*": "Girl Trouble"; "Breakin' Up"; "Waiting for the Bus"; "Blister in the Sun"; "Kiss Off"; "Please Do Not Go"; "Add It Up"; "Confessions"; "Prove My Love"; "Ugly"; and "Gimmie the Car (U.K. Single)".

**RESPONSE:**        Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 77.**    Admit that Slash Records owned, from the inception of recording thereof, and Warner Bros. Records now owns, all copyright ownership interests in and to the Sound Recordings contained on " *Violent Femmes (Deluxe Edition) - Disc 2: Live Recordings*": "Special"; "Country Death Song"; "To The Kill"; "Never Tell"; "Break Song"; "Her Television"; "How Do You Say Goodbye"; "Theme and Variations"; "Prove My Love"; "Gone Daddy Gone"; "Promise"; "In Style"; "Add It Up"; Michael Feldman interview"; and "Kiss Off".

**RESPONSE:**        Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 78.**    Admit that Brian Ritchie has no ownership interest in the copyrights in the Sound Recordings contained on " *Violent Femmes (Deluxe Edition) - Disc 1: Original Album*": "Blister in the Sun"; "Kiss Off"; "Please Do Not Go"; "Add It Up"; "Confessions"; "Prove My Love"; "Promise"; "To The Kill"; "Gone Daddy Gone"; and "Good Feeling".

**RESPONSE:**              Deny.

**REQUEST NO. 79.**    Admit that Brian Ritchie has no ownership interest in the copyrights in the Sound Recordings contained on " *Violent Femmes (Deluxe Edition) - Disc 1: Demos & More*": "Girl Trouble"; "Breakin' Up"; "Waiting for the Bus"; "Blister in the Sun"; "Kiss Off"; "Please Do Not Go"; "Add It Up"; "Confessions"; "Prove My Love"; "Ugly"; and "Gimmie the Car (U.K. Single)".

**RESPONSE:**              Deny.

**REQUEST NO. 80.**    Admit that Brian Ritchie has no ownership interest in the copyrights in the Sound Recordings contained on " *Violent Femmes (Deluxe Edition) - Disc 2: Live Recordings*: "Special"; "Country Death Song"; "To The Kill"; "Never Tell"; "Break Song"; "Her Television"; "How Do You Say Goodbye"; "Theme and Variations"; "Prove My Love"; "Gone Daddy Gone"; "Promise"; "In Style"; "Add It Up"; "Michael Feldman interview"; and "Kiss Off".

**RESPONSE:**              Deny.

**REQUEST NO. 81.**    Admit that songwriting credits contained on the following Violent Femmes albums commercially released, sold and distributed by or under the authority of Slash Records pursuant to the terms of the Slash Agreement, as amended, attached hereto as Exhibits A and/or D accurately describes the composers of the musical compositions listed thereon:

      (a)      "*Violent Femmes*";

      (b)      "*Hallowed Ground*";

      (c)      "*The Blind Leading The Naked*";

      (d)      "*3*";

      (e)      "*Why Do Birds Sing*";

      (f)      "*Machine*";

      (g)      "*Why Do Birds Sing-Limited Edition Tour Package 2-Disc Set*";

      (h)      "*Add It Up [1981-1993]*"; and

      (i)      "*Violent Femmes (Deluxe Edition)*."

**RESPONSE:**              Deny.

**REQUEST NO. 82.**    Admit that the document attached hereto as Exhibit G is a true and correct copy of the "Exclusive Artist's Recording Agreement" dated as of September 28, 1993 between Elektra Records, Inc., on the one hand, and Brian Ritchie and Gordon Gano, individually and collectively professionally known as "VIOLENT FEMMES," on the other hand (the "1993 Elektra Agreement").

**RESPONSE:**          Admit.

**REQUEST NO. 83.**     Admit that a true and accurate copy of the authentic signature of Brian Ritchie appears on the signature line above his printed name on page 49 of the 1993 Elektra Agreement attached as Exhibit G.

**RESPONSE:**          Admit.

**REQUEST NO. 84.**     Admit that Brian Ritchie's signature on page 49 of the 1993 Elektra Agreement attached as Exhibit G was not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**          Admit.

**REQUEST NO. 85.**     Admit that pursuant to paragraph 5 of the 1993 Elektra Agreement attached as Exhibit G, Elektra Records owned, from the inception of recording thereof, and Elektra Records (or its legal assigns) now owns, all copyright ownership interests in and to all of the Sound Recordings recorded by the Violent Femmes during the contract term of the 1993 Elektra Agreement.

**RESPONSE:**          Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 86.**     Admit that as of September 28, 1993, the 1993 Elektra Agreement attached as Exhibit G was a valid and enforceable agreement.

**RESPONSE:**          Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 87.**     Admit that Brian Ritchie, Gordon Gano and Victor De Lorenzo were represented by independent legal counsel in connection with the negotiation and execution of the 1993 Elektra Agreement attached as Exhibit G.

**RESPONSE:**          Plaintiff objects to this request as being vague and ambiguous as to the word "independent."

**REQUEST NO. 88.**     Admit that the document attached hereto as Exhibit H is a true and correct copy of the Termination Agreement dated as of January 2, 1995 between Elektra Entertainment, Inc., on the one hand, and Brian Ritchie and Gordon Gano, professionally known as the "Violent Femmes", on the other hand (the "1995 Elektra Termination Agreement").

**RESPONSE:**          Admit.

**REQUEST NO. 89.**    Admit that a true and accurate copy of the authentic signature of Brian Ritchie appears on the signature line above his printed name on page 3 of 1995 Elektra Termination Agreement attached as Exhibit H.

**RESPONSE:**        Admit.

**REQUEST NO. 90.**    Admit that Brian Ritchie's signature on page 3 of 1995 Elektra Termination Agreement attached as Exhibit H was not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**        Admit.

**REQUEST NO. 91.**    Admit that on page on page 3 of the 1995 Elektra Termination Agreement attached as Exhibit H, paragraph 7 provides that Elektra Records retains all rights, including the copyright ownership interests therein, in the Sound Recordings that were recorded by the Violent Femmes pursuant to the 1993 Elektra Agreement attached as Exhibit G.

**RESPONSE:**        Deny.

**REQUEST NO. 92.**    Admit that the only Sound Recordings the Violent Femmes recorded for Elektra Records pursuant to the 1993 Elektra Agreement attached as Exhibit G are those appearing on the album entitled "*New Times*."

**RESPONSE:**        Plaintiff admits part of this Request, specifically that the songs on the album were recorded pursuant to the Elektra Agreement.

**REQUEST NO. 93.**    Admit that the Violent Femmes album entitled " *New Times* " was commercially released, sold and distributed in or about 1994 by or under the authority of Elektra Records pursuant to the 1993 Elektra Agreement attached as Exhibit G contained the following Sound Recordings embodying the performances of Brian Ritchie and Gordon Gano Admit, professionally known as the Violent Femmes:

      (a)     "Don't Start Me on the Liquor";

      (b)     "New Times";

      (c)     "Breakin' Up";

      (d)     "Key of 2";

      (e)     "4 Seasons";

      (f)     "Machine";

      (g)     "I'm Nothing";

      (h)     "When Everybody's Happy";

(i)      "Agamemnon";

(j)      "This Island Life";

(k)      "I Saw You in the Crowd";

(l)      "Mirror Mirror (I See A Damsel)"; and

(m)      "Jesus of Rio".

**RESPONSE:**      Admit.  Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 94.**      Admit that Elektra Records owned, from the inception of recording thereof, and Elektra Records (or its legal assigns) now owns, all copyright ownership interests in and to all of the following Sound Recordings contained on the album entitled " *New Times* ": "Don't Start Me on the Liquor"; "New Times"; "Breakin' Up"; "Key of 2"; "4 Seasons"; "Machine"; "I'm Nothing"; When Everybody's Happy"; "Agamemnon"; "This Island Life"; "I Saw You in the Crowd"; "Mirror Mirror (I See A Damsel)"; Jesus of Rio".

**RESPONSE:**      Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 95.**      Admit that Brian Ritchie has no ownership interests in the copyrights to the following Sound Recordings contained on the album entitled " *New Times* ": "Don't Start Me on the Liquor"; "New Times"; "Breakin' Up"; "Key of 2"; "4 Seasons"; "Machine"; "I'm Nothing"; When Everybody's Happy"; "Agamemnon"; "This Island Life"; "I Saw You in the Crowd"; "Mirror Mirror (I See A Damsel)"; Jesus of Rio".

