UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

No. 07-CIV-7269 (VM)

----------------------------------------------------------------x

BRIAN RITCHIE, individually and d/b/a          :
VIOLENT FEMMES,                                :
                                               :
                  Plaintiff,                   :
                                               :
            - against -                        :
                                               :
GORDON GANO, individually and d/b/a GORNO      :
MUSIC a/k/a GORNO MUSIC (ASCAP) a/k/a          :
GORNO MUSIC PUBLISHING,                        :
                                               :
                  Defendants.                  :

----------------------------------------------------------------x


**MEMORANDUM OF LAW IN OPPOSITION TO THE
MOTION OF PLAINTIFF BRIAN RITCHIE TO DISQUALIFY
COUNSEL OF RECORD FOR GORDON GANO**


MELONI & MCCAFFREY, P.C.
1350 Avenue of the Americas - Suite 3100
New York, New York 10019
(212) 957-5577

*Attorneys for Defendant Gordon Gano*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 3

ARGUMENT ........................................................................................................................ 11

THERE IS NO GOOD FAITH BASIS FOR SEEKING DISQUALIFICATION ........... 11

I. *The Standard of Review for Motion to Disqualify Opposing Counsel* ........................ 11

II. *There is No Successive Conflict* .............................................................................. 13

    A. *There Is No Attorney-Client Relationship with Meloni* ....................................... 14

        (1) *The Purported Violent Femmes "Partnership" is a Phantom Plaintiff* .......... 15

        (2)  *Plaintiff is Not a Former Client of Meloni* ................................................... 20

    B. *There was No Reasonable Expectation of Confidentiality* ................................... 24

    C. *There is No Substantial Relationship* ................................................................ 27

III. *There is No Concurrent Conflict of Interest* ............................................................ 28

IV. *The Advocate-Witness Rule Does Not Require Disqualification* .............................. 30

V. *Vicarious Disqualification* ....................................................................................... 34

CONCLUSION .................................................................................................................... 36

i

# TABLE OF AUTHORITIES

*Cases*                                                                                                    *Pages*

*Allegaert v. Perot*,
    565 F.2d 246 (2d Cir. 1977)...................................................................14, 24, 27

*Am. Special Risk Ins. Co. v. Delta Am. Re Ins. Co.*,
    634 F. Supp. 112 (S.D.N.Y. 1986) ..................................................................... 32

*April Broad, Inc. v. Smith*,
    95 Civ. 7664, 1996 WL 137487 (S.D.N.Y. Mar. 27, 1996) ...................14, 30, 34

*Bennett Silvershein Assocs. v. Furman*,
    776 F. Supp. 800 (S.D.N.Y. 1991) .................................................................... 14

*Cabble v. Rollieson*,
    04 Civ. 9413, 2006 WL 464078 (S.D.N.Y. Feb. 27, 2006) ............................... 31

*Cohen v. Acorn Int'l Ltd.*,
    94 Civ 6394, 1995 WL 716743 (S.D.N.Y. Dec. 5, 1995) .................11, 14, 24, 27

*Colandrea v. Town of Orangetown*,
    490 F.Supp.2d 342 (S.D.N.Y 2007) ................................................................. 29

*Computer Assocs. Int'l, Inc. v. Computer Automation, Inc.*,
    678 F. Supp. 424 (S.D.N.Y.1987) ..................................................................... 34

*Culver v. Merrill Lynch & Co.*,
    94 Civ. 8124, 1997 WL 223088 (S.D.N.Y. May 5, 1997)........................23, 26, 34

*Davin v. JMAM, LLC*,
    27 A.D.3d 371, 812 N.Y.S.2d 494 (1st Dep't 2006) .......................................... 34

*Evans v. Artek Sys. Corp.*,
    715 F.2d 788 (2d Cir. 1983)....................................................................11, 12, 14

*Ello v. Singh*,
    05-CV-9625, 2006 WL 2270871 (S.D.N.Y. Aug. 7, 2006).......... 12, 14, 23, 14, 27

*Felix v. Balkin*,
    49 F. Supp.2d 260 (S.D.N.Y. 1999) .................................................................. 12

*First Hawaiian Bank v. Russell & Volkening*,
    861 F. Supp. 233 (S.D.N.Y. 1994) .............................................................. 12, 14

*Gandler v.Nazorov,*
   94 Civ. 2272, 1994 WL 702004 (S.D.N.Y. Dec 14, 1994) .......................... 34, 35

*Gov't of India v. Cook Indus., Inc.,*
   569 F.2d 737 (2d Cir.1978)....................................................................11, 12, 28

*H & H Acquisition Corp. v. Fin. Intranet Holdings,*
   98 Civ. 5269, 2000 WL 502869 (S.D.N.Y. April 27, 2000)................................ 28

*In re Bohack Corp.,*
   607 F.2d 258 (2d Cir 1979)............................................................................... 12

*Jet Age Knitwear Mach. Corp. v. Philip,*
   22 A.D.2d 674, 253 N.Y.S.2d 339 (1st Dep't 1964)..................................... 16-17

*Kaplan v. Maytex Mills, Inc.,*
   187 A.D.2d 565, 590 N.Y.S.2d 136 (2d Dep't 1992) ........................................ 35

*Keoseian v. Von Kaulbach,*
   707 F. Supp. 150 (S.D.N.Y. 1989) ................................................................... 31

*Knipe v. Skinner,*
   999 F2d 708 (2d Cir. 1993)............................................................................... 11

*Kubin v. Miller,*
   801 F. Supp. 1101 (S.D.N.Y.1992) ................................................... 12, 31, 34, 35

*Kushner v. Herman,*
   215 A.D.2d 633, 628 N.Y.S. 2d 123 (2d Dep't 1995) ....................................... 21

*Lamborn v. Dittmer,*
   873 F.2d 522 (2d Cir. 1989)............................................................................... 11

*Leber Assocs, LLC v. Entertainment Group Fund, Inc.,*
   00 Civ. 3759, 2001 WL 1568780 (S.D.N.Y. Dec. 7, 2001) ....................15, 19, 28

*MacArthur v. Bank of New York,*
   524 F. Supp. 1205 (S.D.N.Y.1981) ............................................................. 30, 33

*Minami Int'l Corp. v. Clark,*
   88 Civ. 2135, 1991 WL 102464 (S.D.N.Y. 1991) ............................................. 35

*Munk v. Goldome Nat'l Corp.,*
   697 F. Supp. 784 (S.D.N.Y. 1988) ................................................................... 33

*Nasso v. Seagal*,
    263 F. Supp.2d 596 (E.D.N.Y. 2003) ................................................................ 18

*O'Brien v. Nat'l Prop. Analysts Partners*,
    719 F. Supp. 222 (S.D.N.Y. 1989) ............................................................... 2 n.3

*Occidental Hotels Mgt B.V. v. Westbrook Allegro L.L.C.,*
    440 F.Supp.2d 303 (S.D.N.Y. 2006) ................................................................ 13

*Omansky v. 64 N. Moore Assoc.*,
    269 A.D.2d 336, 703 N.Y.S.2d 471 (1st Dep't 2000) ........................................ 21

*Paramount Communications, Inc. v. Donaghy*,
    858 F. Supp. 391 (S.D.N.Y. 1994) ....................................... 11, 13, 29, 30, 31, 33

*Paretti v. Cavalier Label Co.*,
    722 F. Supp. 985 (S.D.N.Y. 1989) ................................................... 12, 29, 32, 35

*Parke-Hayden, Inc. v. Loews Theatre Mgmt Corp.*,
    794 F. Supp. 525 (S.D.N.Y. 1992) ............................................................. 30, 31

*Parkins v. St. John*,
    01 Civ 11660, 2004 WL 1620897 (S.D.N.Y. July 19, 2004) . 22, 23, 24, 27, 28, 30

*Russo v. Friedman,*
    91 Civ. 6913, 1992 WL 196791 (S.D.N.Y. July 31, 1992) ................................ 30

*Sec. Ins. Co. of Hartford v. Mendon Leasing Corp.*,
    01 Civ. 9054, 2002 WL 31387484 (S.D.N.Y. Oct. 22, 2002) ........................... 30

*Shabbir v. Pakistan Int'l Airlines*,
    443 F.Supp.2d 299 (E.D.N.Y. 2005) ................................................................ 22

