UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN RITCHIE, individually and d/b/a VIOLENT FEMMES,<br><br>                 Plaintiff,<br><br>                 -v-<br><br>GORDON GANO, individually and d/b/a GORNO MUSIC a/k/a GORNO MUSIC (ASCAP) a/k/a GORNO MUSIC PUBLISHING,<br><br>                 Defendants. | No. 07-CIV-7269 (VM)<br><br>REPLY ON PLAINTIFF'S EMERGENCY MOTION TO DISQUALIFY OPPOSING COUNSEL |

TO THE HONORABLE JAMES C. FRANCIS:

      Plaintiff Brian Ritchie, individually and d/b/a Violent Femmes ("Plaintiff"), by and through the undersigned counsel of record, submits this Reply On Plaintiff's Emergency Motion to Disqualify Opposing Counsel (this "Reply"). In support thereof, Plaintiff respectfully shows the Court as follows:

## TABLE OF CONTENTS

I. STATEMENT OF FACTS ...................................................................................................2
II. PRELIMINARY STATEMENT .........................................................................................2
III. ARGUMENTS AND AUTHORITIES................................................................................4
    A.    Plaintiff, by and through the undersigned, has standing to move for the disqualification of Meloni and Meloni's Law Firms. .............................................5
    B.    Plaintiff has not brought the Motion for tactical reasons........................................5
    C.    Defendant will not incur a hardship from the disqualification of Meloni. .............6
    D.    Meloni's testimony is necessary and prejudicial to Defendant. .............................7
    E.    Meloni's Law Firms should be vicariously disqualified pursuant to the witness-advocate rule. ................................................................................................9
    F.    A conflict of interest exists with respect to Meloni's concurrent representation of Defendant and Skiena. ..............................................................10
    G.    A conflict of interest exists with respect to Meloni's past representation of the Band and his current representation of Defendant..........................................12
IV. CONCLUSION...................................................................................................................16

## I. STATEMENT OF FACTS

1. On June 30, 2008, the parties agreed to "continue all depositions [in this case] until the Court has had an opportunity to rule on the [Motion] … ." (Doc. #24.) That same day, the Court also granted the joint request of the parties to "extend the deadline for the completion of all fact discovery … until sixty days after the Court has ruled on … [the Motion]." (*Id.*)

2. All other facts relied on herein are detailed in Plaintiff's Emergency Motion to Disqualify Opposing Counsel (Doc. #22) and memorandum of law in support thereof and exhibits attached thereto (Doc. #23) (collectively, the "Motion"). In response to the Motion, Defendant Gordon Gano, individually and d/b/a Gorno Music a/k/a Gorno Music (ASCAP) a/k/a Gorno Music Publishing ("Defendant"), submitted his Memorandum of Law in Opposition to the Motion (the "Response") (Doc. #29), which was supported by the declarations of Gordon Gano ("Gano"), Robert S. Meloni ("Meloni") and Alan N. Skiena ("Skiena") (Docs. #25-28).

## II. PRELIMINARY STATEMENT

3. In reviewing the Response, the following should be clear to the Court: First, Defendant utilizes a sleight-of-hand strategy to divert the Court's attention to the merits and substantive issues of the case (*e.g.,* Doc # 29 at 1-3 & 5-8), rather than the procedural and ethical issue at hand: whether Meloni and his two law firms, Meloni & McCaffrey, P.C. and Robert S. Meloni, P.C. (collectively, "Meloni's Law Firms"), may continue to participate in this suit as trial counsel for Defendant (*e.g.,* Doc. #22 at 1).[1]

---

[1] The only other issue raised by the Motion concerns Meloni's status with the bars of the State of New York and the Southern District of New York. (Doc. #23 at ¶ 70-72.) Defendant and Meloni take an understandably defensive position to the issue; however, their claim that the issue was raised in support of the Motion goes too far. (*See* Doc # 26-27 at ¶ 38; *see also* Doc. #28 at 1 n.2.) The undersigned was not aware of Meloni's status until it began preparing exhibits in support of the Motion. (*See* Doc # 23 at ¶ 70 & Ex. L.) As officers of the court, the undersigned had an obligation to report the issue to the Court, and believed the Motion was an appropriate vehicle for making such a report. N.Y. CODE OF PROF.'L RESPONSIBILITY D.R. 1-103(A). The issue is merely tangential to, and should not impact, the Court's determination of whether to grant the Motion.

