```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
BRIAN RITCHIE, individually and     :
d/b/a VIOLENT FEMMES,               :     07 Civ. 7269 (VM)(JCF)
                                    :
              Plaintiff,            :     MEMORANDUM
                                    :     AND   ORDER
     - against -                    :
                                    :
GORDON GANO, individually and       :
d/b/a GORNO MUSIC a/k/a GORNO       :
MUSIC PUBLISHING,                   :
                                    :
              Defendant.            :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
```

The plaintiff in this case, Brian Ritchie, and the defendant, Gordon Gano, are both members of the seminal folk-punk band, the Violent Femmes. Mr. Ritchie has sued Mr. Gano for breach of contract and related claims, and he now moves to disqualify the defendant's counsel, Robert S. Meloni and the firms of Robert S. Meloni, P.C. and Meloni & McCaffrey, P.C., based on Disciplinary Rules 5-108(a), 5-105, and 5-102(a) and (b) of the New York Code of Professional Responsibility. The plaintiff claims that (1) Mr. Meloni's current representation of Mr. Gano conflicts with his previous representation of Mr. Ritchie and/or the Violent Femmes, (2) Mr. Meloni's representation of both Mr. Gano and non-party witness Alan Skiena creates a concurrent conflict, and (3) it will be necessary for Mr. Meloni to testify as a fact witness about the signing of the agreement at issue in the case and about other band business. Mr. Meloni denies that there is any conflict with his

1

current representation, asserts that the represented parties have waived any conflict where necessary, and argues that his testimony regarding the agreement is not necessary.  For the reasons that follow, the motion to disqualify is denied.

<u>Background</u>

The Violent Femmes ("the Band") have performed a number of commercially successful musical compositions such as "Blister in the Sun" and "Add It Up."  (Compl., ¶¶ 1, 14-16).  Since the band's formation in 1980, Mr. Ritchie, Mr. Gano and others have formed and dissolved a number of corporate entities, including Violent Femmes, Inc., Violent Femmes Touring, Inc., Add It Up Productions, Inc., and VF2, Inc., to administer the band's various sources of income.  (Compl., ¶ 18; Answer, ¶ 18).  Defendant Gorno Music Publishing, Inc. ("Gorno") is a business entity wholly owned and controlled by Mr. Gano.  (Compl., ¶ 6; Answer, ¶ 6).  The day to day business of Gorno is handled by an attorney named Alan Skiena.  (Compl, ¶ 19).

This dispute concerns the ownership and administration of the Band's songs and other assets and arises principally out of an agreement signed by the parties in April 2001 (the "2001 Agreement") and another agreement signed in 2002 (the "2002 Agreement").  At that time, the Band had begun touring in order to pay off debts incurred on previous tours.  (Compl., ¶¶ 54-55; Answer, ¶¶ 54-55). According to the plaintiff, Mr. Gano threatened to leave the tour unless Mr. Ritchie agreed to sign the 2001

Agreement. (Compl., ¶ 56). The complaint also alleges that Mr. Gano "purposefully fail[ed] to appear" for a concert in Providence, Rhode Island and "unilaterally cancelled" already-booked tour dates in order to coerce Mr. Ritchie into signing the agreement. (Compl., ¶¶ 56-57). The plaintiff claims that he had "no choice" but to enter into the 2001 Agreement "[t]o guaranty the Band would continue the 2001 tour." (Compl., ¶ 57). The 2001 Agreement was drafted by the defendant's current counsel Robert S. Meloni, who was retained by Mr. Gano to represent him during the negotiation and execution of the agreement. (Memorandum in Support of Plaintiff's Emergency Motion to Disqualify Opposing Counsel ("Pl. Memo.") at 4; Declaration of Robert S. Meloni dated July 3, 2008 ("Meloni Decl."), ¶ 3). The plaintiff was represented during the negotiation of the agreement by attorney Jeffrey Jacobson. (Pl. Memo. at 4). The 2001 Agreement sets out the tour dates that Gano and Ritchie would play and their compensation for doing so, the winding down of VF2, Inc., and various other items of business between the parties. (2001 Agreement, attached as Exh. H to Pl. Memo., at 1-4).

The agreement also addresses the band members' interests in various compositions. Specifically, it provides that: "Ritchie will continue to receive an income participation in the amount of 7.5% of Gano's net receipts . . . on all Violent Femmes songs he did not write in consideration for his services as an 'arranger,'"

with several specifically enumerated exceptions. (2001 Agreement at 3). The agreement further provides that "Ritchie has co-writer interests on other songs, for which he will be paid (inclusive of the 'arranger' percentage) as in the past." (2001 Agreement at 3). Finally, the agreement states that "Ritchie and Gano have a[n] exclusive publishing administration arrangement with Alan Skiena, which will continue in full force and effect" and that "Alan Skiena will continue handling the administration and payment of Ritchie's income participation to Ritchie as in the past." (2001 Agreement at 3-4).

After several informal attempts to renegotiate the 2001 Agreement, the plaintiff brought this suit alleging that the agreement is void on various grounds, including coercion, mistake of fact, fraud in the inducement, and unconscionability. (Compl., ¶¶ 53-66). He also alleges that the defendant violated the 2001 Agreement by failing to pay royalties owed to him under the contract and by licensing compositions in which he had a copyright interest without his permission and without paying him his share of the licensing fees. (Compl., ¶¶ 25-32). He brings this action for declaratory and injunctive relief and legal and equitable damages. The defendant has cross-moved for declaratory judgment, damages, and cancellation of the plaintiff's registration of the trademark "Violent Femmes." (Answer, ¶¶ 186-212).

4

Discussion

A. Legal Framework

District courts have broad discretion to disqualify attorneys, but it is a "drastic measure" that is viewed with disfavor in this Circuit.  See Papyrus Technology Corp. v. New York Stock Exchange, 325 F. Supp. 2d 270, 275-76 (S.D.N.Y. 2004); A.V. by Versace, Inc. v. Versace, 160 F. Supp. 2d 657, 663 (S.D.N.Y. 2001); Paramount Communications, Inc. v. Donaghy, 858 F. Supp. 391, 394 (S.D.N.Y. 1994); Clark v. Bank of New York, 801 F. Supp. 1182, 1196 (S.D.N.Y. 1992).  The principal reason is that disqualification of counsel impinges on a party's right to employ the counsel of choice.  See Evans v. Artek Systems Corp., 715 F.2d 788, 791 (2d Cir. 1983); Government of India v. Cook Industries, Inc., 569 F.2d 737, 739 (2d Cir. 1978); Stratavest Ltd. v. Rogers, 903 F. Supp. 663, 666 (S.D.N.Y. 1995).  Moreover, the courts recognize that motions to disqualify are often interposed for tactical reasons. See Clark, 801 F. Supp. at 1196.