**RESPONSE:**      Deny.

**REQUEST NO. 96.**      Admit that the document attached hereto as Exhibit I is a true and correct copy of the "Termination and Settlement Agreement" dated as of "_____ 1993" between Victor DeLorenzo, on the one hand, and Brian Ritchie and Gordon Gano, on the other hand (the "1993 DeLorenzo Settlement Agreement").

**RESPONSE:**      Admit.

**REQUEST NO. 97.**      Admit that a true and accurate copy of the authentic signature of Brian Ritchie appears on the signature line above his printed name on page 12 of the 1993 DeLorenzo Settlement Agreement attached as Exhibit I.

**RESPONSE:**      Admit.

**REQUEST NO. 98.**    Admit that Brian Ritchie's signature on the 1993 DeLorenzo Settlement Agreement attached as Exhibit I was not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**    Plaintiff cannot admit or deny because discovery in this case is ongoing; therefore, Plaintiff must deny.

**REQUEST NO. 99.**    Admit that on page 1 of the 1993 DeLorenzo Settlement Agreement attached as Exhibit I, paragraph 1(b) provides that Gordon Gano and Brian Ritchie "represent that the names 'Violent Femmes' and 'The Violent Femmes' have always been the sole and exclusive property of' Gordon Gano and Brian Ritchie.

**RESPONSE:**    Admit.

**REQUEST NO. 100.**    Admit that on page 3 and "schedule A" of 1993 DeLorenzo Settlement Agreement attached as Exhibit I, paragraph 2(b) identifies the Sound Recordings owned by Slash Records as including all Sound Recordings recorded by the Violent Femmes "before April 15, 1993" including, without limitation, all of the Sound Recordings embodying the performances of Brian Ritchie, Gordon Gano and Victor De Lorenzo, professionally known as the Violent Femmes, appearing on the following Violent Femmes albums: "*Violent Femmes*"; "*Why Do Birds Sing?*"; "*3*"; "*Hallowed Ground*"; "*The Blind Leading The Naked*"; "*Add It Up (Greatest Hits)*"; and "*Color Me Once*".

**RESPONSE:**    Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.  Plaintiff admits part of this Request, specifically Plaintiff admits that paragraph 2(6) speaks for itself and that the "Schedule A" speaks for itself.

**REQUEST NO. 101.**    Admit that Brian Ritchie does not have any ownership interests in the copyrights to the Sound Recordings contained on the following Violent Femmes albums: "*Violent Femmes*"; "*Why Do Birds Sing?*"; "*3*"; "*Hallowed Ground*"; "*The Blind Leading The Naked*"; "*Add It Up (Greatest Hits)*"; and "*Color Me Once*".

**RESPONSE:**    Deny.  Plaintiff objects because this request is duplicative of previous requests.

**REQUEST NO. 102.**    Admit that Brian Ritchie does not have any ownership interests in the copyrights to any of the Sound Recordings recorded by Brian Ritchie, Gordon Gano and Victor De Lorenzo, professionally known as the Violent Femmes, before April 15, 1993.

**RESPONSE:**    Deny.  Plaintiff objects because this request is duplicative of previous requests.

**REQUEST NO. 103.**    Admit that the document attached hereto as Exhibit J is a true and correct copy of the Agreement dated as of "October _____, 1991" between Violent

Femmes, Inc., on the one hand, and BCL Finance (Ireland) Ltd., on the other hand (the "1991 BCL Finance Agreement").

**RESPONSE:**          Admit.

**REQUEST NO. 104.**    Admit that a true and accurate copy of the authentic signatures of Brian Ritchie appears on the signature line for "Violent Femmes, Inc." on page 20, and the third signature line on page (ii) of the (Exhibit A) Guarantee Agreement, of the 1991 BCL Finance Agreement attached as Exhibit J.

**RESPONSE:**          Admit.

**REQUEST NO. 105.**    Admit that the date directly beneath Brian Ritchie's signature on page 20 of the 1991 BCL Finance Agreement attached as Exhibit J is November 6, 1991.

**RESPONSE:**          Admit.

**REQUEST NO. 106.**    Admit that Brian Ritchie's signatures on page 20 and the (Exhibit A) Guarantee Agreement of the 1991 BCL Finance Agreement attached as Exhibit J were not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**          Admit.

**REQUEST NO. 107.**    Admit that on page 1 of the 1991 BCL Finance Agreement attached as Exhibit J, paragraph 1(a) represents that Violent Femmes, Inc., as licensor under the agreement, "exclusively owns and controls the Violent Femmes name, likeness, trademark and official logo".

**RESPONSE:**          Plaintiff admits part of this Request, specifically, Plaintiff admits that the quoted language appears in the section stated, Plaintiff, however, denies the remainder of the Request.

**REQUEST NO. 108.**    Admit that the document attached hereto as Exhibit K is a true and correct copy of the Agreement dated as of April 1, 1995 between Interscope Records, a California general partnership ("Interscope Records"), on the one hand, and "VF2, Inc., a Wisconsin Corporation furnishing the services of Brian Ritchie and Gordon Gano (professionally known as the Violent Femmes)," on the other hand (the "1995 Interscope Agreement").

**RESPONSE:**          Admit.

**REQUEST NO. 109.**    Admit that as of April 1, 1995, VF2, Inc. was a Wisconsin Corporation owned by Brian Ritchie and Gordon Gano.

**RESPONSE:**          Admit.

**REQUEST NO. 110.**    Admit that continuously since April 1, 1995 to the present, VF2, Inc. has been and is now a Wisconsin Corporation owned by Brian Ritchie and Gordon Gano.

**RESPONSE:**          Deny.

**REQUEST NO. 111.**    Admit that a true and accurate copy of the authentic signature of Brian Ritchie appears on the signature line above his printed name on page 70 of the 1995 Interscope Agreement attached as Exhibit K.

**RESPONSE:**          Admit.

**REQUEST NO. 112.**    Admit that Brian Ritchie's signature on page 70 of the 1995 Interscope Agreement attached as Exhibit K was not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**          Admit.

**REQUEST NO. 113.**    Admit that VF2, Inc., Brian Ritchie and Gordon Gano were represented by independent legal counsel named Jamie Young, Esq., of Ziffren Brittenham & Branca, in connection with the negotiation and execution of the 1998 Interscope Agreement attached as Exhibit K.

**RESPONSE:**          Plaintiff objects to this request as being vague and ambiguous as to the word "independent."

**REQUEST NO. 114.**    Admit that on pursuant to paragraph 7 of the 1995 Interscope Agreement attached as Exhibit K, Interscope Records owned, from the inception of recording thereof, all copyright ownership interests in and to all of the Sound Recordings recorded by the Violent Femmes pursuant the 1995 Interscope Agreement.

**RESPONSE:**          Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 115.**    Admit that as of April 1, 1995, the 1995 Interscope Agreement attached as Exhibit K was a valid and enforceable agreement.

**RESPONSE:**          Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 116.**    Admit that the document attached hereto as Exhibit L is a true and correct copy of the Agreement dated April 1, 1998 between Interscope Records, on the one hand, and VF2, Inc., on the other hand (the "1998 Interscope Termination Agreement").

**RESPONSE:**          Admit.

**REQUEST NO. 117.**    Admit that VF2, Inc., Brian Ritchie and Gordon Gano were represented by independent legal counsel in connection with the negotiation and execution of the 1998 Interscope Termination Agreement attached as Exhibit L.

**RESPONSE:**    Plaintiff objects to this request as being vague and ambiguous as to the word "independent."

**REQUEST NO. 118.**    Admit that a true and accurate copy of the authentic signature of Brian Ritchie appears on the signature line for "VF2, Inc." on page 4 of the 1998 Interscope Termination Agreement attached as Exhibit L.

**RESPONSE:**    Admit.

**REQUEST NO. 119.**    Admit that Brian Ritchie's signature on the 1998 Interscope Termination Agreement attached as Exhibit L was not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**    Admit.

**REQUEST NO. 120.**    Admit that the following Sound Recordings, also listed on "Schedule 1" of the 1998 Interscope Termination Agreement attached as Exhibit L, embody the performances of Brian Ritchie and Gordon Gano (professionally known as the Violent Femmes) and were recorded by them during the term of and pursuant to the 1995 Interscope Agreement (the "Interscope Masters"):

    (a)    "In Bad";

    (b)    "Freak Magnet";

    (c)    "All I Want";

    (d)    "Rejoice And Be Happy";

    (e)    "I'm Nothing";

    (f)    "Positively 4th Street";

    (g)    "A Story (featuring Pierce Henry)";

    (h)    "Happiness Is";

    (i)    "Forbidden";

    (j)    "Mosh Pit";

    (k)    "Yes, Oh Yes";

    (l)    "When You Died";

31

     (m)    "Requiem";

     (n)    "Reckless Stories";

     (o)    "I Danced Before I Had Two Left Feet"; and

     (p)    "Raquel".