*Soc'y for Good Will to Retarded Children, Inc. v. Carey*,
    466 F. Supp. 722 (E.D.N.Y. 1979) ................................................................... 12

*Solow v. Conseco, Inc.*,7
    06 Civ. 5988, 2007 WL 1599151 (S.D.N.Y. June 4, 2007) ............................... 33

*Sprince v. Hayden Books*,
    97 Civ. 1936, 1997 WL 661120 (S.D.N.Y. Oct. 22, 1997),
    *aff'd*, 162 F.3d 1148 (2d Cir.1998)............................................................. 2 n.3

*S & S Hotel Ventures Ltd. Partnership,*
    69 N.Y.2d 437, 515 N.Y.S.2d 735 (1987) ....................................................... 31

*Stratavest Ltd. v. Rogers,*
    903 F. Supp. 663 (S.D.N.Y.1995) .............................................................9, 10, 25

*Talvy v. Am. Red Cross in Greater N.Y.*,
    205 A.D.2d 143, 618 N.Y.S.2d 25 (1st Dep't 1994),
    *aff'd*, 87 N.Y.2d 826, 637 N.Y.S.2d 687 (1995).................................................. 21

*Universal City Studios, Inc. v. Reimerdes*,
    98 F. Supp.2d 449 (S.D.N.Y. 2000) ................................................................... 13

*U.S. v. Tate & Lyle N. Am. Sugars, Inc.*,
    184 F. Supp.2d 344 (S.D.N.Y. 2002) ................................................................. 31

*U. S. Football League v. Nat'l Football League*,
    605 F. Supp. 1448 (S.D.N.Y. 1985) ................................................................... 13

Defendant Gordon Gano ("Gano") respectfully submits this memorandum of law in opposition to the motion of Plaintiff Brian Ritchie ("Ritchie" or "Plaintiff") to disqualify Robert S. Meloni, Esq. (and vicariously, the law firm of Meloni & McCaffrey, P.C.) as trial counsel for Gano.[1]

## PRELIMINARY STATEMENT

Plaintiff's motion is a text-book example of the most flagrant and egregious application of a motion to disqualify counsel for the sole purpose of garnering a strategic advantage in litigation. Factored together with Plaintiff's counsel's blatant misrepresentations of the pleadings and unwarranted *argumentum ad hominem* attacks upon Robert S. Meloni[2], it exemplifies the extreme desperation Plaintiff has reached in his quixotic quest to prevent Gano from having his long-term litigator as his counsel of choice in this litigation.

There is a method to Plaintiff's madness. Having received over 18,000 pages of documents from Gano that eviscerate Plaintiff's frivolous claims, Plaintiff now brings his motion for disqualification with the hopes of delaying the completion of its own document production and proceeding with

---

[1] This memorandum makes references to and relies upon exhibits attached to the accompanying Declaration of Robert S. Meloni dated July 3, 2008 (the "Meloni Decl."). Gano shall also make references to the Declaration of Brian Ritchie in Support of Plaintiff's Motion to Disqualify Opposing Counsel dated June 13, 2008 ("Plaintiff's Decl."), and the Memorandum In Support Of Plaintiff's Emergency Motion To Disqualify Opposing Counsel dated June _, 2008 ("Plaintiff's Memo.").

[2] Plaintiff's counsel's clumsy, heavy-handed attempt to capitalize on the administrative oversight of Mr. Meloni's inadvertent failure to pay his last biannual attorney registration fee, which has since been corrected (*see* Meloni Dec., Exhibit F), to such extent as to challenge the "honesty, trustworthiness or fitness" of Mr. Meloni and his law firm is expectedly pathetic. However, the fact that they also have the insolence to then instruct the Court as to its own ethical obligations is astonishing. Plaintiff's Memo. ¶72 n. 8. It further illustrates the unfathomable depths to which they will stoop to resuscitate Plaintiff's fatally anemic disqualification argument.

depositions with Robert Meloni at the helm of Gano's litigation team. By forcing Gano to retain new counsel, who will require substantial time (at substantial cost to Gano) to familiarize him/herself with the twenty-eight years of underlying facts and law of this case, Plaintiff will further delay the inevitable dismissal of his lawsuit and the sanctions that will surely follow. During this interruption, Plaintiff hopes that he can extort the quick unwarranted settlement -- with new, less enlightened counsel -- that he has openly sought from the moment he filed his Complaint.

Tellingly, most of the spurious factual assertions and mischaracterizations of the pleadings appear in Plaintiff's Memorandum and are thus improperly asserted by Plaintiff's counsel, as opposed to Plaintiff or a person with knowledge in a separate declaration, and for this additional reason the motion must fail.[3] First and foremost among these falsities is Counsel's intentional misrepresentation that "Ritchie brought this suit on behalf of himself and the Band". *See* Plaintiff's Memo. ¶1. Counsel fabricates this fiction of a phantom plaintiff because they know that without it Plaintiff's disqualification argument is dead on arrival.

Indeed, Plaintiff's own declaration – scarcely two pages long -- which is improperly submitted as Exhibit A to Plaintiff's memorandum of law, provides no facts to support the position proffered by Plaintiff's counsel.

---

[3] It is axiomatic that the Complaint cannot be amended by plaintiff's briefs. *See Sprince v. Hayden Books*, 97 Civ. 1936, 1997 WL 661120, at *3 n.1 (S.D.N.Y. Oct. 22, 1997) (*quoting O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989)), *aff'd*, 162 F.3d 1148 (2d Cir.1998); *Griffin v. PaineWebber Inc.*, 84 F. Supp.2d 508, 515 (S.D.N.Y. 2000).

Plaintiff's motion is thus easily exposed for its meritless and frivolous nature and must be dealt with accordingly.

## STATEMENT OF FACTS

### The Parties

Plaintiff filed his Complaint in this Court on August 15, 2007 in his "individual" capacity. *See* Meloni, Ex. A, ¶5 and Plaintiff's Dec. ¶2 ("I am, individually, the Plaintiff in the above styled case and a member of the popular music group known as 'Violent Femmes'"). While Plaintiff does assert in the Complaint that he does business under the name "Violent Femmes," the band "Violent Femmes" described by Plaintiff as consisting of the two members Gano and Ritchie (Plaintiff's Dec. ¶2), is not listed in the caption or defined in the body of the Complaint as a plaintiff to this lawsuit. *See* Meloni Ex. A, *passim*. Indeed, all references to the initiating party of the lawsuit, including on this motion, is to the singular "Plaintiff" Brian Ritchie. *Id.*, *passim;* Plaintiff's Dec. ¶1. Finally, all of the "Remedies" sought in this litigation are for the benefit of the individual Plaintiff "Ritchie," not the band. *See* Complaint VII "Remedies Requested" at pp. 27-28.

In his accompanying Declaration, Plaintiff alleges that he is a member of and business partner with Gano in the "partnership that is the Band." *See* Plaintiff's Dec. ¶3. Indeed, he defines the band as the "Partnership". *Id.* Plaintiff also claims that during the relevant time period, "to further the Band's business activities," he and Gano formed and co-owned

the following entities:  VF, Inc., a Wisconsin Corporation; Violent Femmes Touring, Inc., a New York Corporation; Add It Up Productions, a Delaware Corporation; and VF2, Inc., a Wisconsin Corporation.  *See* Complaint ¶18; Plaintiff Dec. ¶4.  Plaintiff then summarily claims without factual support that "[t]hese entities are essentially subsidiaries of the Partnership."  Plaintiff's Dec. ¶4.  However, neither the "Partnership" nor any of its purported "subsidiaries" appear as plaintiffs in this action.  *See* Complaint *passim*.

With respect to Mr. Meloni's role as an attorney during the relevant time period, Plaintiff has limited his declaration to the following representations:

> "Both during and after the negotiation and execution of the 2001 Agreement, I believed, and continue to believe, Robert S. Meloni to be an attorney for the Partnership, VF2, Inc. and Violent Femmes Touring, Inc."  Plaintiff's Dec. ¶7.

> "Both during and after the negotiation and execution of the 2001 Agreement, I believed, and continue to believe, Robert S. Meloni to represent the interests of the Partnership, VF2, Inc. and Violent Femmes Touring, Inc."  Plaintiff's Dec. ¶8.