4.      Second, the Response is supported by contradictory or otherwise questionable evidence, including: (a) an alleged statement and contemporaneous employment agreement that show Brian Ritchie ("Ritchie") and Gano (and Victor DeLorenzo) were, up until April 30, 1983, partners in a business known as "Violent Femmes" (Doc. #25 at Exs. A-B);[2] (b) e-mails between Howard Comart and Jeffrey Light[3] that Gano reviewed, but was not a party to (*id.* at Ex. C); (c) Plaintiff's Complaint and select responses to Defendant's First Request for Admissions[4] (Doc. #26-27 at Exs. A-B); (d) e-mails between the undersigned and opposing counsel discussing the proposed filing of the Motion (*id.* at Ex. C); (e) a letter from opposing counsel to the Court and a print-out concerning Meloni's updated status with the New York State Bar, which only support collateral issues to disqualification (*id.* at Exs. D & F); (f) an incomplete copy of the "proof of claim," which is contradicted by itself and "Exhibit A" to this Reply (*compare* Ex. A, *with* Doc. #26-27 at ¶ Ex. E, *and with* Doc. #29 at 19-20.);[5] and (g) the argumentative and, ultimately, self-

---

[2] Just because the referenced partnership allegedly transferred its interests to Violent Femmes, Inc. in April 30, 1983, does not mean that Ritchie and Gano did not form a <u>new</u> partnership entity known as "Violent Femmes" as early as May 1, 1983. *See* N.Y. P'SHIP LAW § 10 ("partnership defined").

[3] Defendant avers that that Howard Comart was "the Band's ... manager" and Jeffrey Light is "the Band's attorney." (Doc. #25 at 5; Doc. #26-27 at 3.) Similarly, Defendant alleges that "the Band[] jointly own[s] [the] trademark VIOLENT FEMMES," and avers that Gano and Ritchie, as the Band, conducted certain business activities, including "making and licensing sound recordings, licensing [(allegedly)] <u>our</u> band name and trademark 'Violent Femmes' for merchandise uses, and performing live musical concerts." (Doc. #25 at 2; Doc. #26-27 at 2.) These averments and allegations show that the Band must be some type of business entity because the intangible concept of a Band cannot itself have its own manger or attorney, own property or conduct business without some sort of business structure. And since the Band is itself not a formally organized entity (e.g., a corporation), it must, by default, be a partnership whose partners are Ritchie and Gano. *See* N.Y. P'SHIP LAW § 10 ("partnership defined").

[4] Defendant's readings of the responses to Defendant's First Request for Admissions are misleading and taken out-of-context.

[5] Defendant argues the "proof of claim" supports the proposition that Meloni appeared in the 2003 bankruptcy proceeding "on behalf of 'VF2, Inc. d/b/a Violent Femmes' and not on behalf of any separate entity or purported partnership Violent Femmes." (Doc. #29 at 19-20.) Said proposition is inaccurate because the "proof of claim" consists of two documents (a proof of claim and an addendum thereto) that distinguish the VF2, Inc. entity from the Violent Femmes entity by use of the word "and." For instance, the name and address of the claimant on the actual "proof of claim" is "VF2, Inc. <u>and</u> Violent Femmes ... c/o Robert S. Meloni, Esq. ... ". (Ex. A (emphasis added).) Similarly, the title of the addendum is "ADDENDUM TO PROOF OF CLAIM OF VF2, INC. <u>and</u> VIOLENT FEMMES". (Doc. #26-27 at ¶ Ex. E (emphasis added).) Accordingly, Meloni submitted the proof of claim in the 2003 bankruptcy proceeding on behalf of VF2, Inc. <u>and</u> the partnership known as the band "Violent Femmes."

serving declarations of Gano, Meloni and Skiena (Docs. #25-28).[6] Further, the Response's "statement of facts" is simply a litany of unsupported arguments and conclusions. (*See* Doc. #29 at 3-11.) Accordingly, the Court should give little, if any, consideration to the supposed "evidence" or "facts" presented in the Response.

5. Third, the Response fails to address or acknowledge certain critical facts, issues and arguments presented in the Motion, including, without limitation: (a) the fact that Meloni's Law Firms have both appeared in this case as trial counsel for Defendant (Doc. #23 at ¶ 10); (b) Plaintiff's argument that an attorney-client relationship between Meloni and the partnership known as the band "Violent Femmes" (the "Band") is assumed because Meloni had access to the confidences or secrets of the Band (*id.* at ¶ 33-34); (c) the fact that Meloni's website states he represents the Band (*id.* at ¶ 13); and (d) whether the Court should vicariously disqualify Meloni's Law Firms for their imputed successive and concurrent conflicts of interest (*id.* at ¶ 62-69). Since the Response fails to deny or rebut the foregoing, the Court should consider the foregoing as true, and grant the Motion with regard to the vicarious disqualification of Meloni's Law Firms for their imputed successive and concurrent conflicts of interest.