Therefore, a party seeking disqualification must meet a high standard of proof before the motion may be granted.  See Evans, 715 F.2d at 791; Cook Industries, 569 F.2d at 739; Papyrus Technology, 325 F. Supp. 2d at 276; Stratavest Ltd., 903 F. Supp. at 666; Paramount Communications, 858 F. Supp. at 394.  The Second Circuit has instructed district courts to take a "restrained approach that focuses primarily on preserving the integrity of the trial process"

when deciding disqualification motions. Armstrong v. McAlpin, 625 F.2d 433, 444 (2d Cir. 1980), vacated on other grounds, 449 U.S. 1106 (1981); see also Butala v. Agashiwala, No. 95 Civ. 936, 1997 WL 79845, at *10 (S.D.N.Y. Feb. 24, 1997); Huntington v. Great Weskin Resources, Inc., 655 F. Supp. 565, 571 (S.D.N.Y. 1987).  In particular, "a district court must consider the factual record underlying such a motion in detail to determine whether the party seeking disqualification has sustained the high standard of proof necessary to disqualify opposing counsel." Papyrus Technolgy, 325 F. Supp. 2d at 276; see also United States Football League v. National Football League, 605 F. Supp. 1448, 1451 (S.D.N.Y. 1985)(citing NCK Organization, Ltd. v. Bregman, 542 F.2d 128, 131 (2d Cir. 1976)).

          Disqualification is warranted only in situations where violations of the Canons of the Code of Professional Responsibility (the "Canons") pose "a significant risk of trial taint." Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981) (citations omitted); Mitchell v. Metropolitan Life Insurance Co., No. 01 Civ. 2112, 2002 WL 441194, at *4 (S.D.N.Y. March 21, 2002); see also Board of Education v. Nyquist, 590 F.2d 1241, 1247 (2d Cir. 1979) (mere "appearance of impropriety" not sufficient).  To establish that such a risk exists, the moving party must identify a violation of the Canons that "undermines the court's confidence in the vigor of the attorney's representation of his client." Nyquist, 590 F.2d

6

at 1246 (citations omitted).

    B.  <u>Alleged Grounds for Diqualification</u>

        1. <u>Successive Conflict</u>

    The plaintiff argues that Mr. Meloni must be disqualified from representing Mr. Gano because he previously represented the Violent Femmes in legal proceedings, and in that role had access to certain confidential information of Mr. Ritchie's.  New York's Code of Professional Responsibility (the "Code") establishes appropriate guidelines for the professional conduct of attorneys in the United States District Courts in this state.  See <u>NCK Organization</u>, 542 F.2d at 129 n.2; <u>Arifi v. de Transport du Cocher, Inc.</u>, 290 F. Supp. 2d 344, 348 (E.D.N.Y. 2003); <u>Sumitomo Corp. v. J.P. Morgan & Co.</u>, No. 99 Civ. 8780, No. 99 Civ. 4004, 2000 WL 145747, at *2 (S.D.N.Y. Feb. 8, 2000); <u>Paramount Communications</u>, 858 F. Supp. at 394 ("The Code is recognized in this Circuit as prescribing appropriate guidelines for the professional conduct of the bar."); Local Civil Rule 1.5(b)(5).  The Disciplinary Rules ("D.R.") of the Code bar attorneys, in some circumstances, from representing parties in litigation against their former clients.  An attorney may not represent "another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client."  D.R. 5-108(A)(1), 22 N.Y.C.R.R. § 1200.27(a)(1).  Second, an attorney may not use "any confidences or secrets of [a] former client."  D.R. 5-

108(A)(2), 22 N.Y.C.R.R. § 1200.27(a)(2)).

The Second Circuit has held that in order to ensure adherence to these principles, an attorney may be disqualified from representing a client if:

> (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

Evans, 715 F.2d at 791; accord Medical Diagnostic Imaging, PLLC v. CareCore National, LLC, 542 F. Supp. 2d 296, 311 (S.D.N.Y. 2008). This is because a "lawyer's duty to his client is that of a fiduciary or trustee." Cinema 5, Ltd. v. Cinerama, Inc., 528 F.2d 1384, 1386 (2d Cir. 1976)(citations omitted).

a.  Former Client of Adverse Party

"Before a court need consider whether the second matter is substantially related to the first or whether the parties' interests are adverse, it must determine that an attorney-client relationship did in fact exist between the purported former client and the attorney it seeks to disqualify." Culver v. Merrill Lynch & Co., Inc., Nos. 94 Civ. 8124, 95 Civ. 3585, 95 Civ. 3586, 95 Civ. 8762, 1997 WL 223088, at *3-4 (S.D.N.Y. May 5, 1997).  Here, the plaintiff alleges that Mr. Meloni represented the Violent Femmes, a partnership consisting of Mr. Ritchie and Mr. Gano, in various business dealings.  He also claims that the instant lawsuit is

8

brought on behalf of the Band, and that therefore the moving party is a former client of the adverse party's counsel. (Pl. Memo. at 9-17). The defendant contends that the Violent Femmes is not a plaintiff in this action and that, even if it were, no attorney-client relationship existed between the Band and Mr. Meloni. (Memorandum of Law in Opposition to the Motion of Plaintiff Brian Ritchie to Disqualify Counsel of Record for Gordon Gano ("Def. Memo.") at 15-24).[1]

First, they argue that only Mr. Ritchie is properly considered a plaintiff in this action. This suit is styled as being brought by "Brian Ritchie, individually and d/b/a Violent Femmes." (Compl. at 1). "New York law expressly allows for a partnership to sue or to be sued in the partnership name." <u>Leonard Partnership v.</u>

---

[1] The defendant also asserts that the Band did not constitute a partnership at all and therefore could not be named as a plaintiff. Rather, he maintains that all business affecting himself and Mr. Ritchie as members of the Violent Femmes was carried out through various corporate entities created for the purpose of handling the Band's business affairs and that this precluded the existence of a partnership. (Def. Memo. at 17-19; Compl., ¶ 18; Bill of Sale, attached as Exh. A to Declaration of Gordon Gano dated July 3, 2008 ("Gano Decl."); Employment Agreement, attached as Exh. B to Gano Decl.). <u>See</u> <u>Nasso v. Seagal</u>, 263 F. Supp. 2d 596, 618 (E.D.N.Y. 2003)("[W]hen parties form a corporation to carry out the business of the partnership, they cease to be partners."); <u>Berke v. Hamby</u>, 279 A.D.2d 491, 492, 719 N.Y.S.2d 280, 281 (2d Dep't 2001) ("As a general rule, a partnership may not exist where the business is conducted in a corporate form . . . . Parties may not be partners between themselves while using the corporate shield to protect themselves against personal liability.") (internal citations and quotation marks omitted). I need not decide that issue here since, as explained below, the plaintiff has not established a basis for Mr. Meloni's disqualification.