**RESPONSE:**      Admit.  Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 121.**   Admit that on page 2 of the 1998 Interscope Termination Agreement attached as Exhibit L, paragraph 6 memorializes Interscope Records' quit claim assignment to VF2, Inc. of all of its right, title and interest in and to the Interscope Masters listed on Schedule 1 of Exhibit L.

**RESPONSE:**      Admit.

**REQUEST NO. 122.**   Admit that Schedule 1 of Exhibit L (the Interscope Masters) lists the following Sound Recordings as being assigned to VF2, Inc.: "In Bad"; "Freak Magnet"; "All I Want"; Rejoice And Be Happy"; "I'm Nothing"; Positively 4th Street"; "A Story (featuring Pierce Henry)"; "Happiness Is"; "Forbidden"; "Mosh Pit"; "Yes, Oh Yes"; "When You Died"; "Requiem"; "Reckless Stories"; "I Danced Before I Had Two Left Feet"; and "Raquel".

**RESPONSE:**      Admit.

**REQUEST NO. 123.**   Admit that the rights assigned to VF2, Inc. in the foregoing quit claim assignment to VF2, Inc. attached as Exhibit L included the worldwide copyrights in and to the Interscope Masters.

**RESPONSE:**      Admit.

**REQUEST NO. 124.**   Admit that as of April 1, 1998, VF2, Inc. owned all right, title and interest, including the worldwide copyrights therein, in and to the following Sound Recordings: "In Bad"; "Freak Magnet"; "All I Want"; Rejoice And Be Happy"; "I'm Nothing"; Positively 4th Street"; "A Story (featuring Pierre Henry)"; "Happiness Is"; "Forbidden"; "Mosh Pit"; "Yes, Oh Yes"; "When You Died"; "Requiem"; "Reckless Stories"; Danced Before I Had Two Left Feet"; and "Raquel".

**RESPONSE:**      Admit.

**REQUEST NO. 125.**   Admit that as of April 1, 1998, VF2, Inc. (or its legal successor in interest, Add It Up Productions, Inc.) has owned, and now owns, all right, title and interest, including the worldwide copyrights therein, in and to the following Sound Recordings:

     (a)    "In Bad";

(b)      "Freak Magnet";

(c)      "All I Want";

(d)      "Rejoice And Be Happy";

(e)      "I'm Nothing";

(f)      "Positively 4th Street";

(g)      "A Story (featuring Pierce Henry)";

(h)      "Happiness Is";

(i)      "Forbidden";

(j)      "Mosh Pit";

(k)      "Yes, Oh Yes";

(l)      "When You Died";

(m)      "Requiem";

(n)      "Reckless Stories";

(o)      "I Danced Before I Had Two Left Feet"; and

(p)      "Raquel".

**RESPONSE:**          Admit.

**REQUEST NO. 126.**    Admit that Brian Ritchie, in his individual capacity, has no direct ownership rights in and to the copyrights on the following Sound Recordings: "In Bad"; "Freak Magnet"; "All I Want"; Rejoice And Be Happy"; "I'm Nothing"; Positively 4th Street"; "A Story (featuring Pierce Henry)"; "Happiness Is"; "Forbidden"; "Mosh Pit"; "Yes, Oh Yes"; "When You Died"; "Requiem"; "Reckless Stories"; "I Danced Before I Had Two Left Feet"; and "Raquel."

**RESPONSE:**          Deny.

**REQUEST NO. 127.**    Admit that as of April 1, 1998, the 1998 Interscope Termination Agreement attached as Exhibit L was a valid and enforceable agreement.

**RESPONSE:**          Admit.

**REQUEST NO. 128.**    Admit that the document attached hereto as Exhibit M is a true and correct copy of the "Letter of Agreement" dated July 29, 1999 between VF2, Inc., on the one hand, and Cooking Vinyl Ltd., on the other hand, executed on December 8, 1999, including

"Schedule One" annexed thereto and referred to in paragraph 6 thereof (the "1999 Cooking Vinyl Agreement").

**RESPONSE:**          Admit.

**REQUEST NO. 129.**   Admit that a true and accurate copy of the authentic signature of Brian Ritchie appears on the signature line on behalf of "VF2, Inc." on page 8 of the 1999 Cooking Vinyl Agreement attached as Exhibit M.

**RESPONSE:**          Admit.

**REQUEST NO. 130.**   Admit that Brian Ritchie's signature on the 1999 Cooking Vinyl Agreement attached as Exhibit M was not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**          Plaintiff cannot admit or deny because discovery in this case is ongoing; therefore, Plaintiff must deny.

**REQUEST NO. 131.**   Admit that as of July 29, 1999, the 1999 Cooking Vinyl Agreement attached as Exhibit M was a valid and enforceable agreement.

**RESPONSE:**          Plaintiff cannot admit or deny because discovery in this case is ongoing; therefore, Plaintiff must deny.  Plaintiff also objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 132.**   Admit that VF2, Inc. was represented by independent legal counsel in connection with the negotiation and execution of the 1999 Cooking Vinyl Agreement attached as Exhibit M.

**RESPONSE:**          Admit.

**REQUEST NO. 133.**   Admit that the "Schedule One" to the 1999 Cooking Vinyl Agreement attached as Exhibit M lists Gordon Gano as the sole "Composer" and Gorno Music as the sole publisher of the following musical compositions listed for the album entitled "Viva Wisconsin":

      (a)     "Prove My Love";

      (b)     "I'm Nothing";

      (c)     "Country Death Song";

      (d)     "Blister in the Sun";

      (e)     "Gimme the Car";

      (f)     "Confessions";

    (g)    "Hallowed Ground";

    (h)    "Life Is an Adventure";

    (i)    "Old Mother Reagan";

    (j)    "Ugly";

    (k)    "Good Feeling";

    (l)    "Dahmer is Dead";

    (m)    "American Music";

    (n)    "Special";

    (o)    "Sweets Worlds of Angels";

    (p)    "Black Girls";

    (q)    "Gone Daddy Gone";

    (r)    "Add It Up"; and

    (s)    "Kiss Off".

**RESPONSE:**      Plaintiff admits part of this Request, specifically, Plaintiff admits that the document titled, "Schedule One" is in fact the Schedule One, referred to in the 1999 Cooking Vinyl Agreement.

**REQUEST NO. 134.**   Admit that the "Schedule One" to the 1999 Cooking Vinyl Agreement attached as Exhibit M lists Gordon Gano and Willie Dixon as the sole "Composer[s]" and Gorno Music and Hoochie Coochie Music as the sole publishers of the musical composition entitled "Gone Daddy Gone" listed thereon for the album entitled "Viva Wisconsin."

**RESPONSE:**      Plaintiff admits part of this Request, specifically, Plaintiff admits that the document titled, "Schedule One" is in fact the Schedule One, referred to in the 1999 Cooking Vinyl Agreement.

**REQUEST NO. 135.**   Admit that "Schedule One" to the 1999 Cooking Vinyl Agreement attached as Exhibit M lists Gordon Gano as the sole "Composer" and Gorno Music as the sole publisher of the following musical compositions listed thereon for the album entitled "*Freak Magnet*":

    (a)    "Hollywood is High";

    (b)    "Freak Magnet";

    (c)    "Sleepwalkin ' ":

(d)    "All I Want";

(e)    "In the Dark";

(f)    "Rejoice and Be Happy";

(g)    "Forbidden";

(h)    "When You Died";

(i)    "At Your Feet";

(j)    "I Danced";

(k)    "I'm Bad"; and

(l)    "Happines Is".

**RESPONSE:**      Plaintiff admits part of this Request, specifically, Plaintiff admits that the document titled, "Schedule One" is in fact the Schedule One, referred to in the 1999 Cooking Vinyl Agreement.

**REQUEST NO. 136.**    Admit that "Schedule One" to the 1999 Cooking Vinyl Agreement attached as Exhibit M lists Gordon Gano and Brian Ritchie as the sole "Composer[s]" and Gorno Music and Humidor Music as the sole publishers of the musical compositions "Mosh Pit" and "A Story (featuring Pierre Henry)" listed thereon for the album entitled "*Freak Magnet*."

**RESPONSE:**      Plaintiff admits part of this Request, specifically, Plaintiff admits that the document titled, "Schedule One" is in fact the Schedule One, referred to in the 1999 Cooking Vinyl Agreement.

**REQUEST NO. 137.**    Admit that the only "Composer" listed on "Schedule One" to the 1999 Cooking Vinyl Agreement attached as Exhibit M for the musical composition "Blister In The Sun" is Gordon Gano.