Thus, Plaintiff never stated that he believed that Mr. Meloni was <u>his</u> attorney or that that Mr. Meloni represented Plaintiff's individual interests.  In light of Plaintiff's explicit representation as to his belief that Mr. Skiena was his "attorney" and represented his "individual interests" in the immediately preceding two paragraphs of Plaintiff's declaration, this omission cannot be considered an oversight.  *Compare* Plaintiff's Dec.¶¶5-6 ("I believed, and continue to believe, Alan N. Skiena to be . . . my attorney . . . I believed, and

4

continue to believe, Mr. Skiena to represent . . . my individual interests . . . "). Plaintiff's uncharacteristic candor on this one issue confirms the fact that Mr. Meloni never represented Brian Ritchie in any legal or other capacity, or obtained confidential information regarding the same. *See* Meloni Dec., ¶¶11-13.

However, assuming *arguendo*, (1) the existence of the "Partnership," and (2) that Plaintiff had standing to assert a claim on behalf of the purported "Partnership," both of which Gano denies, the correct analyses requires that Plaintiff prove that Mr. Meloni was the attorney for the "Partnership," that there was an exchange of confidential information between the "Partnership" and Mr. Meloni and that the person revealing the confidential information had a reasonable expectation, under the circumstances, to believe that Mr. Meloni would not share such confidences with Gano. In light of Plaintiff's unwavering understanding that in each and every instance of the purported representation of the Partnership, that Mr. Meloni first and always represented Gordon Gano, there is no reasonable basis to believe that Mr. Meloni would maintain any purported shared confidentiality of the Partnership vis-à-vis Gano.

**<u>The Complaint</u>**

Plaintiff's Complaint is a virtual *olla podrida* of contrived rights, purported wrongs, and unwarranted remedies deviously woven into the 26 year history of the musical group known as the "Violent Femmes." Applying a

rumor mill strategy of manufacturing facts through repetition of fallacious and salacious allegations, Plaintiff hoped to void the 2001 Agreement and extort an ownership interest in, and exclusive control of, the copyrights in Gano's musical compositions and the "Violent Femmes" trademark, instead of the basic income participation he contracted for and received.  Plaintiff's hubris also impels him to concoct trademark rights in songs where none exist and to seek a share of the ownership in sound recordings that are not owned by Gano, but by the record companies that commissioned, funded, released and distributed Violent Femmes albums over the years.  Incredibly, Plaintiff seeks this latter declaration of an equal ownership interest in the sound recording copyrights without suing the parties that Plaintiff knows – and has now admitted - are the actual owners of those sound recording copyrights.[4]

---

[4] Plaintiff has now admitted that these non-parties are the actual owners of the sound recording copyrights in his responses to Gano's Requests to Admit. When asked to admit the identity if the actual owners of those sound recording copyrights, on an album by album basis, Plaintiff's uniform response was "*Plaintiff is not by this lawsuit challenging the assertion by any third party of copyright ownership in the Sound Recordings.*" Thus, it took Plaintiff over 9 months from the date he filed the Complaint to finally admit what he knew or should have known before he filed the Complaint:  that the various non-party record companies that have claimed a 100% ownership interest in all of the Violent Femmes sound recordings from inception to date, including Slash Records (Warner Bros. Records), Elektra Asylum Records, and Add It Up Productions, Inc., are the sole and exclusive owners thereof. *See* Meloni Dec., Ex. B, Response Nos. 4,6, 12, 17, 23, 33, 34, 36, 37, 38, 39, 41, 42, 43, 45, 46, 47, 49, 50, 52, 153, 54, 55, 57, 58, 59, 61, 62, 63, 65, 66, 67, 69, 71, 72, 73, 75, 76, 77, 85, 86, 93, 94, 100, 114, 115, 120, 131, 144, 148, 152, 161, 171, 174 and 178.

Ritchie also admitted that he knew that Slash (Warner Bros.) was the copyright owner of the Band's biggest hit called "Blister In The Sun", written by Gano, in blog posted on February 26, 2007 at 4:21 pm on www.salemslots.wordpress.com by Ritchie:

> "For the fans who rightfully are complaining about the Wendy's burger advertisement featuring Blister in the Sun, Gordon Gano is the publisher of the song and Warners (sic) is the record company. When they agree to

Resting on a foundation of fundamentally flawed, contractually released and otherwise expired federal claims, Plaintiff's convoluted Complaint disingenuously invoked every tort claim imaginable with the deceptive intent of converting what is at most, for Plaintiff, a basic breach of contract action, limited to nominal damages, into a windfall of unwarranted ownership rights, exemplary damages and attorney's fees.[5]

Seeking to nip this patently frivolous action in the bud, Gano sought permission to file an omnibus motion to dismiss the Complaint on the grounds, *inter alia*, that Plaintiff had failed to sue indispensable parties – *i.e.* the record companies that actually own the sound recording copyrights -- and that the applicable statute of limitations, laches and a general release executed by Plaintiff in 2002 bar his claims. *See* Meloni Dec. Ex. D (Pre-Motion Demand Letter dated November 30, 2007) and Plaintiff's Memo, Ex., G pp. 2-5 (Section 1 B – Defendant's Statement of the Case).

Plaintiff somehow convinced the Court to deny Gano's request to make his motion at that time primarily on the grounds that the parties should be allowed to complete discovery, including depositions. *See* Plaintiff's Memo,

---

use it there's nothing the rest of the band can do about it, because we don't own the song or the recording."

*See* Meloni Dec., Ex. B  , Ritchie Responses to Requests No. 220 and 222. *See also* Ritchie Responses to Requests Nos. 221 and 223.

[5] The Complaint dated August 14, 2007, without exhibits, is attached to the Meloni Declaration as Exhibit A.

Ex, G, pp 5-6.[6]  Now after Gano has been forced to produce over 18,000 pages of documents and is ready to proceed with his deposition, Plaintiff hopes to avoid or delay completing his own document production and facing his own deposition by moving for disqualification of Gano's long-time litigation counsel.  If successful in this motion, Plaintiff hopes to use the ineluctable delay to extort an unwarranted settlement with the less factually fluent, substitute counsel.

Plaintiff's purported basis for the disqualification of Robert Meloni and his law firm are three fold -- each equally disingenuous and flawed.  The first argument is that there is a successive conflict arising from Mr. Meloni's purported representation of the "Partnership" Violent Femmes.  The factual basis for this claim is that in 2003, Meloni submitted a creditor's proof of claim to a private liquidation company on behalf of "Gorno Music, VF2, Inc. and the Violent Femmes."  *See* Plaintiff's Memo. ¶13, Ex. W.  Meloni has stated that the proof of claim submission to that private company on behalf of VF2, Inc. and the Violent Femmes was performed purely as a favor to his client, Gano, and that he was not retained or paid for his services by either VF2, Inc. or the Violent Femmes. More particularly, he was asked by Gano to submit a proof of

---

[6] The relevant section reads as follows: "Rule 12(c) motions are strongly disfavored and rarely granted in the absence of adequate opportunity for discovery. . . .  by depriving Plaintiff of the very discovery necessary to oppose Defendant's premature and unfounded Rule 12 (c) motion, thus disarming Plaintiff and placing him in an untenable Catch-22. . . . leave to file that motion should be denied on that basis alone . . .  [it] would also run counter to the strong policy favoring full and expeditious disclosure of all facts and evidence potentially relevant to this case, and leave to file such highly unorthodox motions should be denied with full discovery on all issues permitted to proceed apace."

claim for Gorno Music, with respect to publishing monies owed solely to Gorno Music by the debtor from mechanical licenses Gorno had issued. Since the filing deadline was looming, and no one else was prepared to do it, Meloni also included a proof of claim for record royalties the debtor owed VF2, Inc. under a master license agreement. Meloni never discussed this with Ritchie, or billed Ritchie, "the Violent Femmes" or VF2, Inc. for his services. *See* Meloni Dec. ¶21.  Moreover, that limited representation did not entail the transfer of any confidential information by VF2, Inc. or the Violent Femmes and the subject matter of that representation, financial claims against the insolvent record company, is not substantially related to the claims at issue in this action. Meloni Dec. ¶¶13, 19-23.