### III.  ARGUMENTS AND AUTHORITIES

6. Regardless of the foregoing, the Court should still exercise its discretion and grant the Motion in its entirety because, as explained in the Motion and this Reply, Plaintiff has satisfied its burden of proving that the continued representation of Defendant by Meloni and Meloni's Law Firms is necessary to safeguard the integrity of these court proceedings. *Evans v.*

---

[6] Self-serving declarations "may frequently lack persuasiveness or even be contradicted or negatived by other declarations and inconsistent acts." *District of Columbia v. Murphy*, 314 U.S. 441, 456 (1941); *see Bellsouth Telecomm. v. W.R. Grace*, 77 F.3d 603, 615 (2d Cir. 1996). The declarations of Gano, Meloni and Skiena are "self-serving" because they rest upon conclusory allegations or denials and conclusions of fact or law without providing any credible evidence in support thereof. *Bellsouth Telecomm.*, 77 F.3d at 615; *see* Black's Law Dictionary 415 (7th ed.) (defining "self-serving declaration" as "[a]n out-of-court statement made to benefit one's own interest).

Page 4

*Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) ("[t]he objective of the disqualification rule is to 'preserve the integrity of the adversary process,' ... [and the] reason for requiring a high standard of proof ... [is because the Court] must be solicitous of a client's right freely to choose his counsel – a right which of course must be balanced against the need to maintain the highest standards of the profession").

A. **Plaintiff, by and through the undersigned, has standing to move for the disqualification of Meloni and Meloni's Law Firms.**

7.  Defendant incorrectly argues that Plaintiff lacks standing to move for the disqualification of Meloni and Meloni's Law Firms under a concurrent conflict of interest theory because Plaintiff is not affected by any purported conflict between Gano and Skiena. (*E.g.*, Doc. #29 at 10.) New York Disciplinary Rule 1-103(A) "confers standing on any attorney to challenge a lawyer's representation of a client when he is privy to facts which justify disqualification." *In re Fischer*, 202 B.R. 341, 352 (E.D.N.Y. 1996) (quoting *SMI Indus. Canada Ltd. v. Caelter Indus.*, 586 F. Supp. 808, 815 (N.D.N.Y. 1984); *Vegetable Kingdom, Inc. v. Katzen*, 653 F. Supp. 917, 923 n.4 (N.D.N.Y. 1987) ("Katzen's attorneys have standing to raise the issue of a possible conflict ... even though the third-party defendants, not Katzen, are most directly affected by such a conflict if it exists"). Accordingly, Plaintiff, by and through the undersigned counsel of record, has standing to move for the disqualification of Meloni and Meloni's Law Firms under any applicable theory because the undersigned is privy to facts which justify disqualification. (Doc. #23 at ¶ 3-7.)

B. **Plaintiff has not brought the Motion for tactical reasons.**

8.  Defendant argues that Plaintiff brought the Motion for tactical reasons, e.g., the avoidance of certain discovery obligations. (*E.g.*, Doc. #29 at 2 & 8.) The truth is that Plaintiff has diligently sought to remedy the issue of opposing counsel's improper participation in this suit

without the need for judicial intervention; however, opposing counsel consistently refused to engage in a meaningful discussion of the matter and, thus, forced Plaintiff to file the Motion. (Doc. #23 at ¶ 15.) Further, the parties have been cooperating in the conduct of discovery and agreed to an extension of the fact discovery period. (Doc. # 24.) For these reasons alone, the Court should dismiss any suggestion that Plaintiff brought the Motion as a litigation tactic.

### C.  Defendant will not incur a hardship from the disqualification of Meloni.

9. Defendant argues that he will incur a hardship from the disqualification of Meloni and/or Meloni's Law Firms, his "long-time litigation counsel," because it will force Defendant to retain "less factually fluent, substitute counsel."[7] (*E.g.,* Doc. #29 at 2 & 8.) Under the doctrine of substantial-hardship, an otherwise disqualified attorney may continue to serve as trial counsel if his disqualification "would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case." *MacArthur v. Bank of New York*, 524 F. Supp. 1205, 1211 (S.D.N.Y. 1981).[8] To invoke the doctrine, however, Defendant must demonstrate that Meloni and Meloni's Law Firms "ha[ve] distinctive value as trial counsel." *Id.* at 1222.