Chenango, 779 F. Supp. 223, 232 (N.D.N.Y 1991)(citing N.Y. Civ. Prac. Law & R. § 1025); see also Curley v. Brignoli, Curley & Roberts Associates, 915 F.2d 81, 87 n.5 (2d Cir. 1990); Zartone Development Co. v. Tedone, 221 A.D.2d 525, 527, 633 N.Y.S.2d 605, 607 (2d Dep't 1995). The plaintiff argues that the mention of Violent Femmes in the caption is sufficient to indicate that the partnership is a plaintiff in the action; however, the Violent Femmes is invoked only as an alias for Mr. Ritchie and it is unclear whether such a reference is sufficient to make this an action brought on behalf of the partnership. See Jet Age Knitwear Machinery Corp. v. Philip, 22 A.D.2d 674, 674, 253 N.Y.S.2d 339, 340 (1st Dep't 1964)("The description in the caption and complaint of defendant Philip as doing business under a certain style is not equivalent to including the partnership entity, although the style happens to coincide with the name of the partnership."). The defendant also contends that all of the remedies requested in the complaint flow to Mr. Ritchie individually, not to the partnership.[2]    In short, it is not clear that this action is

---

[2] The plaintiff claims that certain of the remedies sought -- for instance, the establishment of a constructive trust, the appointment of a receiver and the request for an injunction -- indicate that the action is brought on behalf of the partnership. (Reply on Plaintiff's Emergency Motion to Disqualify Opposing Counsel ("Pl. Reply") at 12; Compl. at 27-28).  However, whether these remedies would in fact benefit the partnership is questionable:  the constructive trust requested would "nam[e] Ritchie as the beneficiary," while the receivership and the injunction both relate to administration of the copyrights and seem designed essentially to ensure that Mr. Ritchie gets his fair share

brought on behalf of the partnership.

Even assuming that a partnership existed and that this suit is properly brought on its behalf, the plaintiff has not established that an attorney-client relationship existed between the partnership and Mr. Meloni. Nor has he shown that he himself was a client of Mr. Meloni. To determine whether an attorney-client relationship exists, courts in this District have identified six factors:

> 1) whether a fee arrangement was entered into or a fee paid; 2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation; 3) whether there was an informal relationship whereby the attorney performed legal services gratuitously; 4) whether the attorney actually represented the individual in one aspect of the matter (e.g., at a deposition); 5) whether the attorney excluded the individual from some aspect of a litigation in order to protect another (or a) client's interest; 6) whether the purported client believes that the attorney was representing him and whether this belief is reasonable.

Medical Diagnostic, 542 F. Supp. 2d at 307 (quoting First Hawaiian Bank v. Russell & Volkening, Inc., 861 F. Supp. 233, 238 (S.D.N.Y. 1994)); see also Ello v. Singh, No. 05 Civ. 9625, 2006 WL 2270871, at *3 (S.D.N.Y. Aug. 7, 2006). It is important to note that "[f]ormality is not an essential element in the employment of an attorney." Kubin v. Miller, 801 F. Supp. 1101, 1115 (S.D.N.Y. 1992) (quoting People v. Ellis, 91 Misc. 2d 28, 35, 397 N.Y.S.2d 541, 545 (N.Y. Sup. Ct. (1977)). Rather, "[i]n order to determine

---

of any future licensing agreements. (Compl. at 27-28).

11

whether an attorney-client relationship exists, it is necessary to look at the words and actions of the parties." Id.; accord Heine v. Colton, Hartnick, Yamin & Sheresky, 786 F. Supp. 360, 366 (S.D.N.Y. 1992)(noting that "since the initial arrangements for representation are often informal . . . it is necessary to look at the words and actions of the parties"). Here, at most, one of the six factors is satisfied.

The plaintiff concedes that there was no formal or written agreement between Mr. Meloni and the Band (or between Mr. Meloni and himself). (Pl. Memo. at 11-12). However, he maintains that Mr. Meloni represented and performed legal services for the Band, that there was an informal fee arrangement, and that, as a result, Mr. Ritchie believed Mr. Meloni to be an attorney for the Band. He submits a number of pieces of evidence to support his claim. The first is a letter from Mr. Meloni to the Band's record company at the time, Left Bank Records, Inc. regarding unpaid royalties from some Violent Femmes compositions. In the letter, he states that "I represent Gorno Music, VF2, Inc. and the Violent Femmes." (Letter of Robert S. Meloni dated June 26, 2003 ("Meloni 6/26/03 letter"), attached as Exh. W to Pl. Memo.). The plaintiff contends that the letter demonstrates that Mr. Meloni "appeared as the Band's attorney in a dispute between the Band . . . and the Band's record company." (Pl. Memo. at 12).

Mr. Meloni, for his part, claims that the letter was submitted

on behalf of Gorno Music, which sought to file a proof of claim for royalties owed it by Left Bank Records, and that he included VF2, Inc. and the Violent Femmes in the letter "purely as a favor to [Mr.] Gano." (Def. Memo. at 19-20; Gano Decl., ¶¶ 24-25). He claims that he was neither retained nor paid for his services in this regard by VF2, Inc., the Violent Femmes or Mr. Ritchie. (Def. Memo. at 19-20). He also points to the proof of claim itself, which states that it is submitted on behalf of "VF2, Inc. d/b/a Violent Femmes." (Addendum to Proof of Claim, attached as Exh. E to Meloni Decl.).

Standing alone, the letter does not establish that Mr. Meloni had an ongoing attorney-client relationship with the Band, or even that he necessarily acted as attorney for the Band in this instance. There is no evidence, for example, that Mr. Meloni pursued the matter any further, or that he ever appeared in court or claimed to represent an entity known as the Violent Femmes in any court filing associated with this issue or any other. At most, the letter suggests that Mr. Meloni had an attorney-client relationship with the band on this isolated matter; in the absence of additional evidence, there is nothing to suggest that that representation was ongoing. See Medical Diagnostic, 542 F. Supp. 2d at 309-11 (where attorney had only handled "discrete" matters for past clients and had not "actively represent[ed]" clients for some time prior to instant action, "the interests protected by

Canon 5 were not implicated"); <u>Catizone v. Wolff</u>, 71 F. Supp. 2d 365, 371 (S.D.N.Y. 1999)("The fact that an individual has previously been represented by an attorney does not mean that that attorney represents that person for any or all subsequent, unrelated . . . matters." (citation omitted)). Furthermore, unless Mr. Meloni obtained confidential information as part of that particular transaction -- and there is no suggestion that he did -- his representation of the Band in that lone matter would not require disqualification in this case. The plaintiff does not offer any additional instances that would substantiate his claim that "Meloni rendered legal advice or services to the Band." (Pl. Memo. at 12).