**RESPONSE:**      Plaintiff admits part of this Request, specifically, Plaintiff admits that the document titled, "Schedule One" is in fact the Schedule One, referred to in the 1999 Cooking Vinyl Agreement.

**REQUEST NO. 138.**    Admit that the only "Composer[s]" listed on "Schedule One" to the 1999 Cooking Vinyl Agreement attached as Exhibit M for the musical composition "Gone Daddy Gone" are Gordon Gano and Willie Dixon.

**RESPONSE:**      Plaintiff admits part of this Request, specifically, Plaintiff admits that the document titled, "Schedule One" is in fact the Schedule One, referred to in the 1999 Cooking Vinyl Agreement.

**REQUEST NO. 139.**    Admit that the only musical compositions listed on "Schedule One" to the 1999 Cooking Vinyl Agreement attached as Exhibit M that lists Brian Ritchie as one of the "Composer[s]" are "Don't Talk About My Music", "Mosh Fit" and "A Story".

**RESPONSE:**        Plaintiff admits part of this Request, specifically, Plaintiff admits that the document titled, "Schedule One" is in fact the Schedule One, referred to in the 1999 Cooking Vinyl Agreement.

**REQUEST NO. 140.**    Admit that "Schedule One" to the 1999 Cooking Vinyl Agreement attached as Exhibit M accurately describes the composers of the musical compositions listed thereon.

**RESPONSE:**        Deny.

**REQUEST NO. 141.**    Admit that the document attached hereto as Exhibit N is a true and correct copy of the Agreement dated June 1, 1999 between VF2, Inc., on the one hand, and LeftBank Records, Inc. d/b/a Beyond Music, on the other hand, executed on December 8, 1999, including the "Artist's Assent and Guaranty" attached thereto (the "1999 Beyond Music Agreement").

**RESPONSE:**        Admit.

**REQUEST NO. 142.**    Admit that a true and accurate copy of the authentic signature of Brian Ritchie appears on the signature line on behalf of "VF2, Inc." on page 11 of the 1999 Beyond Music Agreement attached as Exhibit N.

**RESPONSE:**        Admit.

**REQUEST NO. 143.**    Admit that Brian Ritchie's signature on the 1999 Beyond Music Agreement attached as Exhibit N was not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**        Plaintiff cannot admit or deny because discovery in this case is ongoing; therefore, Plaintiff must deny.

**REQUEST NO. 144.**    Admit that as of July 29, 1999, the 1999 Beyond Music Agreement attached as Exhibit N was a valid and enforceable agreement.

**RESPONSE:**        Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 145.**    Admit that a true and accurate copy of the authentic signature of Brian Ritchie appears on the signature line above his printed name on page 13 of the "Artist's Assent and Guaranty" to the 1999 Beyond Music Agreement attached as Exhibit N.

37

**RESPONSE:**          Admit.

**REQUEST NO. 146.**   Admit that VF2, Inc. was represented by independent legal counsel named Jeffrey Light, Esq., of Myman, Abell, Fineman & Greenspan, LLP, in connection with the negotiation and execution of the 1999 Beyond Music Agreement attached as Exhibit N.

**RESPONSE:**          Admit.

**REQUEST NO. 147.**   Admit that Brian Ritchie was represented by independent legal counsel named Jeffrey Light, Esq., of Myman, Abell, Fineman & Greenspan, LLP, in connection with the negotiation and execution of the "Artist's Assent and Guaranty" to the 1999 Beyond Music Agreement attached as Exhibit N.

**RESPONSE:**          Admit.

**REQUEST NO. 148.**   Admit that the Violent Femmes album entitled "*Viva Wisconsin*" was commercially released, sold and distributed in or about 1999 by or under the authority of Beyond Music, pursuant to the 1999 Beyond Music Agreement attached as Exhibit N, contained the following Sound Recordings embodying the performances of Brian Ritchie and Gordon Gano:

      (a)      "Prove My Love";

      (b)      "I'm Nothing";

      (c)      "Country Death Song";

      (d)      "Blister in the Sun";

      (e)      "Gimme the Car";

      (f)      "Don't Talk About My Music";

      (g)      "Confessions";

      (h)      "Hallowed Ground";

      (i)      "Life Is an Adventure";

      (j)      "Old Mother Reagan";

      (k)      "Ugly";

      (l)      "Good Feeling";

      (m)      "Dahmer is Dead";

      (n)      "American Music";

      (o)      "Special";

(p)    "Sweet Worlds of Angels";

(q)    "Black Girls";

(r)    "Gone Daddy Gone";

(s)    "Add It Up"; and

(t)    "Kiss Off '.

**RESPONSE:**        Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory. Furthermore, this request is irrelevant to the issues in this case. Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 149.**    Admit that the Violent Femmes album entitled "*Viva Wisconsin*" that was commercially released, sold and distributed in or about 1999 by or under the authority of Beyond Music contained songwriting credits listing Gordon Gano as the sole composer and Gorno Music as the sole publisher of the following musical compositions contained on that album:

(a)    "Prove My Love";

(b)    "I'm Nothing";

(c)    "Country Death Song";

(d)    "Blister in the Sun";

(e)    "Gimme the Car";

(f)    "Confessions";

(g)    "Hallowed Ground";

(h)    "Life Is an Adventure";

(i)    "Old Mother Reagan";

(j)    "Ugly";

(k)    "Good Feeling";

(l)    "Dahmer is Dead";

(m)    "American Music";

(n)    "Special";

    (o)      "Sweets Worlds of Angels";

    (p)      "Black Girls";

    (q)      "Add It Up"; and

    (r)      "Kiss Off".

**RESPONSE:**      Plaintiff cannot admit or deny because discovery in this case is ongoing; therefore, Plaintiff must deny.

**REQUEST NO. 150.**   Admit that Violent Femmes album entitled "*Viva Wisconsin*" that was commercially released, sold and distributed in or about 1999 by or under the authority of Beyond Music contained songwriting credits listing Gordon Gano and Willie Dixon as the sole composers and Gorno Music and Hoochie Coochie Music as the sole publishers of the musical composition "Gone Daddy Gone" contained on that album.

**RESPONSE:**      Plaintiff cannot admit or deny because discovery in this case is ongoing; therefore, Plaintiff must deny.

**REQUEST NO. 151.**   Admit that songwriting credits contained on the Violent Femmes album entitled "*Viva Wisconsin*" that was commercially released, sold and distributed in or about 1999 by or under the authority of Beyond Music accurately describes the composers of the musical compositions listed thereon.

**RESPONSE:**      Deny.

**REQUEST NO. 152.**   Admit that Violent Femmes album entitled "*Freak Magnet*" was commercially released, sold and distributed in or about 2000 by or under the authority of Beyond Music pursuant to the terms of the 1999 Beyond Music Agreement attached as Exhibit N contained the following Sound Recordings embodying the performances of Brian Ritchie and Gordon Gano:

    (a)      "Hollywood is High";

    (b)      "Freak Magnet";

    (c)      "Sleepwalkin'";

    (d)      "All I Want";

    (e)      "In the Dark";

    (f)      "Rejoice and Be Happy";

    (g)      "Mosh Pit";

    (h)      "Forbidden";

(i)      "When You Died";

(j)      "At Your Feet";

(k)      "I Danced";

(l)      "I'm Bad"; and

(m)      "Happines Is"; and

(n)      "A Story (featuring Pierre Henry)".

**RESPONSE:**          Admit.  Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 153.**    Admit that the Violent Femmes album entitled "*Freak Magnet*" that was commercially released, sold and distributed in or about 2000 by or under the authority of Beyond Music contained songwriting credits listing Gordon Gano as the sole composer and Gorno Music as the sole publisher of the following musical compositions contained on that album:

(a)      "Hollywood is High";

(b)      "Freak Magnet";

(c)      "Sleepwalkin'":

(d)      "All I Want";

(e)      "In the Dark";

(f)      "Rejoice and Be Happy";

(g)      "Forbidden";

(h)      "When You Died";

(i)      "At Your Feet";

(j)      "I Danced";

(k)      "I'm Bad"; and

(l)      "Happines Is".

**RESPONSE:**          Plaintiff cannot admit or deny because discovery in this case is ongoing; therefore, Plaintiff must deny.

**REQUEST NO. 154.**    Admit that the Violent Femmes album entitled "*Freak Magnet*" that was commercially released, sold and distributed in or about 2000 by or under the authority of Beyond Music contained songwriting credits listing Gordon Gano and Brian Ritchie as the sole "Composer[s]" and Gorno Music and Humidor Music: as the sole publishers of the musical compositions "Mosh Pit" and "A Story (featuring Pierre Henry)."