However, before the Court can consider the relevancy of the above scenario, it must first accept Plaintiff's intentional misrepresentation that the "Partnership" defined by Plaintiff as the band "Violent Femmes" is, along with Ritchie, a separate plaintiff in this lawsuit.  Only if this Court accepts this fiction can Plaintiff argue that there is a potential successive conflict arising from Meloni's representation of Gano in this litigation.  However, the most cursory review of the Complaint and, indeed, Plaintiff's motion papers, reveal that the band "Violent Femmes" never was a plaintiff in this lawsuit and therefore cannot raise the purported conflict.  Moreover, the Court must also decide as a matter of law that the "Violent Femmes" referred to in Plaintiff's Memo., Ex. W, is a purported Partnership, and that Ritchie has standing to assert the purported Partnership's rights in this litigation.  Those issues have

not been determined.  Thus, there is no foundation for a claim of successive conflict by the "Partnership" Violent Femmes.

The second basis for disqualification is that because Defendant has produced no "waiver of conflict" correspondence acknowledging Mr. Meloni's representation of Gano as a defendant in this litigation and his representation of Gano's Publishing Administrator, Alan N. Skiena, as a non-party witness, there is some form of concurrent conflict that purportedly calls for Mr. Meloni's disqualification.   However, both Mr. Skiena and Gano are aware of the potential for conflicts arising from Mr. Meloni's representation of both men and have waived the same.  *See* Gano Dec. ¶26; Skiena Dec. ¶6.  Moreover, Plaintiff does not have the standing to raise the purported conflict, which would lie solely with either Gano or Skiena.

As his third prong of attack, Plaintiff argues that because Mr. Meloni represented Gano in the negotiation and drafting of the 2001 Agreement, he will be required to be a witness at trial and thus barred by the "advocate-witness" rule.  Assuming *arguendo*, that Plaintiff can first satisfy his heightened burden to prove that Mr. Meloni would be required to testify at trial and that his testimony would not be cumulative and unnecessary, Plaintiff nonetheless cannot establish that Mr. Meloni's testimony would be adverse to Gano in this litigation.  Finally, even if this Court were to determine that the advocate-witness rule was implicated, it does not require the vicarious disqualification of Mr. Meloni's law firm and partner, Thomas McCaffrey.  Thus, Gano remains entitled to the advocacy of long-time litigation counsel,

Robert Meloni and his law firm, Meloni & McCaffrey, P.C., and Plaintiff's motion to disqualify must be denied.

## ARGUMENT

### THERE IS NO GOOD FAITH BASIS FOR SEEKING DISQUALIFICATION

Plaintiff's gratuitous and salacious arguments for disqualifying Robert Meloni and Meloni & McCaffrey, P.C. as Gano's trial counsel raise the bar of legal gamesmanship to never before reached levels. Unfortunately for Plaintiff, his arguments, easily deconstructed, do not withstand legal scrutiny. *Alea iacta est*, and Plaintiff cannot come up with new arguments in his reply brief. *See Knipe v. Skinner,* 999 F2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief.").

**I.** *The Standard of Review for Motion to Disqualify Opposing Counsel*

Motions to disqualify counsel are generally disfavored in this Circuit. *See Lamborn v. Dittmer,* 873 F.2d 522, 531 (2d Cir. 1989); *Cohen v. Acorn Int'l Ltd.*, 94 Civ 6394, 1995 WL 716743, *1 (S.D.N.Y. Dec. 5, 1995); *Paramount Communications, Inc. v. Donaghy*, 858 F. Supp. 391, 394 (S.D.N.Y. 1994). Disqualification of counsel impinges on a party's right to employ the counsel of choice. *See Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791 (2d Cir. 1983); *Gov't of India v. Cook Indus., Inc.,* 569 F.2d 737, 739 (2d Cir.1978); *Stratavest Ltd. v. Rogers,* 903 F. Supp. 663, 666 (S.D.N.Y.1995). The Second Circuit has "been loathe to separate a client from his chosen

attorney," (*In re Bohack Corp.*, 607 F.2d 258, 263 (2d Cir 1979)), as "[d]isqualification has a serious and immediate adverse effect by denying the client his choice of counsel." *Soc'y for Good Will to Retarded Children, Inc. v, Carey*, 466 F. Supp. 722, 724 (E.D.N.Y. 1979).

Because, as in the present case, motions to disqualify counsel are often tactically motivated, cause delay and additional expense, and disrupt attorney-client relationships, the movant must meet a high standard of proof to disqualify the non-movant's counsel.  *See Evans,* 715 F.2d at 791 ("high standard of proof" for disqualification motions because they are "often interposed for tactical reasons, and that even when made in the best of faith, such motions inevitably cause delay"); *Gov't of India,* 569 F.2d at 739 ("high standard of proof" for disqualification motions because a client loses time, money, and the benefit of its longtime counsel's specialized knowledge of its operations when its attorney is disqualified); *Ello v. Singh*, 05-CV-9625, 2006 WL 2270871, *2 (S.D.N.Y. Aug. 7, 2006) (same); *Felix v. Balkin*, 49 F. Supp.2d 260, 267 (S.D.N.Y. 1999) (same)**;** *Stratavest Ltd.,* 903 F. Supp. at 666 (same); *First Hawaiian Bank v. Russell & Volkening*, 861 F. Supp. 233, 237 (S.D.N.Y. 1994) (same); *Kubin v. Miller,* 801 F. Supp. 1101, 1112 (S.D.N.Y.1992) (same); *Bennett Silvershein Assocs. v. Furman*, 776 F. Supp. 800, 802 (S.D.N.Y. 1991) (same).    When it comes to satisfying the high standard, "[m]ere speculations will not suffice."  *Paretti v. Cavalier Label Co.*,

722 F. Supp. 985, 987 (S.D.N.Y. 1989).    *See also, Paramount Communications, Inc.,* 858 F. Supp. at 394.

Disqualification of an attorney is only appropriate where there has been a clear violation of the Code of Professional Responsibility leading to a significant risk of trial taint.  *See Occidental Hotels Mgt B.V. v. Westbrook Allegro L.L.C.*, 440 F.Supp.2d 303, 309 n.5 (S.D.N.Y. 2006); *U.S. Football League v. Nat'l Football League*, 605 F. Supp. 1448, 1452 (S.D.N.Y. 1985) (a motion to disqualify "will be granted only if the facts present a real risk that the trial will be tainted"). Such a risk exists when "the attorney is in a position to use privileged information acquired in the representation of a client against that client in another matter," or when "there is a significant risk that the conflict will affect the attorney's ability to represent his or her client with vigor." *Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp.2d 449, 455 (S.D.N.Y. 2000).   There is no attendant risk of trial taint in allowing Gano to retain the legal representation of his long-time litigation counsel.

## II. *There is No Successive Conflict.*

Plaintiff's first argument asserts that Meloni's representation of Gano constitutes a "successive" conflict of interest in violation of the ABA Model Code and New York Code of Professional Responsibility, in that it amounts to representing a party whose interests are adverse to a former client. *See* Plaintiff's Memo pp. 9-10.  As demonstrated below, he misrepresents the facts and is wrong on the law.

To disqualify opposing counsel on conflict of interest grounds in order to protect the confidences of a former client, a movant must establish three elements: (1) the <u>party</u> is a former client of the attorney; (2) the attorney had access to, or was likely to have had access to, relevant privileged information in the course of the alleged prior representations; and (3) there is a substantial relationship between the subject matter of the (alleged) prior representation and the issues in the current action. *See Evans,* 715 F.2d at 791; *Ello,* 2006 WL 2270871 at *3. In cases where the earlier representation constituted a joint effort between the parties a fourth requirement, potentially precluding the use of the third factor, is added: "'before the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client.'" *Ello*, 2006 WL 2270871 at *3 (*quoting Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir. 1977)). *See also Cohen,* 921 F. Supp. at 1064; *First Hawaiian Bank*, 861 F. Supp. at 238 n.7. Plaintiff has not and cannot satisfy these elements.

### A. *There Is No Attorney-Client Relationship With Meloni.*

The threshold question in a disqualification motion on the grounds of successive conflict is whether the moving plaintiff had an attorney-client relationship with Meloni. *See April Broad, Inc. v. Smith*, 95 Civ. 7664, 1996 WL 137487, *5 (S.D.N.Y. Mar. 27, 1996). The answer to this question brings Plaintiff's motion to a grinding halt.