10. Defendant has not shown how Meloni's and/or Meloni's Law Firms' "factual fluency" is of any "distinctive value." Should the Court disqualify opposing counsel, Defendant's new, substitute counsel will have Plaintiff's cooperation and be afforded enough time to become "factually fluent" in this case before the end of the fact discovery period. (*See*

---

[7] Defendant avers that Meloni drafted and negotiated the disputed 2001 and 2002 Agreements. (*E.g.,* Doc. #29 at 31-32.) Further, it is Meloni's "factual fluency" that requires his disqualification. Accordingly, Meloni's representative capacity extends beyond that of "litigation counsel" for Defendant.

[8] "For example, in a highly technical case, an attorney might have acquired unique expertise with respect to the matters in dispute, and no substitute counsel could supply the client with comparably adequate representation ... ." *MacArthur v. Bank of New York*, 524 F. Supp. 1205, 1211-12 (S.D.N.Y. 1981). In another example, "a long-standing professional relationship [-- as is apparently the case here with Meloni, but not Meloni's Law Firms --] could conceivably create a situation where an attorney has an extraordinary and irreplaceable familiarity with the affairs of his client ... [but the non-movant must] demonstrate that his attorney has distinctive value as trial counsel." *Id.* at 1222.

Page 6

Doc. #24.) Any experienced litigator should be able to handle this matter.

**D.  Plaintiff has shown that it is likely Meloni's testimony is necessary and substantially likely to be prejudicial to Defendant.**

11.  As Defendant correctly points out, the test for whether an attorney should be disqualified under the witness-advocate rule is whether "it is <u>likely</u> that the testimony to be given by the witness attorney is necessary and … [whether] it is <u>substantially likely</u> to be prejudicial to the party represented by the attorney." (Doc. #29 at 20 (internal quotations omitted).) However, Defendant misapplies the test in arguing that Plaintiff's evidence of necessity or prejudice cannot support a finding of disqualification under the witness-advocate rule because such evidence is not absolute and, thus, must be characterized as an extreme, i.e., speculation. (Doc. #29 at 33.) This argument contradicts the language of "likely" and "substantially likely" that the parties concede is part of the test for disqualification under the witness-advocate rule.

   **i.  It is likely that Meloni's testimony is necessary.**

12.  Plaintiff has shown that "such factors as the significance of the matters, weight of the testimony, and availability of other evidence" all weigh in favor of a finding that Meloni's testimony is "necessary." (Doc. #23 at ¶ 54-56.) *E.g., Paretti v. Cavalier label Co., Inc.*, 722 F. Supp. 985, 986 (S.D.N.Y. 1989) (test for "necessity"). Defendant attempts to refute the same by arguing that Meloni's testimony as to the drafting and negotiation of the 2001 and 2002 Agreements will be cumulative because other potential witnesses have knowledge of the same. (Doc. #29 at 31.) However, Defendant fails to identify what, if any, knowledge those potential witnesses have about the 2001 and 2002 Agreements that is cumulative to Meloni's knowledge.[9]

---

[9] In fact, none of the proposed witness are likely to have as much knowledge about the 2001 or 2002 Agreements as Meloni, whose testimony is the best extrinsic evidence available to clarify the ambiguities of said agreements. *Adasar Group, Inc. v. NetCom solutions Intern., Inc.*, No. 01 Civ. 0279 (WHP), 2003 WL 1107670, *7 (S.D.N.Y. Mar. 13, 2003) (describing use of extrinsic evidence to clarify ambiguous agreements). As the attorney opposite Meloni in the negotiation of the 2001 and 2002 Agreements, Jeffrey Jacobson will have a perspective different from

Page 7

Also, Defendant fails to refute any of the various memoranda drafted by Meloni that illustrate his in depth knowledge of the 2001 and 2002 Agreements. (Doc. #23 at Ex. F.)

13. Further, Defendant fails to address the fact that Meloni's testimony will go beyond the 2001 and 2002 Agreements to include such additional issues as (a) ownership of the VIOLENT FEMMES trademark, (b) the partnership relationship between Ritchie and Gano, and (c) pursuant to, *inter alia*, Defendant's averment that he intended to set-off Meloni's legal fees against monies owed to Ritchie, the accounting of monies to Ritchie by Defendant.[10] (Doc. #23 at ¶ 55; Doc. #26-27 at ¶ 24; Doc. #29 at 22-23.) Accordingly, it is likely that Meloni's testimony is necessary.