The plaintiff also asserts that an informal fee arrangement existed between the Band and Mr. Meloni. He offers as proof a spreadsheet of Gorno Music's 2006 expenses prepared by Mr. Skiena, which lists $1,200.00 paid to "Estimate of Meloni Charges." (Gorno Music - 2006 Receipts, attached as Exh. Y to Pl. Memo., at GANO_07711, GANO_18314). He claims that under the 2001 Agreement "a portion of the Band's revenue is derived from Gorno Music's administration of the Band's music catalog" and that Meloni's fees are therefore "an expense that is deducted from the Band's revenue." (Pl. Memo. at 11).

To begin with, the 2001 Agreement makes no mention of the Band as such, instead providing only for payments to Mr. Ritchie

14

individually from the administration of the Violent Femmes'
catalog. (2001 Agreement at 3). According to Mr. Skiena, the line
item in question refers to legal advice rendered to Mr. Skiena by
Mr. Meloni relating to an effort by Mr. Ritchie to obtain
"confidential business records belonging to Gorno Music."
(Declaration of Alan N. Skiena dated July 3, 2008 ("Skiena Decl."),
¶ 4; Gano Decl., ¶ 17). Mr. Skiena and the defendant decided to
withhold payments due Mr. Ritchie under the 2001 Agreement in order
to "recover a portion of the legal fees" they estimated would be
due to Mr. Meloni for his advice. (Skiena Decl., ¶ 4; Gano Decl.,
¶ 17).[3]

   At best, this evidence is also ambiguous. On the one hand,
the fact that the defendant apparently attempted to charge Mr.
Ritchie for Mr. Meloni's services rather than simply paying it
himself suggests that he may have seen Mr. Meloni and Mr. Ritchie's
relationship as one other than that of an attorney and opposing
party. On the other hand, withholding royalties from a third party
is not the typical way an attorney bills a client. Significantly,
there is no evidence in the record that Mr. Meloni ever directly
billed either the Band or Mr. Ritchie for services in this matter
or any other. The charge thus appears to be the isolated instance

---

   [3] The defendant's version of events is corroborated by a
notation in an earlier version of the spreadsheet next to the line
for Mr. Meloni's fees that reads "ARE WE DOING THIS?," hardly what
one would expect to see on a routine billing or fee statement.
(Gorno Music - 2006 Receipts, at GANO_07711).

that the defendant insists it is: a misguided attempt to punish Mr. Ritchie for attempting to obtain disputed records from Gorno Music and nothing more.

Finally, Mr. Ritchie claims that he reasonably believed that Mr. Meloni represented the Band, not just Mr. Gano. (Declaration of Brian Ritchie dated June 13, 2008, attached as Exh. A to Pl. Memo., ¶¶ 7-8). In addition to the above interactions, Mr. Ritchie points to several e-mail exchanges between himself and Mr. Meloni that he says substantiate his belief. The first appears to be a communication from Mr. Ritchie to Mr. Meloni concerning a dispute over some of the issues addressed in the 2001 Agreement; it appears to reflect ongoing negotiations between Mr. Ritchie and Mr. Gano regarding these issues. (Letter of Brian Ritchie dated Oct. 26, 2001, attached as Exh. X to Pl. Memo). There is no reply from Mr. Meloni. The second is simply an e-mail from Mr. Ritchie informing Mr. Meloni of Left Bank Records' bankruptcy, to which Mr. Meloni also did not reply. (E-mail of Brian Ritchie dated Jan. 7, 2003, attached as Exh. X to Pl. Memo.). The last concerns a request for a raise from former band manager Darren Brown. In it, the plaintiff asks that Mr. Meloni contact Mr. Gano and discuss the situation with him, which Mr. Meloni says he will try to do. (E-mail of Brian Ritchie dated June 28, 2006, attached as Exh. X to Pl. Memo.). None of these e-mails clearly reflects an understanding that Mr. Meloni represented the Band, or that there

was an attorney-client relationship between Mr. Meloni and Mr. Ritchie.  If anything, the letters suggest that Mr. Ritchie understood Mr. Meloni to be acting as a representative of Mr. Gano.

The plaintiff argues that Mr. Meloni failed in these communications to "alert[] Ritchie to the fact that he does not represent the separate interests of the Band."  (Pl. Memo. at 12).  But it is unclear why Mr. Meloni would have had any obligation to do so.  Morever, the sum total of Mr. Meloni's communication in the instant e-mails consists of two lines in which he explains that he has been dealing with family issues but will attempt to contact Mr. Gano.  Thus, the e-mails do not demonstrate anything about what Mr. Meloni thought his representation of the Band to have been, nor what he may or may not have led Mr. Ritchie to believe.  Ultimately, while Mr. Ritchie may have believed Mr. Meloni to be counsel for the Band, the record does not demonstrate that his belief was reasonable.  See Medical Diagnostic, 542 F. Supp. 2d at 307 (noting that belief of representation must be reasonable); Parkins v. St. John, No. 01 Civ. 11660, 2004 WL 1620897, at *4 (S.D.N.Y. July 19, 2004) (same); Catizone, 71 F. Supp. 2d at 371 ("[A] party's unilateral belief that he is represented does not confer upon him the status of client unless there is a reasonable basis for his belief.").  While Mr. Meloni apparently did nothing to dispel that belief, he also did nothing to foster it.

Even if Mr. Ritchie's belief was reasonable, he has otherwise

17

failed to establish that an attorney-client relationship existed between the Band and Mr. Meloni.  The isolated and inconclusive evidence presented by the plaintiff is not sufficient to meet the "high standard of proof" necessary on a motion to disqualify counsel.  <u>Evans</u>, 715 F.2d at 791.

                  b. <u>Access to Relevant, Privileged information</u>

The plaintiff has also failed to satisfy the third prong of <u>Evans</u> by demonstrating that Mr. Meloni "was likely to have had access to relevant, privileged information in the course of his prior representation of the client."  715 F.2d at 791; <u>see also</u> D.R. 5-108(A)(2), 22 N.Y.C.R.R. § 1200.27(a)(2); D.R. 4-101(B), 22 N.Y.C.R.R. § 1200.19.  Moreover,

> In cases where the earlier representation constituted a joint effort between the parties a fourth requirement, potentially precluding the use of the third factor, is added: "before the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client."