**RESPONSE:**        Plaintiff cannot admit or deny because discovery in this case is ongoing; therefore, Plaintiff must deny.

**REQUEST NO. 155.**    Admit that songwriting credits contained on the Violent Femmes album entitled "*Freak Magnet*" that was commercially released sold and distributed in or about 2000 by or under the authority of Beyond Music accurately describes the composers of the musical compositions listed thereon.

**RESPONSE:**        Deny.

**REQUEST NO. 156.**    Admit that the document attached hereto as Exhibit 0 is a true and correct copy of the Agreement dated February 4, 2002 between Rhino Entertainment Company, on the one hand, and Brian Ritchie, Gordon Gano and Victor DeLorenzo, professionally known as "VIOLENT FEMMES," on the other hand (the "2002 Rhino Agreement").

**RESPONSE:**        Admit.

**REQUEST NO. 157.**    Admit that a true and accurate copy of the authentic signature of Brian Ritchie appears on the signature line above his printed name on page 3 of the 2002 Rhino Agreement attached as Exhibit O.

**RESPONSE:**        Admit.

**REQUEST NO. 158.**    Admit that Brian Ritchie's signature on page 3 of the 2002 Rhino Agreement attached as Exhibit 0 was not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**        Plaintiff cannot admit or deny because discovery in this case is ongoing; therefore, Plaintiff must deny.

**REQUEST NO. 159.**    Admit that the first full paragraph of the 2002 Rhino Agreement attached as Exhibit 0, states that Warner Bros. Records owned all copyright ownership interests in and to all of the Sound Recordings recorded by the Violent Femmes and previously released by Slash Records.

**RESPONSE:**        Plaintiff admits part of this Request, specifically, Plaintiff admits that the 1st full paragraph states "Twelve" tracts are now owned by Warner Bros. Records.

**REQUEST NO. 160.**    Admit that to Sound Recordings referred to in the 2002 Rhino Agreement as the "Artist Masters", which are more particularly described on the schedule attached to the 2002 Rhino Agreement in Nos. 13 through 38, are either "demo" recordings or

live recordings and not the original studio Sound Recordings delivered to Slash Records pursuant to the 1983 Slash Agreement which were commercially released by Slash Records prior to 2002.

**RESPONSE:** Plaintiff cannot admit or deny because Plaintiff lacks sufficient knowledge to admit ordering this request; therefore, Plaintiff denies this request.

**REQUEST NO. 161.** Admit that as of February 4, 2002, the 2002 Rhino Agreement attached as Exhibit 0 was a valid and enforceable agreement.

**RESPONSE:** Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory. Furthermore, this request is irrelevant to the issues in this case. Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 162.** Admit that Brian Ritchie, Gordon Gano and Victor De Lorenzo were represented by independent legal counsel named Jeffrey Light, Esq., of Myman, Abell, Fineman, Greenspan & Light, LLP, in connection with the negotiation and execution of the 2002 Agreement attached as Exhibit O.

**RESPONSE:** Plaintiff objects to this request as being vague and ambiguous as to the word "independent."

**REQUEST NO. 163.** Admit that the Violent Femmes album entitled "Permanent Record: The Very Best Of" that was commercially released, sold and distributed in or about 2005 by or under the authority of Rhino Entertainment Company contained songwriting credits listing Gordon Gano as the sole composer and Gorno Music as the sole publisher of the following musical compositions contained on that album:

    (a)    "Gimme the Car";

    (b)    "Blister in the Sun";

    (c)    "Gone Daddy Gone/I Just Want to Make Love to You":

    (d)    "Kiss Off;

    (e)    "Add It Up";

    (f)    "Black Girls";

    (g)    "Jesus Walking On the Water";

    (h)    "I Held Her in My Arms";

    (i)    "Nightmares";

    (j)    "American Music";

      (k)      "Breakin' Up";

      (l)      "Country Death Song [live "

      (m)      "Freak Magnet"; and

      (n)      "Good Feeling [live]".

**RESPONSE:**      Plaintiff cannot admit or deny because discovery in this case is ongoing; therefore, Plaintiff must deny.

**REQUEST NO. 164.**   Admit that the Violent Femmes compilation album entitled "*Permanent Record: The Very Best Of*' that was commercially released, sold and distributed in or about 2005 by or under the authority of Rhino Entertainment Company contained songwriting credits listing Gordon Gano and Brian Ritchie as the sole composers of the musical compositions "*Color Me Once.*"

**RESPONSE:**      Plaintiff cannot admit or deny because discovery in this case is ongoing; therefore, Plaintiff must deny.

**REQUEST NO. 165.**   Admit that the Violent Femmes compilation album entitled "*Permanent Record: The Very Best Of*' that was commercially released, sold and distributed in or about 2005 by or under the authority of Rhino Entertainment Company contained songwriting credits listing Gordon Gano and Max Dunn as the sole composers of the musical compositions "I Danced."

**RESPONSE:**      Plaintiff cannot admit or deny because discovery in this case is ongoing; therefore, Plaintiff must deny.

**REQUEST NO. 166.**   Admit that songwriting credits contained on the Violent Femmes album entitled "*Permanent Record: The Very Best Of*' that was commercially released, sold and distributed in or about 2005 by or under the authority of Rhino Entertainment Company accurately describes the composers of the musical compositions listed thereon.

**RESPONSE:**      Deny.

**REQUEST NO. 167.**   Admit that continuously since in or about October 2004 to the present, Add It Up Productions, Inc. has been and is now a Delaware Corporation owned by Brian Ritchie and Gordon Gano.

**RESPONSE:**      Admit.

**REQUEST NO. 168.**   Admit that in or about 2005 Add It Up Productions, Inc. entered into a master license agreement with Shout! Factory LLC for the Sound Recordings contained on the Violent Femmes albums entitled "*Viva Wisconsin*" and "*Freak Magnet*" (the "Shout Agreement").

**RESPONSE:**      Admit.

**REQUEST NO. 169.**    Admit that Add It Up Productions, Inc. was represented by independent legal counsel named Jeffrey Light, Esq., of Myman, Abell, Fineman & Greenspan, LLP, in connection with the negotiation and execution of the Shout Agreement.

**RESPONSE:**          Admit.

**REQUEST NO. 170.**    Admit that Brian Ritchie executed the Shout Agreement on behalf of Add It Up Productions, Inc.

**RESPONSE:**          Plaintiff cannot admit or deny because Plaintiff lacks sufficient knowledge to admit ordering this request; therefore, Plaintiff denies this request.

**REQUEST NO. 171.**    Admit that the Violent Femmes album entitled "*Viva Wisconsin*" was commercially released, sold and distributed by Sony BMG Music Entertainment, Inc. in 2005 by or under the authority of Add It Up Productions, Inc. and Shout! Factory LLC pursuant to the Shout Agreement and that such album contained the following Sound Recordings embodying the performances of Brian Ritchie and Gordon Gano:

    (a)      "Prove My Love";

    (b)      "I'm Nothing";

    (c)      "Country Death Song";

    (d)      "Blister in the Sun";

    (e)      "Gimme the Car";

    (f)      "Don't Talk About About My Music";

    (g)      "Confessions";

    (h)      "Hallowed Ground";

    (i)      "Life Is an Adventure";

    (j)      "Old Mother Reagan";

    (k)      "Ugly";

    (l)      "Good Feeling";

    (m)      "Dahmer is Dead";

    (n)      "American Music";

    (o)      "Special";

    (p)      "Sweet Worlds of Angels";

(q)     "Black Girls";

(r)     "Gone Daddy Gone";

(s)     "Add It Up"; and

(t)     "Kiss Off".

(u)     "Outside the Palace" (bonus track)"

**RESPONSE:**        Admit.  Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 172.**    Admit that the Violent Femmes album entitled "*Viva Wisconsin*" that was commercially released, sold and distributed in or about 2005 by Sony BMG Music Entertainment, Inc. by or under the authority of Add It Up Productions, Inc. and Shout! Factory LLC pursuant to the Shout Agreement contained songwriting credits listing Gordon Gano as the sole composer and Gorno Music as the sole publisher of the following musical compositions contained on that album:

(a)     "Prove My Love";

(b)     "I'm Nothing";

(c)     "Country Death Song";

(d)     "Blister in the Sun";

(e)     "Gimme the Car";

(f)     "Confessions";

(g)     "Hallowed Ground";

(h)     "Life Is an Adventure";

(i)     "Old Mother Reagan";

(j)     "Ugly";

(k)     "Good Feeling";

(l)     "Dahmer is Dead";

(m)     "American Music";

(n)     "Special";

46

(o)    "Sweets Worlds of Angels";

(p)    "Black Girls";

(q)    "Add It Up"; and

(r)    "Kiss Off".