### (1) The Purported Violent Femmes "Partnership" is a Phantom Plaintiff.

Plaintiff's entire argument for disqualification on the ground of "Successive Conflict" is built on the spurious foundation: "Ritchie brought this suit on behalf of himself and the Band." *See* Plaintiff's Memo. ¶1. Without any supportive reference to the Complaint, Plaintiff's counsel then extrapolate an objection to Meloni's representation of Gano in this litigation based on the attorney's purported prior representation of the Partnership/Band. *Id.*, ¶¶21-44. However, the purported Partnership is not a plaintiff in this litigation, only Ritchie is. *See Leber Associates, LLC v. Entertainment Group Fund, Inc.*, 00 Civ. 3759, 2001 WL 1568780, **4, 7 (S.D.N.Y. Dec. 7, 2001) ("the plaintiff in this action, Leber Associates, was never a client of the firm. Disqualification, therefore, cannot be granted on the basis of prior representation.* * * * We also note that Mr. Leber's status as a non-party offers a separate reason for rejecting plaintiff's motion. Even if Mr. Leber were a current client of the firm, that would not dictate disqualification. Mr. Leber is not a party to the litigation, and thus the firm's appearance on behalf of two of the defendants could not be characterized as a presumptive violation of its fiduciary responsibilities to a client.")

A review of the governing pleadings reveals that Plaintiff's misrepresentation on this fundamental issue could only be intentional and asserted in bad faith.

Plaintiff filed his Complaint on August 15, 2007 in his "individual" capacity. *See* Meloni Dec. Ex. A ¶5 and Plaintiff's Dec. ¶2 (I am, individually, the Plaintiff in the above styled case and a member of the popular music group known as "Violent Femmes"). While Plaintiff does assert in the Complaint that he does business under the name "Violent Femmes," the purported partnership "Violent Femmes," defined by Plaintiff as consisting of the purported partners Brian Ritchie and Gordon Gano, is not listed in the caption or defined in the body of the Complaint as a separate plaintiff to this lawsuit. *See* Meloni Dec., Ex. A, *passim.* Indeed, all references to the initiating party of the lawsuit, including on this motion, is to the individual "Plaintiff" Brian Ritchie. *Id.*, *passim.* Moreover, all of the Remedies sought in the Complaint are for the sole benefit of the individual Plaintiff "Ritchie," not the band. *Id.,* VII "Remedies Requested" at pp. 27-28.

Plaintiff's counsel's attempt to circumvent this hurdle by bootstrapping the existence of a separate imaginary Partnership-plaintiff through the language "Brian Ritchie, individually, and d/b/a Violent Femmes" appearing in the preamble of the Complaint is a non-starter. *See* Plaintiff's Memo. ¶1. New York courts have long recognized that when it comes to pleadings, there is a clear distinction between naming as a party an existing partnership and naming as a party an individual doing business under the same name as the partnership.

In *Jet Age Knitwear Mach. Corp. v. Philip*, 22 A.D.2d 674, 253 N.Y.S.2d 339 (1st Dep't 1964), plaintiff sued defendant as follows: "Morris

Philip, individually and doing business under the firm name and style of Philip Knitting Mills, Defendant." Thereafter, the trial court denied defendant's motion to dismiss the complaint on behalf of the partnership Philip Knitting Mills. The First Department affirmed, holding:

> The motion must have been denied (or dismissed) because the alleged partnership was not a party to the action, was not named as a partnership entity in the complaint, and the motion was not made by it. It was not proper to amend the caption or the allegations of the pleading to include the partnership as a party. If plaintiff claims any rights against the partnership, he must first obtain leave of the Court on proper papers to add the partnership as a party, amend the caption, add appropriate allegations in the pleading, and to serve or reserve a partner in that capacity. The description in the caption and complaint of defendant Philip as doing business under a certain style is not equivalent to including the partnership entity, although the style happens to coincide with the name of the partnership. In consequence, there is nothing in the caption or pleading which relates to the partnership.

*Id.*, 253 N.Y.S.2d at 339.

Here, Ritchie has brought suit solely in his individual capacity. *See* Complaint *passim*. The fact that he alleges in the preamble of the Complaint to be "doing business [as "Violent Femmes"] is not equivalent to including the ["Violent Femmes"] partnership entity, although the style happens to coincide with the name of the purported partnership." *Id.*

Moreover, Plaintiff has not established that there is indeed a "Partnership" or that he would have standing to assert any claim against Gano on its behalf. When Plaintiff's Counsel recently resurrected their misguided intention to move to disqualify Meloni and his law firm, they raised it in a

17

series of emails, one of which conceded the necessity of first establishing the existence of the purported "Partnership" as a matter of law in order to succeed on the ground of successive conflicts of interest:

> "Please be advised that we may also file two motions ancillary to the motion to disqualify: (a) a motion for partial summary judgment on Plaintiff's fifth cause of action concerning the existence of a partnership relationship between Plaintiff and Defendant, *which we believe is necessary to the Court's determination of disqualification for successive conflicts of interest . . . .*"

*See* Meloni Dec. Ex. C (italics added) (Emilio Nicolas' June 12, 2008 email to Thomas McCaffrey).   Plaintiff's prognostication on this issue proves true. Their failure to follow through on filing that motion can only be read to mean that they recognize their vulnerability on that issue.   Indeed, Gano denies that the business of the band Violent Femmes was conducted as a partnership, as all Violent Femmes business was conducted through the various corporate entities referred to in Plaintiff's Complaint. *See* Gano Dec. ¶¶ 2 - 15.[7]  *See Nasso v. Seagal*, 263 F. Supp.2d 596, 618 (E.D.N.Y. 2003) (dismissing claim for breach of partnership agreement where parties had been carrying out their film

---

[7] Briefly, Gano's and Ritchie's activities as members of the band the "Violent Femmes" consisted solely of making or licensing sound recordings which were delivered to various third party record companies and performing at live concerts, where their services were furnished to third parties by their corporation Violent Femmes Touring, Inc. Their individual services were furnished to these third parties by Violent Femmes, Inc.  (Gano, Ritchie and former band member Guy DeLorenzo) and later VF2, Inc. (Gano and Ritchie only). These corporations also granted trademark licenses for the use of the "Violent Femmes" trademark. Since 100% of the band's activates consisted only of the foregoing, there could be no residual business for the alleged "partnership" to conduct.  *See* Gano Dec. ¶¶2-15.

business activities through corporations formed for that purpose). Gano's declaration, at a minimum, raises a material issue of fact that would have required the denial of Plaintiff's proposed partial summary judgment motion on the issue of the existence of partnership, had he chosen to make it.

Standing alone, Plaintiff's conclusory, factually unsupported allegations concerning the existence of a purported Partnership do not rise above the type of "speculation" that fails to satisfy the "high standard" of proof required on a motion for disqualification. Thus, if the "Partnership" does not exist, and/or it is not a plaintiff in the Complaint, it cannot move to disqualify Mr. Meloni as attorney for Gano in this litigation, even if Plaintiff had named it as a separate party. *See Leber Assocs, LLC,* 2001 WL 1568780 at **4, 7.

The factual basis for this claim is that in 2003, Meloni submitted a creditor's proof of claim to a private liquidation company on behalf of "Gorno Music, VF2, Inc. and the Violent Femmes." At the time, Beyond Music had failed to pay Gorno Music mechanical (publishing) royalties it owed pursuant to two Mechanical License Agreements between Gorno Music and Beyond Music. Gano Dec. ¶24-25. Also, Beyond Music had failed to pay record royalties to VF2, Inc. for record royalties it owed VF2, Inc. from the sale of two Violent Femmes albums. *Id.* Gano asked Meloni to file a proof of claim for Gorno Music at the time. *Id.* Since there was an impending deadline to file these claim forms, and since Meloni was already handling the Gorno Music claim, Meloni filed a proof of claim on behalf of VF2, Inc. to protect VF2, Inc. rights. *Id.* That filing was performed purely as a favor to Gano and Meloni

was not retained or paid for his services by VF2, Inc., Brian Ritchie or "the Violent Femmes." *Id.  See also* Meloni Dec. ¶ 18-21  In fact, the actual proof of claim form states that it is submitted on behalf of "VF2, Inc. d/b/a Violent Femmes" and not on behalf of any separate entity or purported partnership Violent Femmes.  Gano Dec. ¶25 and Meloni Ex. E.  ¶.