### ii. It is substantially likely that Meloni's testimony will prejudice Defendant and/or Skiena.

14. The Motion shows that Meloni's testimony is substantially likely to prejudice Defendant and/or Skiena (e.g., Meloni's testimony about Paragraph 7 of the 2001 Agreement can only favor Defendant or Skiena, if either). (Doc. #23 at ¶ 58-60.) In another example, when he gives testimony about Defendant's opposition to Plaintiff's application for federal registration of the trademark VIOLENT FEMMES, Meloni will be put in a position of preserving his own professional and/or personal integrity to the detriment of his clients because the details of his attempt to mount a proper oppose said application will be in question. (*See* Def.'s Am. Answer at ¶ 198-207.)

15. Further, Meloni admits to having knowledge of, and will, thus, be called by

---

Meloni as to the same. Further, Defendant avers that he lacks little, if any, knowledge about the facts underlying this suit. (Doc. # 28 at ¶ 56.)

[10] For example, Defendant alleges that Plaintiff's registration of the federal trademark VIOLENT FEMMES was "procured by Plaintiff through false and fraudulent statements ... ." (Def.'s Am. Answer at ¶ 202.) Defendant fails to identify any witness(es) whose testimony would make Meloni's testimony about the publication and/or receipt of such "false and fraudulent statements" cumulative. As explained above, Gano cannot give cumulative testimony about the issue because he lacks little, if any, knowledge about the facts underlying this suit. (Doc. # 28 at ¶ 56.)

Page 8

Plaintiff to testify about, the set-off of his legal fees against monies owed to Ritchie, which will help prove Plaintiff's claims against Defendant for, *inter alia*, the improper accounting and payment of royalties by Defendant to Plaintiff. (*See* Doc. #26-27 at ¶ 24; Doc. #29 at 22-23.) Accordingly, it is substantially likely that Meloni's testimony will prejudice Defendant.

E.  **Plaintiff has shown that Meloni's Law Firms should be vicariously disqualified pursuant to the witness-advocate rule.**

16. As explained above, the Response fails to rebut any arguments concerning the vicarious disqualification of Robert S. Meloni, P.C. pursuant to the witness-advocate rule (or pursuant to Meloni's imputed successive and/or concurrent conflicts of interest). Accordingly, the Court should grant the Motion by default and vicariously disqualify Robert S. Meloni, P.C.

17. With regard to Meloni & McCaffrey, P.C., Defendant argues that vicarious disqualification is unwarranted because the applicable rules of professional conduct "embody the principle that vicarious disqualification is no longer necessary when an individual attorney is disqualified as a necessary witness." (Doc. #29 at 35.) This argument is flawed because the applicable rules of professional conduct show that the alleged 1990 amendments to New York Code of Professional Responsibility did not abolish vicarious disqualification under the witness-advocate rule, but rather limited its use to situations like the case at bar. N.Y. CODE OF PROF.'L RESPONSIBILITY D.R. 5-102(b); *but see* MODEL CODE OF PROF.'L RESPONSIBILITY DR 5-102(A). In such situations, the Court should apply the discretionary rule of vicariously disqualification to Meloni's Law Firms if Plaintiff can show the existence of a rationale for the rule's application. *Paretti*, 722 F. Supp. at 989 (explaining that such a showing is necessary because, pursuant to the general standard for disqualification, the Court must balance an individual's right to his counsel of choice against "the interests of justice to all concerned"). And since Plaintiff has made such a

Page 9

showing, the Court should exercise its discretion and vicariously disqualify Meloni & McCaffrey, P.C. and Robert S. Meloni, P.C. (Doc. #23 at ¶ 67-68.)

**F.     Plaintiff has shown that a conflict of interest exists with respect to Meloni's concurrent representation of Defendant and Skiena.**

18.     Defendant unpersuasively argues that no concurrent conflict of interest exists with respect to Meloni's concurrent representation of Defendant and Skiena because Skiena is a third-party witness, not a party to this suit, it is "speculation" that Gano's interests are adverse to Skiena's interests, and Gano and Skiena have given their informed consent to Meloni's concurrent representation.

   i.     **Whether Skiena is a third-party witness is irrelevant to the concurrent conflict of interest analysis.**