<u>Ello</u>, 2006 WL 2270871, at *3 (quoting  <u>Allegaert v. Perot</u>, 565 F.2d 246, 250 (2d Cir. 1977)); <u>see also</u>  <u>Parkins</u>, 2004 WL 1620897, at *5 (finding that this additional showing "operates at the threshold of prong three" of the <u>Evans</u> test); <u>First Hawaiian Bank</u>, 861 F.Supp. at 238 n. 7; <u>United States Football League</u>, 605 F. Supp. at 1453 n.7.

The plaintiff argues that because "Disciplinary Rule 5-108(A) is premised on the irrebuttable presumption that a lawyer who

formerly represented a client will have obtained secrets and confidences of the client," Papyrus Technology, 325 F. Supp. 2d at at 277, the plaintiff need not actually demonstrate that Mr. Meloni had access to privileged information.  That rationale fails for two reasons.  First, such an assumption would eviscerate the third requirement articulated in Evans.  Second, the presumption is inapplicable here in any event since the plaintiff has not established that an attorney-client relationship existed between the Band and Mr. Meloni in the first place.

As actual proof that Mr. Ritchie shared relevant privileged information with Mr. Meloni, the plaintiff points to the e-mails between himself and Mr. Meloni discussed above as well as two additional communications.  The first is an e-mail sent from Mr. Ritchie to Mr. Gano (at his wife's e-mail address), the band's former manager Darren Brown, Mr. Meloni, and Mr. Skiena suggesting that communication between himself and Mr. Gano was necessary to resolve certain outstanding business issues.  (E-mail of Brian Ritchie dated July 10, 2006, attached as Exh. B to Pl. Memo.).  To begin with, the e-mail is virtually contentless, so it is unclear what information the plaintiff might consider relevant or privileged.  Even leaving that aside, given the extensive list of addressees, there could hardly have been any expectation of privilege, let alone any expectation that the information in the e-mail would be withheld from Mr. Gano, given that he is an

addressee.  Finally, as the defendant notes, the e-mail states that
Mr. Ritchie is "awaiting direct communication from [Mr. Gano's]
representative.   I address this email to the only people I can
think of who might fit the bill."  (E-mail of Brian Ritchie dated
July 10, 2006).  Such a statement implies that Mr. Ritchie thought
of Mr. Meloni as a representative for Mr. Gano in this context.
While such an assumption is not necessarily incompatible with Mr.
Meloni also having represented the Band at times, it undermines any
suggestion that the communication was to Mr. Meloni in his capacity
as counsel to the Band or to Mr. Ritchie.

    The second communication is closer to the mark.  In it, Mr.
Ritchie informs Mr. Meloni that he has purchased the masters for
two Violent Femmes albums before they came up for auction "[s]o we
can license them or get a P & D deal."  (E-mail of Brian Ritchie
dated June 30, 2004 ("Ritchie 6/30/04 e-mail"), attached as Exh. C
to Pl. Memo.).  While this communication is addressed only to Mr.
Meloni and concerns Band business, it also seems unlikely to have
been intended to be confidential.  Again, Mr. Ritchie appears to
treat Mr. Meloni as a representative of Mr. Gano, saying "I was
having trouble getting ahold of GG [Gordon Gano] so I thought I'd
run it by you."  (Ritchie 6/30/04 e-mail).  Thus, there would have
been no presumption that the information would not be shared with
Mr. Gano.  Second, it seems unlikely that there would have been any
presupposition of confidentiality concerning what was presumably a

20

public sale.  Finally, it is not apparent, nor has the plaintiff explained, why this e-mail is relevant to the current case.

The other e-mails, discussed in greater detail above, suffer from similar deficiencies with regard to the plaintiff's claim of confidentiality.  First, they seem to treat Mr. Meloni as Mr. Gano's representative; thus, there is no sense that they are imparting information to Mr. Meloni in confidence.  Moreover, their relevance to the current suit is not readily apparent, with the possible exception of the October 26, 2001 e-mail, which seems to concern some of the issues addressed in the 2001 Agreement. Consequently, the plaintiff has failed to establish that Mr. Meloni received relevant privileged information and has certainly not established that any information was imparted that he "might reasonably have assumed the attorney would withhold from his present client," Mr. Gano.  Ello, 2006 WL 2270871, at *3.

In sum, it is clear that Mr. Meloni has been involved in band business for a number of years prior to the current litigation. Alone, that is not enough to require his disqualification.  As noted above, the bar for disqualification is high.  See DeVittorio v. Hall, Nos. 07 Civ. 0812, 07 Civ. 1956, 2007 WL 4372872, at *11 (S.D.N.Y. Dec. 12, 2007)("[W]ith rare exceptions disqualification has been ordered only . . . where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation . . . thus giving his

21

present client an unfair advantage. . . . But in other kinds of cases, we have shown considerable reluctance to disqualify attorneys despite misgivings about the attorney's conduct." (citations omitted)). The plaintiff has failed to clear that bar by establishing that Mr. Meloni ever represented the Band or was privy to confidential communications from Mr. Ritchie.

2. Concurrent Conflict

The plaintiff asserts that Mr. Meloni's representation of both Mr. Gano and the non-party witness, Mr. Skiena, violates Disciplinary Rule 5-105 ("D.R. 5-105") of the Code, which addresses attorney representation of clients with interests that may conflict.[4] "Where the [attorney-client] relationship is a

_____

[4] D.R. 5-105 provides, in relevant part:

(A) A lawyer shall decline proffered employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under [D.R. 5-105(C)].

(B) A lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under [D.R. 5-105(C)].

(C) In the situations covered by [DR 5-105(A) and (B)], a lawyer may represent multiple clients if a disinterested lawyer would believe that the lawyer can competently represent the interest of each and if each consents to the

continuing one, adverse representation is prima facie improper." Cinema 5, 528 F.2d at 1387; see also Hempstead Video, Inc. v. Incorporated Village of Valley Stream, 409 F.3d 127, 133 (2d Cir. 2005). However, D.R. 5-105 indicates that joint representation is permitted even if the lawyer's professional judgment "will be or is likely to be adversely affected," provided that: (1) "a disinterested lawyer would believe that the lawyer can competently represent the interest of each [client]," and (2) each client consents to the joint representation after full explanation of "the advantages and risks involved." D.R. 5-105(A)-(C), 22 N.Y.C.R.R. § 1200.24; see also Cinema 5, 528 F.2d at 1387. However, some conflicts are so severe that even an informed waiver is insufficient to avoid disqualification. See Bonner v. Guccione, No. 94 Civ. 7735, 1997 WL 91070, at *2 (S.D.N.Y. March 3, 1997); United States v. Rahman, 861 F. Supp. 266, 274 (S.D.N.Y. 1994). This is because courts have an obligation both to supervise members of the bar and to assure a fair trial to all litigants. See Dunton v. County of Suffolk, 729 F.2d 903, 909 (2d Cir. 1984).