**RESPONSE:**    Plaintiff cannot admit or deny because discovery in this case is ongoing; therefore, Plaintiff must deny.

**REQUEST NO. 173.**    Admit that the Violent Femmes album entitled "*Viva Wisconsin*" that was commercially released, sold and distributed in or about 2005 by or under the authority of Add It Up Productions, Inc. and Shout! Factory LLC pursuant to the Shout Agreement contained songwriting credits listing Gordon Gano and Willie Dixon as the sole composers and Gorno Music and Hoochie Coochie Music as the sole publishers of the musical composition "Gone Daddy Gone" contained on that album.

**RESPONSE:**    Plaintiff cannot admit or deny because discovery in this case is ongoing; therefore, Plaintiff must deny.

**REQUEST NO. 174.**    Admit that Violent Femmes album entitled "*Freak Magnet*" was commercially released, sold and distributed by Sony BMG Music Entertainment, Inc. in 2005 by or under the authority of Add It Up Productions, Inc. and Shout! Factory LLC pursuant to the Shout Agreement and contained the following Sound Recordings embodying the performances of Brian Ritchie and Gordon Gano:

(a)    "Hollywood is High";

(b)    "Freak Magnet";

(c)    "Sleepwalkin'":

(d)    "All I Want";

(e)    "In the Dark";

(f)    "Rejoice and Be Happy";

(g)    "Mosh Pit";

(h)    "Forbidden";

(i)    "When You Died";

(j)    "At Your Feet";

(k)    "I Danced";

    (l)      "I'm Bad"; and

    (m)     "Happines Is";

    (n)      "A Story (featuring Pierre Henry)";

    (o)      "Rejoice and Be Happy (Live-Madison, WI)";

    (p)      "Freak Magnet (Live- Madison, WI)"; and

    (q)      "Positively 4th Street (Live- Madison, WI)"

**RESPONSE:**        Admit.  Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 175.**    Admit that the Violent Femmes album entitled "*Freak Magnet*" that was commercially released, sold and distributed by Sony BMG Music Entertainment, Inc. in 2005 by or under the authority of Add It Up Productions, Inc. and Shout! Factory LLC pursuant to the Shout Agreement contained songwriting credits listing Gordon Gano as the sole composer and Gorno Music as the sole publisher of the following musical compositions contained on that album:

    (a)      "Hollywood is High";

    (b)      "Freak Magnet";

    (c)      "Sleepwalkin'":

    (d)      "All I Want";

    (e)      "In the Dark";

    (f)      "Rejoice and Be Happy";

    (g)      "Forbidden";

    (h)      "When You Died";

    (i)      "At Your Feet";

    (j)      "I Danced" (except lyrics from the William Carlos William poem "I Danced Before I Had Two Feet");

    (k)      "I'm Bad";

    (l)      "Happines Is";

(m)     "Rejoice and Be Happy (Live-Madison, WI)";

(n)     "Freak Magnet (Live- Madison, WI)"; and

**RESPONSE:**     Plaintiff cannot admit or deny because discovery in this case is ongoing; therefore, Plaintiff must deny.

**REQUEST NO. 176.**   Admit that the Violent Femmes album entitled "*Freak Magnet*," that was commercially released, sold and distributed by Sony BMG Music Entertainment, Inc. in 2005 by or under the authority of Add It Up Productions, Inc. and Shout! Factory LLC pursuant to the Shout Agreement, contained songwriting credits listing Gordon Gano and Brian Ritchie as the sole composers and Gorno Music and Humidor Music as the sole publishers of the musical compositions "Mosh Pit" and "A Story (featuring Pierre Henry)."

**RESPONSE:**     Plaintiff cannot admit or deny because discovery in this case is ongoing; therefore, Plaintiff must deny.

**REQUEST NO. 177.**   Admit that songwriting credits contained on the Violent Femmes album entitled "*Freak Magnet*" that was commercially released, sold and distributed in or about 2000 by Sony BMG Music Entertainment, Inc. in 2005 by or under the authority of Add It Up Productions, Inc. and Shout! Factory LLC pursuant to the Shout Agreement, accurately describes the composers of the musical compositions listed thereon.

**RESPONSE:**     Deny.

**REQUEST NO. 178.**   Admit that Add It Up Productions, Inc. is the sole and exclusive owner of the copyrights in and to the Sound Recordings contained on the two Violent Femmes albums entitled "*Viva Wisconsin*" and "*Freak Magnet*" more particularly described in Requests to Admit Nos. 171 and 174 above.

**RESPONSE:**     Admit.  Plaintiff objects because this calls for speculation, assumes facts not in evidence, and is more appropriate for a deposition or interrogatory.  Furthermore, this request is irrelevant to the issues in this case.  Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.

**REQUEST NO. 179.**   Admit that the document attached hereto as Exhibit P is a true and correct copy of the "Agreement" dated April 20, 2001 between Brian Ritchie, on the one hand, and Gordon Gano, on the other hand (the "2001 Agreement").

**RESPONSE:**     Admit.

**REQUEST NO. 180.**   Admit that Brian Ritchie was represented by independent legal counsel named Jeffrey Jacobson, Esq. of the law firm Jacobson & Collin, during the negotiation and execution of the 2001 Agreement attached as Exhibit P.

**RESPONSE:**     Admit.

**REQUEST NO. 181.**    Admit that a true and accurate copy of the authentic signature of Brian Ritchie appears above his printed name on the signature line on page 5 of the 2001 Agreement attached as Exhibit P.

**RESPONSE:**        Admit.

**REQUEST NO. 182.**    Admit that Brian Ritchie's signature and initials on the 2001 Agreement attached as Exhibit P were not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**        Deny.

**REQUEST NO. 183.**    Admit that the initial's "BR" that appear in the margin of the first four out of 5 pages of the 2001 Agreement attached as Exhibit P are Brian Ritchie's initials.

**RESPONSE:**        Admit.

**REQUEST NO. 184.**    Admit that Brian Ritchie initials on the 2001 Agreement attached as Exhibit P were not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**        Deny.

**REQUEST NO. 185.**    Admit that on "Page 3 of 5" of the 2001 Agreement attached as Exhibit P, the first sentence of paragraph 7 states: "Songwriting credits and publishing as stated on existing recordings (Violent Femmes) are hereby deemed accurate and true."

**RESPONSE:**        Admit.

**REQUEST NO. 186.**    Admit that the "songwriting credits" referred to in the first sentence of paragraph 7 of the 2001 Agreement attached as Exhibit P include the songwriter credits which appeared on the Violent Femmes albums commercially released, sold and distributed by or under the authority of Slash Records pursuant to the terms of the Slash Agreements attached hereto as Exhibits A and/or D, for the musical compositions embodied on the Sound Recordings contained on each of the following Violent Femmes albums which albums are particularly described in Request Nos. 38, 42, 46, 50, 53, 57, 62, 66, 67, 72, 73 and 74 above:

    (a)    "*Violent Femmes*";

    (b)    "*Hallowed Ground*";

    (c)    "*The Blind Leading The Naked*";

    (d)    "3";

    (e)    "*Why Do Birds Sing*";

    (f)    "*Machine*";

    (g)    "*Why Do Birds Sing-Limited Edition Tour Package 2-Disc Set*";

(h)     "*Add It Up [1981-1993]*"; and

(i)     "*Violent Femmes (Deluxe Edition)*."

**RESPONSE:**          Plaintiff admits part of this Request, specifically, Plaintiff admits that the "songwriting credits" referred to in the first sentence refer to those credits on the stated "existing recordings (Violent Femmes)."

**REQUEST NO. 187.**    Admit that the "songwriting credits" referred to in the first sentence of paragraph 7 of the 2001 Agreement attached as Exhibit P include the songwriter credits which appeared on the Violent Femmes album commercially released, sold and distributed by or under the authority of Elektra Records pursuant to the terms of the Elektra Agreement attached hereto as Exhibit G, for the musical compositions embodied on the Violent Femmes album "*New Times*" which are more particularly described in Request No. 93 above.

**RESPONSE:**          Plaintiff admits part of this Request, specifically, Plaintiff admits that the "songwriting credits" referred to in the first sentence refer to those credits on the stated "existing recordings (Violent Femmes)."