> Finally, even if Meloni's submission of a proof of claim against an insolvent record company on behalf of "Gorno Music, VF2, Inc. and the Violent Femmes" constituted representation of the purported "Partnership," which Meloni denies, that one-time act is not substantially related (or even remotely related) to the present action and there is no representation by Ritchie that he shared any confidential with Meloni with respect to that isolated, unrelated matter, or any other matter.  *See* Plaintiff's Dec., *passim*.

> In sum, because Plaintiff has not established as a matter of law that the purported partnership "Violent Femmes" exists, and the Violent Femmes is not a plaintiff in this action, there is no basis for Ritchie to move to disqualify Meloni.  For all of the above reasons, Plaintiff's argument that successive conflicts of interest arise due to Meloni's purported representation of the purported "Partnership" made up of the band "Violent Femmes" must be rejected outright.

### (2) *Plaintiff is Not a Former Client of Meloni.*

> Plaintiff Ritchie concedes that there is no attorney-client relationship between him and Meloni and that he has no reason to believe that

Meloni has ever represented his individual interests. *Compare* Plaintiff's Dec. ¶¶5-6 with 7-8. However, now that his fabricated phantom plaintiff "Partnership" has been exorcised, Plaintiff cannot be heard to argue that an attorney-client relationship extended to him, individually, through Meloni's purported representation of the purported "Partnership, VF2, Inc. and Violent Femmes Touring, Inc." *Id.* ¶¶ 7-8.

It has generally been held on motions for disqualification of counsel that in the absence of an agreement by the parties to the contrary, a lawyer for a business entity represents the entity and not its partners, officers, shareholders, employees or members. *See Omansky v. 64 N. Moore Assoc.*, 269 A.D.2d 336, 336, 703 N.Y.S.2d 471 (1st Dep't 2000) (court denied motion to disqualify, stating: "The law firm's representation of the partnership in a prior action did not render the law firm counsel for the plaintiff partner in that action"); *Talvy v. Am. Red Cross in Greater N.Y.*, 205 A.D.2d 143, 149, 618 N.Y.S.2d 25, 29 (1st Dep't 1994) ("Unless the parties have expressly agreed otherwise in the circumstances of a particular matter, a lawyer for a corporation represents the corporation, not its employees."), *aff'd*, 87 N.Y.2d 826 (1995); *Cohen v. Acorn Int'l Ltd.*, 94 Civ 6394, 1995 WL 716743, *1 (S.D.N.Y. Dec. 5, 1995) ("a law firm does not represent the shareholder of a corporation, even a close corporation, simply by virtue of its representation of the corporation itself"); *Kushner v. Herman*, 215 A.D.2d 633, 628 N.Y.S. 2d 123 (2d Dep't 1995)(law firm's representation of limited partnership did not extend to individual limited partners). Thus, Plaintiff's purported status as a partner, shareholder or officer

of one of the purported entities set forth in his declaration will not bridge the chasm that precludes a finding that he is a former client of Meloni.

Nor is there any other factual basis to support such a claim. "There is no single, well-defined test used to determine whether an attorney-client relationship exists; rather, a court must weigh a number of factors, including among others: (1) whether a fee arrangement was entered into or a fee paid; (2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation; and (3) whether the purported client believes that the attorney was representing him and whether this belief is reasonable." *Parkins v. St. John*, 01 Civ 11660, 2004 WL 1620897, *4 (S.D.N.Y. July 19, 2004).

Here there was no fee arrangement entered into between Meloni and Ritchie, either individually, or as representative of the Band Violent Femmes. *See* Meloni Decl. ¶23. Plaintiff disingenuously attempts to construct a purported fee arrangement with the band where none exists, by misrepresenting the nature of certain documents and charges appearing therein. *See* Plaintiff's Memo. ¶25. For example, Ex H ¶7 states nothing concerning "the Band's revenue," but expressly concerns Plaintiff's continued receipt of "an income participation in the amount of 7.5% of Gano's net receipts" from Gano's publishing income.

The reference to "Estimate of Meloni Charges" referred to on the worksheet appearing as Ex. Y, was a surcharge imposed by Gano to offset

legal fees <u>Gorno Music</u> had incurred as a result of legal services provided to Gorno Music by Meloni.  *See* Gano Dec. ¶17; Skiena Dec. ¶4.  They do not represent payment for legal services performed by Meloni for Plaintiff or for the Band.  *See* Gano Dec. ¶17;  Skiena Dec. ¶4; Meloni Dec. ¶24.  Moreover, there is nothing in Plaintiff's Declaration that supports the assertion that Plaintiff believed that Meloni billed him or the Band for legal services.  *See* Plaintiff's Dec., *passim.*

Nor was there any written contract or retainer agreement between them indicating that Meloni was to provide legal representation to Brian Ritchie, or for that matter, the Band, or any of the corporations through which Gano and Ritchie conducted business.  Plaintiff's Memo. ¶26.   Nor has Plaintiff stated otherwise.  *See* Plaintiff's Dec., *passim*.  Finally, there is nothing in the documentary record that could support Plaintiff's objectively reasonable belief that Meloni represented him.   In fact, despite the clear opportunity to do so in his declaration, Plaintiff refused to state that he believed that Meloni was <u>his</u> attorney or that Meloni represented <u>his</u> interests. *See* Plaintiff's Dec. ¶¶ 7-8.

As Plaintiff has failed to show a previous attorney-client relationship between Plaintiff (or the phantom Plaintiff Partnership) and Meloni, the Court need not proceed further in its disqualification analysis. *See Ello,* 2006 WL 2270871 at *5; *Parkins*, 2004 WL 1620897 at *5; *Culver v. Merrill Lynch & Co.,* 94 Civ. 8124, 1997 WL 223088, *4 (S.D.N.Y. May 5,

1997).  Plaintiff's motion to disqualify Meloni as Gano's trial counsel must be denied.

### B. *There was No Reasonable Expectation of Confidentiality.*

Assuming *arguendo*, that Plaintiff could overcome the above-referenced insurmountable hurdles, his motion to disqualify must still be denied.  Even an alleged implied attorney-client relationship founded upon the exchange of confidential information is still limited by the requirement that the person revealing the confidential information must have had a reasonable basis, under the circumstances, to believe that the attorney would respect such confidences. *See Ello*, 2006 WL 2270871 at *3; *Cohen,* 921 F. Supp. at  1064.

As mentioned above, the second part of the disqualification analysis requires that the movant, here Plaintiff, put forth evidence that the attorneys had access to, or were likely to have access to, relevant privileged information in the course of the alleged prior representations. *See Ello*, 2006 WL 2270871 at *5; *Parkins*, 2004 WL 1620897 at *5.  This confidentiality inquiry operates "at the threshold" of prong three, the substantial relationship element. *Ello*, 2006 WL 2270871 at *5.  Thus, "'[b]efore the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client.'" *Cohen*, 921 F. Supp. at 1064 (*quoting Allegaert,* 565 F.2d at 250).

Plaintiff is foisted on his own petard, as his proffered best examples of purported confidential communications, Exhibits B, C and X, (*see e.g.*, Plaintiff's Memo ¶40) directly undermine his claim.

Exhibit B was an email dated July 10, 2006, addressed by Plaintiff to the manager of the Violent Femmes, Darren Brown, and Gano, through Gano's wife's email address. It was cc'd to Meloni and Skiena. By its very language it is clear that it addresses both Meloni and Skiena as Gano's "representative[s]." Its first paragraph makes general references to undefined "new business" to discuss and "old and very stale business" to be settled. It reads in relevant part:

> "If Gordon is capable of discussing these matters he should give me a call. *If he is not capable I am awaiting direct communication from his representative. I address this email to the only people I can think of who might fit the bill.* If there is another party out there who represents and is accountable for Gordon please direct them to me and Darren." (italics added)

Exhibit C is an email from Ritchie to Meloni dated June 30, 2004. It opens with the admission that it was "No big deal" and then discusses Ritchie's "preemptive strike" to arrange for the purchase of the master recordings for the two albums Viva Wisconsin and Freak Magnet from the insolvent record company. Ritchie states that he used the attorney Dan Weiss (not Meloni) to conduct the reported purchase. It is irrefutable that Ritchie contacted Meloni as Gano's representative when he states "I was having trouble getting ahold [sic] of GG so I thought I'd run it by you." It is equally

clear that Ritchie's intent was to provide Gano, through Meloni, with the information in the email.