19.     Defendant cites to *Leber Assoc, LLC v. Entm't Group Fund, Inc.*, No. 00 Civ. 3759, 2001 WL 1568780, **4 & 7 (S.D.N.Y. Dec. 7, 2001), for the proposition that Skiena must be a named party to the suit for a concurrent conflict of interest to exist as to Meloni's concurrent representation of Skiena and Gano. (Doc. #29 at 28-29.) However, Defendant's proposition is misplaced because the *Leber* decision concerns a <u>successive</u>, not a concurrent, conflict of interest, which involves a wholly different analysis for disqualification. 2001 WL 1568780 at **1 & 3. Further, the language quoted by Defendant is dicta that, to prove the existence of a conflict of interest, a mere showing that an attorney concurrently represents two co-defendants is not enough. *Id.* at *7. There is no requirement that Skiena be named a party to the suit for there to be a concurrent conflict of interest. *See* N.Y. CODE OF PROF.'L RESPONSIBILITY D.R. 5-105.

   ii.    **It is not "speculation" that Gano's and Skiena's interests are adverse.**

20.     Defendant makes the conclusive argument that the interests of Gano and Skiena are not adverse because it is "pure speculation" to think that "Gano 'may have claims against Skiena.'" (Doc. #29 at 29.) Yet Defendant fails to explain why, or point to any evidence in

Page 10

support of the proposition that, the adverseness of Gano's interests and Skiena's interests is speculative. Unlike the cases cited by Defendant in support of argument, the threat of Gano's interests diverting from Skiena's interests is very real because Skiena, as the admitted agent of Defendant, Skiena's principal, has directly performed the acts that form, in part, the basis of this suit. (Doc. #28 at ¶ 2 ("I have … computed the amounts payable by Gorno Music to Ritchie …").) When the Motion states that "Defendant may have claims against Skiena," the term "claims" is not limited to "causes of action," but encompasses "direct and indirect defenses" like indemnification and contribution. (See Doc. #23 at ¶ 48.)

21. Regardless, the interests of Defendant and Skiena can only be construed as "adverse" because of their opposite views about the 2001 Agreement. (*See* Doc. #23 at ¶ 49; *see also* Doc. #28 at ¶ 7.) Accordingly, the interests of Gano and Skiena are likely to be adverse. *See Cinema 5, Ltd. V. Cinerama, Inc.*, 582 F.2d 1384, 1387 (2d Cir. 1976).

### iii. There is no adequate proof that Gano or Skiena knowingly waived the evident conflict.

22. In *Artandi v. Buzack*, this Court held that an informed waiver of conflicts is insufficient to avoid disqualification when there is no adequate proof that the individual clients "have knowingly waived th[e] evident conflict." No. 02 Civ. 5759 (JCF), 2004 WL 764907, *8 (S.D.N.Y. Apr. 9, 2004) (Magistrate J. Francis) (rejecting waiver when only evidence thereof was a conclusory statement by counsel that its clients gave their informed consent).

23. The only proof presented by Defendant that Gano and Skiena knowingly waived the evident conflict is their nearly identical declarations that:

> I was fully advised by Mr. Meloni of the full implications of the common representation of both Mr. Skiena [(or Mr. Gano)] and me including the potential for conflicts arising therefrom and, after intentionally foregoing an opportunity to review my decision with independent counsel, I knowingly waived all conflicts that may arise from that representation.

Page 11

(Doc. #25 at ¶ 26; Doc. #28 at ¶ 6; *see* Docs. #26-27 at ¶ 29.) Similar to *Artandi*, Defendant has failed to articulate how Gano and Skiena, as principal and agent, will present a "unified" defense, and there is no indication that Gano (a lay person) or Skiena (an attorney) (a) executed a written waiver, (b) obtained independent legal advice before waiving any conflict, or (c) understood the implications of separate representation, including the opportunity of Gano to file cross-claims against Skiena. 2004 WL 764907 at *8. Accordingly, neither Gano nor Skiena have adequately waived the evident conflict.

G. **Plaintiff has shown that a conflict of interest exists with respect to Meloni's past representation of the Band and his current representation of Defendant.**

24. Defendant unpersuasively argues that no successive conflict of interest exists because the Band (a/k/a the Partnership) is a "phantom plaintiff" to which no attorney-client relationship exists, there was no reasonable expectation that communications between Ritchie and Meloni would remain confidential as to Gano, and there is no substantial relationship between the subject matter of Meloni's representations of the Band and Defendant.

   i. **An attorney-client relationship exists between the Band and Meloni.**

25. First and foremost, the Band is not a "phantom plaintiff" because Plaintiff properly brought this action on behalf of the Band in its own name, as well as on behalf of Ritchie, individually. *See Leonard P'ship v. Town of Chenago*, 779 F. Supp. 223, 232-33 (N.D.N.Y. 1991) ("[b]ased on the just stated rule that a partnership can sue in its own name, without naming the partnership members, it must be that the named copartners are also suing in their individual capacities, separate and apart from their capacity as copartners"). Such is evident by the caption in Plaintiff's Complaint and the remedies sought by Plaintiff (e.g., request for appointment of a receiver, request for a constructive trust, request for an injunction). (*See* Pl.'s Compl.)