---

representation after full disclosure of the implications of the simultaneous representation and the advantages and risks involved.

D.R. 5-105(A)-(C), 22 N.Y.C.R.R. § 1200.24.

The plaintiff also argues that Mr. Meloni himself is likely to be a fact witness in the case (Pl. Memo. at 19), but this potential conflict is more properly characterized as a violation of D.R. 5-102(B) and is addressed as such belo.w.

The plaintiff argues that because Mr. Skiena's administration of the Band's catalog is in some sense at issue in this action, it is possible that Mr. Gano will ultimately have claims against Mr. Skiena regarding that administration. (Pl. Memo. at 19).[5] But

_____

[5] As an initial matter, the defendant contends that there can be no conflict because Mr. Skiena is not a party to this action. There is some support for this proposition in this Circuit. See Medical Diagnostic Imaging, 542 F. Supp. 2d at 304 (in motion to intervene in order to move to disqualify counsel, fact that "[m]ovants are not parties in any litigation connected to these actions. . ., [w]hile not dispositive, . . . is an important factor in considering the strength of Movants' motion"); Bonner, 1997 WL 91070, at *2 (holding that "plaintiff has been unable to cite any civil case holding it to be improper for an attorney to represent both a defendant and its non-party employees"); Prisco v. New York, 804 F. Supp. 518, 520 (S.D.N.Y. 1992)("While plaintiffs have indeed identified a conflict, it involves non-parties to this action, and accordingly does not require disqualification of [counsel]."); Gould Investors, L.P. v. General Insurance Co. of Trieste & Venice, No. 89 Civ. 4794, 1992 WL 42164, at *2 (S.D.N.Y. Feb. 24, 1992)(denying motion to disqualify because alleged conflict "involv[ed] only the representation of a non-party witness at a deposition, where there is a possibility of a divergence of interests"); United States v. Occidental Chemical Corp., 606 F. Supp. 1470, 1474 (W.D.N.Y. 1985); Markowski v. Markowski, 2001 N.Y. Slip Op. 40216, 2001 WL 1423133, at *5 (N.Y. Sup. Ct. Aug. 13, 2001)(no conflict where "[plaintiff's] attorneys may have to cross-examine a non-party witness called by [defendant] . . . who the firm represented in the past" in an unrelated matter). But see Cole Mechanical Corp. v. National Grange Mutual Insurance Co., No. 06 Civ. 2875, 2007 WL 2593000, at *4 (S.D.N.Y Sept. 7, 2007)(permitting intervention by a non-party seeking to disqualify plaintiff's attorneys); Enzo BioChem, Inc. v. Applera Corp., 468 F. Supp. 2d 359, 360-61 (D. Conn. 2007) (involvement in separate, but closely related, case justified intervention for purposes of bringing motion to disqualify in case in which the movant was a non-party). None of these cases, however, involve the precise situation at issue here, and I am reluctant to endorse a blanket rule which would preclude conflicts when an attorney represents both a party and a non-party in the same litigation. Since, as described below, there is no conflict between Mr. Meloni's representation of Mr. Gano and his representation of Mr. Skiena, I need not decide that issue at this time.

24

such an allegation is "mere speculation" at this point and thus insufficient grounds to disqualify Mr. Meloni. Paretti v. Cavalier Label Co., 722 F. Supp. 985, 987 (S.D.N.Y. 1989); accord Team Obsolete Ltd. v. A.H.R.M.A. Ltd., No. 01 Civ. 1574, 2006 WL 2013471, at *4 (E.D.N.Y. July 18, 2006); A.V. by Versace, 160 F. Supp. 2d at 663.

The plaintiff also argues that Mr. Skiena and Mr. Gano have already adopted adverse positions on one of the central claims in the suit: that the 2001 Agreement was the product of mistake. In his answer, the defendant denies that there was any mistake. (Answer, ¶¶ 59-61). Mr. Skiena, however, in a 2007 letter to plaintiff's counsel, seems to take a somewhat conflicting position, stating, "[T]hough I have come to learn that . . . [the] 2001 Agreement apparently avers that I perform publishing administration services for Mr. Gano and Mr. Ritchie, that statement was and is an error." (Letter of Alan Skiena dated March 6, 2007 ("Skiena 3/6/07 letter"), attached as Exh. BB to Pl. Memo., at 2). In response to the plaintiff's motion, Mr. Skiena has stated that "the fact that I may believe Ritchie is mistaken in his purported understanding of my purported relationship to him as publishing administrator . . . is not adverse to Gano's position that the 2001 Agreement was not entered into by Ritchie by mistake." (Skiena Decl., ¶ 7). The defendant argues that the plaintiff "confuses Gano's denial that the 2001 Agreement was entered into by Plaintiff by mistake, a

purely legal argument, with Skiena's position that[,] to the extent that the 2001 Agreement can be read to aver that Skiena performed publishing administration service for the Plaintiff, that was an error." (Def. Memo. at 33).

I am not sure that Mr. Skiena's position can be so easily reconciled with the defendant's; after all, even Mr. Skiena's more recent declaration seems to suggest that he may testify that the 2001 Agreement is ambiguous with regard to a material term. See, e.g., Creative Waste Management, Inc. v. Capitol Environmental Services, Inc., 429 F. Supp. 2d 582, 599 (S.D.N.Y. 2006)(courts will allow rescission of contract on the basis of unilateral mistake where a party establishes that he entered into a contract under a mistake of material fact or where the mistake concerns a basic assumption on which the contract was made); Restatement (Second) of Contracts, §§ 152-53.

However, Mr. Gano and Mr Skiena's respective stances on this issue are not yet clear. There are certainly positions that Mr. Skiena could take on the issue of mistake -- for instance, that Mr. Ritchie understood perfectly well at the time of the 2001 Agreement that Mr. Skiena was not agreeing to perform publishing administration services for him despite the language of the agreement -- that would not be detrimental to Mr. Gano. Nonetheless, this apparent disjunction between Mr. Meloni's two clients suggests that "it is not free from doubt that a

26

disinterested lawyer would believe that defendant's counsel can competently represent" both Mr. Gano and Mr. Skiena. <u>World Food Systems, Inc. v. Bid Holdings, Ltd.</u>, No. 98 Civ. 8515, 2001 WL 246372, at *4-5 (S.D.N.Y. March 12, 2001).