**REQUEST NO. 188.**    Admit that the "songwriting credits" referred to in the first sentence of paragraph 7 of the 2001 Agreement attached as Exhibit P include the songwriter credits which appeared on the Violent Femmes albums commercially released, sold and distributed by or under the authority of VF2, Inc., including pursuant to the terms of the 1999 Cooking Vinyl Agreement attached hereto as Exhibit M, for the musical compositions embodied on the Violent Femmes albums "*Freak Magnet*" and "*Viva Wisconsin*" which are more particularly described in "Schedule One" to the 1999 Cooking Vinyl Agreement and Request Nos. 133 and 135 above.

**RESPONSE:**          Plaintiff admits part of this Request, specifically, Plaintiff admits that the "songwriting credits" referred to in the first sentence refer to those credits on the stated "existing recordings (Violent Femmes)."

**REQUEST NO. 189.**    Admit that the "songwriting credits" referred to in the first sentence of paragraph 7 of the 2001 Agreement attached as Exhibit P include the songwriter credits which appeared on the Violent Femmes albums entitled "*Viva Wisconsin*" and "*Freak Magnet,*" commercially released, sold and distributed in or about 1999 and 2000, respectively, by or under the authority of Beyond Music pursuant to the Beyond Music Agreement attached as Exhibit N, which albums are more particularly described in Request Nos. 148 and 152 above.

**RESPONSE:**          Plaintiff admits part of this Request, specifically, Plaintiff admits that the "songwriting credits" referred to in the first sentence refer to those credits on the stated "existing recordings (Violent Femmes)."

**REQUEST NO. 190.**    Admit that the "songwriting credits" referred to in the first sentence of paragraph 7 of the 2001 Agreement attached as Exhibit P include the songwriter credits which appeared on the Violent Femmes compilation album entitled "*Permanent Record: The Very Best Of*" that was commercially released, sold and distributed in or about 2005 by or under the

authority of Rhino Entertainment Company pursuant to the Rhino Agreement, which albums are more particularly described in Request No. 163 above.

**RESPONSE:**        Plaintiff admits part of this Request, specifically, Plaintiff admits that the "songwriting credits" referred to in the first sentence refer to those credits on the stated "existing recordings (Violent Femmes)."

**REQUEST NO. 191.**   Admit that the "songwriting credits" referred to in the first sentence of paragraph 7 of the 2001 Agreement attached as Exhibit P include the songwriter credits which appeared on the Violent Femmes albums entitled "*Viva Wisconsin*" and "*Freak Magnet*," commercially released, sold and distributed in or about 2005 by Sony BMG Music Entertainment, Inc. in 2005 by or under the authority of Add It Up Productions, Inc. and Shout! Factory LLC pursuant to the Shout Agreement, which albums are more particularly described in Request Nos. 171 and 174 above.

**RESPONSE:**        Plaintiff admits part of this Request, specifically, Plaintiff admits that the "songwriting credits" referred to in the first sentence refer to those credits on the stated "existing recordings (Violent Femmes)."

**REQUEST NO. 192.**   Admit that on "Page 3 of 5" of the 2001 Agreement attached as Exhibit P, the second full paragraph of paragraph 7 states:

> Ritchie will continue to receive income participation in the amount of 7.5% of Gano's net receipts (after deduction of any management and publishing administration fees) on all Violent Femmes songs he did not write in consideration for his services as an "arranger," except" (1) "If I Can Change", in which Ritchie's participation will be 25% rather than 7.5%, and (2) "Gone Daddy Gone" for which Ritchie will continue to a percentage of net receipts as per the following splits:
>
> > a.    Willie Dixon/Hootchie Coochie Music: 25% (included a sample from Willie Dixon song).
> >
> > b.    Gordon Gano: 58-3/4%.
> >
> > c.    Brian Ritchie: 16-1/4% (inclusive of his 7.5% "arranging" participation.)
>
> Ritchie also has co-writer interests on other songs, for which he will be paid (inclusive of the "arranger" percentage) as in the past."

**RESPONSE:**        Admit.

**REQUEST NO. 193.**   Admit that the above language of paragraph 7 of the 2001 Agreement attached as Exhibit P reflects Brian Ritchie's agreement and total understanding of his right to be paid solely income participation of net music publishing receipts of Gordon Gano from his

exploitation of the musical compositions performed by the Violent Femmes that Brian Ritchie did not write.

**RESPONSE:**        Deny.

**REQUEST NO. 194.**    Admit that the above language of paragraph 7 of the 2001 Agreement attached as Exhibit P reflects Brian Ritchie's agreement and total understanding that, with the exception of the two musical compositions listed ("If 1 Can Change" and "Gone Daddy Gone"), Brian Ritchie's total income participation was solely limited to 7.5% of Gordon Gano's net receipts for that song (after deduction of any management and publishing administration fees".

**RESPONSE:**        Deny.

**REQUEST NO. 195.**    Admit that the above language of paragraph 7 of the 2001 Agreement attached as Exhibit P reflects Brian Ritchie's agreement and total understanding that with respect to the musical composition "If I Can Change," Brian Ritchie's total income participation would be limited to 25% of Gordon Gano's net receipts for that song (after deduction of any management and publishing administration fees), rather than 7.5%.

**RESPONSE:**        Deny.

**REQUEST NO. 196.**    Admit that the above language of paragraph 7 of the 2001 Agreement attached as Exhibit P reflects Brian Ritchie's agreement and understanding that Brian Ritchie's total income participation for the musical composition "Gone Daddy Gone" would be 16-1/4% of Gordon Gano's net receipts for that song (after deduction of any management and publishing administration fees) (inclusive of Brian Ritchie's 7.5% "arranging" income participation), rather than 7.5%.

**RESPONSE:**        Deny.

**REQUEST NO. 197.**    Admit that the document attached hereto as Exhibit Q is a true and correct copy of the Agreement dated April 1, 2002 between VF2, Inc., Violent Femmes Touring, Inc., Brian Ritchie and Gordon Gano (the "2002 Agreement").

**RESPONSE:**        Admit.

**REQUEST NO. 198.**    Admit that a true and accurate copy of the authentic signature of Brian Ritchie appears on the signature line above his printed name on the first counterpart page 8 of the 2002 Agreement attached as Exhibit Q.

**RESPONSE:**        Admit.

**REQUEST NO. 199.**    Admit that Brian Ritchie signed Exhibit Q in both his individual capacity and as an officer and shareholder of VF2, Inc.

**RESPONSE:**        Admit.

53

**REQUEST NO. 200.**    Admit that Brian Ritchie's signatures on Exhibits Q were not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**        Deny.

**REQUEST NO. 201.**    Admit that Brian Ritchie was represented by Jeffrey Jacobson, Esq. of the law firm Jacobson & Colfin, during the negotiation and execution of the 2002 Agreement attached as Exhibit Q.

**RESPONSE:**        Admit.

**REQUEST NO. 202.**    Admit that on page 1 of the 2002 Agreement attached as Exhibit Q, the first sentence of paragraph 2(a) provides "Ritchie has withdrawn his trademark application for "Violent Femmes" [Serial #76191996] as to which Gano had commenced opposition proceedings [Opposition #91150617]."

**RESPONSE:**        Admit.

**REQUEST NO. 203.**    Admit that as of April 1, 2002, Brian Ritchie had not withdrawn his federal trademark application Serial #76191996.

**RESPONSE:**        Deny.  Plaintiff objects because this request is vague and ambiguous.

**REQUEST NO. 204.**    Admit that Brian Ritchie signed Exhibit Q knowing that his representation concerning his purported withdrawal of trademark application Serial #76191996 was false.

**RESPONSE:**        Deny.

**REQUEST NO. 205.**    Admit that on page 2 of Exhibit Q, the first sentence of paragraph 2(b) provides "Gano and Ritchie agree that neither will file any State or Federal applications for registration of the service mark or trademark 'Violent Femmes' without the prior written approval of the other."

**RESPONSE:**        Admit.

**REQUEST NO. 206.**    Admit that pursuant to the first sentence of paragraph 2(b), on page 2 of Exhibit Q, Brian Ritchie had to obtain Gordon Gano's written approval before filing an application for a service mark or trademark for "Violent Femmes".

**RESPONSE:**        Deny.

**REQUEST NO. 207.**    Admit that Brian Ritchie did not obtain Gordon Gano's prior written approval before filing his application for a Federal trademark for the name "Violent Femmes".

**RESPONSE:**        Plaintiff admits part of this Request, specifically, Plaintiff admits that the trademark application was filed prior to the date of Exhibit Q..

**REQUEST NO. 208.**     Admit that Brian Ritchie did not obtain Gordon Gano's prior written approval after April 1, 2002 to continue prosecuting his trademark application Serial #76191996 for a Federal trademark for the name "Violent Femmes".