Exhibit X was a "proposal" dated October 26, 2001, made to Meloni, as Gano's representative, to "break the current stalement" existing between Plaintiff and Gano. It was made for the express purpose of conveyance to Gano, through Meloni as Gano's representative, and not as a confidential communication to someone Plaintiff could reasonable believe to represent him, and not share with Gano.

It is patently clear that in all three communications, Plaintiff was addressing Meloni as the representative of Gano. It is equally clear that there is nothing "confidential" that Plaintiff had a reasonable expectation would not be disclosed by Meloni to Gano. In fact the only purpose of all three communications was to convey the information to Gano.

Plaintiff's representation of his belief that "Meloni is an attorney for and/or represents the interests of the Band, as well as the interests of [Gano]" only further weakens his argument. *See* Plaintiff's Memo. ¶31. In light of this concession, any belief that Gano would not have access to and use of the information he provided to Gano's counsel is patently unreasonable and militates in favor of denial of a disqualification motion. *See Culver,* 1997 WL 223088 at *4 (noting that plaintiffs' understanding that the defendant company's attorney also served in a dual capacity as plaintiff's attorney militates in favor of denial of a disqualification motion "as it precludes plaintiff

26

from having harbored a reasonable expectation" that information provided by plaintiff would not be shared with the attorney's "other" client, the corporate defendant); *Allegaert,* 565 F.2d at 250-51 (holding that even in instances of prior joint representation, it is unreasonable for a client to believe that the law firm would not share confidential information received from one client with the primary client); *Shabbir v. Pakistan Int'l Airlines*, 443 F.Supp.2d 299, 311 (E.D.N.Y. 2005) ("Knowing that Mr. Alvi represented PIA, Mr. Shabbir could not reasonably have expected that any information imparted to Mr. Alvi would have been withheld from PIA during the course of Alvi's representation of PIA."); *Parkins*, 2004 WL 1620897 at *5 (holding that even in a case of prior joint representation, disqualification is unwarranted where counsel established his relationship with the non-moving party before establishing his relationship with the movant and his representation of the non-movant was open, continuous, and adverse to the movant's interests); *Cohen*, 921 F. Supp. at 1064 (same).  In light of this admission, Plaintiff's disqualification motion must be denied. *Ello,* 2006 WL 2270871 at *5.

### C.  There is No Substantial Relationship.

Assuming *arguendo*, that Plaintiff could satisfy the prior elements, he could not satisfy the last one.  To determine whether disqualification is required in a subsequent representation, the Second Circuit applies a "substantial relationship" test, granting disqualification only upon a showing that the relationship between issues in the prior and present cases is "patently

clear." *Gov't of India,* 569 F.2d at 739-40 (citations omitted). This requires that Plaintiff demonstrated that the issues involved in the two representations are "identical" or "essentially the same". *Id.*, at 740. *See also H & H Acquisition Corp. v. Fin. Intranet Holdings*, 98 Civ. 5269, 2000 WL 502869 (S.D.N.Y. April 27, 2000). Moreover, substantial relationship questions generally involve situations in which an attorney acquired information in the process of defending a client against a lawsuit, and later brought suit against that client on substantially the same issue. *See Gov't of India*, 569 F.2d at 737; *Parkins,* 2004 WL 1620897 at \*6. That is not the case in the present situation.

Here, the purported prior representation involved the transmittal of a proof of claim against an insolvent record company on behalf of "Gorno Music, VF2, Inc. and the Violent Femmes." *See* Plaintiff's Memo ¶¶ 13, 27, 36 and Ex. G; Meloni Dec. ¶¶18-21. There is no substantial relationship between that discreet issue and the claims asserted by Plaintiff in this action. For this reason alone, Plaintiff's motion to disqualify Meloni must be denied.

## III. *There is No Concurrent Conflict of Interest.*

As with Plaintiff's successive conflicts argument, this argument is rife with speculation and misinformation. *See* Plaintiff's Memo. ¶¶ 45-51. To begin with, Meloni does not represent two parties to this litigation, as only Gano is a party. *See Leber Assocs, LLC*, 2001 WL 1568780 at \*\*4, 7 ("We also note that Mr. Leber's status as a non-party offers a separate reason for rejecting plaintiff's motion. Even if Mr. Leber were a current client of the firm,

that would not dictate disqualification. Mr. Leber is not a party to the litigation, and thus the firm's appearance on behalf of two of the defendants could not be characterized as a presumptive violation of its fiduciary responsibilities to a client.") Moreover, Plaintiff's only basis for arguing "adverse interests" is his counsel's pure speculation that "as this suit unfolds" Gano "may have claims against Skiena". *See* Plaintiff's Memo. ¶48. Speculation will not satisfy the high standard required to disqualify trial counsel. *See Colandrea v. Town of Orangetown*, 490 F.Supp.2d 342, 353 (S.D.N.Y 2007) ("With respect to the Town directing blame or bringing a malpractice suit against Keane & Beane, Plaintiff's assertion is entirely speculative at this point. . . . speculation that a party may one day decide to sue its counsel for malpractice is hardly sufficient to meet Plaintiff's burden in arguing for the drastic remedy of disqualification."). *See also Paretti*, 722 F. Supp. at 987 (speculation does not satisfy "high standard"); *Paramount Communications, Inc.*, 858 F. Supp. at 394 (same). Finally, both Gano and Mr. Skiena have confirmed to this Court in writing that, at the time Meloni took on the representation of Mr. Skiena (solely as a non-party witness to assist him in responding to Plaintiff's subpoena and possible deposition), both Gano and Skiena were given a full explanation of the implications of common representation and an opportunity to evaluate the need for representation free of any potential conflict with independent counsel and both agreed to waive any potential conflicts of interests. *See* Gano Dec. ¶26; Skiena Dec. ¶6. Thus, Plaintiff's concurrent conflict argument must fail.

**IV. *The Advocate-Witness Rule Does Not Require Disqualification.***

"'Disqualification motions premised on the advocate-witness rule are subject to strict-scrutiny because of the "strong potential for abuse" when a lawyer invokes the need to call opposing counsel as a witness and then acts to disqualify him as counsel."' *Parkins*, 2004 WL 1620897 at *6 (*quoting Stratavest Ltd,* 903 F. Supp. at 667). *See also Sec. Ins. Co. of Hartford v. Mendon Leasing Corp.*, 01 Civ. 9054, 2002 WL 31387484, *2 (S.D.N.Y. Oct. 22, 2002); *Russo v. Friedman,* 91 Civ. 6913, 1992 WL 196791, *9 (S.D.N.Y. July 31, 1992); *Paramount Communications, Inc.,* 858 F. Supp. at 394; *MacArthur v. Bank of New York,* 524 F. Supp. 1205, 1210 (S.D.N.Y.1981). A party seeking disqualification bears the burden of demonstrating that "it is likely that the testimony to be given by the witness [attorney] is necessary and that it is substantially likely to be prejudicial to the party represented by [the attorney]." *April Broad, Inc.,* 1996 WL 137487 at *5 (*citing Parke-Hayden, Inc. v. Loews Theatre Mgmt Corp.*, 794 F. Supp. 525, 527 (S.D.N.Y. 1992)). *See also Parkins*, 2004 WL 1620897 at *6 ("The moving party bears the burden of demonstrating how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring is substantial.").

The test, in turn, for whether an attorney ought to be called to testify is "whether the attorney's testimony could be significantly useful to his client." *MacArthur,* 524 F. Supp. at 1208. However, because attorney disqualification is a severe sanction, trial counsel should not be disqualified unless it is "likely

that [his] testimony . . . is necessary." *S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.,* 69 N.Y.2d 437, 446, 515 N.Y.S.2d 735, 739 (1987); *Keoseian v. Von Kaulbach*, 707 F. Supp. 150, 154 (S.D.N.Y. 1989) (same). "A finding of necessity takes into account such factors as the significance of the matters, weight of the testimony, and availability of other evidence." *S & S Hotel,* 69 N.Y.2d at 446. *See also Paramount Communications, Inc.,* 858 F. Supp. at 394; *Parke-Hayden, Inc.,* 794 F. Supp. at 527; *Kubin,* 801 F. Supp. at 1113.