Page 12

26.     Second, Defendant fails to discredit at least three of the six factors that Plaintiff has shown weigh in favor of a finding of an express attorney-client relationship between the Band and Meloni. (See Doc. #23 at ¶ 24-32.) With regard to the existence of a fee arrangement, Defendant admits that Ritchie, individually or as a partner of the Band, has shared in the losses of the Band by paying for Meloni's legal fees via (improper) set-offs. (Doc. #29 at 22-23.)

27.     Concerning the existence of a written contract or retainer agreement, the Court should not count the lack thereof against a finding of an attorney-client relationship because Defendant's failure to even acknowledge the existence of a written contract or retainer agreement between himself and Meloni shows that it is the practice of Meloni not have a written contract or retainer agreement with his clients.

28.     Finally, Defendant mischaracterizes the standard for determining whether Ritchie believed Meloni represented the Band as an objective standard, rather than a subjective standard. *MedicalDiagnosticImaging, PLLC v. CareCore Nat'l, LLC*, 542 F. Supp. 2d 296, 307 (S.D.N.Y. 2008). Plaintiff has shown that he, as a partner of the Band, had a subjectively belief that Meloni was an attorney for the Band. (Doc. #23 at Ex. A.)

29.     Third, Meloni has consistently held himself out to Plaintiff and the public as an attorney for the Band without notifying them of the contrary.[11] (Doc. #23 at Exs. Q & W.) Based on such conduct, it is no wonder that Ritchie, a lay person, believes Meloni to be an attorney for the Band. (*Id.* at Ex. A.)

30.     Fourth, Defendant incorrectly argues that Plaintiff has "conceded [in an e-mail] the necessity of first establishing the existence of the purported 'Partnership' as a matter of law

---

[11] The significance of Meloni's representation to Plaintiff and the public that he is an attorney for the Band cannot be more clearly evidence by the alteration of Meloni's webpage during the period between the filing of the Motion and the filing of the Response or this Reply, as shown in "Exhibit B" to this Reply. (*Compare* Ex. B ("Gordon Gano (lead singer/songwriter of Violent Femmes)"), *with* Doc. #23 at Ex. Q ("Violent Femmes").)

Page 13

in order to succeed on the ground of successive conflicts of interest." (Doc. #29 at 17-18.) Plaintiff has made no such concession. The purported e-mail discussed a proposed motion for partial summary judgment on the issue of whether the Band is in fact a partnership (the "MSJ"). (Doc. #26-27 at Ex. D.) Plaintiff did not file the proposed MSJ because it subsequently realized that the MSJ was not necessary to prove the existence of the partnership known as the Band for purposes of disqualification. Defendant's argument is merely another attempt by Meloni to, when it now suits him, disclaim the overwhelming facts and admissions that the Band is a partnership and that he has held himself out as a legal representative of the same. (*E.g.*, Doc. #26 at Q & W.) For these reasons, Meloni is an attorney for the Band.

> ii. **There was a reasonable expectation that communications between Ritchie, as a partner of the Band, and Meloni, as an attorney for the Band, would remain confidential within the Band.**

31. According to Defendant, the law requires a finding that Ritchie reasonably expected Meloni to keep his communications with Meloni confidential as to Gano before the Court may find the existence of a successive conflict of interest. (Doc. #29 at 24.) Any such rule is inapplicable to the present situation. The communications between Meloni and Ritchie were between a partner of the Band and the Band's attorney concerning the Band's business affairs, and the expectation was that Meloni would remain loyal to the Band and not use its confidential communications for the benefit of Gano in Gano's individual capacity. *Rosman v. Shapiro*, 653 F. Supp. 1441, 1446 (S.D.N.Y. 1987) ("[a] client reasonably expects that an attorney will remain loyal to his interests in matters on which that attorney previously represented him ... [and] [t]hat expectation is worthy of protection in this Court"). Accordingly, since Meloni has decided to drop the Band as a proverbial "hot potato" in favor of a more attractive and lucrative client, Gano, "the obvious appearance of impropriety stemming from ... [Meloni's] representation of ... [Gano] against ... [his] former client, ... [the Band] ... " shows