Such a conflict, however, is still somewhat hypothetical at this point and is not so severe that it may not be waived. In support of the defendant's opposition to the plaintiff's motion to disqualify, both Mr. Gano and Mr. Skiena have executed declarations waiving any conflict. (Gano Decl., ¶ 26; Skiena Decl., ¶ 6). A party moving for disqualification "is entitled to an affidavit signed by 'each individual defendant stating that [he] fully understands the nature of the conflict inherent in joint representation . . . and chooses to continue [the joint representation].'" <u>Bonner</u>, 1997 WL 91070, at *2 (quoting <u>Kounitz v. Slaatten</u>, 901 F.Supp. 650, 659 (S.D.N.Y. 1995)); D.R. 5-105(C), 22 N.Y.C.R.R. § 1200.24. Mr. Gano and Mr. Skiena have provided that. Their declarations indicate that each defendant has been fully informed of the implications of Mr. Meloni's joint representation including "the potential for conflicts" and nonetheless wishes to retain him as counsel. (Gano Decl., ¶ 26; Skiena Decl., ¶ 6).

The plaintiff argues that the statements by Mr. Gano and Mr. Skiena are insufficient to constitute an informed waiver because they do not sufficiently articulate how the two will present a

unified defense, indicate that they did not obtain independent legal advice before waiving the conflict, and do not adequately demonstrate that they understand the implications of separate representation. (Pl. Reply at 12). For support, the plaintiff relies on Artandi v. Buzack, No. 02 Civ. 5759, 2004 WL 764907, at *8 (S.D.N.Y. Apr. 9, 2004). In Artandi, however, "[t]he only evidence of waiver [was] a conclusory statement by counsel." Id. Such a situation is obviously quite different from the one at bar, where both clients have signed statements stating that they fully understand the nature of the conflict inherent in joint representation and choose to continue the joint representation. While the waivers could certainly be more specific expansive with regard to their reasoning, that is not required under D.R. 5-105(c).

Because Mr. Gano and Mr. Skiena have demonstrated their informed consent to joint representation, permitting them to go forward with joint representation does not sufficiently increase the risk of trial taint. See Vegetable Kingdom, Inc. v. Katzen, 653 F. Supp. 917, 925 n.6 (N.D.N.Y. 1987) (observing that where the parties have "freely and intelligently" given consent to the representation, the court "should refrain from paternalistically infringing on a party's right to a lawyer of his choice absent compelling factors indicating that the attorney's loyalty to his client has been incontrovertibly compromised"); accord Softel, Inc.

28

v. Dragon Medical and Scientific Communications Ltd., No. 87 Civ. 0167, 1995 WL 75490, at *4 (S.D.N.Y. Feb. 23, 1995); see also Como v. Commerce Oil Co., 607 F. Supp. 335, 342 (S.D.N.Y. 1985) ("When clients, with knowledge of a possible conflict of interest, reaffirm their desire for joint representation, the Court should be reluctant to disqualify their chosen counsel."). Moreover, the possibility that future conflicts of interest may arise does not require a different result. See, e.g., Tartaglia v. City of New York, No. 98 Civ. 5584, 1999 WL 151104, at *1-2 (S.D.N.Y. March 19, 1999) (allowing joint representation because "[a]s the litigation now stands, [the defendants] share an interest in challenging plaintiff's allegations").

          3. Attorney as Witness

     Finally, the plaintiff contends that Mr. Meloni, as the drafter and a principal negotiator of the 2001 and 2002 Agreements, is likely to be called to testify as a fact witness and should therefore be disqualified. (Pl. Memo. at 20-22). To begin with, the plaintiff does not make clear whether he is arguing for disqualification under D.R. 5-102(A) or D.R. 5-102(B). Subsection (A) covers the situation where a lawyer's testimony would benefit his client, while subsection (B) comes into play when the lawyer's testimony would contradict or undermine his client's position. See D.R. 5-102(A),(B), 22 N.Y.C.R.R. § 1200.21(a),(b); see generally Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989). The

plaintiff appears to be making his motion under D.R. 5-102(B) since he includes a discussion of possible prejudice to the defendant from Mr. Meloni's testimony.  (Pl. Memo. at 23-24).

However, the plaintiff cannot meet his burden of demonstrating that Mr. Meloni's testimony would be prejudicial to his clients. The testimony of an attorney at trial is considered prejudicial if "it is sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the client might have an interest in the lawyer's independence in discrediting" the testimony. Paramount Communications, 858 F. Supp. at 395.  In this Circuit, the movant must show that an attorney's testimony is "substantially likely" to be prejudicial to his client. Ello, 2006 WL 2270871, at *6; A.V. by Versace, 160 F. Supp. 2d at 664; April Broadcasting v. Smith, No. 95 Civ. 7664, 1996 WL 137487, at *5 (S.D.N.Y. Mar. 27, 1996); Parke-Hayden, Inc. v. Loews Theatre Management Corp., 794 F. Supp. 525, 527 (S.D.N.Y. 1992). "The more speculative the potential prejudice, the less likely a court will be to grant a motion to disqualify." Shabbir v. Pakistan International Airlines, 443 F. Supp. 2d 299, 308 (E.D.N.Y. 2005). Mr. Meloni has averred that his testimony would support the defendant's position. (Meloni Decl., ¶ 30).  The plaintiff has offered little besides speculation to dispute that.  He suggests that Mr. Meloni will be forced to testify in support of either Mr. Gano's assertion that there was no mistake regarding the 2001

Agreement or Mr. Skiena's alleged assertion that the 2001 Agreement does include mistakes with regard to material terms. (Pl. Memo. at 23). But, as discussed above, it is not clear that Mr. Skiena's position supports a finding of mistake with regard to the agreement, nor that it cannot be harmonized with Mr. Gano's position on that issue. Mr. Ritchie also suggests that Mr. Meloni may contradict Mr. Skiena's assertion that, under the 2001 Agreement, he is not the publishing administrator for Mr. Ritchie. (Pl. Memo. at 24). However, there is no evidence that Mr. Meloni will take such a position, apart from the plaintiff's bare assertion that "Meloni knew or should have known that Skiena served as the attorney and publishing administrator for Defendant and Ritchie [under the] 2001 Agreement." (Pl. Memo. at 24). Finally, the plaintiff argues that Mr. Meloni will be put in the position of "preserving his own professional and/or personal integrity to the detriment of his clients" if he testifies about the defendant's opposition to the plaintiff's application to register the trademark "Violent Femmes," but it is unclear why this would be so. (Pl. Reply at 8). In short, the plaintiff has failed to show that it is substantially likely that Mr. Meloni's testimony would be prejudicial to either Mr. Gano or Mr. Skiena.