**RESPONSE:**     Plaintiff admits part of this Request, specifically, Plaintiff admits that he did not correspond with Gano regarding the Trademark.

**REQUEST NO. 209.**     Admit that on page 7 of the 2002 Agreement attached as Exhibit Q, paragraph 4(c) provides for the following general release:

> "In order for each party to induce the other parties to sign this instrument, each party hereby releases the other parties from any or all claims, liabilities and obligations whatsoever, in law or equity, which one party shall or may have against the other or which any party may have against the other parties for, upon, or by reason of any matter, cause, or thing whatsoever from the beginning of the world, throughout the universe."

**RESPONSE:**     Plaintiff admits part of this Request, specifically, Plaintiff admits that this is one of 3 sentences in Section 4(c) of Exhibit Q.

**REQUEST NO. 210.**     Admit that Gordon Gano was a party to the 2002 Agreement attached as Exhibit Q.

**RESPONSE:**     Admit.

**REQUEST NO. 211.**     Admit that Brian Ritchie was a party to the 2002 Agreement attached as Exhibit Q.

**RESPONSE:**     Plaintiff admits part of this Request, specifically, Plaintiff admits that he executed the 2002 Agreement.

**REQUEST NO. 212.**     Admit that the final sentence in paragraph 4(c) of the 2002 Agreement attached as Exhibit Q provides as follows:

> "Notwithstanding the foregoing, the foregoing release shall exclude and not be applicable to any obligations any party may have under <u>paragraphs 6 and 7</u> of the Agreement dated April 20, 2001 between Gano, Ritchie and VF2."

**RESPONSE:**     Admit.

**REQUEST NO. 213.**     Admit that the "Agreement" being referred to in the final sentence of paragraph 4(c) of the 2002 Agreement is the 2001 Agreement attached hereto as Exhibit P.

**RESPONSE:**     Admit.

**REQUEST NO. 214.**    Admit that the last sentence in paragraph 4 (c) of the 2002 Agreement attached as Exhibit Q ratified Gano and Ritchie's contractual obligations as set forth in paragraphs 6 and 7 of the 2001 Agreement attached hereto as Exhibit P.

**RESPONSE:**        Deny.

**REQUEST NO. 215.**    Admit that the document attached hereto as Exhibit R is a true and correct copy of the Violent Femmes Touring, Inc. Shareholders Agreement dated as of April 1, 2002 between Violent Femmes Touring, Inc., Brian Ritchie and Gordon Gano (the "VF Touring Shareholders Agreement").

**RESPONSE:**        Admit.

**REQUEST NO. 216.**    Admit that a true and accurate copy of the authentic signatures of Brian Ritchie appears on the signature lines above his name, individually, and above his name as "an officer" of Violent Femmes Touring, Inc. on the first counterpart page 8 of the VF Touring Shareholders Agreement attached as Exhibit R.

**RESPONSE:**        Admit.

**REQUEST NO. 217.**    Admit that Brian Ritchie signed Exhibit R in both his individual capacity and as an officer and shareholder of Violent Femmes Touring, Inc.

**RESPONSE:**        Admit.

**REQUEST NO. 218.**    Admit that Brian Ritchie's signatures on Exhibits R were not obtained through any form of coercion by Gordon Gano.

**RESPONSE:**        Deny.

**REQUEST NO. 219.**    Admit that Brian Ritchie was represented by Jeffrey Jacobson, Esq. of the law firm Jacobson & Colfin, during the negotiation and execution of the VF Touring Shareholders Agreement attached as Exhibit R.

**RESPONSE:**        Admit.

**REQUEST NO. 220.**    Admit that a true and accurate copy of the "Talkback" blog posted on February 26, 2007 on OnMilwaukee.com by Brian Ritchie is attached in printed form as Exhibit S, and that Brian Ritchie is the author of the following statement made therein:

> "For the fans who rightfully are complaining about the Wendy's
> burger advertisement featuring Blister in the Sun, Gordon Gano is
> the publisher of the song and Warners (sic) is the record company.
> When they agree to use it there's nothing the rest of the band can
> do about it, because we don't own the song or the recording."

**RESPONSE:**        Admit.

56

**REQUEST NO. 221.**    Admit that a true and accurate copy of the blog posted on February 8, 2007 on www.deaconlight.forumup.us by Brian Ritchie is attached in printed form as Exhibit T, and that Brian Ritchie is the author of the following statement made therein concerning the song "Blister in the Sun":

> "It is Gordon Gano himself who insists on prostituting our music for such idiotic purposes as hamburgers. This is because he is in it for the money. I am thoroughly disgusted. But there's nothing I can do about it because the controlling interests are Gano (publisher/songwroter)(sic) and the record co. Victor and I don't have control."

**RESPONSE:**    Admit.

**REQUEST NO. 222.**    Admit that a true and accurate copy of the blog posted on February 26, 2007 at 4:21 pm on www.salemslots.wordpress.com by Brian Ritchie is attached in printed form as Exhibit U, and that Brian Ritchie is the author of the following statement made therein:

> "For the fans who rightfully are complaining about the Wendy's burger advertisement featuring Blister in the Sun, Gordon Gano is the publisher of the song and Warners (sic) is the record company. When they agree to use it there's nothing the rest of the band can do about it, because we don't own the song or the recording."

**RESPONSE:**    Admit.

**REQUEST NO. 223.**    Admit that a true and accurate copy of the blog posted on February 26, 2007 at 2:16 pm on www.thepeevery.com by Brian Ritchie is attached in printed form as Exhibit V, and that Brian Ritchie is the author of the following statement made therein:

> "For the fans who rightfully are complaining about the Wendy's burger advertisement featuring Blister in the Sun, Gordon Gano is the publisher of the song and Warners (sic) is the record company. When they agree to use it there's nothing the rest of the band can do about it, because we don't own the song or the recording."

**RESPONSE:**    Admit.

**REQUEST NO. 224.**    Admit that for a period of more than three years prior to August 15, 2007, Brian Ritchie had actual knowledge that Gordon Gano, individually or doing business as Gorno Music, claimed to the author and owner of the copyrights in and to the musical compositions listed on Exhibit W, attached hereto, in the percentage shares indicated in the Column titled "Authors/Composer with Percentage Shares."

**RESPONSE:**    Deny.

**REQUEST NO. 225.**    Admit that for a period of more than three years prior to August 15, 2007, Brian Ritchie had actual knowledge that Gordon Gano, individually or doing business as Gorno Music, exercised an uninterrupted, open, and notorious claim, accompanied by an assertion of authorship and ownership, to the copyrights in and to musical compositions listed on Exhibit W, attached hereto, in the percentage shares indicated in the Column titled "Authors/Composer with Percentage Shares."

**RESPONSE:**        Deny.

**REQUEST NO. 226.**    Admit that for a period of at least fifteen years prior to August 15, 2007, Brian Ritchie had actual knowledge that Gordon Gano, individually or doing business as Gorno Music, claimed to the author and owner of the copyrights in and to the musical compositions listed on Exhibit W, attached hereto, in the percentage shares indicated in the Columns titled "Authors/Composer with Percentage Shares" and "Publishers with Percentage Shares."

**RESPONSE:**        Deny.

**REQUEST NO. 227.**    Admit that for a period of at least fifteen years prior to August 15, 2007, Brian Ritchie had actual knowledge that Gordon Gano, individually or doing business as Gorno Music, exercised an uninterrupted, open, and notorious claim, accompanied by an assertion of authorship and ownership, to the copyrights in and to musical compositions listed on Exhibit W, attached hereto, in the percentage shares indicated in the Columns titled "Authors/Composer with Percentage Shares" and "Publishers with Percentage Shares."

**RESPONSE:**        Deny.

Respectfully submitted,

**JACKSON WALKER L.L.P.**

By: _____
Stacy Allen
Lawrence A. Waks
Daniel Scardino*
Emilio B. Nicolas
100 Congress Avenue, Suite 1100
Austin, Texas 78701
Tel.: (512) 236-2000
Fax.: (512) 236-2002
Email: lwaks@jw.com, stacyallen@jw.com,
dscardino@jw.com, enicolas@jw.com
(*admitted *pro hac vice*)

ATTORNEYS FOR BRIAN RITCHIE,
individually and d/b/a VIOLENT FEMMES

## CERTIFICATE OF SERVICE

This is to certify that on this 30th day of May, 2008, a true and correct copy of the foregoing document was served by certified mail, return receipt requested upon the following counsel of record:

Robert S. Meloni, Esq.
Thomas P. McCaffrey, Esq.
MELONI & McCAFFREY, P.C.
1350 Avenue of the Americas
Suite 3100
New York, New York 10019

_____
Emilio B. Nicolas