A lawyer's testimony is "necessary," "only if there are no other witnesses to the circumstances at issue." *Cabble v. Rollieson*, 04 Civ. 9413, 2006 WL 464078, *5 (S.D.N.Y. Feb. 27, 2006). *See also U.S. v. Tate & Lyle N. Am. Sugars, Inc.*, 184 F. Supp.2d 344, 347-48 (S.D.N.Y. 2002) (finding no necessity for attorney's testimony because the communications to which he would testify could be shown by other testimony or non-testimonial evidence). Here there are multiple witnesses concerning the negotiations of the 2001 and 2002 Agreements and underlying circumstances, including Plaintiff, his lawyer, Jeffrey Jacobson; the band's current lawyer (and their lawyer for the past 10 years), Jeffrey Light; the band's former personal manager, Jamie Kittman; the band's former road manager, Darren Brown; the band's former accountant, Howard Comart; Gano; and Skiena. Other than Skiena and Light, all of these witnesses were as involved, if not more involved, in the underlying circumstances and negotiations leading up to the execution of both the 2001 and 2002 Agreements. All that Meloni did was negotiate and draft the

agreements as Gano's lawyer with Ritchie's lawyer (Jacobson), and concurrently represent Gano in a trademark opposition concerning Ritchie's improper trademark application for the name "Violent Femmes" (defended by Jacobson on behalf of Ritchie). In fact, prior to 2001, Meloni had never represented Gano at all, and these above-named witnesses were the only people who had any knowledge of the band's history, the various conflicts between Gano and Ritchie leading up to that point, and the specific circumstances which necessitated the creation of these two agreements. *See* Meloni Dec. ¶3. Thus, Meloni's testimony (if called by Plaintiff), would not only be cumulative, but largely unnecessary.

The only guidance Plaintiff offers in carrying his burden on this issue is to note that "Meloni will likely testify on behalf of [Gano]", but does not specify how his testimony would be necessary, let alone prejudicial to Gano. *See* Plaintiff's Memo. ¶55.  Such a showing by Plaintiff is clearly inadequate to carry his burden. *See Talvy*, 618 N.Y.S.2d at 31 ("Merely because an attorney 'has relevant knowledge or was involved in the transaction at issue' does not make that attorney's testimony necessary. Such a determination must take into account 'such factors as the significance of the matters, weight of the testimony, and availability of other evidence.'"); *Am. Special Risk Ins. Co. v. Delta Am. Re Ins. Co.*, 634 F. Supp. 112, 122 (S.D.N.Y. 1986) (lawyer who merely observed the negotiations and reviewed draft agreements need not be disqualified); *Paretti,* 722 F. Supp. at 986 ("a lawyer who could provide only cumulative testimony may act as trial

counsel."). *See also Munk v. Goldome Nat'l Corp.*, 697 F. Supp. 784, 787 n. 3 (S.D.N.Y. 1988); *MacArthur*, 524 F. Supp. at 1208-09.

For an attorney's testimony to be considered "prejudicial," it must be "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the client might have an interest in the lawyer's independence in discrediting that testimony." *Paramount Communications, Inc.,* 858 F. Supp. at 395. The more speculative the potential prejudice, the less likely a court will be to grant a motion to disqualify. *Id.* at 398 ("[t]he conjuring of 'perhaps possible' scenarios is inadequate grounds for a demonstration of the need to call an attorney to testify"). Plaintiff has only proffered his speculation as to what may happen or what testimony may be given. *See* Plaintiff's Memo ¶55. Plaintiff's proffer as to potential prejudice is a clumsy sleight of hand, that intentionally confuses Gano's denial that the 2001 Agreement was entered into by Plaintiff by mistake, a purely legal argument, with Skiena's position that to the extent that the 2001 Agreement can be read to aver that Skiena performed publishing administration service for Plaintiff, that was an error. *Compare* Plaintiff's Memo. ¶58, *with the* Complaint ¶¶59-61; Answer ¶¶59-61, and Plaintiff's Memo, Ex. BB, p. 2.

At this stage of the litigation, without having conducted depositions to address any of these matters, Plaintiff has not shown that there is any reason to believe, let alone a substantial likelihood, that Meloni's testimony will be adverse to his client, and therefore prejudicial. *See Solow v. Conseco, Inc.*, 06 CIV 5988, 2007 WL 1599151, *9 (S.D.N.Y. June 4, 2007) (denying plaintiff's

motion for disqualification on advocate–witness grounds where plaintiff had not taken any depositions to substantiate his claims of prejudice).

Moreover, while a party's statement that he will not call the attorney is not dispositive, such "declarations of intent by a sophisticated party, as well as by its counsel, made after pleadings and limited discovery – with its trial strategy in mind – must be seriously regarded in determining what interest is being served by nonetheless disqualifying" counsel. *S & S Hotel*, 515 N.Y.S.2d at 739. *See also Computer Assocs. Int'l, Inc. v. Computer Automation, Inc.,* 678 F. Supp. 424, 430-31 (S.D.N.Y.1987). Gano will not call Mr. Meloni as a witness at trial. *See* Gano Dec. ¶27.

## V. *Vicarious Disqualification.*

Even if the Court determined that Meloni must be called as a witness, the disqualification of the entire firm of Meloni & McCaffrey, P.C. would still not be warranted. *See Culver*, 1997 WL 223088 at *3; *April Broad, Inc.*, 1996 WL 137487 at *5; *Davin v. JMAM, LLC*, 812 N.Y.S.2d 494 (1st Dep't 2006) ("[E]ven if testimony from some of plaintiff's attorneys were necessary, disqualification of the entire law firm would not therefore be warranted."); *Talvy*, 618 N.Y.S.2d at 31.

Like attorney disqualification, vicarious disqualification of an attorney's law firm is in the discretion of the court. *See Kubin,* 801 F. Supp. at 1114 n.9. The cases in this Circuit are uniform in holding that an attorney's firm should not be disqualified simply because that attorney will testify on behalf of his client. *See Gandler v.Nazorov,* 94 Civ. 2272, 1994 WL 702004

(S.D.N.Y. Dec 14, 1994); *Talvy,* 1994 WL 593353; *Kubin*, 801 F. Supp. at 1114; *Minami Int'l Corp. v. Clark*, 88 Civ. 2135**,** 1991 WL 102464, *1 (S.D.N.Y. 1991); *Paretti,* 722 F. Supp. at 988-89.

Indeed, in 1990 the Code was revised to permit a law firm to continue representation even if one attorney in the firm is required to testify. *See Gandler,* 1994 WL 702004 at *2 (S.D.N.Y. Dec 14, 2008) (two attorney firm); *Kaplan v. Maytex Mills, Inc.*, 187 A.D.2d 565, 590 N.Y.S.2d 136 (2d Dep't 1992). The 1990 revisions reflected a growing consensus among the legal community that vicarious disqualification of a law firm should occur only rarely, and that the reasons traditionally stated for disqualifying the firm when one of its attorneys will testify were no longer compelling. *See Gandler,* 1994 WL 702004 at *2; *Paretti*, 772 F. Supp. at 988-99. Indeed, the American Bar Association's Code of Professional Responsibility, as well as the Model Rules of Professional Conduct, both embody the principle that vicarious disqualification is no longer necessary when an individual attorney is disqualified as a necessary witness. *See Gandler,* 1994 WL 702004 at *3 n.4; *Kubin*, 801 F. Supp. at 1113-14. Plaintiff has failed to carry his heavy burden and his argument for vicarious disqualification of Meloni & McCaffrey, P.C. must be rejected.

## CONCLUSION

For the reasons set forth herein, this Court should deny Plaintiff's motion in all respects, together with such other and further relief as this Court deems just and proper.

Dated:  July 3, 2008
New York, New York

MELONI & MCCAFFREY, P.C.

By:_____
Robert S. Meloni (RM 8087)
Thomas P. McCaffrey (TPM 4057)

1350 Avenue of the Americas
Suite 3100
New York, New York 10019
Tel: (212) 957-5577

*Attorneys for Defendant Gordon Gano*