Page 14

that the purported rule of expected confidences is inapplicable to the present situation, if not the immediate disqualification of Meloni. *See id.* (disqualifying attorney for a close corporation who also represented its two shareholders, each of whom held 50% of the corporation's shares, because there was an "obvious appearance of impropriety").

      iii.    **Defendant avers that there is a substantial relationship between the subject matter of his representations of the Band and Defendant.**

32.    Defendant avers that the 2003 bankruptcy proceeding in which Meloni made an appearance concerned the failure of Beyond Music "to pay Gorno Music mechanical (publishing) royalties … ." (Doc. #29 at 19; *see* Ex. A.) Such information goes directly to, *inter alia*, the issue of damages in this case. (*See, generally,* Pl.'s Compl.) No matter how Defendant tries to spin it, he cannot deny the fact that Meloni held himself out as an attorney for the Band in said bankruptcy proceeding and other contexts. (Doc. #23 at Exs. Q & W.) Thus, it is patently clear that the subject matter of said representation is substantially related to the issues in this suit.

33.    Regardless, Defendant failed to refute, let alone address, the substantial relationship between the subject matter of the other matters identified in the Motion where Meloni has represented the Band, such as Ritchie's correspondence with Meloni regarding Ritchie's purchase of the masters for the music albums "Viva Wisconsin" and "Freak Magnet" for the Band.[12] (Doc. #23 at ¶ 12-14, 36, Exs. B-C & Ex. X.) Defendant also failed to refute the fact that the duty of loyalty prohibits Meloni, as an attorney for the Band, from representing Gano against Ritchie. *Prisco v. Westgate Entm't, Inc.*, 799 F. Supp. 266, 270 (D.Conn. 1992)

---

[12] Defendant attempts to discredit Exhibits B, C and X of the Motion in support of his inapplicable argument that Plaintiff did not satisfy Defendant's purported "reasonable expectation of confidentiality" requirement of the analysis for disqualification by successive conflict of interest. (*Compare* Doc. #23 at Exs. B, C & X, *with* Doc. #29 at ¶ 25-26.) Defendant's attempt should fail because his interpretation of said exhibits rest upon conclusory allegations or denials and conclusions of fact or law without providing any credible evidence in support thereof. *See Bellsouth Telecomm.*, 77 F.3d at 615. Also, Defendant's interpretations of Exhibits B, C and X are likely based on the self-serving declarations of Meloni because the correspondences identified by said exhibits were addressed to Meloni and did not name Gano as a party thereto; however, whether Gano was privy to said correspondences is irrelevant because Defendant lacks little, if any, knowledge about the facts underlying this suit. (Doc. # 28 at ¶ 56.)

Page 15

("the court fails to see how the duty of loyalty would allow a general counsel for a partnership to represent one partner against another partner in a suit arising out of partnership business"). Accordingly, the Court should find that the existence of a substantial relationship and disqualify Meloni from continuing to represent the separate interests of Gano against his partner (i.e., Ritchie) and the partnership (i.e., the Band).

## IV.  CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court grant the Motion in its entirety and, thus, disqualify Robert S. Meloni and his law firms, Meloni & McCaffrey, P.C. and Robert S. Meloni, P.C., from further participation in this suit.

Respectfully submitted,

**JACKSON WALKER L.L.P.**

By: /s/ Emilio B. Nicolas
Lawrence A. Waks
Daniel Scardino*
Emilio B. Nicolas
100 Congress Avenue, Suite 1100
Austin, Texas 78701
Tel.: (512) 236-2000
Fax.: (512) 236-2002
Email: lwaks@jw.com, dscardino@jw.com, enicolas@jw.com
(*admitted *pro hac vice*)

ATTORNEYS FOR BRIAN RITCHIE, individually and d/b/a VIOLENT FEMMES

## CERTIFICATE OF SERVICE

This is to certify that on this 15th day of July, 2008, a true and correct copy of the foregoing document was served by e-mail upon the following counsel of record:

Robert S. Meloni
Thomas P. McCaffrey
MELONI & McCAFFREY, P.C.
1350 Avenue of the Americas, Suite 3100
New York, New York 10019

ATTORNEYS FOR DEFENDANT GORDON
GANO, individually and d/b/a GORNO MUSIC
a/k/a GORNO MUSIC (ASCAP) a/k/a GORNO
MUSIC PUBLISHING

/s/ Emilio B. Nicolas
Emilio B. Nicolas