The plaintiff's motion might have been more appropriately made under D.R. 5-102(A), which provides that:

(a) A lawyer shall not act, or accept employment that contemplates the lawyer's acting as an advocate on issues

31

of fact before any tribunal if the lawyer knows or it is
obvious that the lawyer ought to be called as a witness on
a significant issue on behalf of the client. . . .

22 N.Y.C.R.R. § 1200.21(a). "The phrase 'ought to be called as a
witness' has been construed to include an attorney who has crucial
information in his possession that must be divulged in the course
of trial." Wickes v. Ward, 706 F. Supp. 290, 292 (S.D.N.Y. 1989)
(citation omitted); see also Paretti v. Cavalier Label Co., 722 F.
Supp. 985, 986 (S.D.N.Y. 1989)("[A] lawyer who merely observed the
negotiations and reviewed draft agreements need not be
disqualified. However, when a lawyer drafts an ambiguous document
for a layperson, the lawyer may be the only witness capable of
explaining what a clause means or why it appears. In that
circumstance, the lawyer ought to testify on behalf of his client.
In a more extreme example, if a lawyer negotiates, executes, and
administers a contract, and is the key witness at trial, then he
must be disqualified.")(internal quotations and citations omitted).

Where a lawyer's testimony is cumulative of other available
evidence, the testimony is not necessary. Parke-Hayden, 794 F.
Supp. at 528. Thus, "an attorney whose testimony would merely
corroborate the testimony of others may not be subject to
disqualification." Kubin, 801 F. Supp. at 1113 (citing MacArthur
v. Bank of New York, 524 F. Supp. 1205, 1209 (S.D.N.Y. 1981)); see
also Cabble v. Rollieson, No. 04 Civ. 9413, 2006 WL 464078, at *5
(S.D.N.Y. Feb. 27, 2006)(attorney's testimony "necessary only if

32

there [are] no other witnesses to the circumstances at issue"
(internal quotation marks omitted)).  Only where "the attorney's
knowledge is highly relevant and peculiarly in his possession,"
must he be disqualified under D.R. 5-102(A).  Kubin, 801 F. Supp.
at 1113.

Here, it is undisputed that there were numerous other parties
involved in the negotiation and drafting of the 2001 and 2002
Agreements, including Jeffrey Jacobson, the plaintiff's counsel at
the time, Jeffrey Light, an attorney for the Band, Darren Brown,
the band's former manager, Howard Comart, the band's former
accountant, and Mr. Skiena, as well as the parties.  The defendant
avers that all of these individuals "were as involved, if not more
involved, in the underlying circumstances and negotiations leading
up to the execution of [] the 2001 and 2002 Agreements" as Mr.
Meloni, and indeed that much of those interactions predated Mr.
Meloni's involvement.  (Def. Memo. at 31; Meloni Decl., ¶¶ 31-33).
The plaintiff claims that none of the parties listed by the
defendant is likely to have as much knowledge about the 2001 or
2002 Agreements as Mr. Meloni, whose testimony is the best
extrinsic evidence available to clarify the ambiguities of the
Agreements.  (Pl. Reply at 7 n.9).  However, at this point he is
able to offer little support for that contention.  Mr. Ritchie
suggests that a series of memoranda from Mr. Meloni to Ritchie's
attorney Jeffrey Jacobson illustrate Mr. Meloni's "in depth

knowledge of the 2001 and 2002 Agreements." (Pl. Reply at 8).
Most of these appear to be drafts of the 2001 Agreement, while the
last one is a list of Band revenues and expenses from their spring
2001 tour. (Communications from Robert Meloni, attached as Exh. F
to Pl. Memo.). These memos illustrate that Mr. Meloni was involved
in, and possesses knowledge of, the Band's business and the 2001
Agreement; they do not demonstrate that Mr. Meloni has knowledge
that could not be obtained from other sources.

Thus, despite Mr. Meloni's apparently central role in the
negotiation and drafting of the 2001 Agreement, "it is too early at
this point in the proceeding [during discovery] to determine
[whether counsel's testimony may be necessary]." Stratavest Ltd.,
903 F. Supp. at 668 (denying motion to disqualify because "[t]here
may be other witnesses to the transactions who can provide
sufficient evidence."); see also McDonald v. Hammons, 129 F.3d 114,
114 (2d Cir. 1997) (noting that determination of whether to
disqualify counsel "frequently only becomes clear at the conclusion
of the underlying litigation"); Norman Reitman Co. v. IRB-Brasil
Resseguros S.A., No. 01 Civ. 0265, 2001 WL 1132015, at *4 (S.D.N.Y.
Sept. 25, 2001)(denying motion to disqualify because "the parties
have just begun discovery and the case will not be ready for . . .
trial for some time"); Rosefield v. Orentreich, No. 98 Civ. 2721,
1998 WL 567750, at *5-6 (S.D.N.Y. Sept. 4, 1998)(denying motion to
disqualify because the case might not proceed to trial, the

34

attorney's testimony may never be offered and too much remains
unknown" early in the litigation). Because "the concerns
underlying DR 5-102(A) and (B) arise out of an attorney's presence
at trial, . . . allowing an attorney to continue his representation
pre-trial does nothing to undermine those interests, and protects
the clients' right to choose their own counsel." Conigliaro v.
Horace Mann School, No. 95 Civ. 3555, 1997 WL 189058, at *4
(S.D.N.Y. April 14, 1997) (internal citations omitted).
Accordingly, the plaintiff's motion is, at best, premature.

Conclusion

For the reasons set forth above, the plaintiff's motion to
disqualify Robert S. Meloni and the firms of Robert S. Meloni, P.C.
and Meloni & McCaffrey, P.C. as defense counsel is denied.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       September 8, 2008

Copies mailed this date:

Lawrence A. Waks, Esq.
Daniel Scardino, Esq.
Emilio Nicolas, Esq.
Jackson Walker LLP
100 Congress Avenue
Suite 1100
Austin, TX 78701

35

Robert S. Meloni, Esq.
Thomas P. McCaffrey, Esq.
Meloni & McCaffrey, P.C.
1350 Avenue of the Americas
Suite 3100
New York, NY 10019